UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACKSON LEWIS LLP
*ATTORNEYS FOR DEFENDANT MSLGroup*
58 South Service Rd., Ste. 410
Melville, New York  11747
(631) 247-0404
        ATTORNEYS OF RECORD:
                VICTORIA WOODIN CHAVEY, ESQ.
                JEFFREY W. BRECHER, ESQ.

-----------------------------------------------------------------X

MONIQUE DA SILVA MOORE,
MARYELLEN O'DONOHUE, LAURIE
MAYERS, HEATHER PIERCE, and
KATHERINE WILKINSON, on behalf of
themselves and all others similarly situated,

                                Plaintiffs,           Case No. 11-cv-1279

                vs.

PUBLICIS GROUPE SA and
MSLGROUP,

                                Defendants.

-----------------------------------------------------------------X


**DEFENDANT MSLGROUP'S OPPOSITION TO PLAINTIFFS' RULE
72(A) OBJECTION TO MAGISTRATE JUDGE PECK'S RULINGS**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..............................................1

ARGUMENT .......................................................................................................6

    I       Plaintiffs' Motion Is Untimely Because It Seeks Reconsideration of This Court's September 14, 2011 Order, But Was Not Filed Within 14 days of the Order.................................................................6

    II     Plaintiffs' Waived the Psychotherapist-Patient Privilege By Asserting Claims For Emotional Distress Damages In The Amended Complaint .............................................................................7

    III    Plaintiffs' Belated Attempt To Limit Claims To "Garden Variety" Damages to Avoid Disclosure of Privileged Records Is Inadequate Because It Does Not Explicitly Define or Limit Their "Garden Variety" Claims, Leaving Defendant in Limbo ....................................10

    IV    Even If Judge Peck Had Ordered Plaintiffs Were Required to Limit Their Emotional Damages to $25,000 or Produce Their Mental Health  Treatment, Such Ruling Was Not Clearly Erroneous or Contrary to Law .............................................................................13

    V     Only Records Regarding Plaintiffs' Mental Health Records are Protected by Any Privilege, Not Plaintiffs' Medical Records.............................14

CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*EEOC v. Nichols Gas & Oil, Inc.*,
  256 F.R.D. 114 (W.D.N.Y. 2009)..........................................................................9, 15

*Flowers v. County of Will*,
  274 F.R.D. 218 (N.D. Ill. 2011)....................................................................5, 11, 12, 13

*In Re Consolidated RNC Cases*,
  2009 U.S. Dist. Lexis 40293 (S.D.N.Y. Jan. 8, 2009) (RJS) .........................................*passim*

*Jaffee v. Redmond*,
  518 U.S. 1 (1996)...................................................................................................7

*Kinneary v. City of New York*,
  536 F. Supp. 2d 326 (S.D.N.Y. 2008).......................................................................14

*Kunstler v. City of New York,* 2006 U.S. Dist. LEXIS 61747, (S.D.N.Y. 2006)) ........................12

*Matter of New York State Division of Human Rights v. Fulton Footcare Assocs.*,
  15 A.D.3d 583, 789 N.Y.S.2d 893 (2d Dep't 2005).......................................................14

*Matter of Palmblad v. Gibson*,
  63 A.D.3d 844, 882 N.Y.S.2d 139 (2d Dep't 2009).....................................................14

*Matter of Suffolk County Community College v. New York State Division of Human
  Rights*,
  75 A.D.3d 513, 904 N.Y.S.2d 753 (2d Dep't 2010).....................................................14

*Santelli v. Electro-Motive*,
  188 F.R.D. 306 (N.D. Ill. 1999).............................................................................11

*Sims v. Blot*,
  534 F.3d 117 (2d Cir. 2008)......................................................................... *passim*

## PRELIMINARY STATEMENT

Defendant MSLGroup Americas, Inc., sued herein as MSLGroup ("MSL"), hereby responds to Plaintiffs' Rule 72(a) objections to Magistrate Judge Peck's rulings ("Plaintiffs' Objection").  Plaintiffs' application should be denied because: (1) Plaintiffs are objecting to an Order that Magistrate Judge Peck never made; (2) Plaintiffs' objection is untimely, as it seeks reconsideration of an Order of this Court, dated September 14, 2011, of which Plaintiffs did not timely seek reconsideration; (3) Plaintiffs waived the psychotherapist-patient privilege in the Amended Complaint; (4) Plaintiffs have not sufficiently limited their emotional distress claims since the September 14, 2011 Order so as to relieve them of their obligation to comply with the September 14, 2011 Order; (5) even if Magistrate Judge Peck had ruled as Plaintiffs contend, his rulings were not "clearly erroneous" or "contrary to law;" and (6) Plaintiffs  medical, non-mental health records are not privileged.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 14, 2011, Plaintiffs filed an Amended Class Action Complaint seeking over "100 million dollars" in damages, including damages for emotional distress injuries.  *See* Amended Complaint, ¶¶ 230, 237, 243, Prayer for Relief, ¶ M, [Dkt 4].  The Amended Complaint, which remains the operative pleading, does not limit the relief sought to "garden variety" damages – an ambiguous term Plaintiffs have not defined.  Instead, the Amended Complaint asserts that as a result of the alleged "willful, knowing, and intentional discrimination," Plaintiffs suffered "humiliation, embarrassment, emotional and physical distress, and mental anguish".  *Id.*  Despite these allegations, Plaintiffs nonetheless assert in their Objection that the Amended Complaint did *not* assert any claims for emotional distress damages.

1

*See* Plfs. Br. p. 7 ("Plaintiffs have not asserted any claims for emotional distress in their Amended Complaint").   This representation, however, is also inconsistent with their representation during a telephonic conference with Judge Peck on December 6, 2011, when Plaintiffs stated the Amended Complaint was *not* limited to claims for garden variety damages: "When Judge Sullivan ruled [on September 14, 2011], the claims were not limited to garden variety. They were *beyond* garden variety." *See* Tr. pp. 292-293, Dec. 6, 2011(emphasis added).[1]

Because the Amended Complaint sought emotional distress damages, MSL served standard discovery requests on May 23, 2011, seeking documents and information relating to Plaintiffs' alleged claims for emotional distress damages—documents and information relating to medical and mental health treatment Plaintiffs received, past medical and mental health history, and names and addresses of medical and mental health providers.[2]   On July 25, 2011, Plaintiffs responded and objected to Defendant's requests, refusing to provide any information.[3]   The objections did not include any reference to an intention to seek only "garden variety" damages.

On August 26, 2011, the parties submitted a joint discovery letter to the Court relating to various discovery issues, including Plaintiffs' refusal to provide any documents or information in response to the requests relating to emotional distress damages.[4]   In opposing MSL's request, Plaintiffs asserted that the discovery requests seeking documents and information relating to the claims for emotional distress damages were not relevant "to those Plaintiffs seeking only garden variety damages." *Id*. at p. 5.  This general statement did not describe which, if any, of the

---

[1] The transcript from the December 6, 2011 conference is attached as Exhibit K to the Declaration of Siham Nurhussein, dated December 16, 2011 (filed December 19, 2011).

[2] *See* Defendant's First Set of Written Interrogatories to Plaintiffs, No. 3, and Defendant's First Request for Production of Documents to Plaintiffs, Nos. 7-8, attached as Exhibit A and B, respectively, to the Declaration of Siham Nurhussein.

[3] *See* Plaintiffs' Responses to Defendant's First Request for Production of Documents, attached as Exhibit 1, attached to the Declaration of Jeffrey W. Brecher, dated January 3, 2012 ("Brecher Dec.") and Plaintiffs' Responses to Defendant's First Set of Written Interrogatories, attached as Exhibit 2 to the Brecher Dec.  We have attached the responses of Ms. da Silva Moore.  The responses of the other Plaintiffs are nearly identical.

[4] The joint letter is attached as Exhibit C to the Declaration of Siham Nurhussein.

Plaintiffs were seeking only garden variety damages and did not in any way describe or limit the scope of the evidence that would be introduced under the rubric of "garden variety damages." On August 29, 2011, the Court ordered the parties to submit the discovery requests identified in the August 26, 2011 joint letter so that it could review the requests and issue a ruling. The discovery requests were submitted to the Court on September 1, 2011, and on September 14, 2011, the Court issued an Order overruling Plaintiffs' objections and requiring Plaintiffs, *inter alia*, to respond to discovery relating to their claims for emotional distress damages.  [Dkt. No. 40].

Despite this Order, Plaintiffs did not respond to the interrogatories or document requests, nor did they seek reconsideration of the September 14, 2011 Order.  Having received no documents or information responsive to the discovery requests ordered by the Court, on October 24, 2011, MSL advised Plaintiffs that it intended to seek an Order to compel if Plaintiffs continued their refusal to comply.[5]  Plaintiffs responded on October 28, 2011, stating they *had* complied with the Court's Order (even though no documents or information regarding emotional distress damages were produced) because they were seeking only "garden variety" damages.[6]  As before, they did not identify which Plaintiffs were limiting their claims to so-called "garden variety" damages, describe what limitations would be placed on the testimony, explain what other evidence they intended to introduce at trial, or seek relief from the Court's September 14, 2011 Order.

Having still received no responses to the discovery, on November 9, 2011, MSL filed a request for a pre-motion conference to make a motion for sanctions for Plaintiffs' failure to comply with the September 14, 2011 Order.  On November 28, the Court denied the motion for

---

[5] See Exh. 3, Brecher Dec.
[6] See Exh. 4, Brecher Dec.

sanctions, but did so *without prejudice* to renewing the motion, and without any direction that Plaintiffs were relieved from the Court's prior Order. [Dkt. 49].  The Court then referred the case for general pre-trial purposes to Magistrate Judge Peck.  *Id*.

On December 2, 2011, Judge Peck held a conference to address outstanding discovery issues.  During the conference, MSL raised Plaintiffs' failure to respond to discovery regarding their alleged emotional distress damages.  Plaintiffs now assert that Judge Peck "ruled *sua sponte* that, in order to comply with the Court's September 14 Order, Plaintiffs must respond to all discovery requests pertaining to their medical information or stipulate to a $25,000 cap on damages for any emotional distress claims."  (Plfs. Br. p. 3).  But this was *not* Judge Peck's ruling.  Rather, during the discussion regarding Plaintiffs' emotional distress damages, Judge Peck suggested that, if Plaintiffs limited, *by stipulation*, their emotional distress damages to no greater than $25,000, he would consider revisiting the Court's September 14, 2011 Order (with this Court's approval).  When Plaintiffs balked at this idea, Judge Peck simply withdrew the suggestion, stated they could not stipulate out of it, and said that his only Order was that he was enforcing this Court's September 14, 2011 Order:

> Mr. WITTELS:   I have never seen a case that limited emotional distress or garden variety damages to $25,000.
>
> THE COURT:   This is not the first case I have tried or had discovery on in this area.  But, fine, you're right, I take it back.  You can't stipulate out of it.  Judge Sullivan ordered you to produce it.  I'm ordering you to produce it.  Period, end of discussion.

Tr. p.32.   On December 5, 2011, at another conference, Judge Peck again made clear he was enforcing the September 14, 2011 Order:

> THE COURT:   I ruled on Friday that, having nothing to do with the amount of damages, Judge Sullivan ordered you to produce that material, and

4

> I was not changing that order.  Yes, I also said that I thought
> garden variety damages were limited under the case law and Title
> VII and related types of action to $25,000.  But even putting that
> aside, Judge Sullivan ruled—and I am not reversing Judge
> Sullivan, that would sort of be backwards, so that ship has long
> since sailed.

Accordingly, Plaintiffs' Objection arguing that Judge Peck erred in ordering them to limit their damages to $25,000 or respond to discovery is an objection to an Order that he never made. Plaintiffs have tried to recast Judge Peck's Order as something other than what it was because what they *really* object to is the original September 14, 2011 Order requiring them to produce medical and mental health records.  But their objection is untimely because it was not made within 14 days of the September 14, 2011 Order.

Even if it had been timely, however, their Objection is without merit.  Plaintiffs have not amended the Complaint to withdraw their claim for emotional distress damages; they have not amended the Complaint to limit their damages to "garden variety" emotional distress damages; and they have not proposed a stipulation that defines or limits the evidence they intend to introduce at trial on the issue of alleged emotional distress damages.  Plaintiffs' position places MSL at Plaintiffs' mercy regarding what evidence they believe is encompassed within the term "garden variety."  The parties clearly have different conceptions of what that undefined term means.  Indeed, as recently explained by the Court in *Flowers v. County of Will*, 274 F.R.D. 218 (N.D. ILL., 2011), while parties may agree that only "garden variety" damages are at issue, the difficulty is that the parties often have "very different notions of what could grow in the garden." Plaintiffs have not identified what flowers will bloom in their garden; they have only planted the seeds, with MSL forced to wait and see what will grow.

Accordingly, Plaintiffs' motion should be denied.

**ARGUMENT**

I.      *Plaintiffs' Motion Is Untimely Because It Seeks Reconsideration of This Court's*
        *September 14, 2011 Order, But Was Not Filed Within 14 Days of the Order*

Rule 6.3 of the Local Rules of the United States District Courts for the Southern and

Eastern Districts of New York states: "Unless otherwise provided by Court or by statute or rule .

. . a notice of motion for reconsideration or reargument of a court order determining a motion

shall be served within fourteen (14) days after the entry of the Court's determination of the

original motion."  Local Civ. R. 6.3.  As noted above, Judge Peck did not, as Plaintiffs argue,

issue an order that Plaintiffs must limit their emotional distress damages to $25,000 or respond to

the discovery.

Rather, after making a suggestion (which Plaintiffs rejected) about how Plaintiffs might

avoid the impact of this Court's September 14, 2011, Judge Peck simply stated that he was

enforcing that Order.  Plaintiffs' Objection is, therefore, a request that this Court reconsider its

own September 14, 2011 Order.  But this motion is untimely because it was not made within

fourteen days of the Order.  Indeed, over three months have passed since the Court's September

14, 2011 Order, and at no time during that period did Plaintiffs ask the Court to reconsider its

Order based on their alleged withdrawal of emotional distress damages beyond "garden variety"

claims.

Plaintiffs essentially acknowledge that the motion is untimely, but state they did not

"move for reconsideration or clarification" of the Order earlier because they did not understand

the Order to require that they respond to discovery given their representation that "garden

variety" damages might only be sought. (Plfs. Br. p. 12).  But the Order was clear.  After

6

reviewing the parties' joint letter and copies of the discovery requests at issue, the Court specifically identified the interrogatories and requests for production that Plaintiffs were required to respond:  "The Court has also reviewed Defendant's disputed discovery requests, and has concluded that Defendants are entitled to the documents and information at issue. . . . information about damages (Defendants' Interrogatories 2 and 3, Requests for Production 5, 7-11, 22, 25, 31-31, 43)". [Dkt. No. 40].

Because Plaintiffs seek reconsideration of the Court's September 14, 2011 Order and such request was not made timely, Plaintiffs' Objection should be denied on this ground alone. However, as discussed below, even if it were deemed to be timely, the Objection should be denied on other grounds.

II.     *Plaintiffs Waived the Psychotherapist-Patient Privilege By Asserting Claims For Emotional Distress Damages In The Amended Complaint*

In *Jaffee v. Redmond*, 518 U.S. 1 (1996), the Supreme Court recognized the existence of a psychotherapist-patient privilege.  The privilege applies to confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment.  *Id.* at 15.  The privilege, however, like other testimonial privileges, can be waived.  *In Re Consolidated RNC Cases*, 2009 U.S. Dist. Lexis 40293, *21 (S.D.N.Y. Jan. 8, 2009) (RJS) (hereafter "RNC").  The Second Circuit addressed what actions constitute a waiver of the privilege in *Sims v. Blot*, 534 F.3d 117 (2d Cir. 2008).

Prior to *Sims*, some district courts had applied a broad waiver approach, whereby a plaintiff was deemed to have waived the privilege by merely alleging she suffered from emotional or psychological injuries of any type.  *See RNC*, 2009 U.S. Dist. Lexis at *21-22.

7

Other courts applied a narrower approach, declining to find waiver where the plaintiff alleged only garden variety claims for emotional distress. *Id*. at *22-25.

In *Sims*, the Court held that the plaintiff, a prisoner in the Sing Sing Correctional Facility who alleged that two officers had assaulted him without provocation, did not waive the privilege based on number of factors, including: (1) plaintiff had never alleged any emotional injury in his pleadings; (2) his only statements concerning emotional distress were made during responses to questions asked at his deposition, in which he reluctantly appeared *pro se*; (3) he subsequently renounced any evidence elicited at his deposition about his mental condition; (4) he withdrew any claims for mental injury or non-garden variety emotional injury; and (5) the deposition testimony would not be admitted at trial unless required by the defendant's own submissions. *Id*. at 25-26.

In contrast, in *RNC*, this Court, applying *Sims*, held that the plaintiffs had waived the privilege.   In *RNC*, plaintiffs were protesters who were arrested during the 2004 Republican National Convention held in NYC and brought claims against the NYC Police Department, the Mayor (and others) under § 1983 alleging, *inter alia*, that they were falsely arrested, falsely imprisoned, and maliciously prosecuted.[7]  Like here, the plaintiffs refused (or failed) to provide information and documents relating to their claim for emotional distress damages in response to the defendants' discovery requests.  The defendants moved to compel answers to the discovery, which motion was granted by Magistrate Judge Francis.  Judge Francis held that plaintiffs had waived the psychotherapist-patient privilege, and then later dismissed their emotional distress damage claims as a sanction under Rule 37 for failing to provide information or documents as set

---

[7] The consolidated opinion addressed the claims for 54 plaintiffs brought in 20 related lawsuits.

forth in their discovery requests.  Plaintiffs then appealed Judge Francis' rulings under Rule 72 to this Court.

The Court contrasted the facts before it and those in *Sims* and held that, unlike the plaintiff in *Sims*, the plaintiffs in *RNC* had waived the privilege.  First, unlike the plaintiff in *Sims*, the Court held the plaintiffs in *RNC* "affirmatively pleaded claims of emotional distress and mental or psychological injury" and sought damages based upon these claims.  *Id*. at *26.  Critically, in support of its holding, the Court stated that one plaintiff, Jessica Rechtschaffer, alleged that she suffered from "mental anguish, embarrassment, humiliation, and emotional distress".  *Id*. at *28, n. 14.  This allegation is an almost exact duplicate of the allegations that Plaintiffs here make in the Amended Complaint.  *See* Amended Complaint, ¶¶ 230, 237, 243, Prayer for Relief, ¶ M, [Dkt 4]. ("Plaintiffs and the Class have suffered and will continue to suffer harm, including but not limited to . . . humiliation, embarrassment, emotional and physical distress, and mental anguish").  The Court in *RNC* held that these specific allegations of emotional injury did not not fit within the category of mere "garden variety claims" as discussed in *Sims*.  *Id*. at *30.[8]

Second, the Court held that, unlike the plaintiff in *Sims*, the plaintiffs in *RNC* had been represented by counsel since the inception of the case, whereas the plaintiff in *Sims* proceeded *pro se* until after his deposition had been completed.  The same distinguishing fact applies here

---

[8] Plaintiffs' claim that a waiver occurs only when a plaintiff has asserted "separate causes of action for emotional distress" (Plfs' Br. p. 11), is not supported by the case law.  A plaintiff with a discrimination claim (*i.e*., not a separate cause of action) can waive the privilege. *See e.g*., *EEOC v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114 (2009).  Such a rule would also permit plaintiffs to use the privilege as a shield and a sword, injecting their psychological condition into a case, but then refusing to provide records because they have not made a separate cause of action for emotional distress injuries such as a state tort claim for intentional or negligent infliction of emotional distress.

too: the Plaintiffs are not proceeding *pro se* and have been represented by counsel who made a deliberate choice to inject their emotional distress claims into the case.

Finally, the Court held that plaintiffs had not renounced their claims for emotional distress damages, as the plaintiff had done in *Sims*. Similarly here, when MSL served discovery requests relating to Plaintiffs' emotional distress damages, Plaintiffs did not state as a basis for their objection that they were waiving their claim for emotional distress damages or limiting them to "garden variety" damages. And when the parties submitted the discovery dispute to the Court on August 26, 2011, Plaintiffs also did not waive their claims for emotional distress damages or limit them to garden variety claims, only cryptically stating that "those plaintiffs" who are asserting garden variety claims should not have to produce records. Thus, when the Court issued its September 14, 2011 Order, Plaintiffs had substantial allegations for emotional distress damages, were represented by Counsel, and had not renounced their claims for garden variety damages.

Accordingly, under *Sims* and this Court's decision in *RNC*, Plaintiffs waived the psychotherapist privilege and the Court's September 14, 2011 Order was proper.

III.   *Plaintiffs' Belated Attempt To Limit Claims To "Garden Variety" Damages to Avoid Disclosure of Privileged Records Is Inadequate Because It Does Not Explicitly Define or Limit Their "Garden Variety" Claims, Leaving Defendant in Limbo*

Plaintiffs attempt to avoid waiver of the psychotherapist-patient privilege by now limiting the emotional distress claims of *all* Plaintiffs to "garden variety" damages. But this attempted limitation is ineffective because Plaintiffs have not provided sufficient explanation, description, or limitation on the type of evidence and testimony they intend to introduce at trial. For example, Plaintiffs' supplemental disclosure statement, served on November 9, 2011, merely states, "Plaintiffs and the class seek garden variety emotional distress damages and punitive

damages to be determined by a jury."[9]  Similarly, while Plaintiffs' proposed "Stipulation," dated December 5, 2011, following the conference with Judge Peck, provides some limitation,[10] it again does not define or explain the testimony that Plaintiffs intend to introduce, making it impossible to determine whether the proposed evidence goes beyond "garden variety" and therefore requires production of privileged records.

In *Flowers v. County of Will*, 274 F.R.D. 218 (N.D. Ill. 2011), the court was faced with precisely the same issue—a representation by a plaintiff that he was seeking only "garden variety" emotional distress damages, reliance by the plaintiff on that representation in seeking to avoid producing mental health records, but a failure to provide clear description of what evidence he intended to introduce.  The plaintiff in *Flowers* brought a § 1983 case claiming he was beaten while in custody at the Will County Correctional Facility alleging "emotional suffering."  But at the plaintiff's deposition, the parties reached an agreement that plaintiff would not introduce any expert testimony at trial regarding his emotional suffering, and that he was limiting his claim to "garden variety" damages, agreeing to a formulation set forth in *Santelli v. Electro-Motive*, 188 F.R.D. 306 (N.D. Ill. 1999), (*i.e.*, "the negative emotions that plaintiff experienced as the intrinsic result of defendant's alleged conduct . . . but excluding any resulting symptoms or conditions that he might have suffered, including sleeplessness, nervousness, and depression").  *Id*. at 220 (internal quotations omitted).  It quickly became apparent, however, "as so often occurs in these cases" that the parties had "very different notions of what could grow in the garden."  *Id*. at 221.

---

[9] *See* Exhibit D to the Declaration of Siham Nurhussein.
[10] "Plaintiffs hereby confirm that they are asserting only claims regarding 'garden variety' emotional distress injuries.  Plaintiffs will not offer any medical evidence in support of those injuries."  *See* Exhibit H to the Declaration of Siham Nurhussein.  While Plaintiffs filed this document as a "Stipulation," which suggests that there had been some agreement between counsel, MSLGroup did not review or consent to this filing and was not a party to it.

The court explained that the difficulty stems from the fact that the term "garden variety" is not defined, is imprecise, and is susceptible to multiple meanings, leaving a defendant unsure of what is being proposed and what evidence will be introduced at trial. *Id*. at 225-226 ("The problem in these cases is definitional and stems from the imprecision and elasticity of the phrase 'garden variety.'").[11]   Because the plaintiff had failed to provide a complete description of what was being proposed through his agreement to limit damages to "garden variety" claims, the *Flowers* court denied his request for a protective order, finding a plaintiff cannot leave the issue in such an indeterminate state:

> Without a complete explication of what it is that is being proposed by the plaintiff, it cannot be said with assurance that the trial testimony expressly envisioned by the plaintiff's counsel will, in fact, be limited to the kind of simple, usual, and ordinary emotions approved by the cases. And if it is not, the plaintiff cannot insist on maintaining the psychotherapist/patient privilege. The choice of how to proceed is the plaintiff's. He cannot leave the matter in its current indeterminate state.

*Id*. at 229.

The same principle rings true here.   In *Sims*, the Second Circuit explained that waiver may occur where it is called for in the interests of fairness, arising when a party attempts to use the privilege as a shield and sword. *Sims*, 534 F.3d at 132.   As in *Flowers*, fairness requires that, if Plaintiffs wish to preserve the psychotherapist-patient privilege by limiting their alleged emotional distress damages to "garden variety" claims, they cannot do so in the shadows, and must provide "complete explication" of what they are proposing so that the Defendant (and the Court) can understand what is being proposed and determine whether the privilege has indeed

---

[11] The court stated that formulations vary, but the thought they seek to convey is the same--garden variety emotional damages are "the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized" (*citing Kunstler v. City of New York,* 2006 U.S. Dist. LEXIS 61747 (S.D.N.Y.2006)).

been preserved.   Fairness requires it.   And because Plaintiffs have not done so, Plaintiffs'

Objection should be denied as it was in *Flowers*.

IV.   *Even If Judge Peck Had Ordered Plaintiffs Were Required to Limit Their Emotional Damages to $25,000 or Produce Their Mental Health Treatment, Such Ruling Was Not Clearly Erroneous or Contrary to Law*

Judge Peck did not order Plaintiffs to limit their emotional distress damages to $25,000 or

produce discovery relating to their mental health treatment as Plaintiffs argue.   He suggested that

he would consider revisiting the September 14, 2011 Order *if* Plaintiffs agreed to such a

stipulation.   His only Order was that Plaintiffs comply with this Court's September 14, 2011

Order.   But even if he had entered the Order that Plaintiffs suggest, such Order would not be

"clearly erroneous" or "contrary to law."

A ruling is "clearly erroneous" if the reviewing court is left with the definite and firm

conviction that a mistake has been committed.   *RNC Consolidated Cases*, 2009 U.S. Dist. Lexis

at *16.   A ruling is contrary to law when it fails to apply, or misapplies relevant statutes, case law

or rules of procedure.   *Id*.   But neither of these exists here, particularly when viewed in

conjunction with the principle that a Magistrate Judge's ruling regarding discovery matters is

entitled to "substantial deference."   *Id*.

Plaintiffs rely on various Second Circuit and district court cases to argue that Judge

Peck's Order limiting their emotional distress damages to $25,000 to preserve the privilege is

clearly erroneous, because those cases have simply permitted jury awards of damages of up to

$125,000 in cases not involving the introduction of medical testimony (*see* Plfs. Br. pp. 7-9).

But the cases cited by Plaintiffs involve questions of whether a remitter of compensatory

damages was appropriate following a jury trial.   None of the cases involve the question of

whether a plaintiff seeking emotional distress damages can preclude *discovery* relating to their

emotional distress damages based on the psychotherapist-patient privilege or whether seeking such damages constitutes a waiver. None of the cases discuss the privilege, waiver, or discovery. They are inapposite, and Plaintiffs have cited no authority, let along any controlling authority, that Judge Peck erred in attempting to achieve fairness with respect to their emotional distress claim—suggesting that they could pursue such claims and preserve the privilege if they agreed to cap their damages claim.

Notably, Plaintiffs did not present to Judge Peck any evidence, or make any proffer, that Plaintiffs suffered from some type of emotional distress that would justify raising the suggested maximum. A Magistrate Judge has substantial discretion in resolving discovery disputes and a $25,000 cap, even if Order by Judge Peck, was not an abuse of that discretion. *See, e.g.*, *Kinneary v. City of New York*, 536 F. Supp. 2d 326, 331 (S.D.N.Y. 2008) (noting that damage awards for garden variety claims are in the range of $5,000 to $30,000, and reducing award for emotional distress damages from $125,000 to $25,000); *Matter of Palmblad v. Gibson*, 63 A.D.3d 844, 882 N.Y.S.2d 139 (2d Dep't 2009) (reducing emotional distress damage claim in discrimination claim from $30,000 to $5,000); *Matter of New York State Division of Human Rights v. Fulton Footcare Assocs.*, 15 A.D.3d 583, 789 N.Y.S.2d 893 (2d Dep't 2005) ($7,000 awarded for claim for emotional distress damages); *Matter of Suffolk County Community College v. New York State Division of Human Rights*, 75 A.D.3d 513, 904 N.Y.S.2d 753 (2d Dep't 2010) (reducing award of compensatory damages from $50,000 to $5,000).

V.      *Only Records Regarding Plaintiffs' Mental Health Records are Protected by Any Privilege, Not Plaintiffs' Medical Records*

Federal courts do not recognize a physician-patient privilege. *EEOC v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 122 (W.D.N.Y., 2009) (*citing Evanko v. Electronic Systems Assocs.,*

*Inc.*, 1993 U.S. Dist. Lexis 218 (S.D.N.Y. 1993).   Although New York has legislated a physician-patient privilege, N.Y. CPLR § 4504(a), state privilege laws do not govern in federal question cases.   *Id.*   Here, all Plaintiffs bring claims under federal law: Title VII of the Civil Rights Act of 1964.   Accordingly, whether Plaintiffs "waived" any privilege relating to medical (as opposed to psychological) records or limited the waiver by seeking only "garden variety" damages is irrelevant to the question whether Plaintiffs' *medical records* are discoverable.   In *Nichols*, for example, the Court held that a claimant in an employment discrimination claim had not waived the psychotherapist-privilege under *Sims*, but nonetheless was required to produce her *medical* records as a result of the claim made for emotional distress damages.   Thus, the Court's Order requiring Plaintiffs to produce their medical records should be enforced regardless of any concession to seek only "garden variety" damages.

## CONCLUSION

Plaintiffs filed this case seeking over "100 million dollars" in damages, including compensation for mental anguish and emotional distress.   When MSL sought discovery to prepare a defense to this claim, including records relating to their emotional distress damages, Plaintiffs refused to provide them.   MSL was forced to make a motion to compel, which was granted, and a later motion for sanctions, which was denied, but without prejudice.   Despite numerous Court Orders Plaintiffs still refuse to comply.   They argue they did not waive the psychotherapist-patient privilege because they did not seek emotional distress damages in the Complaint (which is not accurate) and that they have limited their claims to so-called "garden variety" damages so they need not comply with the Order. But, as discussed above, they have not defined or described what evidence they intend to introduce, and their agreement to seek only "garden variety" damages simply begs the question of what is encompassed within that

agreement. Plaintiffs have violated the Court's September 14, 2011 Order, and their Objection, which is nothing more than an untimely request for reconsideration of that Order, should be denied.

Dated: Melville, New York
     January 3, 2012

               Respectfully submitted,

               JACKSON LEWIS LLP

               *ATTORNEYS FOR DEFENDANT "MSLGROUP"*
               58 S. Service Road, Suite 410
               Melville, New York  11747
               Tel.:  (631) 247-4605
               Email:  brecherj@jacksonlewis.com

       By:        s/
             VICTORIA WOODIN CHAVEY, ESQ.
             JEFFREY W. BRECHER, ESQ.

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on January 3, 2012, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

Janette Wipper, Esq.
Sanford Wittels & Heisler LLP
555 Montgomery Street,
Suite 820
San Francisco, CA  94111


George Stohner, Esq.
Paul C. Evans, Esq.
Morgan Lewis Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921


                                              s/
                              JEFFREY W. BRECHER

4821-9629-2622, v.  2

17