UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONIQUE DA SILVA MOORE, MARYELLEN O'DONOHUE, LAURIE MAYERS, HEATHER PIERCE, and KATHERINE WILKINSON on behalf of themselves and all others similarly situated,<br><br>    PLAINTIFFS,<br><br>v.<br><br>PUBLICIS GROUPE SA and MSLGROUP,<br><br>    DEFENDANTS. | Civ No. 11-CV-1279 (ALJ) (AJP) |

# PLAINTIFFS' RULE 72(a) OBJECTION TO MAGISTRATE JUDGE PECK'S JANUARY 4, 2012 DISCOVERY RULINGS

SANFORD WITTELS & HEISLER, LLP
Janette Wipper Esq.
Steven L. Wittels, Esq.
Siham Nurhussein, Esq.
Deepika Bains, Esq.
*Attorneys for the Plaintiffs and the Class*

**TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………..…...……1

II. BACKGROUND…………………………………………………….…...……..2

III. LEGAL STANDARD…………………………………………….……………4

IV. ARGUMENT……………………………………………………...….....…...5

    A. Judge Peck's Rulings Limiting the Temporal Scope of Discovery Was Clearly Erroneous and Contrary to Law……………………………………….……5

        1. It is an Abuse of Discretion to Cut Off Discovery at the Filing of the Initial Complaint…………………………………………………....…6

        2. It is an Abuse of Discretion to Not Grant Plaintiffs Discovery for a Reasonable Period Preceding the Liability Period………………..…..9

    B. Judge Peck's Modification of Judge Sullivan's Order Compelling the Production of Employment Data Was Clearly Erroneous and Contrary to Law…..………………………………………………………………....…..11

V. CONCLUSION……………………………………………………………......14

## I.  INTRODUCTION

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(a), Plaintiffs object to certain discovery rulings made by Judge Peck at the conference held on January 4, 2012.  As a preliminary matter, Plaintiffs note that for reasons outside of their control, they have not had an opportunity to fully flesh out the issues before the Court, because they were not given the opportunity to file a motion to compel or a motion for sanctions.  Instead, the rulings that are the subject of these objections were decided on the basis of faxed letters, limited to a total of fifteen pages (including attachments), requesting a pre-motion conference in order to file the respective motions.  Plaintiffs contend that this was not cured by the hearing on January 4, because Plaintiffs were only permitted to make very limited remarks.  Thus, this one objection brief, for which no reply is permitted, must serve as Plaintiffs' only opportunity to brief two fairly detailed motions.

With respect to the substantive issues, Plaintiffs have two main objections: First, Judge Peck's rulings severely limit the temporal scope of discovery to a period that does not cover the full liability period.  Second, Judge Peck's rulings appear to relieve Defendant MSLGroup from complying with Plaintiffs' request for employment data that was already compelled by Judge Sullivan in his September 14, 2011 Discovery Order.  In making each of these rulings, Judge Peck failed to determine both the relevance of the requested discovery and whether Defendant MSL had carried its burden in resisting the requests based on its previously stated objections.  Because the case law holds that the discovery is relevant, and because Defendants have failed to put forth any evidence supporting any arguments that would allow them to resist this discovery, the rulings are

1

clearly erroneous and contrary to law.

## II. BACKGROUND

Plaintiffs are female public relations ("PR") employees who worked for Defendant MSLGroup ("MSL"), a subsidiary of Defendant Publicis Groupe SA ("Publicis") that is headquartered in New York, New York.  Plaintiffs challenge, *inter alia*, Defendants' company-wide, systemic gender discrimination in pay, promotion, pregnancy, and termination decisions.  Plaintiffs filed their Complaint on February 24, 2011, and subsequently filed an Amended Complaint on April 14, 2011, that set forth claims under state and federal anti-discrimination and equal pay laws.  Plaintiffs seek to represent a class of several hundred PR professionals who worked in less than a dozen small offices located in eight states.  Notably, these women worked under a centralized management team of fewer than ten regional heads and managing directors, all of whom reported directly to a single individual: MSL President Jim Tsokanos.  Each named Plaintiff alleges specific accounts of gender discrimination by the President of MSL himself or his team.  (*See, e.g.*, Am. Compl. ¶¶ 67-70, 76-77, 80, 83-84, 86-90, 98, 104, 114-115, 118.)  Moreover, Plaintiffs also challenge a specific, company-wide practice of gender discrimination resulting from MSL's reorganization of its North American region and PR practice beginning in or around 2008. (*See, e.g.*, AC ¶¶ 8, 13-18, 52, 54-62, 74, 76, 80, 89, 101-104, 115, 128, 132-137, 141-142, 171, 184, 192.)

Plaintiffs' counsel, a firm experienced in litigating class actions, requested a bifurcated discovery schedule due to the scope of the claims in this case.  Judge Sullivan, however, granted Defendant MSL's request for non-bifurcated discovery and since that time, discovery has been hotly contested and aggressively litigated by the parties

(although not always reflected on the docket, due to the fact that both Judge Sullivan and Judge Peck have ruled on many discovery issues based on pre-motion conference letters rather than allowing the parties to file briefs).  Defendant Publicis has yet to be involved in merits discovery as they have argued that the Court does not have personal jurisdiction over them on these issues, and the Court separately ordered discovery related to personal jurisdiction matters in preparation for an evidentiary hearing on this matter.

With regard to the issues at hand, Plaintiffs requested a pre-motion conference before Judge Peck in order to file two proposed motions: a motion to compel outstanding discovery from MSL in response to Plaintiffs' Second Set of Document Demands, served on September 9, 2011 (*see* Ex. A, Dec. 27, 2011 Letter from Plaintiffs to Judge Peck), and a motion for sanctions against MSL for its failure to produce complete employment data and other documents compelled by Judge Sullivan's September 14, 2011 Discovery Order (*see* Ex. B., Dec. 29, 2011 Letter from Plaintiffs to Judge Peck).  Judge Peck scheduled a conference for January 4, 2012, to discuss Plaintiffs' proposed motions, as well as other discovery issues such as the parties' joint ESI protocol.

As described earlier, at the conference, rather than attempting to informally resolve the issues between the parties or grant Plaintiffs permission to file their motions, Judge Peck simply ruled on the discovery disputes on the basis of Plaintiffs' letters, without giving Plaintiffs an opportunity to fully brief the issues through regularly filed motions.[1]  Thus, this set of objections is Plaintiffs' first opportunity to brief the issues

---

[1] Plaintiffs note that this practice has the practical effect of preventing the parties from filing fully briefed motions and preserving the record for future appeals, something that is frowned upon by the Second Circuit.  *See Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000) ("Although we have recognized that it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion, we have made it clear that the judge may not require that the court's permission be secured at such a conference before a party may file the motion." (citing *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 39 (2d Cir. 1995)); *MacDraw, Inc. v. CIT*

3

they initially sought to brief in two separate motions. Moreover, due to the procedural posture of the rulings, Plaintiffs will have no opportunity to reply to Defendant MSL's arguments, as would be permitted under the Federal Rules of Civil Procedure had Plaintiffs simply been permitted to file a motion. Additionally, Plaintiffs note that the transcript of the various meetings with Judge Peck over the course of January 4 leave the reader (and certainly Plaintiffs) uncertain as to many of Judge Peck's rulings. Plaintiffs have attempted to preserve their objections, but also request the opportunity to more fully brief the Court on these issues, as is normally allowed by the Federal Rules, through the filing of regularly noticed motions.

In what Plaintiffs believe was an abuse of discretion, Judge Peck knowingly cut off relevant discovery, by holding that Plaintiffs should not receive any discovery of documents created after the filing of the initial complaint on February 24, 2011. Further, Judge Peck held that MSL need only produce discovery starting after February 2008 with regard to general gender discrimination, and starting after February 2005 with regard to pay discrimination. Finally, Judge Peck held that despite Judge Sullivan's order compelling employment data requested by Plaintiffs in their First Set of Document Requests, MSL no longer needs to fully comply with Judge Sullivan's Order or Plaintiffs' request.

### III. LEGAL STANDARD

Rule 72(a) provides that "a district judge in the case must consider timely objections (to a nondispositive order) and modify or set aside any part of the order that is

---

*Group Equip. Fin.*, 73 F.3d 1253, 1256 n.2 (2d. Cir. 1996) (same); *Richardson Greenshields Sec., Inc., v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987) ("Absent extraordinary circumstances, . . . a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure.").

clearly erroneous or contrary law." Fed. R. Civ. P. 72(a). Similarly, "the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provide[s] that a district court shall reverse a magistrate judge's ruling regarding a non-dispositive matter only where the order is 'clearly erroneous or contrary to law.'" *In re Consol. RNC Cases*, [No Number in Original], 2009 U.S. LEXIS 40293, at *16 (S.D.N.Y. Jan. 8, 2009) (quoting 28 U.S.C. § 636(b)(1)9A)). Pre-trial discovery matters such as the ones at issue here are "non-dispositive." *See id.*

"A ruling is 'clearly erroneous' if the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001). "A ruling is 'contrary to law' 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Id.* (quoting *Thompson v. Keane*, No. 95 Civ. 2442 (SHS), 1996 U.S. Dist. LEXIS 6022, at *1 (S.D.N.Y. May 6, 1996) (internal quotation marks omitted)).

IV. **ARGUMENT**

   A. **Judge Peck's Rulings Limiting the Temporal Scope of Discovery Was Clearly Erroneous and Contrary to Law**

All of Judge Peck's rulings on January 4, 2012, implicitly holding that discovery outside of the narrow temporal scope defined by the Court at the hearing is not relevant to the claims, are clearly erroneous and contrary to the case law in employment discrimination cases. "In the context of employment discrimination cases, courts favor 'liberal civil discovery rules,' giving plaintiffs 'broad access to employers' records in an effort to document their claims.'" *Vuona v. Merril Lynch & Co.*, No. 10 Civ. 6529, 2011 U.S. Dist. LEXIS 131491, at *9 (S.D.N.Y. Nov. 15, 2011) (quoting *Wards Cove Packing*

5

*Co. v. Atonio*, 490 U.S. 642, 657 (1989)).  As set forth below, Judge Peck's rulings temporally limiting discovery are clearly erroneous and contrary to law.

### 1. **It is an Abuse of Discretion to Cut Off Discovery at the Filing of the Initial Complaint**

Judge Peck's refusal to grant discovery for the full liability period of the class, without any finding about the relevancy or burden of the discovery is clearly erroneous and contrary to law.  The Federal Rules define the appropriate scope of discovery as follows: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Courts have construed the term "relevance" broadly to encompass "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  "This is especially the case with regard to discrimination claims, where the imposition of unnecessary discovery limitations is to be avoided."  *Chan v. NYU Downtown Hosp.,* No. 03 Civ. 3003, 2004 U.S. Dist. LEXIS 16751, at *12 (citation omitted).

Here, the liability period has not yet ended for three reasons.  First, the Amended Complaint seeks certification of a class that "consists of all female public relations employees, *who are, have been, or will be* employed by Defendants in the United States at any time during the applicable liability period, including until the judgment in this case."  (Am. Compl. ¶ 180 (emphasis added.)  Thus, current and future employees are a

part of the proposed class and Judge Peck's discovery limitation may preemptively limit the class prior to the filing of a class certification motion. Second, the class definition above defines the liability period as continuing through the date of judgment. (*Id.*) Finally, opt-in Plaintiff Carol Perlman, worked for MSL until July 2011, and has alleged claims up to the date of termination. "Numerous jurisdictions have determined that discovery in employment discrimination cases extending two years after the date of the termination of employment is reasonable and therefore relevant in the scope of discovery." *Allen v. Wells Fargo Fin., Inc.*, No. 7:07-2890, 2008 U.S. Dist. LEXIS 43516, at *4 (S.C. June 2, 2008) (citing cases).

Despite the fact that the liability period is ongoing, Judge Peck cut off all discovery at February 24, 2011 – the date on which the original Complaint was filed in the case. [2] (*See* Ex. C, Jan. 4, 2012 Tr. at 9:6-11:20; 15:6-16:6; 19:13-18; 26:25-28:14; 33:25-34:14; 35:24-36:16; 59:8-60:12; 61:19-62:7; 64:11-65:16; 67:2-69:18.) Thus, Judge Peck refused to grant discovery for the full liability period. Judge Peck recognized the relevancy of the discovery requested when he suggested that Defendants could oppose a motion for collective action certification due to the fact that Plaintiffs would not have discovery for a large period within the statute of limitations, stating:

> I'm not trying to help the defendants -- if I were them, I'd
> 
> oppose certification [in April 2013] if for no other reason

---

[2] Although Plaintiffs objected to the cut-off, the Court made it clear that it would hear no further argument on the matter. For example, when Plaintiffs' counsel asked Judge Peck whether he was imposing a global discovery cut-off, Judge Peck was only willing to consider two options for a cut-off date: the date on which the original Complaint was filed (February 24, 2011), or the date on which the Amended Complaint was filed (April 14, 2011). (Jan. 4, 2012 Tr. at 64-65 ("You've got to have some way of dealing with this. So I'm inclined to either leave it at the February date or maybe to push it to April 14th of 2011, other than when we get to privilege issues, I'm not going to require them to log almost anything post initial complaint.") When confronted with those limited options, Plaintiffs' counsel proposed the Amended Complaint date as the cut-off, which Judge Peck ultimately rejected following an objection from MSL's counsel. (*Id.* at 65.)

>than that most of the period within the statute of limitations
>will be a period where there hasn't been discovery. And if
>we stick to the schedule, because you got Judge Sullivan to
>approve it and I decide not to stick my neck out and
>overrule him, so to speak, I'm not reopening discovery.
>You can bet on that.

(Jan. 4, 2012 Tr. 69:7-17.) Thus, it is clear that, despite understanding the relevancy of the requested discovery, Judge Peck, for reasons undisclosed, decided not to allow Plaintiffs to receive the discovery, in direct contradiction to Rule 26. Additionally, Judge Peck held that, should Plaintiffs be certified as a class, he would refuse to reopen discovery, despite the fact that Plaintiffs would be without discovery for most of the time covered by the statutes of limitation in this case.[3] (*See* Ex. C, Jan. 4, 2012 Tr. at 69:3-18.)

At no time did Defendant MSL request such a limitation, nor did they put on any evidence that would suggest that they had carried their burden of resisting the production of relevant discovery. "[W]here a party resists discovery of certain information, the

---

[3] Again, due to confusion as to whether certain rulings were final at this point, Plaintiffs note that, a failure to reopen discovery at a later point in the process could effectively bar certain other rulings that Judge Peck held he would "revisit" at a later point. For example, Judge Peck denied Plaintiffs' Requests for Raise Exceptions, notwithstanding its relevance to the class claims, and the fact that it is the type of evidence contemplated in a pattern or practice case operating under a non-bifurcated schedule. Plaintiffs explained that the Requests for Raise Exceptions (requests from MSL to Publicis, the parent company, asking Publicis to make exceptions to the global salary, promotion and hiring freeze it had implemented) were important because they "show[] the approval process for pay increases that we're also challenging. So it shows commonality because not only is it nationwide, it's global, and there was exceptions to the freeze that we believe had a disparate impact on women." (Jan. 4, 2012 Tr. at 20.) Judge Peck advised Plaintiffs that "At this point you're going to move for commonality, and when they say there isn't, we can revisit this." (*Id*. at 21.) Thus, to the extent Plaintiffs would not be permitted to revisit this issue at a later point, Plaintiffs object to Judge Peck's denial of the discovery at this juncture.

  In yet another example, Judge Peck appeared to hold that Plaintiffs are not entitled to any discovery that might yield anecdotal evidence of discrimination, except for what might be provided by the named Plaintiffs, but made the decision "without prejudice to [Plaintiffs] coming back for [this evidence] before class certification." (*Id*. at 26:1-2.) Again, to the extent Plaintiffs would not be permitted to revisit this issue at a later point, Plaintiffs object to Judge Peck's denial of the discovery at this juncture.

8

burden is on that party to clarify and explain precisely why its objections are proper." *JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, No. 08 Civ. 9116 (PGG), 2009 U.S. Dist. LEXIS 42853, at *3-4 (S.D.N.Y. May 20, 2009) (*quoting Melendez v. Greiner*, No. 01 Civ. 7888 (SAS)(DF), 2003 U.S. Dist. LEXIS 19084, at *1 (S.D.N.Y. Oct. 23, 2003)). Importantly, Judge Peck neither found that production would be burdensome or held that Defendants had carried their burden. Judge Peck's limitation is completely untethered to the law and rules governing discovery. Therefore, Plaintiffs request that the ruling be reversed, modified, and if nothing else, further briefed, as Plaintiffs have yet to find any case law supporting Judge Peck's ruling.

## 2. It is an Abuse of Discretion to Not Grant Plaintiffs Discovery for a Reasonable Period Preceding the Liability Period

Judge Peck not only cut off discovery at February 24, 2011 – the filing date of the Complaint – but also denied Plaintiffs discovery predating the liability period. "With regard to temporal scope, discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period." *Owens v. Sprint/United Management Co.*, 221 F.R.D. 649, 655 (D. Kan. 2004); *see also Cannata v. Wyndham Worldwide Corp.*, No. 2:10-cv-00068-PMP-LRL, 2011 U.S. Dist. LEXIS 78036, at *8 (D. Nev. July 18, 2011) (holding that in Title VII cases, "the scope of discovery is commonly extended to a reasonable number of years prior to the defendants' alleged illegal action and also for periods after the alleged discrimination"); *Mays v. Town of Hempstead*, No. CV 10-3998, 2011 U.S. Dist. LEXIS 104252, at *8 (E.D.N.Y.

9

Sep. 15, 2011) (holding that the date of previously made discrimination complaints was irrelevant, and discovery of documents dating back seven years was "both relevant and reasonable regarding a pattern and practice claim"); *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 193 (D.N.J. 2010) ("Cases examining the scope of discovery in a Title VII action permit discovery for a time period that predates the plaintiff's claims."); *Flanagan v. Travelers Ins. Co.*, 111 F.R.D. 42, 47-48 (W.D.N.Y. 1986) (holding that the scope of discovery or proof of liability at trial is not limited by the dates of backpay accrual).

Here, Plaintiffs requested complaints of discrimination dating back to 2001, and later agreed to further limit the temporal scope to 2005.[4] However, Judge Peck ruled that Plaintiffs were only entitled to complaints that fell within a portion of the liability period, beginning in February 2008 for most claims until the Complaint filing date of February 24, 2011. (For complaints regarding pay discrimination, Judge Peck ordered discovery of such documents going back to February 2005 in light of the New York Labor Law's six-year statute). Again, at no point did Judge Peck appear to hold that Defendant MSL had successfully carried its burden of resisting discovery. *See JPMorgan Chase Bank*, 2009 U.S. Dist. LEXIS 42853, at *3-4.

Because the narrow temporal scope ordered by Judge Peck is clearly erroneous and contrary to well settled law governing pattern or practice cases of employment discrimination, Plaintiffs object to the ruling and request its modification to a temporal scope that is consistent with the case law.

---

[4] Plaintiffs agreed to this, despite the fact that three of the Plaintiffs began working at MSL over a decade ago, and courts typically allow discovery of discrimination complaints "for the entire time period for the plaintiff's employment." *Cannata*, 2011 U.S. Dist. LEXIS 78036, at *7.

10

### B. Judge Peck's Modification of Judge Sullivan's Order Compelling the Production of Employment Data Was Clearly Erroneous and Contrary to Law

Judge Peck's ruling on January 4, 2012, implicitly holding that discovery already compelled by Judge Sullivan was not relevant to the claims, is clearly erroneous and contrary to the case law in employment discrimination cases. Judge Sullivan previously compelled the production of documents responsive to Request for Production ("RFP") 1 from Plaintiffs' First Set of Document Demands to MSL, which sought "data for each Public Relations professional employed by Defendants in the United States, including but not limited to Account Executive through Director, from February 2008 forward (February 2005 for compensation data)."[5] Judge Sullivan's Order states, in relevant part: "Having reviewed Plaintiffs' Requests for Production, the Court concludes that Plaintiffs are entitled to examine documents related to company-wide employment data as it relates to public relations professionals (Plaintiffs' Request for Production 1)… Accordingly, Defendants are HEREBY ORDERED to produce those documents." (Order, Sept. 14,

---

[5] REQUEST FOR PRODUCTION 1: Any database or computerized information (to be provided with metadata) used, created or maintained by Defendants, or now in the possession, custody or control of Defendants, from which information can be obtained concerning the following data for each Public Relations professional employed by Defendants in the United States, including but not limited to Account Executive through Director, from February 2008 forward (February 2005 for compensation data): a. Name of the employee; b. employee ID or unique identifier; c. gender of the employee; d. age and number of children; e. dates of employment; f. job history, including all job assignment(s)/job title(s) held; g. job function, job sub-function and/or job family, including unit, region, office, division or department worked in; h. compensation, including salary, bonuses, benefits and other forms of compensation by year, including data from Box 5 of W-2 form; i. any promotion received, applied for, or denied, including date on which employee received, applied for or was denied a promotion, and any reason for non-selection for promotion (if applicable); j. any demotion, including date of demotion and any reasons for demotion; k. any resignation or termination, including date of resignation or termination, any reasons for resignation or termination, and whether the employee signed a severance agreement and/or received severance pay; l. any transfer received, including those associated with any restructuring, the date of the transfer, and any reasons for the transfer; m. dates and nature of any leave of absence or other extended absence from employment, including maternity or paternity leave.

2011, Dkt. 40.) In other words, Judge Sullivan found this evidence to be relevant to Plaintiffs' claims under Rule 26.

Eight months after Plaintiffs served their First Set of Document Demands, and four months after Judge Sullivan issued his ruling, MSL has yet to produce complete company-wide data. Plaintiffs submitted a pre-motion conference letter to Judge Peck seeking permission to file a motion for sanctions, as set forth in the Federal Rules, due to MSL's failure to comply with the September 14 Order. (*See* Ex. B.) Among other things, Plaintiffs sought sanctions for MSL's failure to produce complete employment data for Winner & Associates and PBSJ, two MSL offices that employ PR professionals and thus fall within the scope of RFP 1.

Again, rather than allow Plaintiffs the opportunity to fully brief the issue, Judge Peck instead decided the potential motion based on the short letter. Significantly, Judge Peck narrowed the scope of the employment records that MSL would have to produce, without finding either that the requested discovery was not relevant, or that MSL had carried its burden in resisting the discovery. *See JPMorgan Chase Bank,* 2009 U.S. Dist. LEXIS 42853, at *3-4.

As Plaintiffs explained in their pre-motion conference letter and during the January 4 pre-motion conference, Winner & Associates and PBJS are subsidiaries that were folded into MSL during the reorganization. Each of these offices is now considered "an MSL Group Company" and, like all the other offices that were part of the reorganization, have PR as their primary business. (*See* http://www.mslgroup.com/where-we-are/americas/offices/;

http://www.winnerandassociates.com/index.aspx.)[6] Indeed, Vickie Fite, the Managing Director of MSLGroup's Los Angeles office, is a Winner & Associates employee. Moreover, both Winner & Associates and PBJS report directly to Jim Tsokanos, President of the Americas of MSL. (*See* Ex. D (organizational chart showing reporting lines); Jan. 4, 2012 Tr. at 39-42.) Accordingly, the two offices fall squarely within the scope of Plaintiffs' RFP 1, which was compelled by Judge Sullivan.

Nevertheless, when addressing the parties' ESI protocol, Judge Peck struck three Winner & Associates employees, as well as a PBJS employee, from Plaintiffs' proposed custodian list. According to Judge Peck, "If they are part of MSL Group, then it seems to me you should not be looking at them separately. So either they're the same as everybody else once the reorg hit, in which case I don't see why you're targeting these folks specifically, or they're different, in which case I'm not sure you've got a plaintiff with standing." (Jan. 4, 2012 Tr. at 40; *id.* at 41 ("not at this point without further evidence as to why your plaintiffs have standing to deal with this other than if Mr. Tsokanos and others in senior management of MSL were discriminating against women during this period, in which case it doesn't matter what Winter [sic] was doing…")).[7]

---

[6] At the January 4, 2012 conference, MSL counsel asserted for the first time that PBJS is "part of MSL Group but it is not a PR agency." (Jan. 4, 2012 Tr. at 40). Such assertions, without any supporting evidence is not sufficient to carry Defendant's burden for resisting discovery. Moreover, to the extent PBJS employs PR professionals (which Plaintiffs believe it does), the relevant employment data must be produced.

[7] Judge Peck's ruling as to the Winner & Associates and PBJS custodians does not make much sense. To the extent that Judge Peck held that the evidence was relevant due to the fact that these two offices (former subsidiaries folded into MSL during the reorganization) are a "part of MSL Group," Plaintiffs do not understand why Judge Peck held MSL may exclude them as a source of discovery. To the extent that Judge Peck held either that the offices were not relevant or that using them as a source of evidence was some sort of undue burden, Plaintiffs see little argument and certainly no evidence from MSL that would be sufficient to carry their burden in resisting discovery. Finally, to the extent Judge Peck believes that Plaintiffs do not have standing to assert claims which include these offices, Plaintiffs believe that a holding of this nature should not be made without notice to the parties that such a ruling was even anticipated, and certainly briefing and argument from both parties should be permitted.

It is unclear based on the transcript whether Judge Peck is excluding all discovery related to Winner & Associates and PBJS, or if he is only excluding the Winner & Associates and PBJS employees from the list of custodians.  To the extent Judge Peck intended for his ruling to preclude the production of HR data related to Winner & Associates and PBJS, this directly contravenes Judge Sullivan's September 14 Order compelling Company-wide employment data relating to MSL's PR professionals – a category that included Winner & Associates and PBJS.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiffs object to Judge Peck's rulings, as documented in the transcript from the conference held on January 4, 2012.  To the extent the Court does not modify Judge Peck's rulings, Plaintiffs request the ability to file regularly noticed motions to fully brief the issues decided by Judge Peck, as is anticipated by the Federal Rules.


DATED: January 18, 2011

        SANFORD WITTELS & HEISLER, LLP
          /s/ Janette Wipper
        Janette Wipper Esq.
        Steven L. Wittels, Esq.
        Siham Nurhussein, Esq.
        Deepika Bains, Esq.
        *Attorneys for the Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I, Siham Nurhussein, hereby certify under penalty of perjury that on this 18th day of January 2012 true and correct copies of the foregoing Rule 72(a) Objection to Magistrate Judge Peck's Rulings were served on all counsel of record by operation of the Court's ECF system.

/s/
Siham Nurhussein