# EXHIBIT A

**SANFORD WITTELS & HEISLER, LLP**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
(415) 391-6900
E-Mail: jwipper@swhlegal.com

| 1350 Ave. of the Americas, Ste. 3100<br>New York, NY 10022<br>(646) 723-2947<br>Fax: (646) 723-2948 | 1666 Connecticut Ave., Ste. 310<br>Washington, D.C. 20009<br>(202) 742-7780<br>Fax: (202) 742-7776 | 440 West Street<br>Fort Lee, NJ 07024<br>(201) 585-5288<br>Fax: (201) 585-5233 |
|---|---|---|

December 27, 2011

**VIA FACSIMILE**
Honorable Andrew J. Peck
U.S.D.C. – Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *da Silva Moore, et al. v. Publicis Groupe SA, et al.*, **Civ. No. 11-CV-1279**

Dear Judge Peck,

      Pursuant to Local Rule 37.2 and Rule 2.A. of Your Honor's Individual Practices, Plaintiffs respectfully request a pre-motion conference regarding Plaintiffs' proposed motion to compel discovery from Defendant MSLGroup ("MSL"), which would include a request for fees and costs. Three and a half months after Plaintiffs served their Second Set of Document Demands ("Second Set") and engaged in numerous futile meet and confer efforts, MSL has finally provided Plaintiffs with a straight answer – it refuses to produce core discovery in this case, including: (A) nearly all discrimination complaints lodged with MSL's Human Resources ("HR") staff; (B) documents reflecting employment decisions relating to class members and their comparators contained in personnel files; and (C) the personnel file of MSL's President, Jim Tsokanos. This is among the most basic discovery produced in pattern or practice Title VII class actions.

      As a preliminary matter, MSL has refused to produce documents responsive to Plaintiffs' Second Set based on two fundamental misunderstandings. First, MSL does not appear to understand how discovery works in a class action in which there is a non-bifurcated schedule. In most instances, a court will bifurcate "class discovery" from "merits discovery," thus limiting discovery to issues related to whether a class action is appropriate and not permitting full-blown merits discovery until the class has been certified by the court. *Cf. Hines v. Overstock.com, Inc.*, No. 09-CV-991 (SJ), 2010 U.S. Dist. LEXIS 70205, at *3 (E.D.N.Y. July 13, 2010) (rejecting defendant's attempts to bifurcate discovery when no request was made at the initial scheduling conference and a single deadline was set for fact discovery). "Whether merits discovery should await determination of class certification depends on the particular circumstances of each case." *Bodner v. Banque Paribas*, 202 F.R.D. 370, 373 (E.D.N.Y. 2000). Despite actively arguing *against* bifurcation of discovery at the case management conference, MSL recently stated that it believes Plaintiffs are entitled only to individualized discovery of the seven plaintiffs and any class discovery MSL deems relevant. Among the class discovery that MSL apparently refuses to produce is information regarding class members and their comparators. MSL's position is not only contrary to the Federal Rules and the Court's Scheduling Order, which ordered that the parties produce all class and merits discovery now in accord with a non-bifurcated schedule, but also to the well settled principle that "courts should afford Title VII plaintiffs broad discovery." *RiSauKuen Chan v. NYU Downtown Hosp.*,

1

03 Civ. 3003 (CBM) 2004 U.S. Dist. LEXIS 16751, at *18 (S.D.N.Y. Aug. 23, 2004). *See also Avillan v. Digital Equipment Corp.*, 91 Civ. 8594, 1994 U.S. Dist. LEXIS 6454, at *3-4 (S.D.N.Y. May 17, 1994) ("The Supreme Court has instructed that plaintiffs in Title VII lawsuits may employ 'liberal discovery rules' to obtain 'broad access to employer's records'…") (citation omitted).

Second, MSL believes that, because the case will require an ESI protocol, it can delay or withhold production of responsive, centrally-located corporate documents (including hard copy documents). MSL has proposed a narrow ESI protocol (which covers only email from a select group of custodians during a select time-period) designed to shield many documents from discovery.[1] Many of the documents that have been withheld are centrally-located, corporate documents that are required to be maintained under tax, employment or other laws[2] and therefore must be accessible through a reasonable and targeted search (e.g., HR files, which are maintained in centralized shared records by a discrete group of corporate employees at NY headquarters).[3] *See, e.g.*, 29 C.F.R. § 1602.14 ("Where a charge of discrimination has been filed … against an employer under title VII …, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. **The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person** and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected.") (emphasis added).[4] Production of such corporate documents should not be dependent on MSL's proposed ESI protocol that is limited to one source of data from a select group of custodians.

Because MSL's delay and continued refusal to produce responsive documents could jeopardize the discovery schedule and Plaintiffs' ability to prosecute this case (e.g., Plaintiffs need the requested

---

[1] Plaintiffs have responded to MSL's narrow ESI protocol, which will be presented to the Court at the conference scheduled on January 4. Notwithstanding the parties' discussions concerning the protocol, hard copy documents and centrally-located corporate documents should not be withheld due to an ESI protocol addressing certain sources of data held by a select group of custodians. Indeed, many of the files at issue are legally required to be maintained for, in part, purposes of prosecuting employment cases such as this one. *See, e.g.*, 29 CFR §§ 516.3, 516.7, 825.500, 1602.14.

[2] *See also* 29 CFR § 516.3 ("[E]mployers shall maintain and preserve records… [including] the basis on which wages are paid in sufficient detail to permit calculation for each pay period of the employee's total remuneration for employment including fringe benefits and prerequisites. (This may be shown as the dollar amount of earnings per month, per week, per month plus commissions, etc. . . . .)"); NYLL § 195 (stating that notice and recordkeeping requirements include notice to employees of pay rate annually and recordkeeping for six years); 29 CFR § 825.500 (requiring employers to make and preserve records in accordance with obligations set forth in the FLSA and FMLA, including information related to base pay, additions to wages, FMLA leave taken, employee benefits, disputes regarding FMLA leave, etc.).

[3] *See, e.g.*, 29 CFR § 516.7 ("Each employer shall keep the records required by this part safe and accessible at the place or places of employment, or at one or more established central recordkeeping offices where such records are customarily maintained. Where the records are maintained at a central recordkeeping office, other than in the place or places of employment, such records shall be made available within 72 hours following notice from the Administrator or a duly authorized and designated representative.")

[4] The EEOC allows employers to maintain electronic records under 29 CFR 1602.14 so long as the system "captures and retains all information contained in documents." http://www.eeoc.gov/eeoc/foia/letters/2006/titlevii_ada_adea_recordkeeping.html. That standard is clearly not met here; as discussed in more detail in Sec. III.B., *infra,* the electronic HR data produced by MSL contains a number of errors, omissions and inconsistencies.

documents for their depositions noticed for January, February and March), Plaintiffs seek to file a motion to compel discovery in order to obtain the requested documents and preserve the record concerning MSL's ongoing abuse of the discovery process.

> **I.   Background on MSL's Refusal to Produce Core Discovery After Months of Meet and Confers**

Plaintiffs served their Second Set of Document Demands three and a half months ago, on September 9, 2011. *See* Ex. A (listing requests at issue in Plaintiffs' proposed motion to compel). MSL served its Objections and Responses on October 11, but produced no discovery (or, in some cases, very minimal discovery) in response to the requests at issue. In an effort to resolve this dispute without Court intervention, Plaintiffs engaged in extensive meet and confer efforts with MSL, to no avail.

On October 26, 2011, Plaintiffs sent MSL a detailed letter outlining MSL's discovery deficiencies in response to Plaintiffs' First and Second Sets of Document Demands. On November 2, MSL sent a letter addressing only the First Set, and neglected to address the deficiencies in its response to Plaintiffs' Second Set, claiming that it was "premature" in light of the parties' efforts to negotiate an ESI protocol.

Because an ESI protocol – much less an ESI protocol addressing email only – should not delay production of centrally-located, corporate documents which are legally mandated to be accessible through a reasonable and targeted search (*see* fn. 3 and 5; 29 C.F.R. § 1602.14), Plaintiffs again asked MSL to comply with its discovery obligations in response to the Second Set. Plaintiffs sent two follow-up letters to MSL on November 11, a third on November 22, and a fourth on November 30 (limiting the temporal scope, at MSL's request, of certain document demands). Each time Plaintiffs asked MSL to provide a written response within a reasonable timeframe, and each time Plaintiffs' request went unanswered. Finally, MSL provided a written response regarding its discovery deficiencies on December 13 – three months after the Second Set of Document Demands had been served.

During this time, Plaintiffs also attempted to schedule telephonic meet and confers with MSL's counsel to move the process forward. The parties participated in telephone conferences on November 21, December 15 and December 19. However, as recently as December 19, MSL was still unable to tell Plaintiffs with any degree of specificity what documents it was withholding, whether and when it planned to produce additional documents, or what sort of search it had undertaken to locate responsive documents.

On December 23, after the parties' telephonic meet and confers, MSL sent a follow-up e-mail regarding the discovery disputes, but the e-mail again failed to address Plaintiffs' concerns or provide an estimate of when MSL planned to produce responsive documents. Accordingly, Plaintiffs had no choice but to file a motion to compel, including an award for fees and costs. See *Underdog Trucking, LLC v Verizon Servs. Corp.*, No. 09 Civ. 8918(DLC)(JLC), 273 F.R.D. 372, 378 (S.D.N.Y. 2011) (granting award for fees and costs associated with motion to compel where "the record [was] replete with examples of [the moving party's] efforts to obtain discovery…without court intervention").

> **II.   Legal Standard for Motion to Compel**

Plaintiffs are entitled to broad discovery of information relevant to their Amended Complaint. The Federal Rules define the appropriate scope of discovery as follows: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Courts have construed the term "relevance"

broadly to encompass "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "This is especially the case with regard to discrimination claims, where the imposition of unnecessary discovery limitations is to be avoided." *Chan,* 2004 U.S. Dist. LEXIS 16751, at *12 (citation omitted).

Under Rule 37, "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). In addition, "Rule 37 provides that if a motion to compel is granted, 'or if the disclosure or requested discovery is provided after the motion was filed -- the court must . . . award reasonable motion expenses incurred in making the motion.'" *Underdog Trucking, LLC,* 273 F.R.D. at 378 (citing Fed. R. Civ. P. 37(a)(5)(A)).

### III. This Court Should Compel Production of the Discovery Sought by Plaintiffs Because It Is Relevant and Would Not Be Overly Burdensome to Produce

#### A. The Court Should Compel the Production of Complaints regarding Discrimination and Sexual Harassment at MSL (Requests 1-9)

On September 9, 2011, Plaintiffs requested documents regarding complaints of discrimination against MSL. *See* Ex. A, RFPs 1-9. This is among the most basic evidence sought in discrimination cases, and it is indisputably discoverable here. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990) ("Because employers rarely leave a paper trail -- or "smoking gun" -- attesting to a discriminatory intent, disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer.") Thus, even in *individual* cases, Title VII litigants are entitled to discover other complaints of discrimination to prove, e.g., pretext, motive, objective workplace hostility, and employer liability. *See, e.g., Matthews v. Corning Inc.*, No. 08-CV-6323L, 2009 U.S. Dist. LEXIS 103681, at *4 (W.D.N.Y. Nov. 9, 2009) ("Evidence of general patterns of discrimination by an employer is relevant even in an individual disparate treatment case.") (*quoting Lieberman v. Gant*, 630 F.2d 60, 68 (2d Cir. 1980)); *Governale v. Airborne Express*, No. 95-CV-0541(CBA), 1997 U.S. Dist. LEXIS 7562 (E.D.N.Y. May 12, 1997) (holding that documents pertaining to other employees' claims of sexual harassment were "reasonably likely to lead to information about defendant's actual practices in responding to… complaints, which may prove probative with respect to defendant's responses to plaintiff's complaints"). "Moreover, courts in this circuit have repeatedly found similar complaints of discrimination by corporate employers to be relevant and discoverable." *Sasikumar v. Brooklyn Hosp. Ctr.*, No. 09 CV 5632 (ENV) (RML), 2011 U.S. Dist. LEXIS 46768, at *9 (E.D.N.Y. May 2, 2011) (citing cases).

Three and a half months after Plaintiffs served their requests, **MSL has not produced any documents responsive to this request**. Initially, in its objections and during the parties' meet and confers, MSL stated that it intended to severely limit its production in terms of the nature, subject matter and timeframe of the complaints. Three months later (on December 23), MSL conceded that Plaintiffs were entitled not just to formal complaints filed with an administrative agency or court, but also to informal complaints as well. Without citing any legal support, however, **MSL has arbitrarily refused to produce complaints other than those filed by female PR professionals** *"since February 2008"* **alleging forms of gender discrimination** *"similar to those alleged in the Amended Complaint against a Managing Director or the President of MSL."* This is an unreasonably restrictive position that is not supported by the Federal Rules or the law of this Circuit. Indeed, the relevance of discrimination complaints is sufficiently important that, even when a defendant argues that it will be very burdensome because such complaints are kept in individuals' personnel files, "courts in this circuit have repeatedly rejected [such] burden arguments." *Sasikumar*, 2011 U.S. Dist. LEXIS 46768, at *11.

4

1. **MSL Should Not Be Permitted to Arbitrarily Limit the Timeframe of Its Production of Discrimination Complaints at MSL**

First, MSL's attempt to cut off discovery at 2008 is improper. In Title VII cases, "the scope of discovery is commonly extended to a reasonable number of years prior to the defendants' alleged illegal action and also for periods after the alleged discrimination." *Cannata v. Wyndham Worldwide Corp.*, No. 2:10-cv-00068-PMP-LRL, 2011 U.S. Dist. LEXIS 78036, at *8 (D. Nev. July 18, 2011) (citation omitted); *see also Mays v. Town of Hempstead*, No. CV 10-3998, 2011 U.S. Dist. LEXIS 104252, at *8 (E.D.N.Y. Sep. 15, 2011) (holding that the date of previously made discrimination complaints was irrelevant, and discovery of documents dating back seven years was "both relevant and reasonable regarding a pattern and practice claim"); *Flanagan v. Travelers Ins. Co.*, 111 F.R.D. 42, 47-48 (W.D.N.Y. 1986) (holding that the scope of discovery or proof of liability at trial is not limited by the dates of backpay accrual). Here, MSL's proposed timeframe does not even encompass the entire liability period (Plaintiffs' claims under the New York Labor Law extend to 2005). Moreover, courts typically allow discovery of discrimination complaints "for the entire time period for the plaintiff's employment." *Cannata*, 2011 U.S. Dist. LEXIS 78036, at *7. In this case, three of the Plaintiffs began working at MSL over a decade ago.[5] Accordingly, Plaintiffs' request for complaints dating back to 2001 is more than reasonable.

2. **MSL Should Not Be Permitted to Arbitrarily Limit the Subject Matter of Its Production of Discrimination Complaints at MSL**

Second, Plaintiffs are entitled to other related complaints such as sexual harassment complaints – not just those strictly relating to gender discrimination "similar to those alleged in the Amended Complaint" as defined by MSL. Such complaints are relevant so that Plaintiffs can determine when MSL was on notice regarding discriminatory practices; how MSL responded to complaints of discrimination, including whether the Company promoted and/or accommodated known discriminators; and what, if any, remedial actions were taken. *See Chan*, 2004 U.S. Dist. LEXIS 16751, at *18 (granting plaintiff's motion for reconsideration in employment discrimination and retaliation case, and allowing discovery of other employees' complaints of sexual harassment even though plaintiff did not have a sexual harassment claim); *Berk v. Bates Advertising USA*, No. 94 CIV. 9140, 1995 U.S. Dist. LEXIS 13606, at *8-10 (S.D.N.Y. Sept. 19, 1995) (rejecting defendant's burdensomeness argument and ordering production of documents concerning all employment discrimination complaints, as well as discrimination charges filed by any of defendant's employees, in individual case); *Louison v. Blue Cross Blue Shield*, No. 90 Civ. 1820 (JFK), 1990 U.S. Dist. LEXIS 9089 (S.D.N.Y. July 23, 1990) (compelling complaints regarding discriminatory hiring even though plaintiff only alleged discriminatory failure to promote and termination). Evidence of other forms of discrimination relating to other protected categories of persons "may be probative of [MSL's] discriminatory motivation." *Bell v. Lockheed Martin Corp.*, No. 08-6292 (RBK/AMD), 2010 U.S. Dist. LEXIS 96864, *34-36 (D.N.J. Sept. 15, 2010) (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).

Indeed, Courts have recognized that Plaintiffs in class cases are entitled to much broader discovery – including complaints regarding other protected classes – than Plaintiffs in individual disparate treatment cases. *Bell*, 2010 U.S. Dist. LEXIS 96864, at *29-30 (granting discovery of age and race information in gender discrimination class action, and distinguishing individual cases that barred such discovery).

---

[5] MaryEllen O'Donohue worked at MSL from 1985 to 2010. Monique da Silva Moore worked at MSL from 1993 to 1996 and from 1999 to 2010. Laurie Mayers worked at MSL from 2000 to 2010.

5

Notwithstanding the precedent in this and other Circuits, MSL refuses to produce any complaints other than those "similar" to the gender discrimination complaints alleged in the Amended Complaint. MSL defines "similar" narrowly; MSL's position is that sexual harassment complaints are neither similar nor relevant in a gender discrimination case. Therefore, MSL refuses to produce even sexual harassment complaints. **MSL has maintained this unreasonable position even after Plaintiffs have informed MSL that they are aware of sexual harassment and other complaints that had been lodged against decision-makers at MSL such as President Tsokanos, Regional President Dhillon and other employees**.[6]

### 3. MSL Should Not Be Permitted to Arbitrarily Limit the Scope of Its Production of Discrimination Complaints at MSL to Complaints Lodged Against Two Select Positions

Third, complaints involving all employees – not just MSL's President and Managing Directors – are relevant, as they may be probative of discriminatory motivation. The complaints are also relevant to determinations as to whether MSL was on notice, and what steps, if any, the Company has taken to address and remedy the complained-of discrimination. MSL's proposed limitation (only producing "similar" complaints lodged against the President and Managing Directors) is improper in a pattern or practice case alleging a Company-wide policy of gender discrimination.

Finally, MSL cannot claim that the production of these records would be unduly burdensome. Many of the documents sought are presumably centrally located, corporate documents (e.g., HR complaints) that should be maintained to comply with equal employment laws and should have been produced months ago. *See Avillan*, 1994 U.S. Dist. LEXIS 6454, at *22 (rejecting Defendant's burdensomeness argument and compelling production of complaints, even though Defendant claimed they were not in a central file, and must be located in each employee's personnel file). Given the importance of the discovery being sought, MSL should be compelled to produce responsive documents.

## B. The Court Should Compel the Production of Documents relating to Personnel Decisions at MSL (RFPs 16, 25-27, 42, 45, 46, 50)

### 1. MSL Should Be Compelled to Produce Documents Regarding Pay, Promotion and Other Decisions, Which Flow Directly From the Claims Alleged in the Amended Complaint (RFP 16)

MSL is also withholding key documents relating to personnel decisions made by MSL since January 1, 2008 – the date on which Jim Tsokanos was appointed as President of the Americas and began implementing his vision for the Company. RFP 16 is a straightforward request that is narrowly tailored to the allegations in the case. Plaintiffs allege in their Amended Complaint that, under Mr. Tsokanos and his mostly male leadership team, female employees were subjected to systematic, Company-wide discrimination. The employment actions covered by the request – assignment, pay, promotion, termination – directly correspond to the class claims asserted in the Amended Complaint. Plaintiffs are entitled to discover information regarding the personnel actions taken, the circumstances of those

---

[6] While MSL is correct that Plaintiffs do not assert separate claims for sexual harassment, Plaintiffs do allege that this was part of the Company's discriminatory work culture. For example: "Plaintiff Mayers also witnessed discriminatory and harassing comments and behavior while working for the Company. Routinely at business meetings at which Plaintiff Mayers and others were present, Mr. Tsokanos made sexually derogatory comments about female employees commenting on their looks, personal lives and other inappropriate subjects." (Am. Compl. ¶ 114.) Thus, complaints regarding harassment are intertwined with complaints of gender discrimination, and are a proper subject of discovery.

6

decisions, and who approved them. *See* 29 C.F.R. § 1602.14 ("The term "personnel records relevant to the charge"… would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person…")

Plaintiffs have already explained this request at length and given MSL specific examples of the types of documents they are seeking in response to the request (including bates numbers of sample documents).[7] Among other things, Plaintiffs seek:

- Personnel Action Notices reflecting any change in an employee's pay, job title, or status during the relevant timeframe (so far, produced only for Plaintiffs);
- Promotion recommendation forms submitted on behalf of PR employees, as referenced in MSL000806;
- Documents regarding "requests for raise exceptions" during the salary freeze, as referenced in MSL001181;
- Emails or other communications concerning approvals for hire, promotions, initial salary, salary adjustments, bonuses, hire or raise exceptions, leave, transfers, job eliminations or terminations, including Personnel Action notices containing or referencing approval signatures, Promotion Recommendation Forms reflecting approvals; and other relevant documents, including approvals from the Global CFO and Global HR in Paris (who must approve all pay increases according to the "pay for performance" compensation guide). *See, e.g.,*MSL000804, MSL001181, MSL002376-80, and MSL002214-2364;
- Other e-mails, memoranda, minutes or other documents reflecting the circumstances of these personnel decisions, or any discussion of these decisions.

In its response to RFP 16, MSL seemed to argue that production was sufficiently covered by the individual named Plaintiffs' personnel files and any documents produced in response to Judge Sullivan's September 14 Order Compelling a response to RFP 1 (from Plaintiffs' First Set of Requests for Production).[8] The production already made by MSL, however, is insufficient. The HR data produced by MSL in response to RFP 1 includes only a limited amount of information (e.g., it does not indicate who approved the various employment decisions and on what basis).

Moreover, the HR data contains a number of obvious errors and inconsistencies. For example, the data wrongly indicated that one employee resigned, when that employee was, in fact, terminated by MSL. In another example, the data wrongly indicated that an employee worked full-time, when that employee, in fact, worked part-time. In yet another example, there are a number of employees who, according to MSL's own records (Personnel Action Notices) received bonuses that are inconsistent with the bonuses included in the HR data produced by MSL in response to RFP 1. *See* EEOC Letter, fn. 7, *supra* (noting that electronic documents must "capture[] and retain[] all information contained in documents.").

MSL objects to RFP 16, *inter alia,* on the ground that the request is unduly burdensome and that "identifying all responsive documents 'relating to personnel decisions' would be nearly or actually impossible." However, any alleged burden is illusory given that MSL employs fewer than 1000 PR

---

[7] If the Court wishes, Plaintiffs will produce copies of the documents referenced in this letter.
[8] The data MSL produced in response to RFP 1 after being ordered to do so by Judge Sullivan was incomplete and error-ridden, and is the subject of a separate letter requesting a pre-motion conference, so that Plaintiffs may file a motion for sanctions due to MSL's obstructionist tactics in the face of this Court's orders.

7

professionals, and Plaintiffs limited the time period for RFP 16 to 2008 to the present. "Courts have not been receptive to broad or reflexive claims of burden, particularly in Title VII litigation." *Avillan*, 1994 U.S. Dist. LEXIS 6454, at *13-14. Indeed, even in *individual* discrimination cases, courts have compelled precisely the sort of personnel information MSL now attempts to withhold. *See id.* at *18-19 (compelling production of salary change requests, employee data forms and termination/retirement forms, most of which were contained in employees' personnel files, because "Defendant has not shown that gathering this form would involve any usual effort" and Defendant was overestimating amount of time needed to pull information from centrally located personnel files).

MSL also argues that discovery regarding the putative class members is beyond the proper scope of discovery. However, this is exactly the sort of discovery contemplated in a pattern or practice case – and by the Scheduling Order, which calls for non-bifurcated discovery schedule, i.e., class and merits discovery [Doc. 35]. *See also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977) (pattern or practice cases proven on basis of statistical proof and anecdotal evidence).

Nor is the ongoing negotiation of an ESI protocol an excuse for MSL's discovery deficiencies, as much of this information is centrally held. A handful of decision-makers (e.g., Mr. Tsokanos, CFO Peter Miller, HR directors Tara Lilien and Valerie Morgan, etc.) are involved in the employment decisions at issue in the case, and presumably maintain files relating to them. Accessing those files should not be burdensome. Moreover, a number of the relevant documents (including the Personnel Action Notices) are, upon information and belief, readily accessible in hard copy form.

Plaintiffs repeatedly attempted to confer with MSL regarding the request by sending numerous letters elaborating on the requests, providing concrete examples of responsive documents, and scheduling a telephonic meet and confer. However, despite these efforts, MSL was still unable to provide Plaintiffs with an update regarding whether and when it would produce responsive documents. Plaintiffs have been prejudiced by MSL's refusal to produce core discovery relating to personnel decisions, especially since MSL has simultaneously blocked Plaintiffs from taking depositions of the decision-makers. To date, Plaintiffs have not received an update regarding the availability of many of MSL's witnesses. Accordingly, MSL should be compelled to produce all documents responsive to RFP 16.

### 2. MSL Should Produce Documents concerning Pregnant Employees and/or Female Employees who have taken Leave (RFPs 25-27, 42)

Plaintiffs have requested documents concerning disciplinary actions and job eliminations taken within two years of a female PR professional announcing her pregnancy, working a flexible schedule or taking maternity or other leave; evaluations concerning such women; and policies and practices concerning working mothers. These requests relate directly to Plaintiffs' individual and class claims of pregnancy and caregiver discrimination. (*See, e.g.,* Am. Compl. ¶¶ 63-70, 83-91, 130-38, 152-70, 239-45.) All but two of the Plaintiffs experienced adverse employment actions following the announcement of their pregnancies, the taking of maternity leave, or working a flexible schedule. The Amended Complaint also contains an entire section describing widespread pregnancy discrimination by Defendants, including anecdotes from ten other women employed by MSL/Publicis. (Am. Compl. ¶¶ 159-70.)

MSL objected on numerous grounds and **refused to produce any documents responsive to these requests**. During the December 19 meet and confer – two and a half months after the requests had been served – MSL was still unable to give Plaintiffs a definitive answer regarding whether they intended to produce responsive documents, nor would they provide an update regarding what searches they had undertaken. Instead, MSL asked *Plaintiffs* to tell them how to locate responsive documents. Even though Plaintiffs are operating at an obvious informational disadvantage, Plaintiffs suggested that MSL counsel go to HR, find out whether HR has a file or list containing pregnant employees' information, and, once

they have a list of names, search for documents related to the announcement of those employees' pregnancies and the employment decisions that followed. As of the December 19 meet and confer, MSL had not yet undertaken those basic steps.

MSL has no legitimate basis for withholding these documents. As discussed above, Plaintiffs are entitled to discovery relating to the putative class members. Nor would the production of documents regarding these employment decisions be burdensome. MSL is a small company with fewer than 1000 PR professionals and, going by the HR data produced so far, fewer than 700 female employees. Of these, only a fraction was pregnant, went on maternity leave, or worked a flexible schedule during the relevant timeframe (2001 to the present). Moreover, any alleged burden is outweighed by the relevance of the documents.

### 3.  MSL Should Be Compelled to Produce Information regarding Comparators and Other Key Players (RFPs 45, 46, 50)

Plaintiffs have also been waiting three months for MSL to produce relevant information in response to RFPs 45, 46, 50, e.g., employment decisions regarding a limited number of comparators, including, *inter alia*, documents regarding the comparators' qualifications, performance, and any disciplinary action. These documents are discoverable, and are key to a pattern or practice case. *See Sasikumar v. Brooklyn Hosp. Ctr.*, No. 09 CV 5632 (ENV) (RML), 2011 U.S. Dist. LEXIS 46768, at *8-9 (E.D.N.Y. May 2, 2011) (compelling production of personnel files of all comparators in discrimination case); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate treatment--that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'--is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case."). In addition, this information can easily be pulled from the employees' personnel files and/or from Halogen, a program used by the Company for performance management and employee evaluations.

Plaintiffs have already narrowed these requests substantially.[9] To the extent RFP 50 includes names of non-comparators, MSL should also produce the requested discovery because it relates to other "key players" in the litigation, including members of the leadership team and other women who have experienced discrimination at MSL.

### C.  The Court Should Compel the Production of President Jim Tsokanos' Personnel File and Comments Regarding Women / Working Mothers (RFPs 53 and 59)

On September 9, 2011, Plaintiffs requested documents regarding President Jim Tsokanos, including his personnel file. *See* Ex. A, RFPs 53, 59. Mr. Tsokanos, President of the Americas, is a key decision-maker who made and/or approved the discriminatory decisions at the center of this case. Plaintiffs also allege that Mr. Tsokanos was known to be hostile to women and working mothers (Am. Compl. ¶ 115); he regularly made sexist comments, including stating that he needed a "big swinging dick" to lead his regional offices (*id*. ¶ 115), and asking one Plaintiff, "How are you going to deliver on

---

[9] In their November 22 letter, Plaintiffs informed MSL that they were limiting the scope of RFP 50 to the following employees: Neil Dhillon, Joel Curran, Joe Carberry, Steve Chipman, Karlenne Trimble, Rita Masini, David Chamberlain, Thomas Vickery, Michael Morsman, Michael Manning, Kelly Denker, Jim Tsokanos, Donald Hannaford, William Orr, Peter Harris, Keith Hughes, Scott Beaudoin, Steve Bryant, Krista Webster, David Binkowski, Ellena Friedman, Nancy Glick, Jeanine O'Kane, Anita Manning and Brian Baker.

this project when you have two young kids at home and you work a flexible schedule?" (*Id*. ¶ 104.) MSL objected to producing responsive documents.

Plaintiffs are entitled to review Mr. Tsokanos' personnel file to determine whether any complaints were lodged against him and, what, if any, disciplinary action was taken against him. *See Dzanis v. JP Morgan Chase & Co*., No. 10 Civ. 3384 (BSJ) (JLC), 2011 U.S. Dist. LEXIS 137356, at *12 (S.D.N.Y. Nov. 30, 2011) (compelling production of personnel files of decision-makers; "because [he] is alleged to have participated in the discriminatory conduct at issue here, the information contained in his personnel file—including any complaints of discrimination or retaliation, or disciplinary actions—would be directly relevant to [Plaintiff's] claims"); *Lyoch v. Anheuser-Busch Cos*., 164 F.R.D. 62, 69 (E. D. Mo. 1995) (in discrimination case, personnel file of supervisory employee was "relevant in that it may include evidence regarding the manner in which he treated other employees, complaints about his conduct, and actions taken by Defendant in response to such complaints"); *see also Phillips v. Berlex Labs., Inc*., No. 3:05CV81(CFD) (TPS), 2006 U.S. Dist. LEXIS 27389, *8 (D. Conn. May 5, 2006) (noting that personnel files of supervisory employees are discoverable in Title VII cases). Where, as here, Plaintiffs are alleging a pattern or practice of discrimination, with one of the common questions being MSL's failure to impose adequate discipline on its managers and employees who violate equal employment opportunity laws, and failure to create adequate incentives to comply with such laws, there is an even stronger basis for granting discovery of the key decision-maker's personnel file.[10] For similar reasons, Plaintiffs should be entitled to discovery regarding Mr. Tsokanos' comments regarding women and working mothers.

The Court should also order MSL to produce Mr. Tsokanos' personnel file because he is a comparator for Plaintiff da Silva Moore. As the Amended Complaint notes, Mr. Tsokanos and Ms. da Silva Moore held comparable positions as Managing Directors back in 2004, but then followed wildly divergent career paths. While Mr. Tsokanos was promoted and received salary increases several times over the next few years, Ms. da Silva Moore's career progression was much slower, and she was ultimately terminated upon her return from maternity leave. (*See* Am. Compl. ¶¶ 49-53.) Accordingly, Plaintiffs should be entitled to review Mr. Tsokanos' qualifications, performance reviews, and other documents contained in his personnel file. Such comparator information is discoverable, and MSL has not claimed that it would be overly burdensome to produce (nor can it make this argument).

## IV. Conclusion

For the forgoing reasons, Plaintiffs request permission to submit a motion to compel, ordering MSL to respond in full to RFPs 1-9, 16, 25-27, 42, 45-46, 50, 53, and 59. Plaintiffs would also request attorneys' fees and costs associated with the motion to compel.

Respectfully Submitted,

/s/

Janette Wipper

cc:   All counsel of record

---

[10] As discussed in Section III.A., *supra*, MSL should be compelled to produce all complaints of discrimination contained in Mr. Tsokanos' personnel file.

# Ex. A

**Discovery Requests at Issue in Plaintiffs' Proposed Motion to Compel**

## A. Complaints regarding discrimination (Requests 1-9)

REQUEST FOR PRODUCTION 1: *All documents concerning complaints or concerns (whether internal or external, formal or informal, verbal or written) raised with MSLGroup by any female employee in the U.S. about her employment, including but not limited to issues concerning compensation, job assignment, promotions, demotions, transfers, job duties, performance reviews, discipline, maternity or other leave, flexible schedules, termination, or any form of gender discrimination or harassment. Please include all documents showing the identity of the individual reporting; the nature of the conduct being alleged; the identity of the victim(s), perpetrator(s), and/or witness(es); any investigation undertaken and by whom; the result of the investigation; and the ultimate resolution of the matter, if any.*

REQUEST FOR PRODUCTION 2: *To the extent not already produced in response to Request for Production 1, all documents concerning complaints (whether internal or external, formal or informal, verbal or written) about any discrimination or harassment involving MSLGroup or any of its employees in the U.S.. Please include all documents showing the identity of the individual reporting; the nature of the conduct being alleged; the identity of the victim(s),perpetrator(s), and/or witnesses; any investigation undertaken and by whom; the result of the investigation; and the ultimate resolution of the matter, if any.*

REQUEST FOR PRODUCTION 3: *To the extent not already produced in response to Request for Production 1, all documents concerning any complaint (whether internal or external, formal or informal, verbal or written) lodged with MSLGroup by any Plaintiff, any individual referenced in ¶¶ 161-170 of the Amended Complaint, or any individual identified in Plaintiffs' responses to Interrogatory 11 of Defendant MSLGroup's First Set of Interrogatories. Please include all documents showing the identity of the individual reporting; the nature of the conduct being alleged; the identity of the victim(s),perpetrator(s), and/or witnesses; any investigation undertaken and by whom; the result of the investigation; and the ultimate resolution of the matter, if any.*

REQUEST FOR PRODUCTION 4: *All documents created, collected, submitted or received in any administrative proceeding (e.g., EEOC, local agencies or state agencies), grievance or arbitration, or any other non-court process, involving claims of gender discrimination against MSLGroup or any of its employees. This includes, but is not limited to, all documents submitted to or received from administrative agencies in relation to the instant Plaintiffs.*

REQUEST FOR PRODUCTION 5: *All complaints and court filings related to any lawsuit (with the exception of the instant suit) alleging discrimination against MSLGroup, including, but not limited to, the discrimination suit initiated by Mark Hass, as well as any documents showing the resolution (if any) of each suit.*

REQUEST FOR PRODUCTION 6: *Any documents reflecting or relating to any complaints, comments or other communications about the Holiday party hosted at Neil Dhillon's residence in 2008.*

REQUEST FOR PRODUCTION 7: *All documents relating to MSLGroup's Human Resources ("HR") department's role in (a) preventing discrimination, harassment and/or retaliation; and (b) responding to complaints regarding the same, including but not limited to:*
    *(a) the names, titles and number of HR staff tasked with investigating, processing and/or resolving complaints or concerns regarding discrimination and/or harassment;*

> (b) EEO or other training received by HR staff regarding the investigation, processing, and/or resolution of complaints, including frequency, duration, format, and content of training;
> (c) any databases or other recordkeeping systems used to track complaints, investigations, and/or resolutions of complaints;
> (d) guidelines for addressing complaints, including timeframe for responding to and investigating complaints, and the handling of confidentiality and/or anonymity during the investigation process.

REQUEST FOR PRODUCTION 8: All documents relating to MSLGroup employee resources for reporting concerns or complaints of discrimination, including but not limited to employee hotlines, HR, Ombuds, Legal, or other reporting channels, and the Company's efforts to publicize or disseminate information regarding same.

REQUEST FOR PRODUCTION 9: All surveys, questionnaires, and other documents relating to or reflecting employee impressions regarding MSLGroup's work environment, including but not limited to concerns regarding discrimination and/or harassment.

### A. Documents relating to personnel decisions (RFP 16)

REQUEST FOR PRODUCTION 16: All documents, including but not limited to e-mails, memoranda, and meeting minutes, reflecting or relating to personnel decisions made by MSLGroup since January 1, 2008, including but not limited to hiring, job assignment, pay, promotion, leave, discipline, and termination of any potential, current or former PR professionals in the U.S. Please include in your response all documents reflecting, inter alia, who suggested and approved each personnel decision.

### B. Documents concerning pregnant employees and/or female employees who have taken leave (RFPs 25-27, 42)

REQUEST FOR PRODUCTION 24: All documents, including all e-mails, reflecting or relating to policies and implementation of policies regarding Family Medical Leave and pregnancy leave at MSLGroup.

REQUEST FOR PRODUCTION 25: Any document concerning any disciplinary or remedial action, including, but not limited to, placement in any Performance Improvement Program, or other disciplinary program, reduced compensation, pay or salary, demotion or termination, taken against any female PR professional at MSLGroup in the U.S. within two years of announcing her pregnancy, working on a flexible schedule, or taking Family Medical Leave, maternity leave or short-term disability.

REQUEST FOR PRODUCTION 26: Any document concerning any job elimination, termination or resignation of any female PR professional at MSLGroup in the U.S. within two years of announcing her pregnancy, working on a flexible schedule, or taking Family Medical Leave, maternity leave or short-term disability.

REQUEST FOR PRODUCTION 27: Any document concerning any formal or informal evaluation, appraisal, assessment, review or rating, including, but not limited to, any probationary report, by any supervisor, manager, or peer or by the employee herself, for any female employee who has taken

13

*Family Medical Leave, maternity leave or short-term disability or any female employee who has worked a flexible schedule.*

*REQUEST FOR PRODUCTION 42: Any documents relating to MSLGroup's policies and practices concerning working mothers, including but not limited to Company profiles, demographic data, or similar information submitted by MSLGroup to Working Mother magazine, or to any other publication or survey relating to working mothers or work-life balance.*

### C. Information regarding comparators and other key players (RFPs 45, 46, 50)

*REQUEST FOR PRODUCTION 45: Any document concerning the job history, qualifications, and performance of any person who was hired to replace any Plaintiff or who performed or was otherwise assigned any Plaintiff's job duties after such Plaintiff's separation from MSLGroup.*

*REQUEST FOR PRODUCTION 46: Any document concerning the job history, qualifications and performance of any employee that has been promoted beyond the Director level to a President or Officer level at MSLGroup.*

*REQUEST FOR PRODUCTION 50: For each of the employees listed below, provide any document concerning the following information:*
  *a.   job assignment(s)/job title(s);*
  *b.   territory, district, area, region, division or department worked in;*
  *c.   entire job history, including any change in title, any promotion(s) received, date of application for promotion(s), and any reason for selection or non-selection for promotion(s);*
  *d.   transfer(s), including date of any application for transfer(s);*
  *e.   compensation history, including initial salary, bonus and other benefits, and any changes thereto;*
  *f.   any disciplinary action taken;*
  *g.   any complaints (whether internal or external, formal or informal, verbal or written) involving the individual, including those where the individual was the complainant, the subject of the complaint, or a witness;*
  *h.   dates of any leave of absence or other extended absence from employment;*
  *i.   any training attended concerning management, leadership, promotion or advancement, and dates of attendance;*
  *j.   any formal or informal evaluation, appraisal, assessment, review or rating, including, but not limited to, any probationary report.*

> *Jim Tsokanos*
> *Don Hannaford*
> *Peter Harris*
> *Keith Hughes*
> *Scott Beaudoin*
> *Michael Sullivan*
> *Joel Curran*
> *Neil Dhillon*
> *Mark Hass*
> *Bill Orr*
> *Steve Chipman*
> *Heather Wadia*
> *Brian Baker*
> *Lorie Hirson*
> *Jamillah Renard*
> *Taryn Dorsey*
> *Shula Sarner*
> *Lorna Feeney*
> *Wendy Lund*
> *Nancy Brennan*
> *Vicki Fite*
> *Joseph Carberry*
> *David Chamberlain*
> *Michael Morsman*
> *Krista Webster*
> *Karlenne Trimble*
> *Jeannie Kang*
> *Martha Connor VanDyke*
> *Jill Lewis*
> *Francine Cohen*
> *David Binkowski*
> *Brian Burgess*
> *Clark Nesselrodt*
> *Tom Vickery*

*[Plaintiffs later limited to: Neil Dhillon, Joel Curran, Joe Carberry, Steve Chipman, Karlenne Trimble, Rita Masini, David Chamberlain, Thomas Vickery, Michael Morsman, Michael Manning, Kelly Denker, Jim Tsokanos, Donald Hannaford, William Orr, Peter Harris, Keith Hughes, Scott Beaudoin, Steve Bryant, Krista Webster, David Binkowski, Ellena Friedman, Nancy Glick, Jeanine O'Kane, Anita Manning and Brian Baker.]*

### D. Jim Tsokanos Personnel File and Comments Regarding Women / Working Mothers (RFPs 53 and 59)

<u>REQUEST FOR PRODUCTION 53:</u> *Jim Tsokanos' entire personnel file, including but not limited to any complaints lodged against him for discrimination or harassment.*

<u>REQUEST FOR PRODUCTION 59:</u> *All documents that reflect, discuss, refer or relate to comments made by Jim Tsokanos regarding working women or working women with young children.*

15