# EXHIBIT B

**SANFORD WITTELS & HEISLER, LLP**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
(415) 391-6900
E-Mail: jwipper@swhlegal.com

| 1350 Ave. of the Americas, Ste. 3100<br>New York, NY10022<br>(646) 723-2947<br>Fax: (646) 723-2948 | 1666 Connecticut Ave., Ste. 310<br>Washington, D.C.20009<br>(202) 742-7780<br>Fax: (202) 742-7776 | 440 West Street<br>Fort Lee, NJ07024<br>(201) 585-5288<br>Fax: (201) 585-5233 |
|---|---|---|

December 29, 2011

**VIA FACSIMILE**
Honorable Andrew J. Peck
U.S.D.C. – Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007
Fax No. 212-805-7933

      Re:    <u>da Silva Moore, et al. v. Publicis Groupe SA, et al.</u>, **Civ. No. 11-CV-1279**

Dear Judge Peck,

Plaintiffs respectfully request a pre-motion conference to file a motion for sanctions against MSLGroup ("MSL") for its refusal to comply with this Court's September 14, 2011 Order ("Discovery Order"). On September 14, Judge Sullivan ordered MSL to produce documents responsive to Request for Production ("RFP") 1, 6, and 11 in Plaintiffs' First Set of Document Demands. (Order, Sept. 14, 2011, Doc. 40.) Despite the Court's Order, MSL has refused to turn over documents related to RFP 1, i.e., company-wide employment data for public relations professionals. Plaintiffs also note that despite the Court's December 2 oral directive to both parties to work together, MSL continues to perseverate with regard to RFPs 6 and 11 that were the subject of Plaintiffs' previous letter to the Court and were discussed at the December 2 Conference. MSL's disregard for this Court's Orders, combined with the importance of the evidence withheld and the prejudice to Plaintiffs, are more than sufficient to warrant sanctions.

Plaintiffs understand that some of the documents compelled by the Court's September 14 Order could be produced as part of a comprehensive search of electronically stored information. However, given the three and a half month delay, Plaintiffs are concerned that MSL has not done a comprehensive search for many of the compelled documents from any source -- whether electronic or non-electronic files. Moreover, MSL has currently proposed (and is unilaterally implementing) a narrow ESI protocol that covers only email data from MSL's select group of custodians. By design, MSL's proposed ESI protocol will not cover the files in which documents responsive to the compelled requests "are kept in the usual course of business" as required by Federal Rule of Civil Procedure 34(b)(2)(E). Also, because of MSL's delayed production of the compelled documents and other discovery in this case, Plaintiffs ask for the Court's assistance in determining what MSL has searched, what they have not searched, what MSL will search using their ESI protocol, and what MSL will not be searching at all, so that Plaintiffs can assess whether there are any further issues to be discussed by the parties or that might require Court intervention.

**I.   Factual Background of MSL's Refusal to Produce Core Discovery in Disregard of the Federal Rules and the Court's Order**

In this gender discrimination case, Plaintiffs allege, *inter alia*, that MSL subjected female public relations employees to pay, promotion, termination, and pregnancy/caregiver discrimination. (*See generally* Am. Compl.) More specifically, Plaintiffs allege, *inter alia*, that many of these discriminatory employment actions flowed from the January 2008 promotion of Jim Tsokanos to President of the Americas and his efforts on behalf of the company to restructure, reorganize, and implement a new vision for the Company's North American PR practice under the

MSLGroup Network.  (*See* Am. Compl. ¶¶ 8, 13-18, 52, 54-62, 74, 76, 80, 89, 101-104, 115, 128, 132-137, 141-142, 171, 184, 192.)  Therefore, it should come as no surprise that Plaintiffs requested production of employment and compensation documents and documents detailing MSL's corporate structure and the reorganization noted above.[1]

Initially, MSL refused to produce <u>any</u> responsive documents with respect to this requests.  After months of telephone calls, emails, and letters between the parties, Plaintiffs were forced to ask for Court intervention.  On September 14, 2011, the Court held the following:

> Having reviewed Plaintiffs' Requests for Production, the Court concludes that Plaintiffs are entitled to examine documents related to company-wide employment data as it relates to public relations professionals (Plaintiffs' Request for Production 1).  Additionally, Plaintiffs are entitled to discovery with regard to MSL's corporate structure and reorganization (Plaintiffs' Requests for Production 6 and 11).  Accordingly, Defendants are HEREBY ORDERED to produce those documents.

(Order, Sept. 14, 2011, Doc. 40.)  Despite the Court's September 14 Order, MSL has continued to withhold responsive documents and data.

RFP 1 – Compensation and Employment Data
MSL produced employment data from a database called "PeopleSoft" which MSL has represented contains computerized HR Records.  The data from PeopleSoft, however, is insufficient for the following three reasons:[2]

First, the data from PeopleSoft lacks complete compensation information.  It does not provide the payroll data indicating what employees are, in fact, paid.  Plaintiffs specifically requested this information in RFP(1)(h), "compensation including salary, bonuses, benefits and other forms of compensation by year, including data from Box 5 of W-2 forms."  Plaintiffs' request covers total earnings by year, including W-2 information. Due to the requirements of the DOL and the IRS, compensation information that comes from payroll records is the most accurate record of what an employee earned.  MSL has refused to comply with this request.

---

[1] "REQUEST FOR PRODUCTION 1: Any database or computerized information (to be provided with metadata) used, created or maintained by Defendants, or now in the possession, custody or control of Defendants, from which information can be obtained concerning the following data for each Public Relations professional employed by Defendants in the United States, including but not limited to Account Executive through Director, from February 2008 forward (February 2005 for compensation data): a. Name of the employee; b. employee ID or unique identifier; c. gender of the employee; d. age and number of children; e. dates of employment; f. job history, including all job assignment(s)/job title(s) held; g. job function, job sub-function and/or job family, including unit, region, office, division or department worked in; h. compensation, including salary, bonuses, benefits and other forms of compensation by year, including data from Box 5 of W-2 form; i. any promotion received, applied for, or denied, including date on which employee received, applied for or was denied a promotion, and any reason for non-selection for promotion (if applicable); j. any demotion, including date of demotion and any reasons for demotion; k. any resignation or termination, including date of resignation or termination, any reasons for resignation or termination, and whether the employee signed a severance agreement and/or received severance pay; l. any transfer received, including those associated with any restructuring, the date of the transfer, and any reasons for the transfer; m. dates and nature of any leave of absence or other extended absence from employment, including maternity or paternity leave.
. . .
REQUEST FOR PRODUCTION 6: Any organizational charts or other documents showing the corporate structure and management hierarchy of the Company, including the relationship among its parents, subsidiaries and/or affiliates, and the categories of jobs, job functions and departments within the Company.
. . .
REQUEST FOR PRODUCTION 11: All documents relating to the Company's restructuring or reorganization of its Public Relations practice under the MSLGroup network, beginning in or around 2008."  (First Set of Document Demands, May 13, 2011, RFP 1, 6, 11.)

[2] EEOC requires employers to preserve and maintain personnel records for employees, including compensation, promotion, and termination information.  29 CFR §1602.14.  The EEOC allows employers to maintain these records electronically so long as the system "captures and retains all information contained in documents." http://www.eeoc.gov/eeoc/foia/letters/2006/titlevii_ada_adea_recordkeeping.html. That standard is clearly not met here; the electronic HR data produced by MSL contains a number of errors, omissions and inconsistencies.

Second, the data from PeopleSoft lacks complete employee information. It fails to include two offices that were folded into MSL as part of the reorganization that is at the center of the claims in this case. Specifically, MSL refuses to produce any documents responsive to RFP 1 for any of the employees in "Winner & Associates" and "PBJS" although both offices report directly into President of the Americas, Jim Tsokanos.

Finally, the data produced contains errors. Based upon a review of other personnel documents, specifically, documents that are called "Personnel Action Notices," Plaintiffs have found numerous errors and mistakes in the data produced. Errors include identifying a person who MSL terminated as having resigned and another person who worked part-time as working full-time. In order to address this concern, Plaintiffs have asked MSL to produce the Personnel Action Notices used to record the information in the data so that they can correct any errors in the data with their expert, in order to perform an analysis of the sort conducted in cases such as this one. Again, MSL has refused to comply with this request.

Plaintiffs have made numerous attempts to resolve this issue without further Court intervention. After conferring with their experts, Plaintiffs made a good faith effort on December 1, 15, and 19, to explain to MSL the types of documents and information Plaintiffs believed was responsive that had yet to be produced in violation of the Court's Order. Because Plaintiffs were working with their experts and attempting, in good faith, to meet and confer with MSL on these issues, Plaintiffs did not notify the Court about MSL's failure to produce documents at the December 2 conference. Unfortunately, Plaintiffs' efforts to resolve this dispute without Court intervention have been unsuccessful.

RFPs 6 and 11
Plaintiffs previously raised the issue of MSL's noncompliance with the Court's September 14 Order at the discovery conference held on December 2, 2011. The Court asked Plaintiffs to give Defendants further details about the types of documents they were seeking and, with regard to some of the documents specifically discussed at the December 2 Conference, Defendants were ordered to search for some of the documents and "report back promptly to plaintiff's counsel." The parties engaged in two meet and confer sessions on December 15 and December 19, 2011. Unfortunately, Plaintiffs must report that almost no progress has been made.

With regard to RFP 6, Plaintiffs asked MSL to produce organizational charts for every year during the relevant period. MSL has failed to produce these documents, and Plaintiffs find it hard to believe that the "3rd-ranked Global Communications Group" does not maintain any documentation that would fall into this category of requests.

With regard to RFP 11, Plaintiffs directed MSL to two hard copy documents already produced that mention the reorganization, but were heavily redacted. (*See* Ex. A, MSL 1448 (referencing a project called "MS&L Corp. Restructure"); Ex. B, MSL 1363-MSL 1367 (discussing "2009: a year of transition and restructuring" and referencing "restructuring plans," and related presentations, meetings, and personnel/severance costs) (all marked "Attorneys' Eyes Only: Confidential" under the parties' protective order)). Plaintiffs asked MSL whether there were additional documents that similarly reference things like the project "MS&L Corp. Restructure," the "restructuring plans," and restructuring/reorganization "presentations;" whether these documents would be produced; and whether MSL would produce unredacted versions of the already produced documents, as they were already subject to the parties' confidentiality agreement.

Despite at least two meet and confer sessions, MSL was still unable to tell Plaintiffs with any degree of specificity what documents existed, whether and when it planned to produce additional documents (even those that Plaintiffs know about, but cannot access), or what sort of search it had undertaken to locate responsive documents. Plaintiffs contend that MSL has not made a reasonable inquiry/search to respond to the Court's September 14 Order, or this Court's December 2 oral directive. Acknowledging that we are in a "Rocket Docket," Plaintiffs believe that Court intervention is again appropriate and a motion for sanctions is necessary to preserve the record.

## II. Legal Standard

Under Rule 37(b)(2), if a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2). "Sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Lediju v. NYC Dep't of Sanitation*, 173 F.R.D. 105, 112 (S.D.N.Y. 1997)) (alterations in original) (internal quotation marks and citations omitted); *see also JSC Foreign Econ. Ass'n Technostroyexpert v. Int'l Dev. & Trade Svcs.*, No. 03 Civ 5562, 2005 U.S. Dist. LEXIS 16772, at *29-30 (S.D.N.Y. Aug. 16, 2005); *NY Bay Co. v. State Bank of Patiala*, No. 93 Civ. 6075, 1995 U.S. Dist. LEXIS 13959, at *12 (S.D.N.Y. Sept. 25, 1995). Rule 37 allows for a broad array of sanctions; from reimbursing opposing counsel for expenses caused by resisting discovery without justification, to striking out portions of pleadings, prohibiting the introduction of evidence, and default judgment.[3] *See* Fed. R. Civ. P. 37(b)(2); *see also Residential Funding Corp. v. DeGeorge Fin.Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). Moreover, the Court need not find that the party's failure to comply with a court order was "willful" in order to grant sanctions under Rule 37. *See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1067 (2d Cir. 1979).

## III. MSL Will Continue to Deploy Dilatory Tactics Unless Sanctioned

There is more than sufficient evidence to support the filing of a motion for sanctions against MSL, for failing to comply with the Court's September 14 Order. The Second Circuit has indicated that "[s]everal factors may be useful in evaluating a district court's exercise of discretion to impose sanctions pursuant to this rule, including (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel. Co. v. Global Naps Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (internal quotation marks and citations omitted). "[T]hese factors are not exclusive, and they need not each be resolved against the party . . . ." *Id.* (internal quotation marks and citations omitted).

   A. <u>MSL's Failure to Comply with the Court's September 14 Order is Willful</u>

MSL has provided no reasonable explanation for its refusal to produce the requested documents, except that of willful noncompliance in a feeble attempt to outlast the discovery clock. When there appears to be an "evident pattern of non-production of documents, coupled with false assurances that [the party] had produced all of its documents" courts in this district have imposed sanctions. *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, No. 06 Civ. 244, 2009 U.S. Dist. LEXIS 32615, at *20 (S.D.N.Y. Mar. 24, 2009).

As explained above, MSL refuses to produce accurate payroll data (including W-2 data), even though it was requested by Plaintiffs in May 2011, and compelled by this Court in September 2011. MSL will likely argue that the documents and data requested are "duplicative" or "unduly burdensome" on the basis that annual rate information was provided from their PeopleSoft database.[4] However, a base pay rate does not reflect what an employee has actually earned in a given year. For that reason, Plaintiffs requested and the Court ordered more than

---

[3] "[S]anctions serve a threefold purpose. Preclusionary orders ensure that a party will not be able to profit from its own failure to comply. Rule 37 strictures are also specific deterrents and, like civil contempt, they seek to secure compliance with the particular order at hand. Finally, although the most drastic sanctions may not be imposed as "mere penalties," courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) (internal citations omitted).

[4] To the extent MSL argues that the information requested in RFP 1 is unavailable, Plaintiffs note that MSL is required by a number of federal laws to maintain accessible versions of such data. *See, e.g.*, 29 C.F.R. § 516.3 ("employers shall maintain and preserve records containing all the information and data required by § 516.2(a) except paragraphs (a) (6) through (10) and, in addition, the basis on which wages are paid in sufficient detail to permit calculation for each pay period of the employee's total remuneration for employment including fringe benefits and prerequisites."); *id.* §§ 516.5-516.6 (requiring various payroll records be maintained for at least two to three years); *id.* § 516.7("Each employer shall keep the records required by this part safe and accessible at the place or places of employment, or at one or more established central recordkeeping offices where such records are customarily maintained. Where the records are maintained at a central recordkeeping office, other than in the place or places of employment, such records shall be made available within 72 hours following notice from the Administrator or a duly authorized and designated representative.").

4

HR records with respect to compensation data, including "salary, bonuses, benefits and other forms of compensation by year, including data from Box 5 of W-2 forms." Notwithstanding the Order, the data produced is incomplete, contains errors, and is, in short, less accurate than the data being withheld. Even using the limited data produced, Plaintiffs can provide the Court with further exhibits and examples of the various problems it has already identified at the pre-motion conference should the Court so request.

In addition, as explained above, MSL continues to refuse to cooperate with Plaintiffs with regard to RFPs 6 and 11, thus continuing to gum up the discovery process and threatening to derail the Court's scheduling order. This Court has already compelled the production of the documents, and Plaintiffs have gone the extra step to try and help define the types of documents they seek, despite the fact that Plaintiffs are working at a severe information disadvantage. Plaintiffs have a limited idea of the universe of documents. At this point, however, due to MSL's over-literal interpretation of virtually every request made, Plaintiffs also fear that Defendants will choose not to produce documents which are responsive (and at this point compelled by Court Order) when Plaintiffs are unable to describe in detail the exact documents which they seek. That being said, and noting that the Court asked for further direction with regard to what Defendants are not producing, in addition to the documents described above, Plaintiffs seek the following types of documents:[5]

- Documents relating to "MS&L Corp. Restructure" project (e.g., MSL 1448)
- Documents relating to "2009: a Year of Transition and Restructuring" (e.g., MSL 1362-1366)
- Documents relating to "restructuring plans" (e.g., MSL 1364, 1366-1372)
- Documents relating to "presentations" and "meetings" of "restructuring plans" (e.g., MSL 1364)
- Documents relating to "2010: a New Vision for Publicis Groupe's PR and Events," including the "mission", "strategy" and "tactics" of the "new vision" (e.g., MSL 1373-1374)
- Documents relating to "management structure improved," "new business team," "restructure MS&L new business team … move function out of corporate into hub regions," "tactics: simpler management organization" (e.g., MSL 1366, 1367, 1374, 1448)
- Documents relating to headcount/staff "reductions," "terminations" or "savings;" "severance costs" or other employment decisions due to restructuring/ reorganization (e.g., MSL 1365, 1367, 1370, 1437-1448)
- Documents relating to hires, compensation, promotions, transfers or other employment decisions for employees "assuming new roles with the reorganization of MSLGroup" (e.g., MSL 1181-1182)
- Documents relating to "rais[ing] our game in Corporate, Financial, Issues Management and Public Affairs," and "attract[ing] and retain[ing] talent in new disciplines" due to the restructuring/new vision (e.g., 1374)
- Documents relating to budgets and financial information of the restructuring/reorganization (e.g., MSL 1361-1461)
- Documents relating to "2009 bonuses" (e.g., MSL 1447)
- Documents relating to "instability generated by restructuring" (e.g., MSL 1380)
- Documents relating to the "2008 Highlights and Challenges" including "Overview, Financial and Operational Highlights" (e.g., MSL 1450-1452, 1460)
- Documents relating to the "2009 Business Plan and Financial Highlights" (e.g., MSL 1452-1456, 1460)
- Documents relating to "MS&L Worldwide New Brand Position" (e.g., MSL 1456-1461)

B. <u>MSL's Withholding of Discovery Compelled By the Court Will Prejudice Plaintiffs' Case</u>

It is within the Court's discretion to impose sanctions on MSL, because MSL's failure to comply with the Court's Order has prejudiced Plaintiffs. *Conway v. Dunbar*, 121 F.R.D. 211, 212-3 (S.D.N.Y. 1988) (imposing severe sanctions pursuant to Rule 37 because defendant's "willful refusal in the face of clear orders to provide discovery [wa]s a deliberate attempt to obstruct plaintiff's access to documents essential to prove the allegations contained in the complaint"). Here, the evidence that MSL is withholding could not be more central to Plaintiffs' case.

---

[5] All of these documents are bates labeled "MSL," not "MSLAX"; therefore, these documents were not produced from the Axcelerate database created for MSL's narrowly proposed ESI protocol covering only email. Presumably, these documents would not have been produced at all under MSL's proposed ESI protocol.

5

Plaintiffs allege, *inter alia*, a pattern or practice of discriminatory employment actions relating to compensation, promotion, termination and other decisions. The fact that MSL is withholding the *core evidence* in Plaintiffs' case makes this discovery violation all the more egregious. *Id.* ("It appears that the discovery withheld is central to the proof of plaintiff's allegations . . . . The imposition of severe sanctions authorized by Rule 37 i s therefore justified.") Because Plaintiffs have the burden of proof, and MSL holds the vast majority of evidence, MSL's dilatory tactics and outright refusal to produce documents that have been compelled by this Court leave Plaintiffs at a severe disadvantage. *See id.*

C. <u>Court-order Sanctions Are Needed to Remind MSL of the Need to Comply with Discovery Orders in a Timely Fashion</u>

Based on MSL's previous behavior in this case, nothing less than sanctions will force MSL to comply with its discovery obligations to the Court and to Plaintiffs. Sanctions may be used as "strong medicine" to get a party back on track after it has repeatedly refused to participate in the discovery process as set forth by the Federal Rules and by the Court. *Sieck v. Russo*, 869 F.2d 131, 133 (2d Cir. 1989); *Miltope Corp. v. Hartford Cas. Ins. Co.*, 163 F.R.D. 191, 192 (S.D.N.Y. 1995). MSL's refusal to produce payroll data in direct contravention of the Court's September 14 Order is just one in a laundry list of refusals to participate in the discovery process in a timely manner. MSL failed to produce <u>any</u> documents, other than the personnel files of the named Plaintiffs, until October 7, 2011; almost five months after the requests were served. After months of emails, phone calls, and letters between counsel, Plaintiffs were forced to ask for Court intervention to compel at least three of the most important production requests that form the basis for the lawsuit. The document request at issue in this letter was served on MSL more than seven months ago, on May 13, 2011. Finally, despite Plaintiffs' efforts over the last three months, in addition to this letter asking for a conference prior to filing a sanctions motion, Plaintiffs were also forced to write to the Court for a conference prior to filing a motion to compel on a variety of other requests for which documents have not been forthcoming.

The Second Circuit noted that "[t]he principal objective of the general deterrent policy of *National Hockey* is strict adherence to the 'responsibilities counsel owe to the Court and to their opponents.'" *Cine Forty-Second St. Theatre Corp.*, 602 F .2d at 1067 (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976)). Thus far, MSL has both resisted discovery without justification and refused to comply with this Court's Orders. Because MSL has the vast majority of the evidence Plaintiffs need to prove their case, their refusal to participate in the discovery process allows them to profit from their own malfeasance. In addition, perhaps because MSL has not yet been sanctioned for their dilatory and obstructionist tactics, MSL appears to feel free to ignore the Court's discovery orders. Plaintiffs' motion for sanctions will ask that the Court, as it has done in other cases, "'renew the prescription' and remind the Bar and litigants that discovery deadlines must be complied with and that counsel and their clients ignore them at their peril." *Miltope Corp.*, 163 F.R.D. at 192.

Specifically, Plaintiffs will request that, at the very least, the Court order MSL to pay Plaintiffs' attorneys' fees and expenses for the cost of preparing this letter and any further actions taken in order to prosecute such a motion for sanctions. Requiring MSL to pay Plaintiffs' attorneys' fees and expenses "is the mildest of the sanctions authorized by Rule 37." *Miltope Corp.*, 163 F.R.D. at 195 (internal citations omitted). Moreover, "[t]he Advisory Committee Notes make clear that the Court *should* award attorneys' fees pursuant to Rule 37(b)(2), as with Rule 37(a), to place the burden on the disobedient party to avoid expenses." *JSC Foreign Econ. Ass'n Technostroyexpert t*, 2005 U.S. Dist. LEXIS 16772, at *50; *Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Group, Inc*., 212 F.R.D. 94, 102 (E.D.N.Y. 2002); *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, Nos. 96 Civ. 9721, 98 Civ. 0123, 2002 U.S. Dist. LEXIS 849, at *28 (S.D.N.Y. Jan. 15, 2002).

In addition to sanctions, Plaintiffs will request that the Court: (1) order MSL's counsel to identify and determine exactly what has been searched; (2) order MSL's counsel to file a declaration detailing what was searched (assuming things have not been searched which are also not covered by the ESI protocol in this case) and whether documents responsive to Plaintiffs' requests were or were not found; and (3) set a reasonable production deadline with which MSL must comply with regard to these documents.

**IV. Conclusion**

For the foregoing reasons, the Court should grant Plaintiffs' request for a pre-motion conference to file a motion for sanctions. Without sanctions, MSL will continue to defy the Court and obstruct Plaintiffs' efforts to prosecute their case.

                      Sincerely,
                      /s/ Janette Wipper

                      Janette Wipper

cc:      All counsel of record (via electronic mail)

# EXHIBIT A

   

PUBLICIS GROUPE                                                                                               Strictly Confidential

## Project Summary and Financial Estimates

| Person responsible: | Maury Shapiro | Phone number: 212-468-3327 | E-mail: | maury.shapiro@mslworldwid |
|---|---|---|---|---|

| Project name: | MS&L Corp- Restructure | Start date: | 01/12/2009 |
|---|---|---|---|
| Entity: | US 9451M | End date: | 31/12/2009 |
| Country: | USA | | |

| | Project key indicators | | Total Project Costs (in €,000) | Cash Impact | P&L costs |
|---|---|---|---|---|---|
| S U M M A R Y | Reduction in square feet | | | | |
| | Number of locations closed | | | | |
| | Headcount reduction | 6 | | | |
| | Currency: USD | Tax rate: 48.88% | Exchange rate: 0.72793 | 644,827 | 644,627 |
| | Brief description: Restructure MS&L New Business team. Eliminate expensive, underperforming unit. Move the function out of corporate into hub regions to align more w/ Business. | | Major risks, Timing consideration: Severance budgeted in RF09. If moves are not done in 2009 it will lower 2010 budget as these costs have been removed. | | |

| | | Year 2009 | Year 2010 | Year 2011 |
|---|---|---|---|---|
| F I N A N C I A L  E S T I M A T E S | **P&L** | | 469 k€ | |
| | Costs | | | |
| | Severance costs | 644,827 | | |
| | Lease termination costs | | | |
| | Write-offs | | | |
| | Loss on assets disposal | | | |
| | Other costs | | | |
| | Integration costs | | | |
| | 1- Total costs | 644,627 | 0 | 0 |
| | Savings | | | |
| | Personnel costs | | 1,474,800 | 1,474,800 |
| | Agency expenses (incl. depreciation) | | | |
| | Other savings | | | |
| | Gain on assets disposal | | | |
| | 2- Total savings | 0 | 1,474,800 | 1,474,800 |
| | P&L impact before tax (2)-(1) | 644,827 | -1,474,800 | -1,474,800 |
| | P&L impact after tax [(2)-(1)] x (1 - Tax rate) | 329,630 | -753,904 | -753,904 |
| | Cumulative P&L impact after tax | 329,630 | -424,275 | -1,178,179 |
| | **Cash** | | | |
| | Cash spent | | | |
| | Severance costs | 113,447 | 531,380 | |
| | Lease costs | | | |
| | Others | | | |
| | Other costs | | | |
| | Integration costs | | | |
| | New capital expenditures | | | |
| | 3- Total cash spent | 113,447 | 531,380 | 0 |
| | Cash savings | | | |
| | Personnel costs | | 1,474,800 | 1,474,800 |
| | Agency expenses | | | |
| | Disposal of assets | | | |
| | Other cash items | | | |
| | 4- Total cash savings | 0 | 1,474,800 | 1,474,800 |
| | Cash impact (4) - (3) | -113,447 | 943,420 | 1,474,800 |
| | Cumulative cash impact | -113,447 | 829,973 | 2,304,773 |
| | Payback (months) | 6 | | |
| | **Net headcount evolution** | | | |
| | 1- Gross Headcount reduction at agency (+) | 6 | | |
| | 2- Transfer to other group agency (-) | | | |
| | 3- Other agency impacts (+ or -) | | | |
| | 4- Cumulative group impact | 6 | 6 | 6 |
| | Average lay-off cost per employee | 107471 | | |

| Agency CFO | Date: | Brand CEO | | Date: |
|---|---|---|---|---|
| Agency CEO | Date: | Group CFO | Jean Michel Etienne | Date: |
| Brand CFO | Date: | Group CEO | | Date: |

ATTORNEYS EYES ONLY
CONFIDENTIAL

MSL001448

# EXHIBIT B

# 2009: A year of transition and restructuring

2010 commitment, November 16

MS&L

ATTORNEYS EYES CONFIDENTIAL

MSL001363

## Redefining Management and Territories

- Departure of Mark Hass, John Farrell, and Eric Giuily
- May 2009, appointment of Olivier Fleurot
- June, July, August: OF travels to meet staff, clients, potential partners
- September 3: Presentation of plans to Maurice Levy
- September 17: First meeting with new leaders, new reporting lines put in place. 3 Networks are now 1 global network
- October: Restructuring plans being discussed in each region
- November 16: 2010 plans presented to Maurice Levy

MS&L

2010 commitment, November 16

ATTORNEYS EYES ONLY
CONFIDENTIAL

MSL001364

# 2009 Recap and Latest Estimate

REDACTED

| | ACTUAL 2008 | COMMITMENT 2009 | REVISED 2009 | VARIANCE vs 2008 % |
|---|---|---|---|---|
| Revenue | | | | |
| Personnel Costs excl Severance and Bonus | | | | |
| Severance Costs | | | | |
| Bonus | | | | |
| **Personnel Costs** | | | | |
| *% Personnel Costs / Revenue* | | | | |
| **Client Costs** | | | | |
| *% Client Costs / Revenue* | | | | |
| Occupancy Costs | | | | |
| Shared Services Costs | | | | |
| Depreciation | | | | |
| Controllable G&A | | | | |
| Fixed G&A | | | | |
| **Total Overheads** | | | | |
| *% Overheads / Revenue* | | | | |
| Other Operating Income / (Expense) | | | | |
| ASF | | | | |
| **Total Operating Costs** | | | | |
| **Operating Income (EBIT)** | | | | |
| *% Op. Income / Revenue* | | | | |
| **Total Headcount** | | | | |

*Adjusted for Women's Forum

Highlights
- Recession impact across all agencies, in every region. Substantial margin erosion in France and Events Europe.
- Major client wins include BP, Carrefour, CIBA, Oral Care P&G, Delta Faucets and DeVry.
- Losses include Philips, CIT, Sanofi Pasteur (US), specific issue: GM.
- 2010 commitment, November 16

MS&L

ATTORNEYS EYES ONLY
CONFIDENTIAL

MSL001365

REDACTED

MS&L

## 2009 Operational Highlights

- **Management structure improved**
  - New Structure combining Public Relations, Events and Corporate Communications into One agency Group, managed regionally
  - New Leadership in California to manage Western US, and new GM (Ann Arbor) to better operationalize our Digital business
  - Created financial management structure to mirror operational structure.

- **New business and global network enhanced**
  - Aligning Events business with PR business to help with a more holistic offering
  - Won the Oral Care business (Crest, Whitestrips, etc) of Procter and Gamble and the Gerber business from Nestle which provides great organic growth from our most important Groupe clients
  - Won Global wins such as CibaVision and World Gold Council which generate business globally.

- **Capabilities and reputation expanded**
  - Bringing Dan McGinn in to broaden relationships with key clients (P&G, CitiBank)
  - Expanding Digital Capability with mobility expertise (Ann Arbor, NY, PCNI)

2010 commitment, November 16

ATTORNEYS EYES ONLY
CONFIDENTIAL

MSL001366

# Restructuring Plans

REDACTED

A. **MS&L WW New Business team**
 - Reason: centralized team, not connected to P&L leaders.
 - Estimated costs: $645,000
 - Estimated savings: $1,475,000 annually
 - Timing: November/December 2009
 - Comments: when relevant we will transfer staff to operational roles.

Cost factored into the RF09

B.

2010 commitment, November 16    MS&L

ATTORNEYS EYES ONLY
CONFIDENTIAL

MSL001367