1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    MONIQUE Da SILVA MOORE, et al.,    :   11-CV-1279
                                        :
5                         Plaintiffs,   :
                   v.                   :
6                                       :   500 Pearl Street
     PUBLICIS GROUPE, et al.,           :   New York, New York
7                                       :
                         Defendants.    :   January 12, 2012
8    ------------------------------------X

9
             TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
10           BEFORE THE HONORABLE ANDREW L. CARTER, JR.
                    UNITED STATES DISTRICT JUDGE
11
     APPEARANCES:
12
     For the Plaintiffs:          JANETTE LYNN WIPPER, ESQ.
13                                Sanford Wittels & Heisler, LLP
                                  555 Montgomery Street, Suite 820
14                                San Francisco, California 94111

15

16   For the Defendants:          JEFFREY W. BRECHER, ESQ.
                                  Jackson Lewis LLP
17                                58 South Service Road
                                  Melville, New York 11747
18

19

20   Court Transcriber:           SHARI RIEMER
                                  TypeWrite Word Processing Service
21                                211 N. Milton Road
                                  Saratoga Springs, New York 12866
22

23

24

25

     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

2

1          MS. CHAVEY:  Victoria Chavey for defendant MSL

2  Group.

3          MR. BRECHER:  Jeff Brecher also for defendant MSL

4  Group.

5          MALE VOICE:  George [inaudible] for MSL Group.

6          MS. WIPPER:  Janette Wipper for plaintiff and the

7  class.

8          THE CLERK:  Is that everyone?

9          MS. WIPPER: Your Honor, with me I also have

10  [inaudible] and Eva Gustane for plaintiffs in the class.

11          THE COURT: Good afternoon.  Let me get a little

12  background information, just a little bit of background

13  factual information on this case.  I know previously Judge

14  Sullivan ruled on a discovery dispute between the parties

15  regarding medical records and testimony regarding medical

16  issues.

17          Subsequent to that conference and that ruling the

18  parties had a further discovery dispute that was referred to

19  Judge Peck and Judge Peck basically issued a ruling

20  essentially adopting what Judge Sullivan had previously ruled.

21  It's my sense that the situation has become further clarified

22  and was clarified further by the time the parties went before

23  Judge Peck as opposed to the time before the parties were

24  in -- were before Judge Sullivan regarding what the plaintiffs

25  were seeking in this case regarding emotional damages and that

1   the plaintiffs are making it clear that they are seeking only

2   garden variety emotional damages.

3         My sense is also that the defendants are a little

4   skeptical about that and are not quite sure what the

5   plaintiffs mean when they say garden variety emotional

6   damages.

7         Is that a fair synopsis at this point?

8         MS. WIPPER: Yes, Your Honor.  This is Janette Wipper

9   for the plaintiff.

10         THE COURT: From defendant's perspective?

11         MR. BRECHER: Judge, Jeff Brecher on behalf of the

12   defendant.  Yes, I think that's a pretty accurate summary.

13         THE COURT: Let me get a sense.  When Judge Sullivan

14   ruled on these medical records and ordered the plaintiffs to

15   turn over these medical records and the plaintiffs could be

16   deposed about medical issues, I'm just trying to figure out

17   were those medical issues all related to mental health issues

18   or were there other medical records that the parties feel are

19   relevant in this case.

20         Let me hear from plaintiffs.

21         MS. WIPPER: Your Honor, our position is that the

22   plaintiff is seeking only garden variety damages and for that

23   reason medical records will not be relied on by the plaintiffs

24   to prove those claims.  Therefore, medical information is not

25   relevant.

4

1          THE COURT: But I guess I want to get clarification.

2     You're saying medical records.  Again, the cases in SIMS and

3     its progeny refer to the privilege between a patient and

4     psychotherapists or related mental health license

5     professionals.  I'm just trying to clarify.  Are there other

6     medical records such, for example, from a general

7     practitioner, gastrointerologist anything of that nature?

8          MS. WIPPER: Our position is although that the

9     privilege is limited for the psycho [inaudible]  privilege we

10    also [inaudible – phone breaking up] are irrelevant in the

11    context of garden variety plaintiffs.

12         MR. BRECHER: Judge, this is Jeff Brecher on behalf

13    of MLS Group.

14         THE COURT: Okay.

15         MR. BRECHER:  I think you hit the nail on the head

16    when you summarized what happened before that they keep

17    stating that they're willing to limit their damages to the

18    garden variety benefits but it's not defined.  So we are in

19    somewhat of a difficult position because we don't know what

20    they are proposing with respect to that term and therefore we

21    can't make a determination whether we will need medical

22    records and psychological records.

23         THE COURT: Let me --

24         MS. WIPPER: Your Honor --

25         THE COURT: Let's do this.  Let's -- for the time

1    being let's focus on simply the medical records related to

2    psychotherapists and mental health counseling records.  Let's

3    deal with that issue first.  Let me get a sense from the

4    plaintiffs again in terms of what it is that you're going to

5    be seeking in terms of your garden variety emotional damages

6    here in this case.

7           MS. WIPPER: Your Honor, because we're seeking only

8    garden variety I will not be [inaudible] medical evidence for

9    those claims and will not be [inaudible] mental state of our

10   plaintiffs at issue.  Under Second Circuit case law

11   [inaudible] the Second Circuit and District Court in the

12   circuit have recognized awards as high as $125,000.00, even

13   higher for garden variety.  We would only be seeking garden

14   variety damages within the range of [inaudible] allowed in

15   this circuit.

16          THE COURT: I understand that but I guess what I'm

17   trying to get a little bit more clarification on is the case

18   law indicates that garden variety emotional damages are

19   limited to the sort of garden variety damages that results

20   directly from the alleged discrimination.  Again, we're trying

21   to eliminate any sort of tertiary damages that are claimed as

22   a result of that.  So if you could just give me an example of

23   what you're talking about so that we can have clear

24   delineation so that we don't -- as clear as we can at this

25   point.

6

1          For example, you're indicating that there may be

2  other medical records that would not be records related to

3  psychotherapy and that raises some concerns in terms of what

4  the plaintiffs again will be seeking in terms of their garden

5  variety emotional damages.  For example, are the plaintiffs

6  going to claim, for example, as a result of this alleged

7  discrimination I was frustrated and upset and things of that

8  general nature.  I think that would be fine but the question

9  is what else is going to be added after that.  Are the

10  plaintiffs going to be saying as a result of this I couldn't

11  sleep and since I couldn't sleep I developed these other

12  problems and I couldn't eat and my stomach was in knots and

13  therefore I had problems even though not bringing in medical

14  experts but talking in general terms about physical

15  conditions?  That's where I'm a little bit concerned.  That's

16  what I'm trying to get a little bit more information about

17  from the plaintiffs.

18          MS. WIPPER: Your Honor, plaintiffs would only be

19  seeking the [inaudible] related [inaudible] the discrimination

20  they suffered at MSL.  For example, one of the plaintiffs was

21  terminated after her return from maternity leave after being

22  at the company for 13 years.  That obviously was a stressful

23  experience for her as it would be for any reasonable person.

24  So to the extent that these damages are the garden variety

25  damages would be related to that type of stress.  We're not

7

1  alleging that any of the plaintiffs have experienced any kind

2  of condition or have been diagnosed with any type of condition

3  due to what happened at work.

4          THE COURT: Let me hear from defendants a little

5  further on this.

6          MR. BRECHER: Certainly, Your Honor.  This is Jeff

7  Brecher again.  So the distinction that you're making is I

8  think distinction that is set forth in the decision that you

9  mentioned and if they're going to testify that they felt upset

10  and frustrated and hurt I think that falls on the garden

11  variety side but if there's going to be any testimony relating

12  to any kind of medical condition or symptom such as I'm

13  suffering anxiety or I feel depressed or I'm suffering from

14  sleeplessness, anything that goes beyond that I think that

15  that falls on the other side.

16          We just want a clear stipulation or representation

17  by plaintiffs as to what they're seeking so that we don't have

18  an issue later on where they're trying to testify to something

19  and then we don't have the record and then the question well,

20  why don't we have a record because they said they were going

21  to testify or we didn't understand what they meant by garden

22  variety.  So that's our position.

23          THE COURT: Thank you.  So let me make sure that I'm

24  clear on what plaintiffs are saying.  So are plaintiffs

25  indicating that they're not going to be seeking any sort of

1  damages as a result of any sort of physical manifestations

2  caused by the alleged discrimination here other than again

3  garden variety frustrating -- being frustrated, being angry,

4  being sad?  But, again, I'm trying to get a sense of

5  plaintiffs are going to be saying I was -- for example, I was

6  so upset that I couldn't sleep, I was so upset and so

7  frustrated that my stomach hurt for days on end.  I'm not --

8  that may raise other concerns.  It may not necessarily but it

9  may raise other concerns.  It may not necessarily raise

10  concerns about the records of the psychotherapist but again

11  I'm a little concerned now that I'm -- now that I have

12  clarification that there are other medical records which we'll

13  deal with later, but if in fact -- well, let me hear from

14  plaintiffs on that before I go on.

15         MS. WIPPER: To the extent that there's any medical

16  records beyond the psychotherapist, medical records that are

17  privileged with respect to garden variety claims, we would

18  produce those records assuming that it addressed medical

19  conditions related to work or the discrimination claims that

20  we have been alleging.

21         THE COURT: What was that?  I thought I was clear

22  until that last part you said.  You said your desires to

23  produce the medical records relating to work and then you said

24  in the discrimination that you're alleging.  Can you be a

25  little bit -- can you clarify that for me a little bit more?

1          MS. WIPPER: Sure.  To the one plaintiff that we're

2     aware of that has -- that had a condition or it wasn't a

3     condition but she had stress related pain due to her work

4     stress that she saw her general practitioner about.  Other

5     than that plaintiff we're not aware of any plaintiff that has

6     sought any treatment by a doctor related to anything

7     concerning work or the discrimination claims at issue in the

8     case.

9          With respect to the plaintiff that we are aware of,

10    we would be willing to produce those documents if the court

11    thinks they're relevant to her garden variety --

12          MR. BRECHER: Judge, this is Jeff Brecher again.

13          THE COURT: Right.

14          MR. BRECHER: Judge, I think this is precisely where

15    the problem occurs.  Now they're saying that there's a

16    plaintiff who has medical treatment as a result of stress and

17    we think that if they're going to testify to that and make

18    that claim then they waive the privilege and need to produce

19    the records that Judge Sullivan ordered.  It's unfair to

20    defendants to allow them to testify and then not allow us to

21    have records that might explain [inaudible] other source.

22          THE COURT: Let me --

23          MS. WIPPER: Your Honor, we just learned about this

24    issue yesterday concerning one of the plaintiffs.  Again, we

25    would be willing to produce those records if the court deems

1  them relevant with respect to garden variety claims.

2          THE COURT: But your claim is that for this

3  particular plaintiff that she is claiming that she saw a

4  general practitioner as a result of stress that she

5  encountered related to the discrimination.  Is that correct?

6          MS. WIPPER: Yes, Your Honor.  She saw a doctor, her

7  general practitioner.  She did have an issue with intestinal

8  pain because of stress.  Given the issue now and the court's

9  concerns about medical records between doctor and a patient

10 that are subject to the psychotherapist privilege, we would be

11 willing to produce those records to resolve the issue.

12         THE COURT: But what is your position on how that

13 sort of claim is garden variety emotional stress?

14         MS. WIPPER: Our position is that garden variety

15 claims are what a reasonable and normal person would

16 experience if subject to a similar type of discrimination at

17 issue in the case.  We also -- our reading of the case law is

18 that garden variety claims do not rely on medical evidence and

19 so therefore that type of evidence is not relevant with

20 respect to garden variety claims.

21         THE COURT: Right.  But that seems to cut against

22 your argument on that last point if you're going to be relying

23 on -- if you're going to be relying on medical evidence.  The

24 fact that she had so much stress as a result of the alleged

25 discrimination that she saw a general practitioner and saw a

1 doctor and is perhaps prescribed medication, how is that then
2 garden variety emotional distress?

3      MS. WIPPER: Your Honor, it's more than garden
4 variety emotional distress.  However, given the issue now
5 before the court and defendant's concern that she may testify
6 [inaudible] stress, plaintiffs are proposing that for this
7 particular plaintiff, [inaudible] Pearlman, we will produce
8 these records and if those records are produced our position
9 would be that she had more than garden variety claims because
10 medical evidence would be at issue to prove her claim.

11      THE COURT: Then your position would be that you
12 would turn over any records that she has related to
13 psychotherapy as well?

14      MS. WIPPER: Correct.  If she's alleging more than
15 garden variety claims our position is that we would produce
16 those records.

17      MR. BRECHER: This is Jeff Brecher again.  We're
18 going to back and forth on this.  At first they said there's
19 no claim with anything other than garden variety damages and
20 filed a stipulation to that effect and then now they're
21 telling us well, there is a plaintiff who has more than garden
22 variety of damages and this is what we're concerned about but
23 my -- assuming now that they are stating that there's just one
24 plaintiff that is seeking non garden variety damages --

25      MS. WIPPER: Your Honor, we allege garden variety

1   emotional distress claims for all the plaintiffs and we were

2   willing to clarify that limitation in response to defendant's

3   request for medical information and documents.  If defendants

4   want to push and really want the medical records that exist,

5   everything that exists, then we would be willing to produce

6   the records for the one plaintiff that has those records and

7   not limit her claims to garden variety.

8           THE COURT: Okay.

9           MS. WIPPER:  If defendants would like us to return

10  to our previous position we'd also be willing to allege only

11  garden variety for all plaintiffs and protect the record.

12          THE COURT: I understand a little bit more clearly

13  now.  So your position is that even regarding that plaintiff

14  that you're alleging only garden variety emotional distress

15  and therefore you would not be introducing any of the medical

16  records from her visits to the general practitioner or any

17  testimony relating to her going to a general practitioner, any

18  testimony relating to her gastrointestinal pain or any

19  testimony related to her taking medication as a result of

20  this.  Is that what you're saying?

21          MS. WIPPER: Correct.  If we were [inaudible] only

22  garden variety claims we would not be relying at all on

23  medical evidence.

24          THE COURT: And then she would not be testifying

25  regarding any of the medical evidence or -- again, my question

1  there I guess is what would her testimony -- I don't want you

2  to preview all of what her testimony might be but regarding

3  this gastrointestinal issue that she saw the doctor for, is it

4  your position that she wouldn't talk about that at all?

5       MS. WIPPER: Not beyond general stress that would be

6  relevant for garden variety.

7       THE COURT: But when you say not beyond general

8  stress, you would just say she was generally stressed and

9  would not mention gastrointestinal pain.  Is that what you're

10 saying?

11      MS. WIPPER: Correct.

12      THE COURT: What's defendant's position on that?

13      MR. BRECHER: Judge, I don't know if I'm in a

14 position at the moment to give you an answer on that because

15 this is the first time I've heard this.

16      THE COURT: Let me find out from the parties.  What

17 is the deposition schedule at this point?  Is there still a

18 deposition scheduled for tomorrow?  Is there a deposition

19 scheduled today?

20      MR. BRECHER: There is a deposition scheduled on

21 Friday, tomorrow, and then there's another deposition

22 scheduled next week.  I believe it's Carol Cohen and with the

23 individual that we're talking about with the [inaudible]

24 problem and I believe that's Tuesday.

25      THE COURT: Have the other plaintiffs already been

14

1   deposed, the other lead plaintiffs been deposed?

2          MR. BRECHER: There's one other lead plaintiff who

3   was deposed, Katherine Wilkinson, who withdrew and prejudiced

4   her claim for emotional distress [inaudible].

5          THE COURT: Now that we've had some of this

6   conversation here, let me hear from defendants.  I know

7   regarding this one plaintiff this is new information for you

8   but does this adequately allay your concerns about what the

9   plaintiff would be seeking to prove at trial?

10          MR. BRECHER: This is Jeff Brecher again.  I think

11   somewhat, yes.  I think as long as there's -- I don't know

12   it's going to be memorialized but a stipulation as to what the

13   testimony would be limited to at trial and that it were

14   clearly on the line of what we would consider garden variety

15   which is what we have stated [inaudible] said I was hurt, I

16   was angry, annoyed, that I think would be acceptable.

17          THE COURT: Let me hear from plaintiffs.  What's

18   plaintiff's position on that?

19          MS. WIPPER: Your Honor, we've already entered into a

20   stipulation.  We would be willing to enter into a stipulation

21   reflecting what we discussed today.

22          MS. CHAVEY:  Judge, this is Victoria Chavey also on

23   behalf of MLS Group.  One way of I think distinguishing our

24   position from the plaintiffs is that we would be looking for

25   the plaintiffs' testimony not to include any references to

1   what our conditions that may be diagnosed in the DSM-4 or what
2   have you.  So stress and anxiety, depression.  Those are the
3   kinds of words we would not expect the plaintiffs to testify
4   in connection with explaining how they felt.  If they were to
5   use more common lay person language as you were describing
6   like they felt frustrated or angry or upset, that is what we
7   think the case law puts squarely in the hands of garden
8   variety damages but anything that refers to a medical
9   condition, a diagnosable particularly mental health condition,
10  we think that that is outside the scope of garden variety
11  damages and if the plaintiff intends to testify along those
12  lines then we should be entitled to take a look at their
13  medical and mental health treatment records to see what else
14  may have been causing them depressive or stress type symptoms
15  to explore the whole gamut of issues.  So that's kind of a
16  simplified way of explaining what our position is.
17          THE COURT: I don't -- I appreciate that.  I think
18  that -- I'm not sure if those particular words will help
19  simplify things.  I think it's clear that the plaintiffs would
20  not be allowed to testify regarding any kind of diagnosis or
21  to say I was diagnosed with this or the psychiatrist or
22  psychologist told me I suffered from this.  I think that at
23  this point some of those general diagnoses have become such --
24  have come in such general usage in society that people don't
25  use them in the clinical sense but I don't want to have a

1 situation in which some plaintiff inadvertently instead of

2 saying I was sad, saying I felt anxious, and then we have

3 everything blow up and have some situation over something like

4 that.

5        But I think we're all on the same page in terms of

6 what we're trying to accomplish and what we're trying to limit

7 but again I wouldn't want to have a situation in which some

8 plaintiff or some lawyer in the heat of cross examination

9 didn't use the words as carefully and said oh, you felt

10 depressed or you felt a little anxious. I think that's a

11 little different than saying you were diagnosed as having

12 clinical depression or that you were diagnosed with an anxiety

13 disorder or something of that sort. But it seems that -- I

14 think -- it appears that we're all on the same page now I

15 thin.

16        I think that we've now gotten clarification exactly

17 in terms of what the plaintiffs are seeking I believe. But

18 let me hear from the parties again. Let me hear from

19 plaintiff on that and make sure that we're -- let me just hear

20 from everyone. Are we all on the same page here?

21        MS. WIPPER: Yes, Your Honor, you described our

22 position perfectly.

23        THE COURT: And defendants.

24        MR. BRECHER: Judge, I think generally yes, we're on

25 the same page. I think just as far as some of the details and

1   the language, we would -- again, if someone testifies that

2   they felt depressed I would think that that is on the other

3   side.

4              THE COURT: That is on the other side in terms of

5   what?

6              MR. BRECHER: That would be non garden variety.

7              THE COURT: Why is that?

8              MR. BRECHER: Because depressed -- certain depression

9   would be non garden variety and I think that depressed is

10  pretty close to depression and I don't know if many people

11  would be able to make the distinction between the two and a

12  lot of -- in a lay sense feeling depressed someone believe

13  that to mean depression [inaudible].

14             THE COURT: I understand your point and I think --

15  let me not be -- let me make sure that I'm clear on this.  I'm

16  certainly not suggesting that I think it would be a good idea

17  for the plaintiffs to use those words but again I think just

18  sometimes in the common parlance that goes around today

19  sometimes people lapse into those general sorts of words I

20  felt probably not anxious but I think it's pretty common for

21  people to say I feel -- they have children under the age of

22  ten who say I feel depressed just -- as another way of saying

23  they feel sad.  It seems like that's certainly the sort of

24  thing that probably could be cured with a curative instruction

25  to the jury that -- if the parties would want that.  Some sort

1   of curative instruction saying that there has been no medical

2   testimony and there has been no testimony about anyone's

3   mental health, state of mental health or anything of that

4   nature.

5          Again, I just don't want to have a situation in

6   which we're being so hyper technical as lawyers that we have

7   some problem in terms of the way that the trial may actually

8   be conducted if it gets to that point.  I know that we're all

9   lawyers and former lawyers and we tend to try to choose our

10  words very carefully and words mean a lot to us.  I don't know

11  if common jurors, if every day jurors subscribe to that same

12  sort of philosophy.  So I'm not sure that it would be a good

13  idea to make any definitive ruling indicating that if someone

14  says the word depressed -- again, obviously what's happening

15  here is we're all on the same page.

16         Obviously the plaintiffs are seeking only garden

17  variety emotional damages and obviously at this point the

18  defendants technically may be trying to figure out a way to

19  state that the plaintiffs have waived that privilege and

20  opened the door such that they'd be entitled to all this other

21  information but let's try to -- I'd like to try to do it in as

22  practical and as narrow way as possible without being so

23  narrow that we cause unnecessary confusion.

24         But it seems that it may be best for the parties to

25  take a crack at trying to arrive at a stipulation and be as

1  specific as possible.  It certainly may be possible that

2  the -- I don't know these plaintiffs individually.  It may be

3  possible that the plaintiffs can be coached in such a manner

4  that they will not use those words and if all the parties feel

5  confident that there won't be a problem but let's just again

6  keep that in mind because again I think that the plaintiffs

7  probably are such that they can be coached not to use those

8  words but sometimes lawyers in the heat of battle may use

9  synonyms that may be unfortunate.

10         But let's have the parties sit down.  Do you

11  think -- do the parties feel at this point that they can work

12  out a stipulation to this effect to our mutual understanding

13  as to what's happening here?

14         MS. WIPPER: Yes, Your Honor.

15         MR. BRECHER: Yes, Your Honor.

16         THE COURT: All parties are in agreement with that?

17         MR. BRECHER: Yes, Your Honor.

18         MS. WIPPER: Yes, Your Honor.

19         THE COURT: So let's have the parties work on this

20  stipulation and see if you can get the language sorted out.  I

21  think it's helpful to do this as soon as possible.  When can

22  the parties work out the language of the stipulation?

23         MS. WIPPER: Plaintiffs are available today to work

24  it out before the deposition tomorrow.

25         THE COURT: What about defendants?

1          MR. BRECHER: We're available, Judge.

2          THE COURT: So let's have the parties work this out

3     and let's have the parties go ahead and file a copy or just

4     email to my chambers a copy of the stipulation once the

5     parties have agreed upon that tomorrow.

6                    [Pause in proceedings.]

7          THE COURT:  Actually let's do this.  Let's have the

8     parties actually fax it.  We'll go a little bit older in terms

9     of the technology.  Let's have the parties fax it to chambers

10    and if you could fax it tonight that would be good.  The fax

11    line is -- hello, are the parties there?

12                   [Pause in proceedings.]

13         THE COURT: So, yes, I had to find out what our fax

14    line was.  The fax line to chambers is 212-803 -- 805-7995.

15    So fax that to chambers tonight and -- so what we are doing is

16    we are -- now that we have this clarification we are modifying

17    Judge Peck's order which was an adoption of Judge Sullivan's

18    order.  So I guess we're modifying Judge Peck's order and

19    Judge Sullivan's order.

20         MALE VOICE:  Your Honor, this is George [inaudible]

21    from [inaudible] dispute [inaudible] and I mentioning this at

22    the end of this only because I've listened but I would think

23    the meet and confer is between the MSL Group as the defendant

24    and the plaintiffs.  So you mentioned all parties.  This is

25    not a matter in which we've been involved.  So I would submit

1  I don't have to participate in the meet and confer and

2  stipulation.  I think it's adequate for the stipulation just

3  between [inaudible] the MSL Group.

4          THE COURT: I think that makes sense to me.  Do the

5  parties have anything to add to that?

6          MS. WIPPER: No, Your Honor.  This is Janette Wipper

7  for the plaintiff.  There is just one other issue we wanted to

8  clarify before we ended the call.  On the issue of the

9  $25,000.00 cap --

10         THE COURT: There is no cap.  There's no cap.  I

11  think that's something that the jury would have to determine

12  at a later date.  I'm not putting any cap on anything at this

13  point.

14         MS. WIPPER: Thank you, Your Honor.

15         THE COURT: Again, for clarification, yes, the

16  parties involved in the stipulation should obviously work on

17  that stipulation.  All parties who are affected by the

18  stipulation should work on that and fax that to chambers

19  tonight.

20         Anything else from plaintiff today?

21         MS. WIPPER: No, Your Honor.

22         THE COURT: Anything else from defendant?

23         MR. BRECHER: No, Your Honor.  Thank you.

24         THE COURT: Anything from anybody else?

25  (Parties state no.)

22

1                THE COURT: Thank you very much.   Have a good day.

2                               *   *   *   *   *

23

1      I certify that the foregoing is a court transcript from

2 an electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5                                    _____

6                                              Shari Riemer

7 Dated:  January 25, 2012

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25