UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACKSON LEWIS LLP
*ATTORNEYS FOR DEFENDANT MSLGroup*
58 South Service Rd., Ste. 410
Melville, New York 11747
(631) 247-0404
    ATTORNEYS OF RECORD:
        VICTORIA WOODIN CHAVEY, ESQ.
        JEFFREY W. BRECHER, ESQ.

-----------------------------------------------------------------X

MONIQUE DA SILVA MOORE,
MARYELLEN O'DONOHUE, LAURIE
MAYERS, HEATHER PIERCE, and
KATHERINE WILKINSON, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

vs.

PUBLICIS GROUPE SA and
MSLGROUP,

                Defendants.

-----------------------------------------------------------------X

Case No. 11-cv-1279 (ALC) (AJP)


**DEFENDANT MSLGROUP'S OPPOSITION TO
PLAINTIFFS' RULE 72(A) OBJECTION TO
MAGISTRATE JUDGE PECK'S JANUARY 4, 2012 RULINGS**

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................ ii

Preliminary Statement ........................................................................................................... 5

Factual Background And Relevant Procedural History ....................................................... 5

Argument ................................................................................................................................ 7

    I.    Standard of Review ................................................................................................ 7

    II.    Judge Peck's Discovery Rulings Were Neither Clearly Erroneous Nor Contrary to Law .................................................................................................... 8

        A.    Discovery Relating to Workplace Concerns for the Last 10 Years ............... 9

        B.    Discovery Relating to Production of Personnel Action Notice "PAN" ........ 11

        C.    Discovery Relating to Promotion Recommendation Forms .......................... 12

        D.    Discovery Relating to an Undefined "Reorganization" ................................. 13

        E.    Judge Peck's Order Limiting Discovery Period to February 24, 2011 ......... 14

    III.    Other Agencies Were Properly Excluded From Discovery ....................................... 16

        A.    PBJS ................................................................................................................ 16

        B.    Winner & Associates ..................................................................................... 17

Conclusion ............................................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Carroll v. United Parcel Service, Inc.*,
  71 Fed. Appx. 949, 2003 U.S. App. Lexis 16132 (3d Cir. 2003) ............................................ 11

*Cedar Petrochemicals, Inc., v. Dongbu Hannong Chemical Co., Ltd.*,
  2011 U.S. Dist. LEXIS 110715 (S.D.N.Y. September 28, 2011) ............................................ 4

*Cendant Mortgage Corp. v. Saxon Nat'l Mortgage*,
  492 F. Supp. 2d 119 (E.D.N.Y. 2007) .................................................................................. 4

*Collins v. City of New York*,
  222 F.R.D. 249 (S.D.N.Y. 2004) ........................................................................................... 5

*Equal Employment Opportunity Commissions v. Dillon Companies, Inc.*,
  2010 U.S. Dist. Lexis 92724 (D. Colo. August 13, 2010) .................................................... 11

*Flanagan v. Travelers Ins. Co.*,
  111 F.R.D. 42 (W.D.N.Y. 1986) ........................................................................................... 11

*Fleming v. City of New York*,
  233 F. Supp. 2d 613 (S.D.N.Y. 2002) .................................................................................. 11

*Gibbs v. Bank of America Corp.*,
  2011 U.S. Dist. LEXIS 136013 (E.D.N.Y. Nov. 28, 2011) .................................................... 4

*Graves v. Deutsche Bank Securities, Inc.*,
  2011 U.S. Dist. LEXIS 140429 (S.D.N.Y. December 5, 2011) ............................................. 4

*In Re Agent Orange Product Liability Litigation*,
  517 F.3d 76 (2d Cir. 2008) .................................................................................................... 4

*In Re Consolidated RNC Cases*,
  2009 U.S. Dist. LEXIS 40293 (S.D.N.Y. Jan. 8, 2009) .......................................................... 4

*In re Salomon Analyst Level 3 Litigation*,
  350 F. Supp. 2d 477 (S.D.N.Y. 2004) ................................................................................. 12

*Loeffler v. Staten Island Univ. Hosp.*,
  2010 U.S. Dist. LEXIS 24274 (E.D.N.Y. March 16, 2010) .................................................. 2

*Miller v. American Family Mut. Ins. Co.*,
  2010 U.S. Dist. LEXIS 85338, (D. Ariz. 2010) .................................................................... 13

*Obiajulu v. City of Rochester*,
  166 F.R.D. 293 (W.D.N.Y. 1996) ........................................................................................ 11

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
  2000 U.S. Dist. LEXIS 4892 (S.D.N.Y. May 10, 2010)..........................................................4

*U2 Home Entm't, Inc., v. Hong Wei Int'l Trading Inc.*,
  2007 U.S. Dist. LEXIS 59233 (S.D.N.Y. August 13, 2007) ......................................................4

*Vajner v. City of Lake Station*,
  2010 U.S Dist. Lexis 111298 (N.D. Ind. Oct. 18, 2010) .........................................................11

*Yapuna v. Global Horizons Manpower Inc.*,
  254 F.R.D. 407 (E.D. Wash. 2008)..........................................................................................14

**RULES**

Fed. R. Civ. P. 26(b)(1)....................................................................................................................5

Fed. R. Civ. P. 26(b)(2)(C)(i), (iii) ..................................................................................................5

Local Rule 11.1 ................................................................................................................................2

Fed. R. Civ. P. 72(a) ........................................................................................................................4

Defendant, MSLGroup Americas, Inc. ("MSL"), hereby submits this memorandum in opposition to Plaintiffs' Objection to Magistrate Judge Peck's January 4, 2012 discovery rulings.

## PRELIMINARY STATEMENT

Plaintiffs' Objection should be denied because, especially in light of the "substantial deference" owed to a Magistrate Judge's decisions on non-dispositive matters, Judge Peck's rulings were neither "clearly erroneous" nor "contrary to law." Indeed, Plaintiffs expressly *consented* to several of the rulings to which they now object and, on other issues, proposed the very parameters that Judge Peck adopted. Moreover, all of Judge Peck's rulings were carefully considered against the backdrop of Plaintiffs' specific claims and the representations made in Court concerning the need for the discovery sought. Additionally, Plaintiffs have had more than an adequate opportunity to present their arguments—doing so in two detailed letters (one of which was ten single-spaced pages, and the other seven single-spaced pages) and at an extended discovery conference before Magistrate Judge Peck on January 4, 2012. Accordingly, and given the heavy burden that Plaintiffs bear in seeking to reverse the non-dispositive rulings of a Magistrate Judge, Plaintiffs' Objection should be dismissed.

## FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

Plaintiffs' objections relate to discovery rulings that Magistrate Judge Peck made at an extended discovery conference held on January 4, 2012. Prior to the conference, Plaintiffs submitted two pre-motion conference letters to Judge Peck, one on December 27 and the other on December 29, 2011. The first letter, dated December 27, 2011, challenged several of MSL's

responses to Plaintiffs' Second Request for the Production of Documents.[1] The second letter, dated December 29, 2011, challenged responses by MSL to Plaintiffs' First Request for the Production of Documents.[2] Although Plaintiffs now complain that they were permitted to make only "very limited remarks" on January 4, Judge Peck in fact painstaking reviewed all issues raised in both letters, enlarging the time initially set aside for the conference and ultimately devoting the better part of a day of oral argument to the issues raised in the letters.[3] Indeed, on several occasions during that extended conference, the parties asked Judge Peck to return to an issue already decided, either to clarify or to consider additional information, and Judge Peck did so.

     Plaintiffs' challenges to Judge Peck's well-considered rulings fail for several reasons. First, Plaintiffs argue that Judge Peck unduly restricted the temporal scope of their requests. But the transcript of the January 4 conference makes clear that Plaintiffs themselves either consented to or proposed some of the temporal parameters that they now attack. Although Plaintiffs challenge each of Judge Peck's individual rulings as one, Judge Peck in fact carefully considered the various claims asserted and made reasoned decisions as to each discovery issue raised. As to the request for years of complaints regarding the workplace, Judge Peck afforded Plaintiffs between three and nine years of complaints on both gender discrimination and sexual harassment. These rulings are not clearly erroneous, as Plaintiffs' claims allege that MSL's

---

[1] The December 27, 2011 letter is attached as Exhibit A to the Declaration of Siham Nurhussein, dated January 18, 2012.
[2] The December 29, 2011 letter is attached as Exhibit B to the Declaration of Siham Nurshussein, dated January 18, 2012.
[3] Plaintiffs' claim that they were not given the opportunity to present their arguments to the Court is belied by the record. The December 27, 2011 letter was ten single-spaced pages (in 11 point font), not including exhibits. Because Magistrate Judge Peck's Individual Rules limit motions to 25 pages, and, under Local Rule 11.1, motions must be made in 12-point font double-spaced, the December 27, 2011 letter likely equaled or exceeded the page limitations applicable to motions. The December 29, 2011 letter, was seven single-spaced pages (in 11-point font) and also provided Plaintiffs with a full opportunity to present their argument. Regardless, under Rule 26(b)(2)(C), the Court may limit discovery upon the motion of a party or its *own* motion. Fed. R. Civ. P. 26(b)(2)(C); *Loeffler v. Staten Island Univ. Hosp.*, 2010 U.S. Dist. LEXIS 24274, *4 (E.D.N.Y. March 16, 2010).

allegedly discriminatory policy or practice did not begin until January 1, 2008, when Jim Tsokanos became the President of MSL-Americas.  Plaintiffs' allegations specifically distinguish the period from January 1, 2008 prior to arguing that the alleged discrimination resulted from acts or omissions by Mr. Tsokanos after he became President. (*See, e.g.*, Am. Compl., ¶¶ 17, 51-56, 58-61, 71, 73-76, 80, 83, 89-90, 95, 101-109, 184, 192).  Accordingly, because all of Judge Peck's rulings regarding temporal scope either derived from Plaintiffs' own proposals, were *consented* to by Plaintiffs, or were reasonable and consistent with existing law, Plaintiffs' challenge to this aspect of Judge Peck's order should be rejected.

Second, as to Judge Peck's refusal to permit discovery as to separate agencies—PBJS (which is not even a Public Relations agency) and Winner & Associates (at which no Plaintiff ever worked and as to which there are no allegations in the Amended Complaint)—Plaintiffs assert that Judge Peck's rulings were improper and they should have been permitted to engage in a broad exploration as to these separate agencies.  But no named or opt-in Plaintiff ever worked at these separate agencies and there is not one allegation in the Amended Complaint pertaining to these separate agencies.  Accordingly, there is no basis for including PBJS and Winner & Associates in the discovery in this case, and Judge Peck's ruling was wholly proper.

**ARGUMENT**

*I.     Standard of Review*

Magistrate Judges have broad discretion in resolving discovery matters, and a party seeking to overturn a discovery order bears a heavy burden. *Gibbs v. Bank of America Corp.*, 2011 U.S. Dist. LEXIS 136013, *3 (E.D.N.Y. Nov. 28, 2011); *see also In Re Agent Orange Product Liability Litigation*, 517 F.3d 76, 103 (2d Cir. 2008). The District Court's review of a discovery order is not de novo. *Cendant Mortgage Corp. v. Saxon Nat'l Mortgage*, 492 F. Supp. 2d 119, 124 (E.D.N.Y. 2007). Rather, a non-dispositive order of a Magistrate Judge is afforded "substantial deference" and, pursuant to Rule 72(a), may be set aside only if the order is clearly erroneous or is contrary to law. *Graves v. Deutsche Bank Securities, Inc.*, 2011 U.S. Dist. LEXIS 140429 (S.D.N.Y. December 5, 2011); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2000 U.S. Dist. LEXIS 4892, *4 (S.D.N.Y. May 10, 2010); *Gibbs*, 2011 U.S. Dist. LEXIS 136013 at *3 (noting that the standard of review is "highly deferential").

An order is "clearly erroneous" when the reviewing court, based on the entire record, is left with the definite and firm conviction that a mistake has been committed. *In Re Consolidated RNC Cases*, 2009 U.S. Dist. LEXIS 40293, *16 (S.D.N.Y. Jan. 8, 2009). An order is "contrary to law" when it fails to apply or misapplies relevant statutes, case law or rules of procedure. *Id*. As noted, the party seeking to overturn a Magistrate Judge's discretion carries a "heavy burden". *Cedar Petrochemicals, Inc., v. Dongbu Hannong Chemical Co., Ltd.*, 2011 U.S. Dist. LEXIS 110715, *3 (S.D.N.Y. September 28, 2011); *U2 Home Entm't, Inc., v. Hong Wei Int'l Trading Inc.*, 2007 U.S. Dist. LEXIS 59233, *4 (S.D.N.Y. August 13, 2007). Plaintiffs have not met their burden.

## II. *Judge Peck's Discovery Rulings Were Neither Clearly Erroneous Nor Contrary to Law*

Magistrate Judge Peck's discovery rulings on January 4, 2012 were fully consistent with Federal Rule of Civil Procedure Rule 26(b), which provides that parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Pursuant to Rule 26, courts may, on motion by a party, or *sua sponte*, limit discovery where the discovery sought is unreasonably cumulative or duplicative, can be obtained from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(i), (iii). "Courts should not grant discovery requests based on pure speculation that amounts to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses". *Collins v. City of New York*, 222 F.R.D. 249, 252 (S.D.N.Y. 2004).

### A. *Discovery Relating to Workplace Concerns for the Last 10 Years*

Magistrate Judge Peck's first ruling addressed Plaintiffs' broad request for discovery relating to complaints made since 2001 by MSL employees about allegedly unfair treatment and workplace concerns of any kind. The requests at issue sought to encompass all claims of alleged discrimination, including but not limited to race and disability discrimination, and all other kinds of complaints about the work environment in the last eleven years. Plaintiffs' request thus was not limited to matters within the scope of the Amended Complaint, but instead sought documents reflecting any kind of concern about any aspect of the workplace at MSL, including, for example, "[a]ll … documents relating to or reflecting employee impressions regarding MSL's

5

work environment" and "concerns … raised with MSLGroup by any female employee in the U.S. about her employment."

Judge Peck first ruled Plaintiffs' broad requests would be limited to gender and sexual harassment discrimination complaints made by female Public Relations employees. Plaintiffs did not challenge or object to that ruling at the conference, and they do not challenge that ruling here. (Tr. at 8:21-25)

Then, *Plaintiffs' counsel* suggested that the temporal scope for complaints of gender-based pay discrimination begin in February 2005, given the six-year statute of limitations under the New York State Equal Pay Act:

> MS. WIPPER: If I may make a comment: Plaintiffs would be willing to limit the time period to 2005 to the present, which is the longest statutory period applicable in a case under the New York Equal Pay Act. It is also consistent with –

Tr. 9:7-11; *see also* Plfs' Br. p. 10 ("Plaintiffs . . . agreed to further limit the temporal scope to 2005"). Judge Peck agreed to require MSL to produce complaints relating to gender-based pay discrimination back to February 2005. Plaintiffs now argue the temporal scope ordered by Judge Peck was too narrow, but their argument fails because this scope was their own suggestion.

In a similar fashion, Judge Peck required MSL to produce gender and sexual harassment discrimination complaints generally (*i.e.*, complaints relating to gender discrimination other than pay) for the three-year period prior to the filing of the Complaint, which is consistent with the three-year statute of limitations that is the longest period available for Plaintiffs' federal claims. Upon Plaintiffs' further application, however, Judge Peck extended the temporal scope applicable to these requests, by agreeing with Plaintiffs that, as to Jim Tsokanos, who is President of MSL-Americas and a central target of Plaintiffs' allegations, MSL should produce a

6

complaint about him when he was in the Atlanta office several years prior to 2005. Tr. 11:1-16; 62:3-7. Thus, Plaintiffs' assertion that Judge Peck limited Plaintiffs to "complaints that fell within a portion of the liability period" is not accurate. Indeed, Judge Peck's rulings provided Plaintiffs with almost *nine years* of gender discrimination and sexual harassment complaints relating to MSL's President, *six years* of gender-based pay discrimination complaints, and *three years* of complaints of alleged gender discrimination and sexual harassment. Importantly, and as Judge Peck specifically noted, the Plaintiffs' entire theory of liability rests on the notion that, in 2008, when Mr. Tsokanos became President of the Americas, the gender discriminatory policy or practice began.[4] Accordingly, Judge Peck's rulings about prior complaints are not clearly erroneous or contrary to law, but instead are reasonably tailored the claims that Plaintiffs make in the case.

Notably, the Court rejected MSL's proposed limitation of these requests to complaints about Managing Directors and the President, and also rejected MSL's objection to producing complaints about sexual harassment, which was based on the absence of any claim of sexual harassment in this case. Judge Peck's ruling about prior complaints is consistent with the Court's duty to manage the scope of the discovery, and Plaintiffs have not satisfied their "heavy burden" given the "substantial deference" afforded to a Magistrate Judge's discovery rulings.

### B. *Discovery Relating to Production of Personnel Action Notice "PAN"*

Plaintiffs also attack Magistrate Judge Peck's ruling on Plaintiffs' request for Personnel Action Notices ("PAN"),[5] arguing that, in ordering MSL to produce a random sample of PANs,

---

[4] See Plfs' Br. p. 2 ("Plaintiffs also challenge a specific, company-wide practice of gender discrimination resulting from MSL's reorganization of its North American region and PR practice beginning in or around 2008").

[5] A PAN is a form that is completed at MSL when a change occurs to an employee's status, compensation, or other such matter. The PANs are paper documents, but the information contained in them is entered into a payroll system. MSL previously produced to Plaintiffs extensive electronic data from the system. Thus, Plaintiffs *already have* information regarding every hire, termination, promotion, pay change, transfer, and leave, among other things, for every Public Relations employee, including but not limited to all putative class members.

7

Judge Peck should not have limited the sample to a time period beginning in February 2008. Plaintiffs do not challenge the PANs ruling except as to temporal scope.

Judge Peck's ruling as to PANs was not clearly erroneous or contrary to law. The basis of Plaintiffs' request for PANs was their representation that the electronic data produced by MSL contained "errors." For example, Plaintiffs claimed the data showed an employee was working full time, but the employee in fact worked part time. Thus, they requested the PANS as a means of corroborating the extensive electronic data produced months ago. Because producing every PAN for every decision made, however, would be unduly burdensome and unwarranted, absent widespread and significant proof of errors in the data, Judge Peck ordered a random sample, which Plaintiffs do not challenge.

Specifically, after weighing the need for the documents, the burden of producing it, and the fact that the data has already been produced in an electronic form, Magistrate Judge Peck ordered MSL to produce a random sample of PANS for the period February 2008 to February 24, 2011. This approach was intended to allow Plaintiffs the opportunity to review the sample and determine whether there are significant errors in the data, as they claim. Tr. 15:16-25. MSL is now in the process of complying with the order regarding PANs (using a random sample proposed by Plaintiffs), and it would be premature to conclude that this approach was insufficient to address Plaintiffs' general claim of errors in the electronic data

Plaintiffs nonetheless now argue that Judge Peck's order should not have limited the random sample to the period beginning February 2008, presumably arguing the random sample should include the period prior to February 2008. But the purpose of the random sample is to determine whether there are any errors in the data previously produced, and a ordering a sample consist of PANs during a *three year* period is neither "clearly erroneous" or "contrary to law."

8

### C. *Discovery Relating to Promotion Recommendation Forms*

Plaintiffs also object to the temporal scope of discovery that Judge Peck ordered with regard to "Promotion Recommendation Forms." The Promotion Recommendation Form was in use at MSL beginning in 2009 to document local office's recommendations for employee promotions. Plaintiffs' argument is inconsistent with their purported class theory and was properly rejected by Judge Peck.

Plaintiffs sought Promotion Recommendation Forms for the ostensible purpose of determining who signed the Forms, to explore whether there was centralized control of this function. In light of this stated purpose, Judge Peck required MSL either to stipulate to who signed the Forms, or to produce a random sample of the Forms to allow Plaintiffs to assess the signatures thereon. MSL had already produced extensive electronic HR data identifying all promotions and the dates of the promotion, and so the purpose of producing the Promotion Recommendation Forms was not to reveal promotion information. Tr. 19:13-25.

In light of this limited purpose, there is absolutely no reason for Plaintiffs to have access to promotion data from earlier than February 2008, which is the beginning of the earliest liability period other than the New York state law pay discrimination claim. In any event, the Forms were not used until 2009, and thus Plaintiffs' request for Forms from before 2008 is of no consequence as a practical matter.

### D. *Discovery Relating to an Undefined "Reorganization"*

Plaintiffs also seek to challenge Judge Peck's order regarding "reorganization" related documents because that order requires production of documents from 2008 forward. This challenge fails because it was Plaintiffs themselves who suggested that the "reorganization" documents be produced going back to the beginning of 2008. Tr. 34:13-14 (Ms. Wipper: "I would suggest January 1 [2008] because that's when James Tsokanos was promoted"). The

9

Court accepted this proposal temporal scope. Accordingly, Plaintiffs cannot now validly challenge Judge Peck's limitation of the temporal scope of their request to January 1, 2008

### E. *Judge Peck's Order Limiting Discovery Period to February 24, 2011*

Judge Peck ordered that discovery should be limited to the period ending February 24, 2011, the date the Complaint was filed. Plaintiffs argued discovery should be cut-off at the date of the filing of the Amended Complaint, April 14, 2011. Tr. 65:6-7.[6] The February 24, 2011 date is a reasonable cut-off for discovery, however, in order to manage the voluminous discovery sought by Plaintiffs. Without some limitation or end-date to the scope of the discovery period, discovery would be never-ending. Indeed, without a cut-off date, due to the discovery sought by Plaintiffs (*e.g*., data regarding terminations, promotions, changes in salary), MSL would be required to supplement its discovery responses every time an employee was hired, received a pay increase, bonus, title change, promotion, transfer, took a maternity leave, or any time it implemented any policy relating to pay, promotions, bonuses, or leave, just to name a few. Indeed, Plaintiffs would become the repository for nearly every employment decision made by MSL on a daily basis. This is unmanageable, and Judge Peck acted reasonably when setting forth an end-date for discovery.

Additionally, the parties have also been engaged in a lengthy negotiation (with Judge Peck's assistance) regarding an appropriate protocol for the collection and review of electronically stored information using predictive coding. Over 3.2 million e-mails have already been collected for review at an estimated cost exceeding $400,000. Under Plaintiffs' view (cutting off discovery at the date of the judgment), MSL would need to continually (on a daily

---

[6] Plaintiffs' motion now belatedly asserts that they proposed the April 14, 2011 date because they were given "limited options" but the record makes clear that they were not given "limited options." Rather, they did not preserve any objection and/or propose the April 14, 2011 date subject to any objection. They now appear to advocate no end-date for the discovery.

10

basis) supplement this collection for each custodian.  Indeed, MSL would be required to continually supplement its discovery beyond the date set by the Court for the *completion* of fact discovery (June 2012).

      The discovery cut-off ordered by Judge Peck provides substantial discovery for the period both before and after the Plaintiffs' employment, which Plaintiffs fail to discuss.  Plaintiff Heather Pierce's last day of employment, for example, was December 1, 2008, thereby providing over two years of discovery after her employment terminated.  Plaintiff Wilkinson resigned in December 2009; Plaintiff Da Silva Moore in January 2010; Plaintiff Mary Ellen O'Donohue in February 2010, and Plaintiff Mayers in May 2010.  The discovery period thereby provides a year of discovery for almost all named Plaintiffs after their employment ended, and between three and six years prior to the filing of the Complaint.  *See  Fleming v. City of New York*, 233 F. Supp. 2d 613 (S.D.N.Y. 2002) (granting motion for protective order limiting temporal scope of discovery to three years prior to plaintiff's employment); *Obiajulu v. City of Rochester*, 166 F.R.D. 293, 296 (W.D.N.Y. 1996) (limiting temporal scope of discovery in employment discrimination claim to three years prior to the commencement of the lawsuit); *Carroll v. United Parcel Service, Inc.*, 71 Fed. Appx. 949, 2003 U.S. App. Lexis 16132 (3d Cir. 2003) (affirming district court denial of plaintiff's request for records in employment discrimination case for 12 years, and limiting the request to period of five years); *Vajner v. City of Lake Station*, 2010 U.S Dist. Lexis 111298 (N.D. Ind. Oct. 18, 2010) (noting that in employment discrimination cases, courts generally limit period of discovery to three to five years) (collecting cases); *Equal Employment Opportunity Commissions v. Dillon Companies, Inc.*, 2010 U.S. Dist. Lexis 92724 (D. Colo. August 13, 2010) (limiting discovery of comparator information to three years)*; Flanagan v. Travelers Ins. Co.*, 111 F.R.D. 42, *47-48 (W.D.N.Y. 1986) (limiting discovery to date of plaintiff's termination).

Only one individual, Carol Perlman, was terminated after February 2011, but she is not a named Plaintiff and has not asserted a gender discrimination claim under Title VII or New York law. She has only asserted an equal pay claim under the Equal Pay Act in her individual capacity.

### III.     Other Agencies Were Properly Excluded From Discovery

Plaintiffs object to Judge Peck's ruling excluding from discovery data from separate agencies that are not the subject of any allegations in the Amended Complaint and in which no named Plaintiff or opt-in Plaintiff ever worked. Plaintiffs are incorrect in suggesting that Judge Peck's ruling contravenes Judge Sullivan's prior discovery order that required production of company-wide data, because that order did not extend to separate or non-Public Relations agencies. (Plaintiffs' Br. P. 12).

#### A.     PBJS

Plaintiffs sought to include, on the proposed ESI Protocol custodian list, Don Lee, a Managing Director of PBJS. PBJS is not, however, a Public Relations agency,[7] and Plaintiffs' purported class is defined as including only Public Relations employees at MSL. (Am. Compl. ¶¶ 171, 179, 180) Accordingly, Judge Peck properly denied Plaintiffs' request to extend this action beyond Public Relations employees.

Moreover, Judge Peck properly observed that, because no named Plaintiff or opt-in Plaintiff ever worked at PBJS, the Plaintiffs had no standing to seek to represent women at PBJS. *In re Salomon Analyst Level 3 Litigation*, 350 F. Supp. 2d 477 (S.D.N.Y. 2004) (finding that while "lead plaintiffs …need not satisfy all elements of standing with respect to the entire

---

[7] As described in *Bloomberg Businessweek*, January 26, 2012, "PBJS Inc., a marketing agency, provides strategic and multi-channeled communication solutions. It offers event production services, such as video, content development, staging and event marketing." (Brecher Aff., Exh. 1. And, the PBJS website describes its business as follows: "We are PBJS, a creative studio that was built from the ground up to be unbound by channel. We bring expertise in experimental, digital, multicultural and social marketing and advertising. We also deliver online advertising, media planning, product sampling and communications results to brands engaging their customers in the conversation economy." (http://www.pbjs.com); (Brecher Aff. Exh. 2).

lawsuit, the selection of lead plaintiffs does not remove the basic requirement that at least one named plaintiff must have standing to pursue each claim alleged)." Judge Peck's ruling regarding PBJS and, specifically, Don Lee, is legally sound and is not clearly erroneous.

### B. Winner & Associates

#### 1. *Plaintiffs lack standing to represent Winner & Associates' employees.*

Judge Peck rightly observed that Plaintiffs lack standing to represent Winner & Associate employees. There have been no allegations of wrongdoing against anyone in the Winner organization and, other than counsel's statement that "We have been in contact with employees of Winner & Associates…" (Tr. P. 39), there are no facts to suggest Winner & Associates shares any common policies or practices with MSL. Significantly, none of the named Plaintiffs ever worked for Winner & Associates and none of them experienced any discriminatory conduct related to Winner & Associates. Generally, class representatives do not have standing to sue defendants who have not injured them even if those defendants have allegedly injured other class members. *See Miller v. American Family Mut. Ins. Co.*, 2010 U.S. Dist. LEXIS 85338 (D. Ariz. 2010) (finding that at least one named class representative must have standing to assert a claim against a particular defendant; limiting plaintiffs to asserting claims on behalf of those insured by the insurance company with which plaintiffs had a contractual relationship; plaintiffs could not assert claims on behalf of those insured by a company with which plaintiffs did not have a contractual relationship); *Yapuna v. Global Horizons Manpower Inc.*, 254 F.R.D. 407 (E.D. Wash. 2008) (citing Newberg on Class Actions) (dismissing Fair Labor Standards Act claims brought against an employer whom none of the named plaintiffs had worked for even thought the named plaintiffs had identical employment contracts with their own employers). Here, there have been *no allegations* against anyone associated with Winner & Associates. Based on the

13

foregoing facts and legal authority, Judge Peck's rulings to exclude Plaintiffs from this minute portion of otherwise expansive discovery is sound legally and factually.

## CONCLUSION

Magistrate Judges have considerable discretion to manage the scope of discovery, and their decisions on non-dispositive matters are entitled to substantial deference. Such decisions may be reversed only when they are contrary to law or clearly erroneous. Plaintiffs have not met their "heavy burden" to establish that Magistrate Judge Peck's multiple rulings were in error, especially because Plaintiffs consented to several of the rulings or themselves suggested the relevant scope of discovery, which they now challenge. Accordingly, MSL respectfully requests the Court to deny the objections and affirm the rulings of Judge Peck at the January 4, 2012 conference.

Dated: Melville, New York
      February 6, 2012

Respectfully submitted,

JACKSON LEWIS LLP
*ATTORNEYS FOR DEFENDANT "MSLGROUP"*
58 S. Service Road, Suite 410
Melville, New York  11747
Tel.: (631) 247-4605

By: _____
    VICTORIA WOODIN CHAVEY, ESQ.
    JEFFREY W. BRECHER, ESQ.

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 6, 2012, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

Janette Wipper, Esq.
Sanford Wittels & Heisler LLP
555 Montgomery Street,
Suite 1206
San Francisco, CA  94111


George Stohner, Esq.
Paul C. Evans, Esq.
Morgan Lewis Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921




              JEFFREY W. BRECHER



4847-0731-9310, v.  2