1                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK

2

3   ------------------------------------X
                              :

4   DA SILVA MOORE,              :
                              :  11-CV-01279 (AJP)

5               Plaintiffs,   :
                              :

6            v.            :  500 Pearl Street
                              :  New York, New York

7   PUBLICIS GROUPE, *et al.*,   :
                              :  January 18, 2012

8               Defendants.   :
   ------------------------------------X

9

10              TRANSCRIPT OF CIVIL CAUSE FOR
               TELEPHONIC STATUS CONFERENCE

11      BEFORE THE HONORABLE ANDREW L. CARTER, JR.
              UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   For the Plaintiffs:       JANETTE LYNN WIPPER, ESQ.
                         Sanford Wittels & Heisler, LLP

15                         555 Montgomery Street, Suite #820
                         San Francisco, California  90411

16
                         DEEPIKA BAINS, ESQ.

17                         1350 Avenue of the Americas
                         31st Floor

18                         New York, New York  10022

19

20   For Defendant MSL Group:   JEFREY W. BRECHER, ESQ.
                         Jackson Lewis, LLP

21                         58 South Service Road
                         Melville, New York  11747

22

23   Court Transcriber:        RUTH ANN HAGER, C.E.T.**D-641
                         TypeWrite Word Processing Service
                         211 N. Milton Road

24                         Saratoga Springs, New York  12866

25

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

2

1              THE CLERK:  Civil cause for a telephone status

2      conference in case number 11-CV-1279, Moore, et al., v.

3      Publicis Groupe, et al.

4              Counsel, please state your appearance.  For the

5      plaintiff?

6              MS. WIPPER:  This is Janette Wipper for the

7      plaintiff.

8              MS. BAINS:  Deepika Bains for the plaintiff.

9              THE CLERK:  And for the defendant.

10              MR. BRECHER:  This is Jeffrey Brecher, Jackson

11      Lewis, for defendant MSL Group.

12              THE COURT:  All right.  Good afternoon.  All right.

13      I've seen each side's proposed stipulations.  I have a couple

14      of questions.  In plaintiffs' proposed stipulation number 6,

15      plaintiffs indicate that they "shall not introduce or

16      otherwise rely on or refer to any evidence relating to any

17      physical symptoms related to a medical or mental health

18      diagnosis," et cetera.  And then in plaintiffs' proposed 7 you

19      have a list of conditions or states of being that you feel

20      that the plaintiffs would be able to testify about including

21      toward the middle of that "headaches, hives, and welts."  You

22      go on to mention "clammy in legs and stomach cramps."

23              Let me hear from plaintiffs as to why headaches or

24      hives and welts, just to take those first three in that little

25      area, would not be physical symptoms related to a medical or

3

1   mental health diagnosis or diagnosed conditions.

2           MS. WIPPER:  Well, as an initial matter, Your Honor,

3   the plaintiff has not sought treatment from a therapist at all

4   and has not sought any treatment from a medical doctor related

5   to their work-related issues.  So the cases that we've cited

6   and that we pulled this language from are similar to the case

7   we have here where plaintiffs have no medical information,

8   treatment related to their claim and so the language that

9   we've proposed has been pulled out of case law in the Second

10  Circuit both from the Second Circuit and from District Court

11  cases.  So with respect to headaches that comes from <u>Patterson</u>

12  <u>v. Lasomago</u> [Ph.] where the Second Circuit upheld a jury award

13  for garden variety damages, $100,000.00 based on testimony

14  concerning sleeplessness, headaches, and stomach pains, as

15  well as humiliation and loss of self-confidence.

16          So all of the language that we put in paragraph 7

17  comes from case law related to garden variety claims where no

18  medical evidence was at issue because the plaintiffs did not

19  seek any type of medical assistance for their claim.

20          THE COURT:  Okay.  But those cases were cases in

21  which the Second Circuit was reviewing, I believe, the

22  District Court's discretion in reducing jury amounts.  Is that

23  correct?

24          MS. WIPPER:  Yes, Your Honor.

25          THE COURT:  And that's a situation in which the

4

1   plaintiffs testified as to whatever they had and the District

2   Court reduced the damages to garden variety damages and the

3   Second Circuit held that the District Court did not abuse its

4   discretion, correct?

5           MS. WIPPER:  Yes, Your Honor.

6           THE COURT:  Okay.  That seems slightly different

7   than a situation here in which we're trying to -- in which the

8   plaintiffs are not waiving the privilege regarding the mental

9   health records, and that's pretty clear, but there's also this

10  issue of medical records.  And I guess plaintiffs -- are

11  plaintiffs now saying that none of the plaintiffs that would

12  be covered by the stipulation have sought any medical

13  treatment, period, or just the claim that the medical

14  treatment that plaintiffs may have sought is not related to

15  the alleged discrimination?

16          MS. WIPPER:  Well, all of the plaintiffs have seen a

17  doctor in their life and the defendants have asked for

18  information concerning all medical doctors that they have seen

19  within the last ten years regardless of whether it had

20  anything to do with work or work-related stress.  So our

21  position is not that they haven't seen a medical doctor; our

22  position is that they haven't seen a medical doctor related to

23  anything concerning the claim.  The exception is the one

24  plaintiff that we mentioned on the previous conference calls

25  with Your Honor, Carol Perlman [Ph.], [indiscernible]

5

1   plaintiff under the Equal Pay Act, which is I think a law that

2   does not provide for compensatory damages as a remedy, so her

3   compensatory damages are really irrelevant to this discussion.

4   She would be an asset class member and not subject to

5   discovery under the Federal Rules of Civil Procedure absent

6   extraordinary circumstances, so her issue is really -- her

7   medical records, in our opinion, are irrelevant.  And she is

8   the only plaintiff that we're aware of, and we've confirmed

9   with the plaintiff, has not any sort of medical treatment from

10  a general doctor that has any relationship whatsoever to what

11  they experienced at work.

12          THE COURT:  Okay.  Because here's what my concern

13  is.  Obviously the plaintiffs can certainly testify about

14  humiliation, anger, frustration, things of that sort.  When we

15  start getting into the realm of headaches, hives, and welts,

16  it seems that it's a little unfair for the plaintiffs to be

17  able to testify that they were so stressed that they had hives

18  and welts or headaches or things of that nature if, in fact,

19  there are medical records that the defendants would not have

20  that would indicate that perhaps the plaintiffs' headaches

21  were caused by some other medical condition.  What's

22  plaintiffs' position on that?

23          MS. WIPPER:  Well, our position on this matter is

24  that we just didn't want to limit the plaintiffs beyond what

25  the case law has allowed for garden variety claims.  We're not

6

1   proposing that necessarily any of these plaintiffs are going

2   to be talking about hives or welts.  We just did not want to

3   enter into any stipulation that would limit our plaintiffs

4   from testifying to what they're already are entitled to

5   testify to under the case law and the circuit.

6           THE COURT:  Okay.  But, again, those cases that you

7   cited, it's your reading of those cases -- again, my reading

8   of those cases, again, it's a different -- those cases are in

9   a different state and it was a different state of a litigation

10  at that point.  Do you have at this point information that the

11  plaintiffs that would be covered by this stipulation intend to

12  testify about physical manifestations of their garden variety

13  emotional stress?

14          MS. WIPPER:  Yeah.  As far as we know, the

15  plaintiffs have not sought -- have not had any kind of

16  physical manifestation, have not sought treatment from a

17  medical doctor concerning anything related to work.  Our

18  concern is that defendants' requests for medical records go

19  way beyond that.  They've asked for information about any

20  therapist any plaintiff have seen in their lifetime.  The

21  plaintiffs haven't seen therapists but, you know, that request

22  is out there.

23          They've also asked for all the information from any

24  medical doctor they have seen within the last ten years.  At

25  the deposition of Kate Wilkerson when I asked defense counsel

1  Jeff Brecher, who's on the phone, if he would limit his

2  questioning to medical records concerning the claims and work-

3  related stress he refused.  So our concern is that the

4  requests and the information they're seeking go well beyond

5  what's relevant to this case in addition to the privilege

6  issue on privilege communication between a psychotherapist and

7  patient.

8          THE COURT:  Okay.  But let's focus on not the

9  psychotherapist privilege; let's focus on the medical records

10  that would not be subject to a privilege.  The medical records

11  regarding physical ailments, I guess is what I'd like to focus

12  on.

13          Let me hear from defendants on that.

14          MR. BRECHER:  Thank you, Your Honor.  You know, I

15  thought at the last conference that we had last week that we

16  were all on the same page pretty much and that we were going

17  to be able to work out an agreement.  We had a meet-and-confer

18  on Friday after the patient -- one of the plaintiffs'

19  depositions and I thought we had taken one or two steps

20  forward, but then later or earlier this week I think we took

21  three steps backwards.  And I think you hit all the points and

22  all the issues that we've had problems with and I think you

23  get a sense of why Judge Peck issued the order that he did is

24  that they're in and they're out.  They can't seem to make up

25  their mind as to whether they want to assert a claim or not

8

1   assert a claim.

2        If they're going to assert a claim for any kind of

3   emotional stress, injury that runs -- that could be beyond

4   garden variety and I believe the statements set forth in

5   paragraph 7 go beyond garden variety under the case law, then

6   they have to disclose the records.  If they're going to take

7   the position that they're only seeking garden variety damages

8   and limit it to what those truly are, then that's a different

9   story, but you can't have it both ways.  And I think that's

10  what Sims says with respect to sort of the fairness standard.

11  And it's unfair to a defendant to have a plaintiff testify at

12  trial, oh, I had -- you're admitting and I have weakness in my

13  legs and stomach cramps and it's all because of defendant,

14  where there may be medical records that explain that that's a

15  result of some other condition.

16        And so all we're seeking here is fairness.  And I

17  think it's -- I think the cases are clear that what garden

18  variety is and is not and it's certainly a physical

19  manifestation.  And the symptoms are non-garden variety and

20  you're correct that the cases that they cite are in a

21  completely different context and they have not cited a single

22  case involving the waiver of the physician -- or I'm sorry,

23  the psychotherapist [indiscernible] privilege of working with

24  medical records.

25        All of the cases that you have cited involve a

1  question of remitter after a jury trial or a default judgment

2  and the Court is now trying to figure out, well, do these look

3  like kind of garden variety damages in which case I'll give

4  you X or are these more significant in which case of the case

5  cited I can give you Y.  It's not a discussion in any of those

6  cases about the privilege, so I think you're correct that all

7  those cases are in a different context and are not applicable

8  here.

9           So the language that they've took from those cases

10  and injected into the stipulation should not be here and I

11  would ask the Court to so order our stipulation.  I think

12  we're all in agreement -- or I think we all have a pretty good

13  understanding of what is and what is not garden variety.  And

14  I think that paragraph says it over this tremendously and

15  that's why we're unable to submit joint stipulations.

16           THE COURT:  Okay.

17           MS. WIPPER:  Your Honor, if I may respond.

18           THE COURT:  Sure.

19           MS. WIPPER:  The issue is really not about the

20  waiver and the psychotherapist privilege because as I

21  previously stated, none of the plaintiffs has gotten treatment

22  from a therapist.  The issue is really about medical records

23  and the medical records that they are seeking and whether or

24  not they're going to as a result of testimony in a deposition

25  then try to seek, you know, all medical records going back ten

10

1  years from any doctor that any plaintiff had ever seen, even

2  though they had never seen any doctor related to anything for

3  any work-related stress.

4          So what I would represent to the Court is that there

5  are no medical records that are relevant to this case because

6  as far as we know and we, you know, confirmed it with all of

7  our plaintiffs and they have never seen a doctor with the

8  exception of Carol Perlman concerning anything related to

9  their claim.  So our position is that the records are

10  irrelevant.

11          And insofar as the Court is concerned that the

12  language in number 7 exceeds garden variety or will create

13  more disputes and not be able to resolve this issue with a

14  stipulation, we would be willing to modify the language in

15  number 7.  You know, we just thought taking the language from

16  the cases would be clearest way of making the stipulation

17  consistent with Second Circuit law.

18          THE COURT:  Okay.  Because, again, I think --

19          MR. BRECHER:  Judge, obviously it's our position

20  it's inconsistent with the Second Circuit law.

21          THE COURT:  Well, I think the parties are -- I think

22  the plaintiff is correct in that I don't think the issue here

23  is -- I think the parties keep conflating mental health

24  treatment with other medical treatment and I guess maybe

25  that's where all the confusion comes in on my part and the

11

1  parties' part as well.  Clearly there's a psychotherapist

2  privilege.  Clearly that has not been waived at this point.

3  Regarding garden variety emotional stress, again, that's

4  dealing with those emotional issues, those garden variety

5  emotional issues.  Now here's where it gets confusing.

6           Again, obviously the plaintiffs can talk about being

7  frustrated, humiliated, those sorts of things.  The

8  plaintiffs' position, if I'm understanding this, is that,

9  again, it's not a matter of privilege; it's a matter of

10  relevance, that the medical records -- the medical records --

11  in this case since no one has really sought mental health

12  treatment, the medical records here are not dealing with

13  mental health treatment.  The medical records for more

14  physical ailments are not relevant because the plaintiffs have

15  not sought treatment for physical ailments that have resulted

16  from the discrimination.  Is that the plaintiffs' position?

17           MS. WIPPER:  Yes, Your Honor.

18           THE COURT:  Okay.  And the --

19           MR. BRECHER:  My position, Judge, would be if they

20  haven't sought treatment for any physical ailment resulting

21  from any alleged discrimination there should be no testimony

22  of --

23           THE COURT:  Well --

24           MR. BRECHER:  -- stating that they've suffered any

25  physical symptoms and if there's no testimony that they

12

1  suffered any physical symptoms, then we don't need the

2  records.  That's -- you know, and it's resolved if that's

3  their representation.  As long as people don't get up on the

4  stand and testify, "I have welts" --

5          THE COURT:  Right.

6          MR. BRECHER:  -- "and weakness in my legs and

7  stomach cramps and sleeplessness" and, you know --

8          THE COURT:  Yes, because, again, I think that the

9  concern that I have is from defendants' perspective.  Even

10  though the plaintiffs are claiming that they haven't sought

11  any physical -- any medical treatment for any ailments

12  suffered as a result of discrimination, if the plaintiffs

13  start testifying about physical ailments, if they start

14  testifying that they have -- that a plaintiff has headaches

15  and they didn't seek treatment perhaps for those headaches as

16  a result of the discrimination but, for example, the

17  plaintiff -- again, hypothetically speaking -- has a long

18  history of high blood pressure which is causing headaches for

19  that plaintiff for the past several years, that's something

20  that defendants would be entitled to have and that under

21  plaintiffs' version of how the way things should work would

22  not be entitled to.  Is that correct from plaintiffs'

23  perspective?

24          MS. WIPPER:  Well, it's --

25          THE COURT:  I mean, because it's not -- the

13

1  defendants shouldn't be hamstrung into only -- if the

2  plaintiffs are going to talk about physical manifestations of

3  their emotional stress -- of their garden variety emotional

4  stress, the defendant should be allowed to probe as to whether

5  or not there are other physical conditions that have caused

6  those physical manifestations that would be present in medical

7  records.

8          So, for example, and what you've listed here if a

9  plaintiff says that "I was stressed as a result of this and I

10 broke out in hives," it certainly would be relevant that there

11 were medical records indicating that the plaintiff has a

12 history of breaking out in hives or some condition that causes

13 the plaintiff to break out in hives.  Wouldn't agree?  Counsel

14 for plaintiffs?

15         MS. WIPPER:  Your Honor, well, there is case law

16 that says that there's a garden variety claim.  It's not

17 necessarily that every physical manifestation would be

18 relevant because the medical issues are not at issue in the

19 case and the plaintiff is not relying on any type of medical

20 evidence to corroborate their claim.  So I understand with the

21 example of hives, but if someone had a headache I don't

22 necessarily believe that they would see a doctor concerning,

23 you know, a headache.  If it was extensive and they had

24 headaches for months or years, that would be a different

25 issue.  But notwithstanding that discussion, our position is

14

1  our plaintiffs haven't had any physical manifestations

2  concerning the claim.

3          THE COURT:  Okay.

4          MS. WIPPER:  So I don't believe that it's going to

5  be an issue that comes up.  Last week when we had the

6  deposition, the defense counsel was questioning the plaintiff

7  about symptoms, physical symptoms, about medical treatment

8  pushing them really to testify about something like this.  So

9  we're just trying to resolve the issue, not limit the

10  plaintiffs' testimony to the extent it would be inconsistent

11  with what they have a right to testify about under the case

12  law.  And we understand that, you know, with respect to

13  physical ailments that would rise to the level of hives or

14  something, you know, serious like longstanding headaches, that

15  would be beyond the scope of stipulation and the garden

16  variety claims that they're alleging.  That's not something

17  that they're going to be testifying about.

18          But if we're going to be limited -- plaintiffs are

19  going to be limited, I also would propose that defense is

20  limited in that they don't invite certain types of testimony

21  and confuse the issue, which is what happened last week.

22          THE COURT:  Okay.  Let me hear from defendants.

23          MR. BRECHER:  I don't think we invited any

24  responses, you know, sought to -- or attempted to make them

25  waive any kind of privilege.  It -- I think the issue is

1  relatively simple, which is if they want to withdraw the claim

2  for damages related to any kind of physical manifestation,

3  then they have to provide records that might demonstrate some

4  other cause. What I'm hearing from plaintiffs' counsel is

5  that there is no -- there is not going to be any testimony

6  regarding any physical manifestations and that the items that

7  are listed in paragraph 7 are really just possibilities that

8  they, you know, as I say, plucked from cases and that they had

9  no intention of testifying to any of this, in which case I

10 think it should be -- you know, we could resolve the issue by

11 just saying plaintiffs have no physical manifestations as a

12 result of any alleged discrimination and aren't going to

13 testify to such. And to me that would resolve the issue on

14 the medical records.

15         As to the psychotherapist records, again, if they

16 limit their testimony to garden variety, which is "I'm upset.

17 I was angry. I was embarrassed. I" -- you know, those kinds

18 of phrases, then there would be no waiver if they took the

19 finding "We're suffering from depression or anxiety." I

20 believe that that is a waiver under Sims.

21         THE COURT: Okay. Well, again, we'll get to that a

22 little bit later, but let's just see if we can clarify this a

23 little bit more once and for all. So plaintiffs at this point

24 with the plaintiffs who are covered by this proposed

25 stipulation right now do not have any physical manifestations

16

1  of their garden variety emotional stress that they wish to

2  testify about.  Is that correct?

3            MS. WIPPER:  With the exception of Carol Perlman,

4  which I mentioned earlier, who has claims under the Equal Pay

5  Act.

6            THE COURT:  Correct.

7            MS. WIPPER:  Which does not cover her.  Again, that

8  is correct.

9            THE COURT:  Okay.

10           MS. WIPPER:  If I can add one comment in response to

11  defense counsel's.  In terms of limiting it to physical

12  manifestations, what we would propose is limiting any kind of

13  testimony to what's consistent with the case law and not

14  necessarily picking and choosing between certain terms.  I

15  think we're in agreement that depressed [ph.] is that any

16  healthy, well-adjusted person may reasonably feel as a result

17  of experiencing discrimination is the operable standard, so we

18  would propose that that would be the standard in the

19  stipulation.

20            THE COURT:  What --

21            MR. BRECHER:  Judge, this is the problem.

22            THE COURT:  All right.

23            MR. BRECHER:  So they don't want to put in anything

24  specific.  They just want to put in whatever is consistent

25  with the case law, but as you can see we can't even agree on

1  what's consistent with the case law.  They have this paragraph

2  7 which they think is all consistent with Second Circuit case

3  law and I think the Court recognizes that it's not.  The cases

4  that they've cited are -- don't deal with this issue at all.

5           THE COURT:  Okay.

6           MR. BRECHER:  So --

7           MS. WIPPER:  But the --

8           MR. BRECHER:  I don't like to leave it in that kind

9  of indeterminate space.

10          THE COURT:  Okay.  I mean, again, I think the cases

11 do touch upon that and, again, I think what makes this a

12 little bit difficult is when we keep talking about garden

13 variety, emotional distress, and defendants keep stating, and

14 it is true, that if the plaintiffs start going beyond garden

15 variety emotional distress and put mental health at issue, it

16 could waive the psychotherapist privilege, but the plaintiffs

17 have indicated that's really irrelevant to this case in any

18 event.

19          I don't think that -- I don't know if we need to

20 come with an exhaustive list of things, but I do think that,

21 again, the physical manifestations create a problem for the

22 medical issues.  I think if a plaintiff were to testify that

23 she were stressed out and had headaches that doesn't waive the

24 psychotherapist privilege, but it certainly puts at issue and

25 makes more relevant potentially the medical records, but that

1  wouldn't waive the psychotherapist privilege for a plaintiff

2  to say that "I was stressed out and I -- and because I was

3  stressed, I had headaches."  But, again, I think that we're

4  all kind of -- the cases kind of use a lot of these terms

5  sometimes interchangeably and because of that it's easy to

6  start conflating these terms.

7          But let's just focus again on the medical records

8  because I don't think that there's anything that's been listed

9  here in what the plaintiffs have proposed that would waive the

10  psychotherapist privilege, which again is, I suppose, just

11  irrelevant in this case from what plaintiffs are saying

12  because no one has sought -- well, I don't know if that's true

13  or not but there's certainly -- it's -- the plaintiffs, I

14  think, have indicated that no one has sought any sort of

15  mental health treatment as result of the alleged

16  discrimination.  Is that correct?

17          MS. WIPPER:  Yes, Your Honor.

18          THE COURT:  Okay.  So then let's just deal again

19  with the physical manifestations.  I don't want to decide on

20  issues that aren't really ripe for decision.  If it really is

21  the case that at this point -- and, again, what we're dealing

22  with is the plaintiffs that are known at this time that we're

23  dealing with the stipulation.  I'm not sure if we're just

24  making things more complicated sometimes here, but let me get

25  a sense again.

1          I think we discussed last time I think we don't want

2     to put anything in there about the plaintiffs having some sort

3     of malapropism and saying, "I felt depressed" or "I felt

4     anxious" or something like that and that opening up the door,

5     waiving anything in terms of any sort of privilege issues, so

6     I don't think that that's appropriate, but let's just go one

7     by one down the stipulation here.

8          And let me just find out, again, from plaintiffs'

9     perspective.  There's on plaintiff that you mentioned thus far

10    who's under the Equal Pay Act who had medical treatment as a

11    result of the alleged discrimination.  Is that correct?

12         MS. WIPPER:  Yes, that's correct.

13         THE COURT:  Okay.

14         MS. WIPPER:  It was as a result of work stress,

15    so -- which was related to the discrimination.

16         THE COURT:  Okay.  All right.  Let's move on --

17    let's go to -- let's go one by one down the stipulation.  In

18    terms of --

19         MR. BRECHER:  Which one?

20         THE COURT:  We're going to go -- we're going to look

21    at them side by side.  In terms of the first one, paragraph 1,

22    we're going to go with the defendants' stipulation because,

23    again, I think that this staying consistent with Second

24    Circuit law is just going to be a little amorphous and the

25    parties will continue to have disputes about this.

1          Number 2 and number 3 appear to be the same.  Is

2    that correct?

3          MS. WIPPER:  Yes, Your Honor.

4          THE COURT:  Okay.

5          MR. BRECHER:  Yes, Your Honor.

6          THE COURT:  Number 4.  All right.  Let me hear from

7    the plaintiffs on 4.  Why do you believe the plaintiffs'

8    spouse/significant other/other people should be allowed to

9    testify about this?

10          MS. WIPPER:  Well, our reading of the cases is that

11   it is generally that the plaintiff testifies only about garden

12   variety, but that there is no absolute rule that there could

13   be no other fact witness that testified and there are cases

14   where a spouse for another fact witness testifies concerning

15   emotional stress damages.  We would propose that this issue is

16   premature to be dealt with at a stipulation stage and maybe

17   should be dealt with a motion in limine at trial.  So, you

18   know, in the first instance we think it limits us beyond what

19   the case allows and secondly, we believe it's premature to

20   address in the stipulation.

21          THE COURT:  All right.  What is defendants' position

22   on 4?

23          MR. BRECHER:  Judge, our position is that the case

24   law pretty clearly states that it's limited to the plaintiffs'

25   testimony.  I think we cited two cases.  One deals with

21

1  specifically the question of waiver and it's the

2  [indiscernible] versus Quest Diagnostics case, which is the

3  Eastern District of New York 2011 July.  And then I'd point

4  you to the Mayer [Ph.] case, which is an EDNY case of 2010,

5  which described the plaintiff's damages are significant

6  [indiscernible] based on the testimony of additional witnesses

7  and the garden variety is limited to the testimony of the

8  plaintiff only.

9          And here again, Judge, it's a question of fairness.

10  You know, if you're going to have three people come and

11  testify about how emotionally distraught someone was then

12  we're -- you know, then we're, you know, getting back to the

13  problem of waiving the privilege and also on the issue of the

14  medical records.  And if it's truly garden variety and what

15  the cases talk about is what we had been talking about in both

16  conferences, "I was upset, I was hurt," et cetera, then it

17  would seem unnecessary, number one; and then, number two,

18  unfair to defendant to have three or four people come and

19  testify to that because it makes it sound more significant.

20  So I'd probably be interested in the stipulation, not to be

21  disputed, you know, years from now.

22          MS. WIPPER:  Plaintiffs' position would be that it's

23  not -- the testimony of the fact witness is limited to the

24  same subject matter that the plaintiffs' testimony would be

25  would not waive the privilege.  I believe that, you know,

22

 1   defendants are just trying to limit all possibilities on

 2   plaintiffs' ability to prove their case and they want to

 3   minimize any impact as much as they can prematurely to

 4   preclude us from proving damages, compensatory damages,

 5   punitive damages or whatever else is at issue at trial.  At

 6   this point of the stipulation it seeks prematurely to decide

 7   who's going to testify and who's not at a trial.

 8           THE COURT:  And at this point do plaintiffs believe

 9   that plaintiffs have other family members, significant others

10   that would be testifying or able to testify about these

11   issues?

12           MS. WIPPER:  Well, defendants served interrogatory

13   requests asking specifically about family members and who

14   plaintiffs had talked to about the discrimination to test

15   whether or not plaintiffs at the time that the discrimination

16   was occurring had actually talked to someone about what they

17   were experiencing.  So they had to have asked those questions

18   in interrogatories as well in deposition.  But they don't want

19   us to be able to introduce any evidence [indiscernible].

20           MR. BRECHER:  Judge, if I can respond to that, I

21   don't think that's accurate.  I think that certainly if a

22   spouse were to testify regarding the conversation they had

23   with their plaintiff about what happened to them at work that

24   day, that's not testimony relating to emotional distress

25   damages and I would have no objection to that.  So I don't

23

1  think that's -- I think it's two different issues.

2  　　　　THE COURT:  Okay.  All right.  Let's do this with 4.

3  Let's hold off on 4 and we'll deal with that in a motion in

4  limine and let's see where we are at that point.  Again, this

5  maybe something that's moot, but let's just take 4 out both

6  sides and see where we are.  We'll deal with that as a motion

7  in limine as we go along with the case.

8  　　　　Number 5 appears to be the same for both sides.  Is

9  that correct?

10  　　　　MS. WIPPER:  Yes.

11  　　　　THE COURT:  All right.  Number 6 and 7, which are

12  very closely related.  All right.  In terms of number 6, both

13  sides seem to be in agreement on that other than some terms

14  that are thrown in there.  In terms of the terms that should

15  be used to "Both sides agree that plaintiffs shall not

16  introduce or otherwise rely on or refer to any evidence

17  relating to any physical symptoms or conditions experienced as

18  a result of any alleged discrimination."  And while I guess --

19  no, I guess you don't agree because the plaintiffs are trying

20  to limit that to "any medical or mental health diagnosis

21  experienced as a result of any alleged discrimination."

22  　　　　Let us go with -- we're going to go with defendants

23  on number 6.  Then we'll take out the examples and we'll have

24  to deal with these as we get closer to trial in terms of a

25  motion in limine, but we can get rid of those examples.  But I

24

1   think let's go with defendants.  I don't think plaintiff

2   should be relying on or referring to "any evidence relating to

3   any physical symptoms or conditions experienced as a result of

4   alleged discrimination" because, again, the issue there is

5   that the plaintiffs start talking about these physical

6   symptoms and these physical manifestations, the defendant

7   should be allowed to probe as to whether or not there are

8   underlying medical issues that may have caused those physical

9   manifestations of those.

10          Now, again, I can't at this point come with an

11  exhaustive list of things and a lot of that is going to have

12  to dealt with in a motion in limine as we get closer to trial.

13  Regarding 7, again, I think plaintiffs goes too far and I

14  think defendants may be a little bit too limiting.

15          MR. BRECHER:  Judge, I'd be willing, you know, to

16  add a couple of their terms like "stress" -- I don't know what

17  else is here.

18          THE COURT:  Well, again, I don't want to get into

19  just add -- going term by term --

20          MR. BRECHER:  Right.

21          THE COURT:  -- necessarily, but perhaps what we can

22  do is, the defendants have "claims for emotional stress

23  damages, will be limited to the testimony of each plaintiff on

24  her own behalf to describe the negative emotions that any

25  healthy, well-adjusted person may reasonably feel as a result

25

1   of experiencing alleged discrimination." Plaintiffs have the

2   same thing except they use the word "distress" instead of

3   emotions.

4           MS. WIPPER:  Correct.

5           THE COURT:  And, Your Honor, there's one other

6   difference, if I may.  They limited testimony just to the

7   plaintiffs, so they've testimony of each plaintiff on her own

8   behalf.  And we don't have that as well as [indiscernible].

9           MR. BRECHER:  That was in your original stipulation

10  that you submitted to the Court, though.

11          MS. WIPPER:  In addition to the other --

12          THE COURT:  Okay.  All right.  All right.  Okay.

13          MS. WIPPER:  -- [indiscernible] and family members.

14          THE COURT:  Okay.  Let's just say at this point --

15  let's just say, "The evidence plaintiffs may introduce or

16  otherwise rely on or refer to at trial in support of their

17  claims for emotional distress damages shall be limited to the

18  testimony that describes the emotional distress that any

19  healthy, well-adjusted person may reasonably feel as a result

20  of experiencing alleged discrimination."

21          Now, again, that will be mod -- that's modified by

22  paragraph 6.  Again, not getting into physical symptoms of

23  this emotional distress, "the physical manifestations of the

24  emotional distress."  And then I don't think we have to get

25  into all the specific terms in particular.  Again, some of

26

1   this will have to wait as we get closer to the trial to see.

2   We'll have to see what the plaintiffs' proposed testimony

3   would actually be.

4           All right.  Let's go to --

5           MR. BRECHER:  So, Judge, just on the -- you did want

6   me to take out the examples into paragraph 7?

7           THE COURT:  Yes.  Yes.  Take out all the examples in

8   6 and in 7.

9           MR. BRECHER:  Okay.

10          THE COURT:  And then for -- let's go to plaintiffs'

11  8.  Okay.  Here we come to another practical problem here.

12  "Defendant shall not question plaintiffs through deposition or

13  other discovery requests about medical or psychological

14  diagnosis or diagnosed conditions of physical impairment or

15  related medical evidence."

16          Here's where we come to some of the real issues here

17  in this case.  How many -- are the plaintiffs covered by the

18  stipulation?  Have all the plaintiffs been deposed yet?

19          MS. WIPPER:  No, Your Honor.

20          THE COURT:  Okay.  Are the plaintiffs anticipating

21  having their plaintiffs testify about their garden variety

22  emotional distress at the deposition?

23          MS. WIPPER:  Yes.

24          THE COURT:  Okay.

25          MS. WIPPER:  But nothing concerning physical issues

27

1   that we've discussed today.

2          THE COURT:  Okay.  And then -- and again -- all

3   right, so it's going to simply be "I felt humiliated, I felt

4   embarrassed," things of that nature?

5          MS. WIPPER:  Yes, Your Honor.

6          THE COURT:  Okay.  Knowing that, what's the

7   defendants' position on plaintiffs' proposed 8?

8          MR. BRECHER:  I'm just re-reading it, Judge.

9          THE COURT:  Sure.

10         MR. BRECHER:  Maybe we should limit it to "Defendant

11  shall not question plaintiffs at deposition or discovery

12  requests about medical or psychological diagnosis," period.

13         THE COURT:  But does that mean the defendants under

14  that -- the defendants would still intend to question the

15  plaintiffs about physical manifestations of their emotional

16  distress?

17         MR. BRECHER:  Well, I've been told by plaintiffs'

18  counsel there are no physical manifestations, so there

19  shouldn't be an issue as to what -- you know, if the question

20  was posed the answer would be no, so as long as this

21  stipulation -- as long as there's another paragraph in here

22  that states that "all plaintiffs subject to the stipulation

23  have no physical manifestations as a result of any alleged

24  discrimination," then I think we're covered.

25         THE COURT:  Well, I think paragraph 6 that we talked

28

1    about covers that, doesn't it?  "The plaintiffs shall not

2    introduce or otherwise rely on or refer to any evidence

3    relating to any physical symptoms or conditions experienced as

4    a result of any alleged discrimination" --

5            MR. BRECHER:  Yes, you're right, Judge.

6            THE COURT:  All right.  So I think that covers it.

7            MR. BRECHER:  I think that should cover it.

8            THE COURT:  All right.  So I think 8 is fine because

9    I think that covers that.  Plaintiffs' 9, defendants have any

10   objection to that?

11           MR. BRECHER:  I think if we deal with it there was

12   some disclosure where plaintiff had waived the emotional

13   distress damages to the class, but I can assume that is not

14   being done now.

15           MS. WIPPER:  No.  That's not something we would be

16   able to do until the class -- if and when the class would be

17   certified because we are not assigned counsel representing all

18   five members until the case is -- class is certified.  So we

19   don't --

20           MR. BRECHER:  Which is why it surprised me when I

21   saw it, so I have no objection to this, Judge.

22           THE COURT:  Okay.  That's fine.  And then let's go

23   back to -- I think what's left is defendants' 8.  Again, we'll

24   scrap that.  Again, I don't want to get into if a plaintiff

25   accidentally --

1          MR. BRECHER:  Judge, one thing about this if the --

2  I want to make clear that there'll be no testimony that

3  anybody suffered from depression or anxiety.

4          THE COURT:  Right.

5          MR. BRECHER:  And I am concerned about testimony

6  where someone says, "I feel depressed and anxious."

7          THE COURT:  No, no.  I understand that and I think

8  that that's something that the plaintiffs should warn the

9  plaintiffs about.  Again, my concern is that the word

10 "depressed" and "anxious," those words have become such a part

11 of common vernacular that someone might accidentally state

12 that.  And, again, we can deal with that at the time.

13 Obviously the parties can seek -- the defendants can seek a

14 curative instruction.  It depends on what's happening at the

15 time of the trial.  Sometimes you may not want a curative

16 instruction because it may draw more attention to it.

17          But I think that's something we can certainly take

18 up as we get closer to trial in terms of what instructions

19 plaintiffs should be given, but I think that "depressed" or

20 "anxious," those words are a little bit too vague.  I don't

21 think there's any problem.  I'm sure plaintiffs don't object

22 to telling the witnesses that but, again, I'd be concerned

23 about the witnesses making a mistake and saying something like

24 that in a general sense.  Obviously, the plaintiff should not

25 be talking about clinical depression or an anxiety disorder or

1   anything of that nature, but I think 8 goes a little bit too

2   far, so we'll scratch defendants' 8.  And that should cover

3   it.

4            So let's have the parties work on that with my

5   revisions and send the revised stipulation to me.  Email that

6   to me by -- to my chambers, email by Friday.

7            MS. WIPPER:  Okay, Your Honor.

8            THE COURT:  All right.

9            MR. BRECHER:  Thank you, Your Honor.

10           THE COURT:  Okay.

11           MS. BAINS:  Your Honor, this is Deepika Bains for

12  the plaintiffs.  I just wanted to clarify one point.

13           THE COURT:  Okay.

14           MS. BAINS:  So paragraph 7, I heard you read off

15  your language and another difference that I don't think was

16  pointed out yet between the proposal was that defendants had

17  "negative emotions" --

18           THE COURT:  Right.

19           MS. BAINS:  -- whereas plaintiffs had "distress" and

20  I believe Your Honor gave a -- that it would be emotional

21  distress.

22           THE COURT:  That's correct.

23           MS. BAINS:  But when defense counsel clarified he

24  said the only change would be the list, so I just wanted to

25  clarify that that was also an additional change.

31

1          THE COURT:  Yes, that's a change.

2          MR. BRECHER:  Yes, Judge.  I understood, you know.

3          THE COURT:  Okay.

4          MR. BRECHER:  I understood you said "emotional

5    distress."

6          THE COURT:  Okay.  All right.  Thank you.  Anything

7    else from plaintiffs?

8          MS. WIPPER:  No, Your Honor.

9          THE COURT:  Anything else from defendants?

10         MR. BRECHER:  Judge, I'm just curious.  Was there a

11   court reporter on this or no?

12         THE COURT:  We have a -- it's being recorded

13   electronically.

14         MR. BRECHER:  Okay.  Thank you.

15         THE COURT:  Okay.  All right.  Thank you.

16         MR. BRECHER:  Okay.  Thank you, Judge.

17         THE COURT:  Okay.  Bye.

18         MS. WIPPER:  Thank you.

19                         *  *  *  *  *  *

20

21

22

23

24

25

32

1       I certify that the foregoing is a court transcript

2   from an electronic sound recording of the proceedings in the

3   above-entitled matter.

4

5

6                                    _____

7                                    Ruth Ann Hager, C.E.T.**D

8   Dated:   February 1, 2012

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25