# Exhibit D

**SANFORDWITTELS&HEISLER, LLP**

555 Montgomery Street, Suite 1206
San Francisco, CA 94111
(415) 391-6900
Fax:  (415) 391-6901
Email: jwipper@swhlegal.com
www.swhlegal.com

| | | |
|---|---|---|
| 1666 Connecticut Avenue<br>Suite 300<br>Washington, D.C. 20009<br>(202) 742-7777<br>Fax: (202) 742-7776 | 1350 Avenue of the Americas<br>31st Floor<br>New York, NY 10019<br>(646) 723-2947<br>Fax: (646) 723-2948 | 440 West Street<br>Fort Lee, NJ 07024<br>(201) 585-5288<br>Fax: (201) 779-5233 |

October 25, 2011

**VIA ELECTRONIC MAIL**
Brett M. Anders
Jackson Lewis LLP
andersb@jacksonlewis.com

      Re:      <u>da Silva Moore, et al. v. PublicisGroupe SA, et al., Civ. No. 11-CV-1279</u>

Dear Brett,

      We write in response to your October 21, 2011 letter regarding the discovery of electronically stored information (ESI) in the above-referenced case. We are pleased to hear that you no longer intend to limit e-discovery to only one data source and five non-Plaintiff custodians.  However, we remain concerned about various aspects of your ESI proposal, as set out in more detail below.

    In particular, we believe it is premature to discuss predictive coding and finalize the discovery plan before MSL has even determined the volume of documents that it would have to review.  Nor do we understand how MSL can estimate the number of potentially relevant documents without first identifying all data sources that might contain such information. Because the identification of relevant data sources is the first step in instituting a litigation hold, let alone documenting an ESI protocol, we requested in our October 13, 2011 letter that MSL provide this information by October 21, 2011. We ask again that you promptly respond to our questions no later than October 31, 2011 so that we can move forward with e-discovery.

      **I.**      <u>**Collection and Review of ESI**</u>

      **a.**  **Scope of Collection and Review**

    While Plaintiffs agree that phased discovery may be appropriate under certain circumstances, we do not believe MSL has any basis for limiting its Phase I collection and review to only one data source (e-mail) and five custodians (other than the Named Plaintiffs). In your October 21 letter, you repeatedly reference the 2.1 million documents that MSL has already collected.  However, the relevant benchmark is not the number of documents MSL has *collected*, but the number of potentially responsive documents that MSL would have to *review*.  There is no question that the volume of documents will shrink substantially after

applying targeted search criteria and removing any duplicates. Accordingly, it is premature for you to claim, before any search has even been performed, that the review would be unduly burdensome or expensive, and that only a handful of data sources and custodians should be searched at this time.

We also believe your comments regarding proportionality reflect a misunderstanding of Rule 26 and the Sedona Conference Principles. This is not a case where this data is not reasonably accessible. By contrast, Principle 2 of the Sedona Conference Principles of Proportionality clearly has in mind discovery of data that is not reasonable accessible. This is underscored by the example provided in the analysis of Principle 2: "[A] court may consider limiting discovery of not reasonably accessible back-up tapes if the information stored on the tapes can be obtained from other more accessible sources..." No such burden exists in this case.

In addition, we are concerned that MSL's proposal to limit its Phase I search and review of documents to only one data source and a handful of custodians will exclude many core documents, including corporate policies and other centrally held documents. To date, MSL has failed to produce basic employment policies and organizational charts for a number of years during the class period. Please confirm that, along with programmatic searches of ESI, MSL is also going to perform a manual search for corporate policies and documents, organizational charts and other centrally held documents, regardless of form, that might not be captured in a programmatic search. These documents are critical to Plaintiffs' case, and the burden of searching for them is minimal.

    b. **Predictive Coding**

We believe MSL's proposed use of predictive coding to cull down the volume of documents is putting the cart before the horse. At this early stage, before you have even proposed – let alone applied – search criteria, there is no basis for limiting the universe of responsive documents in this way. Before determining the most appropriate review protocol, the parties first need to be aware of all the relevant data sources, and agree on a list of custodians and search criteria. Accordingly, we propose deferring discussion of the review protocol until the parties have a better understanding of the Company's data sources and the number of potentially relevant documents (i.e., after the search criteria have been applied). However, we again note (as we did in our October 13 letter) that we have serious concerns about the use of predictive coding to identify responsive documents and to satisfy MSL's discovery obligations.

    c. **Custodians**

It is well settled that the list of custodians should include all "employees likely to have relevant information" - the "key players" in the litigation. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433-34 (S.D.N.Y. 2004). At a minimum, this includes "the people identified in a party's initial disclosure and any subsequent supplementation thereto." *Id.* Your proposed custodian list – which includes only the Named Plaintiffs and five other individuals (Jim Tsokanos, Peter Miller, Maury Shapiro, Rita Masini and Tara Lilien) – is unduly restrictive. In addition to the abovementioned individuals, we propose applying the search criteria to all individuals identified in the Initial Disclosures, as well as members of MSL's corporate executive team, HR employees from each office, and key decisions-makers,

including regional directors, managing directors, and practice directors.  This is a reasonable starting point given the class allegations and will serve as a more representative universe of information to be considered during the search criteria analysis phase.  We reserve the right to supplement the list of custodians in the second phase, and to discuss further alternative filters, based on the Phase I results.

### d. Search Criteria

Plaintiffs do not object to the use of search criteria as a means of identifying potentially relevant documents.  In fact, in our October 13 letter, we set forth a detailed search protocol.  However, as we stated in that letter, logic dictates that MSL – as the party with access to the relevant ESI – prepare the initial list of search terms and related criteria.  Plaintiffs can then review the list, and the parties can revise the list as needed.  We believe this collaborative approach would enable the parties to most effectively capture the relevant data. We expect the scope of MSL's search to include the time period covered in Plaintiffs' discovery requests.

You state in your October 21 letter that it is "difficult – if not impossible" for you to develop a list of search terms because "Plaintiffs have repeatedly refused to set forth with specificity their theories of liability."  We find this excuse disingenuous.  Plaintiffs' 64-page Amended Complaint describes in great detail (far more than required under Rule 8's pleading standard) Plaintiffs' individual and class claims regarding pay, promotion and pregnancy/caregiver discrimination.  The Amended Complaint names specific decision-makers, comparators, and potential class members believed to have information relevant to the claims.  Each Plaintiff has produced documents and interrogatory responses relating to their allegations. Moreover, defense counsel raised this same unfounded complaint – that they did not understand Plaintiffs' theory of the case – several months ago during the parties' meet and confers.  In response, we spent several hours explaining, by phone and by email, Plaintiffs' already well-articulated allegations, including, among other things, adverse employment actions relating to a reorganization that began in or around 2008 with the appointment of Jim Tsokanos and his leadership team.  If, after all this, defense counsel still fail to grasp Plaintiffs' theories of liability, that is hardly Plaintiffs' fault.  Please provide us with a list of search criteria by October 31, 2011.

### II. Production Format

In your October 21 letter, you note that you intend to produce single-page TIFF images with corresponding multi-page text and necessary load files.  Rather than produce TIFF images, we request that you produce the documents in native file format along with the extracted multi-page text files.  This format will be significantly more efficient to produce, and at no additional cost or burden to MSL. Indeed, it would be cheaper and quicker for MSL to produce the documents in this format and avoid the time and cost associated with converting native files to static images.

We are pleased that you will be able to accommodate most of our requested metadata fields.  You note that MSL does not have metadata fields for the following categories: (i) Folder; (ii) ReadFlag; (iii) Importance Flag; (iv) Priority; and (v) ReadReceipt. Please provide us with a list of all fields contained within an e-mail document so that we can

determine which, if any, fields we can use in lieu of the abovementioned fields. For example, we believe that, instead of the "Importance Flag" field, Lotus Notes may have a field called "Delivery Priority" (or something comparable).

Finally, we have concerns about your plan to strip the metadata fields from redacted documents. This will render any redacted document less useable simply because they are redacted. If you have concerns that metadata fields will contain privileged content, we will accept redacted metadata fields with indications of those redactions. In addition, we expect that all redacted documents will be produced with OCR text files. This will ensure that the document remain searchable even after the redacted portions are removed.

Please respond to our letter by October 31, 2011. We look forward to speaking with you soon.

                              Best regards,

                              /s/ Janette Wipper
                              Janette Wipper