# Exhibit E

# SANFORD WITTELS & HEISLER, LLP

555 Montgomery Street, Suite 1206
San Francisco, CA 94111
(415) 391-6900
Fax:  (415) 391-6901
Email: jwipper@swhlegal.com
www.swhlegal.com

| | | |
|---|---|---|
| 1666 Connecticut Avenue<br>Suite 300<br>Washington, D.C. 20009<br>(202) 742-7777<br>Fax: (202) 742-7776 | 1350 Avenue of the Americas<br>31st Floor<br>New York, NY 10019<br>(646) 723-2947<br>Fax: (646) 723-2948 | 440 West Street<br>Fort Lee, NJ 07024<br>(201) 585-5288<br>Fax: (201) 779-5233 |

November 9, 2011

**VIA ELECTRONIC MAIL**
Brett Anders
Jackson Lewis LLP
andersb@jacksonlewis.com

    Re: **da Silva Moore, et al. v. PublicisGroupe SA, et al., Civ. No. 11-CV-1279**

Dear Brett,

  We write in response to your November 3, 2011 letter regarding discovery of electronically stored information ("ESI") in this case. It is unfortunate that, once again, we have to clarify the record with respect to the parties' e-discovery meet and confers and efforts to develop an ESI protocol.  We are also disappointed that, for all its talk of cooperation, MSL has yet to provide key details regarding its proposed methodology; complete information regarding its computer systems; a list of proposed search terms; and many other pieces of information that are needed to move the e-discovery process forward.  To avoid any further delay, we propose that the parties schedule a follow-up meet and confer for November 11 or 14.

  I. **The Parties' Meet and Confers Regarding ESI**

  As an initial matter, your November 3 letter mischaracterizes the parties' meet and confer efforts regarding ESI.  During the parties' two ESI conferences, on June 10, 2011 and October 12, 2011, MSL was unable to answer the majority of Plaintiffs' questions regarding the Company's ESI.  Although MSL convened the initial ESI conference, which Ralph Losey, MSL's e-discovery attorney, attended and supposedly prepared for, MSL was unable to provide basic information about the Company's computer systems, back-up procedures, document preservation policies and practices, IT department, and other information regarding the Company's ESI.  The only relevant piece of information Plaintiffs gleaned from the call was that MSL uses Oracle's PeopleSoft software.  As a direct result of MSL's lack of knowledge regarding the Company's systems – *not,* as MSL alleges, due to Plaintiffs' lack of preparation or unwillingness to discuss ESI – the conversation shifted to employment data and other discovery matters.

On September 9, 2011, Plaintiffs noticed a 30(b)(6) deposition focused on MSL's preservation policies and practices and its computer systems for October 21, 2011. It was only with the threat of an ESI 30(b)(6) deposition looming that MSL began to take its e-discovery obligations seriously and proposed a follow-up conference.

The subsequent ESI conference, on October 12, was more productive than the first, although MSL was still unable to answer a number of questions posed by Plaintiffs' e-discovery consultant, Gene Klimov of DOAR Litigation Consulting. Following up on the telephone conference, Plaintiffs sent MSL a list of questions about its computer systems on October 13. MSL responded to some, but not all, of Plaintiffs' questions on November 3. Meanwhile, MSL unilaterally decided not to produce a witness for the 30(b)(6) deposition. In an effort to cooperate in a continued meet and confer process, Plaintiffs adjourned the deposition until November 11. Four days before the deposition, on November 7, you indicated that you were unavailable for the rescheduled deposition. In the spirit of cooperation, Plaintiffs agreed to once again adjourn the 30(b)(6) deposition. However, if the ESI process is not finalized by the end of the month, Plaintiffs will re-notice the deposition.

Over the past six weeks, the parties have exchanged numerous e-mails and letters regarding e-discovery, including Plaintiffs' correspondence dated September 15 and 29, and October 7, 13 and 25, and MSL's correspondence dated September 15, 22, 28, October 7, and November 3. However, MSL still has not shared the specifics of any sources of potentially discoverable ESI that *it* has identified as part of its discovery obligation other than email and PeopleSoft; the estimated volume of responsive documents (even though it attempts to limit the number of data sources and custodians based on the supposed burden); or a list of search criteria with Plaintiffs, despite Plaintiffs' repeated requests.

In light of the above, your claim that you "attempted to involve Plaintiffs in [the e-discovery] process early on," and that you were "forced to go it alone on preservation and e-discovery planning," is disingenuous. And, contrary to MSL's assertion, Plaintiffs have not changed their theory of the case after the *Dukes* decision. Plaintiff da Silva Moore's EEOC charge, which was filed on behalf of herself and a class of similarly situated female employees in February 2010 – over a year before the *Dukes* decision – describes the discriminatory demotions, terminations and other adverse employment actions she and other female employees endured as part of the Company-wide reorganization. In fact, MSL itself devotes an entire section of its position statement to the reorganization. Similarly, the original Complaint, filed in February 2011, describes a series of adverse employment actions related to the promotion of Jim Tsokanos to President of the Americas, and his appointment of a mostly male regional leadership team beginning in 2008.

MSL's claim that Plaintiffs "declined to provide specific guidance on exactly what [they] are looking for in Defendant MSL's e-mail collection" is also false. All of the discovery requests Plaintiffs have served so far encompass e-mail as well as other sources of ESI. Plaintiffs' requests are also straightforward and narrowly tailored. If MSL does

not understand what information is being sought in Plaintiffs' discovery requests, MSL has an obligation to seek clarification, rather than accusing Plaintiffs of failing to cooperate. Based on the parties' meet and confer efforts so far, and the fact that MSL still has not provided complete information regarding its computer systems, it is clear that MSL – not Plaintiffs – is the one dragging its feet and refusing to cooperate with respect to ESI.

### II.     Plaintiffs' Questions Regarding MSL's Computer Systems

We are pleased to see that MSL, in its letter dated November 3, has finally provided some information regarding its computer systems – information that Plaintiffs have been eagerly awaiting for nearly five months. However, we note that MSL neglected to answer several key questions:

- Please provide details about the Yammer social media system that is/was used within the corporation.
- Please provide details about the corporate Intranet, Website and/or Extranet that is used within the corporation.
- Please provide details about the Portal system used within the corporation.
- Are there any systems in place for HR purposes? If so, please provide details for the systems and what type of data they maintain.
- How are new hire notifications publicized (internally/externally)? If there is a system in place to facilitate these functions, please provide details for the systems and what type of data they maintain.
- How are open position notifications publicized (internally/externally)? If there is a system in place to facilitate these functions, please provide details for the systems and what type of data they maintain.
- Are there any systems in place where employees can provide the company with suggestions, feedback or voice complaints? If so, please provide details for the systems and what type of data they maintain.
- Please provide details about the different mobile devices used by the custodians.
- Please provide details about the Salesforce system that is/was used within the corporation.
- Please provide details about the Prism system that is used for time and billing within the corporation.
- Please confirm that there are no Compliance systems used within the corporation.
- Please confirm that there are no Reporting systems used within the corporation.
- Please confirm that there are no legacy/decommissioned systems that are have been maintained or are currently being maintained within the corporation.
- Please provide details for any other system that is used within the corporation that you have identified as containing potentially discoverable information.
- Please confirm that data contained on laptops and/or desktops for current and former employees have been preserved since February, 2010.

- What types of applications are used by custodians? If any application is developed in house, please provide details about that application and data that it generates.
- Are there any potentially discoverable documents/ESI with non English content? If so, please provide details and a breakdown of each language.
- How many backup tapes are being preserved for GroupWise email? Please provide details for the number of tapes per backup set and indicate if you have multiple snapshots for this system along with the dates of those backups.
- Please confirm that GroupWise archives were used and if so, what format (e.g. Hit the road)
- When a new employee joins the company, is there a documentation package that is provided so that they can get familiar with the corporate systems and applications? Are there training applications, websites, videos, help guides, etc. that are available to employees? If so, please provide details for those resources.
- Please confirm that there are no other archiving systems other than EMC SourceOne.

In our October 13 letter, we asked that you provide responses to our ESI questions by October 21. MSL failed to do so, nor did it propose an alternative timeframe for complying with the request. In our October 25 letter, we asked that MSL provide the information by October 31. MSL again failed to do so. On November 3, MSL provided a partial response to Plaintiffs' ESI requests. As we stated in our October 25 letter, the identification of data sources is the first step in instituting a litigation hold, let along documenting an ESI protocol. Accordingly, please provide responses to the abovementioned questions no later than November 11 – the date of Plaintiffs' 30(b)(6) deposition on ESI (which Plaintiffs are now rescheduling for the second time).

**III.     Predictive Coding**

While you have not yet provided us with all the relevant information regarding MSL's proposed methodology, we do have serious concerns about your approach based on the information you have provided so far. In your November 3 letter, you note that there may be some miscommunication on the issue of predictive coding. However, you clearly state in your letter that you plan to use predictive coding both to identify relevant documents and to "speed up the review" in the final review stage. Accordingly, it appears that you do in fact intend to use predictive coding to bypass manual review to some extent and it is the way in which you plan to use the technology that concerns us.

As we stated in our October 25 letter, it is premature to discuss predictive coding and finalize the discovery plan before MSL has even informed the plaintiffs of the sources of potentially relevant information that need to be addressed. Furthermore, until all of those sources have been identified and agreed to by the plaintiffs, MSL is uninformed as to the nature and volume of ESI that would be subject to the predictive coding process. Therefore, you are unable to identify a representative sample set that would be used as the basis of your predictive coding efforts – a critical step in defending the use of that

approach. Once an agreement has been reached regarding the data sources, we believe that our proposed search protocol would allow all parties to quantify the universe of potentially responsive documents and focus the review and production efforts on a discrete, yet relevant, subset.

MSL has also neglected to provide key information regarding its proposed use of predictive coding. For example, MSL has not disclosed the complete makeup of the data; how it intends to sample the data; who determines how representative the sample set is; when and if search terms are going to be applied to the process; what portions of the result sets are evaluated for accuracy; or what limitations are inherent in the process. Technology is vital to the e-discovery process but it is also a double-edged sword which. if not applied correctly, can have serious repercussions. Given the ongoing discovery disputes and frequent misunderstandings between the parties, we believe this is not the ideal test case for predictive coding, especially the way that MSL is suggesting to use it. However, we would require full disclosure of your proposed methodology in order to fully consider our position regarding its use. We also believe it is premature to discuss issue codes given the more fundamental disputes regarding methodology.

### IV.   Search Criteria

As we stated in our previous correspondence, we believe the best and most efficient way to identify responsive documents would be to apply search criteria (including Boolean searches, proximity searches, and other filtering/culling techniques, including concept searches) across the entire universe of potentially discoverable ESI at MSL. Plaintiffs intend to fully participate in this process, but MSL, as the party that controls most of the ESI, is in the best position to compile the initial list of search criteria. Plaintiffs would then review the list and augment it if necessary. After the parties agree on the initial search criteria, we propose that MSL apply the search criteria across a randomly selected representative subset of data. Depending on the number of hits (and whether certain terms are over or under-inclusive), the parties could adjust the list of search criteria to obtain optimal results. We would then ask you to run the agreed upon list of search criteria across the total population and provide us with a hit report indicating the total number of documents. The parties would then discuss any modifications or isolated targeting of outliers and finalize a list of search criteria.

In our letters dated October 13 and October 25, we asked MSL to begin this collaborative process by providing an initial list of search criteria, which Plaintiffs could then review and supplement as needed. However, MSL has yet to share its proposed search criteria, despite Plaintiffs' request that such information be provided by October 31.

In your November 3 letter, you state that you will provide us with detailed reports on the metrics of many of the keywords that you have already tested. To avoid further delay, please provide us with a list of search criteria, along with any metrics associated with the searches, by November 11.

We feel that the use of these culling measures as a first step will not only target the most relevant subset of data from all representative sources of ESI, but will significantly reduce the overall volume of documents that would have to be reviewed for production.

### V.   Custodians

As stated in our previous correspondence, it is well settled that the custodian list should include all individuals likely to have relevant information, i.e., the "key players." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433-34 (S.D.N.Y. 2004).  At a minimum, this includes "the people identified in a party' initial disclosure and any supplementation thereto." *Id*.  In our October 25 letter, we stated that a reasonable starting point would be a custodian list that includes the Plaintiffs, members of MSL's corporate executive team, HR employees from each office, and key decision-makers, including regional directors, managing directors and practice directors.  At your request, we have ranked the custodians in order of general importance. Please note that we have not agreed to limit e-discovery to certain "classes" of custodians; we are simply providing our preferred order of priority so that MSL can conduct its search and production of ESI on a rolling basis, to the extent that would facilitate the e-discovery process.  All of the individuals below are "key players" subject to e-discovery.  In addition, Plaintiffs reserve the right to supplement their proposed custodian list.

Class A Custodians

Class A custodians include all Plaintiffs, current and former members of MSL's corporate executive team, current and former HR employees from each office, and key decision-makers, including current and former regional directors, managing directors and practice directors.

Class B Custodians

Class B custodians include all of Plaintiffs' comparators, as well as other putative class members who Plaintiffs allege experienced or may have experienced discrimination at MSL, as described in Plaintiffs' Amended Complaint and/or Plaintiffs' responses to MSL's interrogatories (to the extent not covered by Class A).

Class C Custodians

Class C custodians include any other individuals identified in the parties' Initial Disclosures or in any of Plaintiffs' responses to MSL's interrogatories (to the extent not covered by Class A or B).

Please send us a revised custodian list by November 11.

7

## VI. E-Discovery Costs

MSL's attempt to unilaterally impose a $200,000 cap on e-discovery costs *before MSL has even identified all relevant data sources or estimated the volume of potentially responsive documents* is wholly unsupported by the case law in this or any other Circuit. Nor is there any support for MSL's proposition that "if the plaintiffs insist on email discovery requiring greater fee expenditures than that, then they should pay for it." Plaintiffs filed a class action against MSL, and are entitled to broad discovery regarding their individual and class claims. Because the overwhelming majority of responsive documents are in MSL's sole possession, and Plaintiffs need these documents to prove their case, Plaintiffs cannot agree to an arbitrary e-discovery cap – especially at this early stage of discovery, when Plaintiffs have barely received any relevant ESI. Furthermore, any steps taken thus far to identify, collect and process ESI has been done by MSL without fully conferring with Plaintiffs. To the extent your full cooperation during the meet-and-confer process would have significantly reduced the volume and cost of dealing with ESI, MSL cannot claim that Plaintiffs should incur any of those costs. For instance, we believe that applying search terms to email data located in MSL's SourceOne email archive system would have significantly reduced the amount of email data subject to processing and related costs.

Once again, we believe MSL's position reflects a fundamental misunderstanding of the Fed. R. Civ. P. 26 and the concept of proportionality. MSL has not indicated that its data sources are not reasonably accessible. Moreover, Plaintiffs have repeatedly stated that they are willing to work with MSL to identify responsive documents in the fastest and most efficient manner possible, i.e., by applying (and refining) a list of search criteria to all relevant data sources. Such a method would narrow the universe of responsive documents exponentially. However, rather than share a list of search criteria or provide an estimate of the number of responsive documents so that the parties can engage in good faith discussions regarding the most appropriate search and review protocol, MSL has resorted to threats and ultimatums, all under the guise of "good will and cooperation."

Plaintiffs are highly confident that they will prevail in this case. However, even if MSL were to prevail, its entitlement to e-discovery costs would be questionable, particularly given MSL's refusal to consider the more efficient and cost-effective search protocol proposed by Plaintiffs.

Because it is clear that there are certain fundamental disputes regarding the appropriate ESI protocol, and to avoid further delay, Plaintiffs propose a follow-up ESI conference on November 11 or 14. Please advise by November 10 whether you are available then.

Best regards,

/s/ Janette Wipper

Janette Wipper