# Exhibit H

# SANFORD WITTELS & HEISLER, LLP

555 Montgomery Street, Suite 1206
San Francisco, CA 94111
(415) 391-6900
Fax: (415) 391-6901
Email: jwipper@swhlegal.com
**www.swhlegal.com**

| | | |
|---|---|---|
| 1666 Connecticut Ave. NW<br>Suite 300<br>Washington D.C. 20009<br>(202) 742-7777<br>Fax: (202) 742-7776 | 440 West Street<br>Fort Lee, NJ 07024<br>(201) 585-5288<br>Fax: (201) 585-5233 | 1350 Avenue of the Americas<br>31st Floor<br>New York, NY10019<br>(646) 723-2947<br>Fax: (646) 723-2948 |

January 25, 2012

**VIA FACSIMILE (WITHOUT ENCL.) AND OVERNIGHT MAIL (WITH ENCL.)**
Honorable Andrew J. Peck
U.S.D.C. – Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007
Fax No. 212-805-7933

Re:   *da Silva Moore, et al. v. Publicis Groupe SA, et al.,* Civ. No. 11-CV-1279 – Joint ESI Protocol

Dear Judge Peck,

Plaintiffs hereby submit in advance of the February 2, 2012 conference the Parties' Joint Protocol Relating to the Production of Electronically Stored Information ("ESI"). Plaintiffs have mailed the document to the Court via overnight mail, pursuant to your law clerk's instruction to mail documents over sixty pages. The areas of dispute between Plaintiffs and Defendant are as follows: 1) sources of ESI; 2) custodians; 3) predictive coding methodology; 4) cost; and 5) preservation. Plaintiffs' position regarding each of these categories is as summarized below.

**1)   Sources of ESI**

Plaintiffs, from the very start of our discussions regarding ESI, have been forced to take the lead in identifying MSL's various sources of ESI containing potentially discoverable information. Defendant MSL has repeatedly attempted to limit the scope of discoverable ESI to email data from the EMC SourceOne Archive. In fact, MSL's draft ESI protocol submitted to the Court in advance of the January 4, 2012 ESI conference dealt exclusively with email data with the exception of a passing mention in a footnote of two other sources to which the protocol was "not intended to apply." By contrast, Plaintiffs' draft protocol listed 28 sources of ESI and proposed how each source should be classified. Plaintiffs agreed upon Defendant's suggestion to classify each source as either a Phase I source or a Phase II source. The parties discussed these phase designations at length during the parties' January 4, 2012 meet and confer. Plaintiffs believed at that time that the parties had reached agreement as to the phase designations. Defendant MSL agreed to provide answers to Plaintiffs' questions regarding ESI sources.

Plaintiffs sent Defendant a follow-up email containing the same questions on January 9, 2012, and many of these questions remain unanswered.

The next communication regarding ESI came on January 16, 2012, when Defendant MSL provided its redline to Plaintiffs' draft ESI protocol. Defendant's redline revealed edits to the sources inconsistent with the agreement the parties had reached on January 4. For example, Defendant changed the phase designation for five of the sources (Home Directories, Shared Folders, Noovoo, Hyperion, Vuvr/Taleo and Desktops/Laptops) from Phase I to "TBD." Defendant MSL also removed references to the production of ESI from many of the sources and to the parties' willingness to meet and confer regarding additional information required from sources. Every source of ESI identified during the meet and confer process should be specifically addressed in the protocol. The parties should work together to determine what, if anything, should be produced from each source, and any further information required in order to reach an agreement as to the production of ESI from each source.[1]

Further, Plaintiffs agreed to perform a duplication analysis for the Home Directories and Desktops/Laptops sources. The parties agreed to select a sample of custodians whose data from these sources would be collected and compared against the email data contained in EMC SourceOne. Plaintiffs agreed to this process in order to address Defendant MSL's belief that data from these sources would be largely, if not wholly, duplicative of the EMC SourceOne data. Plaintiffs proposed that the data should be compared for custodians without having to load home directories, laptops, and desktop data into Axcelerate. This can be used by comparing "MD5 hash" values in an efficient and low-cost manner. Defendant MSL wishes to load and process, at a high cost, all Home Directory and Laptop/Desktop data for only 2 custodians into Axcelerate. Defendant then wishes to report on the rate of duplication of only what is determined to be potentially relevant against the EMC SourceOne data in the Axcelerate system. Plaintiffs believe that a sample size of 2 is far too low and has proposed an alternative to MSL to allow for a larger sample at a lower cost. Finally, Plaintiffs believe that the duplication analysis can be done without first incurring the cost and delay of identifying what is potentially relevant, a process that Defendant MSL has not yet described.

**2)      Custodians**

The Plaintiffs initially identified forty-seven (47) custodians from which ESI should be included in the ESI protocol. In contrast, Defendant MSL identified thirty-six (36) custodians. During the January 4 meet and confer, the parties discussed the custodians at length and agreed

---

[1] Indeed, by excluding these additional sources of ESI from its proposed ESI protocol, Defendant is unilaterally deciding to exclude critical evidence from this case. For example, Defendant states in its letter to Your Honor that the source Noovoo contains "company notices" about "new policies," "job openings," "information on MSL offices worldwide," and "training programs" that have " marginal relevance" to this employment discrimination class action. Defendant further states that the source Hyperion contains "budgets, bonus pool information, and personnel costs" that are irrelevant despite the systemic pay discrimination claims alleged in this case and "should not be considered" at all. (Letter from Brett Anders to Judge Andrew Peck, Jan. 25, 2012, pages 10, 11) Plaintiffs maintain that ESI sources containing highly relevant information like company policies and pay information must be included in the ESI protocol.

2

to forty-four (44) custodians as reflected in the current version of the protocol.[2] In Defendant MSL's most recent January 16, 2012 redline version of the ESI protocol, Defendant surprisingly decreased its custodian list to thirty (30) with no explanation. Defendant further included arbitrary date limitations for many custodians without consulting Plaintiffs.

Though Defendant agreed in the parties' January 4 meet and confer and even represented to the Court that it agreed to apply search terms to comparator custodians before loading them into Axcelerate, Defendant MSL has just days ago informed Plaintiffs that it no longer intends to do so.[3] Instead, Defendant removed all mentions of comparator custodians from the ESI Protocol.

Plaintiffs are willing to work with Defendant to create a fair and comprehensive ESI protocol, but this type of regressive bargaining severely hinders the parties' ability to reach a resolution regarding electronic discovery. Accordingly, Plaintiffs request that the Court include in the final ESI protocol all the custodians identified by the Plaintiffs and remove the time period restrictions indicated by Defendant MSL.

### 3) **Predictive Coding**

Despite Plaintiffs' belief that the issues in this class litigation may be too complex for the use of predictive coding, Plaintiffs largely agreed with the process as proposed by Defendant MSL in their draft protocol submitted to the Court on January 3, 2012. However, Plaintiffs did not agree to a hard limitation on the number of documents subject to review and production by Defendant MSL. Defendant MSL argued to the Court for a limitation of their review to 40,000 documents given their unilateral assessment of the costs associated with the predictive coding process. The Court made it clear that any discussion of proportionality and a limitation on the number of documents subject to review was premature and that a hard stop at 40,000 documents at this point was unacceptable. However, Defendant MSL continues to include language regarding cost-shifting and proportionality in its version of the ESI protocol very similar to the analysis forbidden by the Court. Aside from the inappropriateness of this argument in general, these issues do not belong in a joint ESI protocol. Defendant MSL is free to bring a motion to the Court at a later date if it so chooses.

As with the negotiations regarding custodians, Defendant MSL once again retreats further from its original position regarding predictive coding to a point that it is no longer acceptable to Plaintiffs. Defendant MSL's proposed predictive coding process involves five major components: the Initial Random Sample, the Seed Set, Initial & Iterative Training, Final Search and Production, and Quality Control by Random Sample of Irrelevant Documents. While

---

[2] During the hearing, Mr. Anders stated "we have identified eight custodians that the plaintiff would like us to add, five where they would be willing to first apply some level of filtering to their results, and then we would either manually review or possibly add those results into the database." (Jan. 4, 2012 Conference Transcript at 55:4-8.)

[3] *See supra* n. 1; Jan 4, 2012 Conference Transcript at 43:23-44:6 ("Mr. Anders: Your Honor, we spent the bulk of the time talking about the custodian list. We have identified five custodians that are, I think, more on the either comparator category or secondary category where I think you Honor suggested that maybe those email accounts get filtered prior to being put into the database…we have identified five where at least plaintiffs would be willing to apply some type of keyword search in the filtering to them first.").

3

Plaintiffs can agree with Defendant MSL's Initial Random Sample besides the number of documents, we take serious issue with changes made to the other components.

    a) The Seed Set

The Seed Set, as proposed by Defendant MSL, is comprised of the review of three different groups of documents. The first group is a subset of the documents responsive to keywords and "other judgmental analysis and search techniques to locate highly relevant documents…"(MSL Draft ESI Protocol ¶ 5.a.) Defendant MSL refuses to conduct any additional review to create this subset of the seed set and wishes to rely solely on its initial review conducted before (1) the finalization of the ESI protocol, (2) the loading of all of data subject to the predictive coding process into Axcelerate, and (3) the parties' addition of two agreed-upon issue tags, or categories, for which documents will be reviewed.[4] Therefore, the documents derived from MSL's initial review do not constitute an accurate representation of the documents in the system and are not coded by category in a way that would effectively train the Axcelerate system on what is ultimately highly relevant. We respectfully request that the Court order Defendant MSL to regenerate their sample of documents that fall into this group and to review the documents for relevancy and for coding into the appropriate categories.

The second group is a subset of the documents responsive to a search using keywords provided by the Plaintiffs. The parties have agreed that the search will be run against all EMC SourceOne data collected for all custodians that the documents will be reviewed for coding into the appropriate agreed upon categories. Defendant MSL proposes reviewing 3,000 of these documents and Plaintiffs propose 5,000 documents. Plaintiffs believe that the documents responsive to this search are indicative of those that are most relevant. Therefore, Plaintiffs respectfully request that the Court order Defendant MSL to review 5,000 of these documents to be selected at random unless otherwise agreed by the parties.

The parties have reached an agreement regarding Judgmental Sampling, the third group of documents which comprise the seed set.

    b) Initial & Iterative Training

Once the seed set has been reviewed, the coding applied to those documents is used as the basis for training the Axcelerate system. The validation and iterative training of the system occurs during the Initial & Iterative Training stage. Defendant MSL's original ESI protocol submission proposed two rounds of review and coding of 2,399 randomly sampled documents per round for a total of 4,798 documents.[5] Defendant MSL now proposes conducting no more than 7 rounds of 500 documents each, contrary to their original position which they so vigorously defended. Defendant MSL suggests that the system might be able to return reliable

---

[4] During the parties' January 4 meet and confer, a representative of Recommind, owner of the Axcelerate system, stated that placing documents into their proper categories was an important step in training the system.

[5] In its original draft protocol submitted to the Court on January 3, 2012, Defendant MSL defended its sample of 2,399 documents by stating "this 2,399 number is based on a 95% with a confidence estimation of plus or minus 2%." (p. 9) Plaintiffs challenged this confidence level and Defendant MSL and their ESI experts vigorously defended it.

4

results in less than 7 rounds – or stated another way, before even having reviewed 3,500 documents. Furthermore, Defendant MSL has not explained how it will be determined that the system has reached a point at which its determination of highly relevant documents can be relied upon.

Plaintiffs initially proposed a higher confidence level of 99% which would require the review of 16,555 documents per round. However, we are willing to agree to 2,399 per round if the number of rounds is not limited. Plaintiffs respectfully request that the Court require Defendant MSL to review as many rounds of 2,399 randomly sampled documents as is required for the system to reach an acceptable level of reliability, and, therefore, subject to production to Plaintiffs.

      c) <u>Final Search and Production</u>

As part of the Final Search & Production stage, Defendant MSL seeks to limit the number of documents subject to review and production once Axcelerate is properly trained and indicates which documents are relevant. If Axcelerate indicates that more than 75,000 documents are relevant, Defendant MSL will seek Court intervention in an effort to be relieved from reviewing the documents. Furthermore, Defendant MSL seeks recovery of their costs from Plaintiffs for reviewing more than 40,000 documents even if Axcelerate indicates that more than 40,000 documents are relevant.

First, Plaintiffs believe that any language regarding cost-shifting or relief from the Court should not be included in a jointly submitted ESI protocol. Second, as the Court specifically stated during the January 4th conference, it is inappropriate and premature to discuss any limitations to the number of documents subject to review and production. Court relief should be sought, if at all, only after Defendant MSL is aware of the results of the predictive coding process. Therefore, Plaintiffs respectfully request that the Court reject Defendant MSL's position on this issue and accept Plaintiffs' position as indicated in the attached ESI protocol.

      d) <u>Quality Control by Random Sample of Irrelevant Documents</u>

If there are no limitations to the number of iterations required to generate the proper results of the predictive coding process consistent with Plaintiffs' position, Plaintiffs will agree to a random sample of 2,399 during the final Quality Control by Random Sample of Irrelevant Documents phase.

**4)**     **<u>Cost</u>**

As discussed above, Plaintiffs request that the Court reject Defendant MSL's inclusion of cost-shifting, limits, and relief in the ESI protocol. It is untimely and inappropriate for Defendant to attempt to limit costs based on a yet undefined number of documents. The most appropriate inquiry regarding the ESI protocol should center around relevancy and should be guided by Rule 26 of the Federal Rules of Civil Procedure. Cost-shifting should not be the cornerstone of an ESI protocol at the expense of relevant discovery.

5

**5)** <u>**Preservation**</u>

  Though sample ESI Protocols typically contain lengthy discussion of litigation holds, Defendant MSL refuses to include any mention of the parties' obligations and efforts to preserve information required by law.  Rather, Defendant has deleted every reference to the parties' preservation duties from the protocol.  Plaintiffs respectfully request that the Court include mentions of preservation duties in the Joint ESI Protocol.

* * * *

  We look forward to resolving any outstanding ESI issues at the February 2, 2012 conference and thank the Court for its time and consideration of this matter.

                Sincerely,

                /s/ Janette Wipper

                Janette Wipper

Enclosures

Cc w/ encl.: All counsel of record (via e-mail)