UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONIQUE DA SILVA MOORE, ) <br> MARYELLEN O'DONOHUE, ) <br> LAURIE MAYERS, HEATHER ) <br> PIERCE, and KATHERINE ) <br> WILKINSON on behalf of themselves ) <br> and all others similarly situated, ) <br> ) <br> PLAINTIFFS, ) <br> ) <br> v. ) <br> ) <br> PUBLICIS GROUPE SA and ) <br> MSLGROUP, ) <br> ) <br> DEFENDANTS. ) <br> _____) | Civ No. 11-CV-1279 (ALC) (AJP) |

**DECLARATION OF PAUL J. NEALE IN SUPPORT OF PLAINTIFFS' REPLY
IN SUPPORT OF RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE
PECK'S FEBRUARY 8, 2012 DISCOVERY RULINGS**

I, Paul J. Neale, declare as follows:

1. I am the Chief Executive Officer and a Managing Director of DOAR Litigation Consulting LLC and have been retained by Sanford Wittels and Heisler, LLP as a consultant and expert in the above-captioned matter.

2. I hold a Bachelor of Arts degree in criminal justice from Temple University.

3. I have advised lawyers and their clients on the management of information in litigation for over 20 years and am a nationally recognized expert on issues relating to the management and production of electronically stored information ("ESI").

4. I am a frequent author, lecturer and CLE instructor regarding the proper management of ESI and on the evolving state of the law and technology as they relate to ESI issues.

5. As a Managing Director at DOAR Litigation Consulting, I am routinely called upon to render expert advice and provide expert testimony on behalf of clients on discovery issues such as ESI preservation, spoliation, cost-shifting, reasonableness, inaccessibility determinations, ESI sanctions and the use of alternative technologies in the analysis and review of ESI.

6. I submit this declaration to clarify Plaintiffs' position and to address the misstatements and misrepresentations made in the declarations attached to Defendant MSL's brief, by two representatives of their vendor Recommind: Eric Seggebruch and Jan Puzicha.

7. Defendants, along with their experts at Recommind, obfuscate the flaws in the ESI protocol ("the protocol") adopted by Judge Peck, by focusing on the training of the Axcelerate system (i.e. Recommind's proprietary technology that is used in the ESI protocol), and by relying on the accuracy of other systems designed to conduct computer-assisted review, to support the accuracy of Recommind's Axcelerate system.

8. The protocol's primary flaw is that it does not include a scientifically supported method for validating the results of the Axcelerate system's predictive coding process as modified by the Defendants and accepted by Judge Peck.  As it currently stands, the Plaintiffs, the Defendants and the Court will never know whether the Defendants' predictive coding process met any acceptable standard for the production of documents responsive to Plaintiffs' document requests.

9. As stated during the February 8, 2012 hearing and cited in Judge Peck's opinion, I am a proponent of the use of predictive coding, when it can be validated as reliable.  However, the use of predictive coding or any other computer-assisted review approaches (including the use of keyword searching, which is also a type of computer-assisted review) should include a proper validation of the process against some pre-established measure within the context of the specific use of that approach.

10. The Defendants' and Judge Peck's reasoning that predictive coding is better than the alternatives, despite the lack of foundation, should not be a *de facto* validation of the Defendants' specific use of Recommind's Axcelerate system in the instant action.  There must be some requirement to validate the efficacy of the process.

### Misstatements & Misrepresentations about the 2011 TREC Study

11. Mr. Seggebruch's statements in his March 7, 2012 declaration (that were also echoed by Recommind in its widely distributed marketing material), which refer to Recommind's performance in the 2011 TREC study, are misleading and incomplete.

12. Mr. Seggebruch stated in paragraph 18 of his declaration: "In one category, Recommind achieved $F_1$ scores over 60%."  This is not a very high score; one could reasonably infer from it that 40% of all responsive documents are likely to be missed by the Axcelerate system.  More concerning, the score he reported referred to overall accuracy, but excluded "recall" – the proportion of responsive documents actually found.

13. In addition, Mr. Seggebruch failed to reveal to the Court in his declaration that the $F_1$ scores reported refer to Recommind's representation (not TREC's findings) of Recommind's "hypothetical $F_1$ scores." The hypothetical scores refer to an after-the-fact assessment of how the system would perform under the best possible circumstances, **not** how the system actually performed.

14. A draft version of TREC's report of the 2011 study (attached as Ex. 1) indicates that Recommind's **actual $F_1$ scores were significantly lower** than their hypothetical $F_1$ scores.[1] For example, for the same run in which Recommind received a 62.3% hypothetical $F_1$ score, their actual $F_1$ score is 24.7% and their recall was 25.8%. In other words, **over 74% of all responsive documents were missed**. (Ex. 1, at 13 Table 10.)

15. On average, Recommind's recall scores were approximately 35% in the 2011 TREC study.

16. Applying Recommind's recall scores from the 2011 TREC study to this case, Defendants would **fail to produce 65 out of every 100 of the relevant documents**. In other words, the system may incorrectly code the vast majority of relevant documents as "irrelevant." This is illustrated as follows:



17. In my opinion, incorrectly identifying many relevant documents as "irrelevant" is an **unacceptable result**, even when you compare it to human review of documents as was done by Recommind and Defendant MSL in their brief, and Judge Peck in his written opinion.

---

[1] This document was not released by TREC and is admittedly preliminary and subject to change. Due to Recommind's selective usage of the results, however, it is, absent Recommind's own disclosure, the only evidence of Recommind's performance during the 2011 TREC study.

18. Mr. Seggebruch's dismissal of the TREC studies is contradicted by his company's marketing material. Recommind's material states, "In the final results stage where teams worked among themselves in a *real-world scenario*, Recommind had the best results (the highest accuracy) in all three topics, all by a wide margin." (Ex. 2 at 3 (emphasis added); *see also generally* Ex. 3.) Despite this publication, Mr. Seggebruch comfortably stated to the Court in paragraph 18 of his declaration, "I believe that the reliance on TREC is wholly misplaced because TREC is an academic exercise, rather than a real-world review."

19. Mr. Seggebruch's statements referring to Recommind's 2011 TREC results are further undermined by the fact that Recommind has been banned from future participation in TREC studies due to violating their agreement with TREC by publicizing its preliminary results as compared to other participants in 2011 and prior years.

**Misstatements & Misrepresentations about the 2009 TREC Study**

20. Defendant MSL improperly refers to the 2009 TREC study and to the article by Maura Grossman and Gordon Cormack that analyzes the results of that study as follows:[2]

    a. Recommind did not participate in the 2009 TREC study so the results in no way reflect their performance.

    b. The two systems that the Grossman & Cormack article determined to have been "conclusively superior" in the 2009 TREC study – H5 and the University of Waterloo – use technologies and methods that are distinctly different from Recommind' Axcelerate system that Judge Peck adopted.

21. It is a misrepresentation of fact for Defendant MSL to imply that the results of these two participants in the 2009 TREC study – a study in which Recommind did not participate – can be used to support the reliability of the protocol in this case. The notion that if one computer-assisted review system performs well, then all computer-assisted review systems must perform well is akin to Toyota using BMW's and Audi's safety tests to validate the safety of Toyota's vehicles. TREC 2009 and the Grossman & Cormack article do not evaluate Recommind's system, and thus cannot be used to support the potential performance of the Axcelerate program generally or in the context of this case.

---

[2] Maura R. Grossman & Gordon V. Cormack, *Technology-Assisted Review in E-Discovery Can Be More Effective and More Efficient Than Exhaustive Manual Review*, XVII Rich. J.L. & Tech. 11 (2011), http://jolt.richmond.edu/v17i3/article11.pdf. (Doc. 100.)

### Misstatements & Misrepresentations about the "Quality Control" of the ESI Protocol

22. The protocol as currently adopted by Judge Peck does not include a reliable measurement of the accuracy of the protocol's system, and specifically fails to include a scientifically supportable measure of "recall," which is the metric that establishes what proportion of the responsive documents the system identified as "relevant."

23. Instead, the protocol takes a random sample of only 2,399 documents at the final stage of the system's "testing" in the section "Quality Control by Random Sample of Irrelevant Documents." This step in the predictive coding process is the final and only gauge as to whether Recommind's system is identifying as relevant an acceptable percentage of the responsive documents.

24. Using Defendant MSL's own numbers, a random sample of only 2,399 documents is not scientifically supportable. Brett Anders, counsel for Defendant MSL, stated at the January 4, 2012 hearing that his review of an initial random sample of documents indicated that the ultimate percentage of responsive documents would be 1.5% of the total population. (*See* Tr. Jan. 4, 2012 H'ring (Nurhussein Decl. Ex. A) at 46.) Based on this 1.5% number, one can predict that, of the approximately 2.5 million documents subject to the ESI protocol, 37,500 documents would be responsive to Plaintiffs' requests, and thus identified as "relevant." Conversely, the remaining 2,462,500 documents would be identified as "irrelevant" by the system.

25. The assessment of how many responsive documents (i.e. relevant documents) were missed by the system allows for the measurement of recall. The Court should note that **the smaller the percentage of responsive documents in a given population, the larger the sample size required to measure recall.**

26. A sample size of 2,399 documents randomly selected from 2,462,500 documents is not a statistically valid sample size that will allow the parties or the Court to determine how many responsive documents were missed by the Recommind system.

27. Mr. Puzicha, in paragraph 9 of his declaration, states that "a precise estimate of recall is irrelevant, however, as long as the estimation interval is within boundary of a standard accepted by the Court." The fact is, however, there has been no standard established by the Court. That is exactly what we are asking the Court to do.

28. In my opinion, **a sample size of 16,555 documents** during the "Quality Control by Random Sample of Irrelevant Documents" stage of the protocol **is a statistically valid sample size**, which is necessary given (1) the Defendants' estimation of a low yield percentage (1.5%) of relevant documents; and (2) preliminary evidence of Recommind's poor recall results in the 2011 TREC study

      as discussed further above. Plaintiffs previously proposed this number as the sample size in its draft version of the protocol submitted to Judge Peck on January 3, 2012.

29. Furthermore, based on my over twenty years of experience advising clients on the review of document collections, I believe that the request to review 16,555documents is a small burden on Defendant MSL in the context of a collection containing 2.5 million documents.

I declare under the penalties of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Dated: March 19, 2012

_____
Paul J. Neale