C436mooc

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    MONIQUE DA SILVA MOORE, et
      al.,
 4
                      Plaintiffs,
 5
              v.                              11 CV 1279(ALC)
 6
      PUBLICIS GROUPE SA and MSL
 7    GROUP,

 8                    Defendants.

 9    ------------------------------x
                                          New York, N.Y.
10                                        April 3, 2012
                                          4:00 p.m.
11
      Before:
12
                          HON. ANDREW J. CARTER, JR,
13
                                          District Judge
14
                               APPEARANCES
15
      SANFORD WITTELS & HEISLER, LLP
16         Attorneys for Plaintiffs
      BY:  STEVEN WITTELS
17         JANETTE WIPPER
           SIHAM NURHUSSEIN
18
      JACKSON LEWIS, LLP
19         Attorneys for Defendants
      BY:  JEFFREY BRECHER
20         VICTORIA WOODIN CHAVEY
           BRETT ANDERS
21

22

23

24

25
```

C436mooc

1              (In open court; case called)

2              THE DEPUTY CLERK:  Counsel, please state your

3     appearances.

4              MS. WIPPER:  Janette Wipper for the plaintiff.

5              MR. WITTELS:  Steven Wittles, your Honor.

6              MS. NURHUSSEIN:  Siham Nurhussein for the plaintiff.

7              MS. CHAVEY:  For the defendant MSL Group, victoria

8     Chavey.

9              MR. BRECHER:  Jeffrey Brecher.

10             MR. ANDERS:  Brett Anders.

11             THE COURT:  Good afternoon.  Let me just first make

12    sure that we understand which declarations we're talking about.

13    There has been a reference in the papers to four declarations,

14    but I think there are nine declarations attached.  Which ones

15    are we referring to in terms of the plaintiff's request to file

16    these declarations under seal?

17             MS. WIPPER:  Your Honor, there are six declarations

18    that were filed under seal.  They are the nonplaintiffs'

19    declarations that were filed.  All the plaintiffs have filed --

20    the seven filed the declarations that are unsealed.

21             Would you like the names of the declarants?

22             THE COURT:  Sure.

23             MS. WIPPER:  On the record I can say their names?

24             THE COURT:  We can go off the record as you say their

25    name.  Let's go off the record.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

C436mooc

1          (Discussion off the record)

2          THE COURT:  Let me hear from plaintiffs as to why

3    these declarations need to be filed under seal.  I understand

4    plaintiffs' position is that these potential individuals could

5    face retaliation.  Why is this case different from any other

6    civil rights case in which plaintiffs can face potential

7    retaliation?

8          MS. WIPPER:  Yes, your Honor.  If I may first address

9    the legal standard.  Usually declarations are filed in support

10   of a dispositive motion and in that case there would be

11   judicial documents that would be subject to the heightened

12   standard because of the presumption of public access to would

13   attach.  Here because this is a nondispositive motion that will

14   not resolve any litigants' substantive rights, there is a lower

15   good cause standard just to show a baseline showing of

16   potential harm from disclosure, which we believe we can show in

17   this case due to a fear of retaliation that has been expressed

18   by not only the declarant but others that we talked to that did

19   not feel comfortable filing declarations because of the fear of

20   retaliation.

21          Some of the examples of the retaliation are our lead

22   plaintiff, Monique DaSilva Moore was terminated from her

23   current position two weeks after her current employer was

24   notified of this lawsuit through a third-party subpoena.  That

25   is well known in the industry and she is also having a very

C436mooc

1    difficult time finding new employment.

2            Secondly, current employees we have heard that

3    leadership at the company has been asking them on a regular

4    basis whether they have been in contact with plaintiffs'

5    counsel in this case, and it has chilled participation greatly

6    and also the fear of retaliation has increased as a result.

7            One individual brought her lawyer to a meeting with

8    counsel, defense counsel, because she was so afraid to talk to

9    them due to the fear of retaliation from the company.

10           THE COURT:  These individuals, these names we won't go

11   into, what is their purported involvement in this litigation

12   going to be?

13           MS. WIPPER:  So of the six, two are men.  So they are

14   obvious witnesses and are not absent class members and are only

15   supporting the plaintiffs in the case.  One is an HR

16   representative and that would fall outside of the class.  She

17   submitted a declaration about the policies at issue.  She is a

18   witness.  There is another woman that I mentioned earlier who

19   is outside of the class period, who is also submitting it just

20   as a witness.  So they are not parties.  There is only two of

21   these six who are potential class members.

22           THE COURT:  Regarding those two, if they are in fact

23   potential class members, if your concern is that their name

24   gets out there, wouldn't their name be public record anyway by

25   the time they become class members?

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

C436mooc

1          MS. WIPPER:  Yes, your Honor.  In terms of it they opt

2     into the lawsuit, yes, they would.  At this time they haven't

3     decided whether they would opt into the lawsuit.  What we would

4     propose to the Court is if we can redact in lieu of a sealing

5     the declarations, just redact identifying information so their

6     name and address and anything concerning where they work, the

7     accounts they worked on, anything that would show who they are,

8     but the substance of the declaration can be in the record,

9     which is really what is important to the motion is the job

10     duties and the things that the Court would be considering to

11     determine whether the plaintiffs are similarly situated to the

12     class.

13          THE COURT:  Thank you.

14          We'll hear from defendants.

15          MS. CHAVEY:  Thank you, your Honor.  I don't think

16     that the plaintiffs have addressed what we think is the

17     fundamental issue here with regard to their request to seal

18     these declarations, and that is how are the declarations

19     presented in this case differ from any other case.  If the

20     declarations are permitted to be sealed here on no

21     particularized showing of potential for retaliation against

22     these former employees -- none of them work for us any longer,

23     so the fear of retaliation appears to be fear that other

24     parties who aren't involved in this litigation would be

25     retaliated against them.  But the request would be a request

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

C436mooc

1    that could be made in any case, on any matter and would prevent

2    the Court from viewing and from the parties from fully

3    exploring the declarations that were made.  The public has a

4    right to know the information being filed with this Court,

5    whether it is the name of the individual, the arguments made,

6    or what have you.

7          The argument about potential publicity that might

8    attach to these individual named is a little hard for us to

9    understand because the plaintiffs have consistently sought

10   publicity for this case from the time it was filed.  In

11   February 2011 Ms. Moore's name has been put into the media by

12   her lawyers and her lawyers have given interviews.  They have a

13   press release on their website still with regard to this case.

14   So Ms. Moore was thrust into the public eye by her lawyers on

15   her behalf.  Just this week Ms. Wipper again was quoted in the

16   news with regard to other issues in this case that don't relate

17   to the matters that your Honor is taking up today, but there is

18   publicity around this case because the plaintiffs have sought

19   it.

20         THE COURT:  Let me find out from the plaintiffs again

21   what the position is that corroborate the fact that these six

22   individuals that we're discussing.  Is it correct that all six

23   of these individuals are no longer employed with the defendant,

24   is that correct?

25         MS. WIPPER:  Yes, your Honor.  But there is still a

C436mooc

1    fear of retaliation because it is a close-knit PR industry

2    where they believe that people inside of MSL will talk to

3    others outside of MSL.  So the fear is really about the

4    industry, the network within the industry.  It is not limited

5    to current employees.  We have also talked to current employees

6    who did not submit declarations due to their fear of

7    retaliation.  That is why I address that as well, the current

8    employees.

9            THE COURT:  But for these individuals, these are all

10   former employs and your primary concern is their identities and

11   you are willing to have the declarations filed, but you wish

12   that their identities should be redacted.  Is that because of a

13   fear of retaliation within the publishing industry?

14           MS. WIPPER:  Yes.  The publish relations industries.

15           THE COURT:  Are all of these individuals still

16   employed in the public relations industry?

17           MS. WIPPER:  Yes.

18           THE COURT:  All of them?

19           MS. WIPPER:  I believe so, yes.

20           THE COURT:  These concerns that you have spoken about

21   in terms of specific instances of retaliation, these specific

22   instances all occurred at MSL Group, is that correct?

23           MS. WIPPER:  Yes, your Honor.

24           THE COURT:  Do you have any specific instances of

25   retaliation at any of these other public relations firms?

C436mooc

1            MS. WIPPER:  Well, Monique DaSilva Moore our lead

2     plaintiff was at Ogilvy, which is a direct competitor, and that

3     is where she was terminated from, Ogilvy.  It was a two-person

4     layoff about two weeks after they were served as subpoena in

5     this case for her employment records through third-party

6     subpoena.  They were put on notice about the case.  She hasn't

7     filed a claim against Ogilvy.  However, there is a belief that

8     there was a relationship between the notification of this case

9     and her termination.

10            THE COURT:  You said it was a two-person layoff at

11     Ogilvy?

12            MS. WIPPER:  Yes.

13            THE COURT:  And the other individual that was laid

14     off, was that person in any way associated with this lawsuit?

15            MS. WIPPER:  No.  I don't have the information about

16     that person, but it didn't look like a typical layoff that

17     would impact a large number of people.  It looked like

18     terminations because it was only two people.

19            THE COURT:  Let me hear from defendants as to

20     defendants' position on plaintiffs' suggestion that you simply

21     file the declarations not under seal but under redacted names.

22            MS. CHAVEY:  Your Honor, I don't know how that would

23     be consistent with the Court's general principle of allowing

24     filing to be available to the public.  It is a request that

25     doesn't have any boundaries.  And if it works in this case to

C436mooc

1      just redact the names, it would work later in the case and

2      other cases.  The information that underlies the plaintiffs'

3      position appears to be rank speculation.  To suggest that a

4      nonparty who is not represented here in court conducted a

5      layoff in retaliation and some sham reason, I think that is

6      sheer speculation.  There is no evidence of that.  We don't

7      have any information about it either way and the plaintiffs

8      don't either and haven't articulated any.

9            Any concerns that the plaintiffs may have heard from

10     people about why or why not get involved in the lawsuit aren't

11     before the Court.  What we're focused on is the six people who

12     have come to the Court and say an equal pay act claim

13     nationwide involving all of these different people in all of

14     these different jobs should be conditionally certified.  We

15     think it would be appropriate and consistent with the Court's

16     general means of operating that they did so by using their

17     names and there is no reason not to.

18           They have agreed to eject themselves into this case.

19     Some of them as counsel stated don't have an opportunity to

20     join, for example because they are male, but they have brought

21     themselves into the courthouse by way of their affidavit to

22     support the plaintiffs' position.  There is no reason that has

23     been articulated as to why they should be able to shield their

24     identity from any of the publicity or anything that plaintiffs

25     may generate further in this case.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

C436mooc

1          THE COURT:  Plaintiffs' concern about the retaliation

2     within the industry, again for these six individuals, four of

3     these individuals are witnesses and are not potentially

4     plaintiffs, for those four individuals if they are in fact

5     witnesses at this trial, isn't their identity going become

6     public at some point anyway?

7          MS. WIPPER:  Absolutely, your Honor.  The only reason

8     we're seeking to file these under seal now is because our

9     interpretation of the case law is not judicial documents at

10    this point.  This is a preliminary nondispositive motion and

11    the presumption of public access that attaches, it is a

12    judicial document like filed in support of summary judgment or

13    trial or something of that nature where the litigant's

14    substantive rights are decided by the Court, we would not be

15    seeking to file the documents under seal.

16         At this point at this stage because of what has gone

17    on in terms of what I have already described, we felt that it

18    was the best course of action to file the declarations under

19    seal or at a minimum try to seek to protect the identities of

20    these individuals because the standard was lower and their fear

21    met the lower standard, the baseline showing of potential harm.

22         THE COURT:  If your concern is the potential for

23    retaliation, if you are correct and if it is the case that

24    within this industry -- just arguendo -- there is going to be

25    retaliation, within the industry if any of the employers within

C436mooc

1   that industry find out that any of these individuals are

2   involved in this lawsuit in any way, if we accept that as true

3   then if we seal these documents, we're only delaying the

4   retaliation, is that essentially what you are saying?

5           MS. WIPPER:  Well, they can make a choice later if

6   they want to submit declarations in support of a dispositive

7   motion.  If there is a summary judgment motion filed, and at

8   that point we would obviously have a much higher burden to show

9   that the documents should be filed under seal, and at that

10  point we may have more information about retaliation.  This is

11  everything we heard so far in this case.  There hasn't been a

12  lot of discovery.  We haven't taken depositions of the people

13  at issue about this retaliation.  Mainly, the president of the

14  company is the person that everyone is extremely afraid of and

15  they think that he will take action or talk to others that will

16  impact their employment opportunities.

17          So we're not at that point where we can say definitely

18  we can meet the standard later when there is judicial documents

19  at issue.  However, we'll have much more discovery at that

20  point at the close of discovery and it may be that that is

21  true.  Right now it is a nondispositive motion and so the

22  standard that we need to meet now is much lower and we believe

23  what we have heard so far is sufficient.

24          THE COURT:  Let me hear from defendants.

25          MS. CHAVEY:  Judge, two things we would like to add.

C436mooc

1  One is counsel has referred a couple times to all that has gone

2  on and this is all the information they have.  There has not

3  been nothing that has gone on that has been presented other

4  than Ms. Moore who is the lead plaintiff was apparently laid

5  off from her position at Ogilvy at some point just before her

6  deposition, which was also after her employment records were

7  subpoenaed.

8        The headlines were prominent about Monique DaSilva

9  Moore filing this lawsuit and there was a lot of press in the

10  Trade Press, PR Week, as well as the Wall Street Journal and

11  Bloomberg.  There was a lot of press attention generated by

12  plaintiffs' counsel at the filing of this case and all of it

13  included Ms. Moore's name.  So that is all that has gone on.

14  There is no reason to think, no reason that has been presented

15  anyway, that there was any connection between her participation

16  in the lawsuit and the layoff of her and I guess somebody else

17  at Ogilvy.

18        In addition, your Honor, it is not up to these six

19  declarants as to whether they continue their involvement in the

20  case.  Their involved in the case, we intend to depose these

21  people.  Even if they don't choose to make themselves witnesses

22  at trial, we can subpoena them for trail and take trial

23  depositions if they are out of the reach of a subpoena.  They

24  are in the case at this point.  We know who they are.  Our

25  clients have been attending our depositions.  So in terms of

C436mooc

```
1    having the declarations marked as "attorneys eyes only," I
2    don't know how we would do that and have our client there,
3    which I think we have every right to have, because then
4    obviously the identity of the declarant who is now a deponent
5    would become known to our client.  I just don't know how that
6    would work.  These people have come into this case and they
7    supported the plaintiffs' position and there is no reason that
8    has been brought forward to take this unusual step of shielding
9    their identity.
10            THE COURT:  Plaintiffs.
11            MS. WIPPER:  If I could just respond to a couple
12   points.  First, Ms. DaSilva Moore never spoke to the press.
13   This is a high-profile case.  This is a civil rights case that
14   addresses important issues to the public and therefore there
15   was press coverage, but she has never spoken to the press.
16            With respect to designating confidential documents and
17   public information, defendants have designated every single
18   document produced in this case, including documents that are on
19   their website, as confidential.  We did not object.  We
20   accepted that confidential designation, filed everything under
21   seal mainly because of their overdesignation.  Because at this
22   stage in the case where there was a nondispositive motion, we
23   didn't believe it was necessary now, although it may be later
24   during summary judgment or during a dispositive motion
25   briefing, to challenge those designations.  But the reason that
```

C436mooc

1    everything has been filed under seal is mainly because they

2    have designated everything that they produced, including their

3    website press releases as confidential.

4              To respond to defense counsel's comment concerning

5    everything that has gone on, it wasn't just Monique DaSilva

6    Moore.  It is also the fact that defense counsel is talking to

7    absent class members before this case has been certified, which

8    is questionable in and of itself to asking them on a regular

9    basis whether they have talked to plaintiffs' counsel, which

10   some courts would find improper.  We haven't raised this issue

11   at this point.  We may raise it at a later stage.  There has

12   been a lot that has gone on to the point where a current

13   employee brought their own lawyer into a meeting because she

14   was so fearful of retaliation of the company.

15             So this is not something that is speculative from our

16   position.  This is something that is real and we have a duty to

17   the people that submit these declarations to try to protect

18   their job opportunities and not have them in situation where

19   they are fired like our lead plaintiff potentially because of

20   their involvement.  So that is why we filed them under seal.

21             THE COURT:  Just so I am clear your concern that these

22   six individuals will face retaliation by other employers in the

23   industry is based on Ogilvy's laying off of Ms. DaSilva Moore

24   and another individual and what else?  Is that it?

25             MS. WIPPER:  It is also the president of MSL that they

C436mooc

1   are particularly scared of.  That person, Jim Tsokanos, is the

2   person that we were told the people who did not submit

3   declarations the reason that they did not -- some of which did

4   start the process and stopped midpoint and said, I know he is

5   going could come after me and I cannot do this.  He is

6   currently at MSL and he is a critical player in this case and

7   so it is not just Ogilvy and plaintiff DaSilva Moore.  It is

8   also the actor within MSL that potentially could talk to others

9   outside in the industry.  It does come back to MSL in term of

10  the retaliation.

11         THE COURT:  What is your belief that the president of

12  MSL would be able to have an effect on these other employers?

13  Is essentially your argument the president of MSL will be so

14  upset about this that he would call the other employers of the

15  industry and ask them to retaliation against these individuals

16  and these other employers would do so?

17         MS. WIPPER:  I am not saying it is to that extent.  I

18  am just saying that the retaliation I think would be more

19  subtle.  I don't think he would call and say, Fire this person.

20  That is not what I am alleging.  I am saying that it is not a

21  huge industry.  This is not a huge company.  This is only a

22  group of six people that we're talking about.  He could

23  negatively disparage them in the industry and that could lead

24  to them having a hard time finding employment.  There is

25  several people that expressed this to us.  So that is their

C436mooc

1   belief.  They work in this industry.  We don't.  That is

2   essentially what we heard over and over again.

3           THE COURT:  Again, getting back to these six

4   individuals, it is my understanding that these six individuals

5   are not only no longer employed at MSL but are in fact employed

6   somewhere else within the industry?

7           MS. WIPPER:  Yes.

8           THE COURT:  So your hypothesis is not that the

9   president of MSL would be able to keep them from getting other

10  jobs, but the president of MSL would be able to influence their

11  current employers to fire them?

12          MS. WIPPER:  I don't know if it would lead to

13  termination.  For a retaliation claim it has to be adverse

14  employment action.  It could they are no longer being

15  considered for promotions, they are nothing longer being

16  groomed for the next level.  I don't know how it would play

17  out.  There is a real fear.  It is a network.  There is a close

18  network in this community.  People talk all the time and they

19  perceive him as somebody who is -- they are fearful.

20          THE COURT:  Let's go step by step through this.  The

21  first name that you mentioned, everyone has that on their mind

22  that first name, where is that person employed and what does

23  that person do?

24          MS. WIPPER:  You mean their current employment?

25          THE COURT:  Their current employment.  You are

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

C436mooc

 1    claiming these people face a real fear of retaliation of some

 2    sort.  I am trying to figure out where this is going, and how

 3    much basis there is to believe these individuals could face

 4    retaliation as a result of their names being disclosed in this

 5    lawsuit.

 6            MS. WIPPER:  I apologize, your Honor.  I don't have

 7    their current employment here with me.  I could submit that to

 8    you tomorrow where all the declarants currently work.

 9            THE COURT:  I guess what I am saying is the name of

10    their employer is not quite so significant as what it is they

11    are doing.  You just indicated some concern that they may not

12    be in the line for any sort of promotion or may face some sort

13    of adverse employment consequence.  It would help to know what

14    their employment status is and whether or not they actually are

15    in the pipeline of some sort.  It depends on what they are

16    doing.  Do you have any information on what they actually are

17    currently doing and how that relates to what they may have

18    done?

19            Because, for example, to exaggerate and make the

20    point, if for example that first person worked in the public

21    relations industry -- again, if that person is currently

22    employed in the mailroom at the public relations company,

23    regardless of what the prior employment was, if that person is

24    in a position there in the mailroom where there is not any sort

25    of the pipeline for any sort of immediate advancement of his or

C436mooc

1    her career then that sort of limits the potential of

2    retaliation in this that situation.

3            Wouldn't you agree?

4            MS. WIPPER:  Understood, yes.  I don't think that is

5    the case of any of that these people.  I think they are in

6    career positions where they are expecting to progress and stay

7    in the industry.  There is one declarant who is a HR

8    professional.  I think she is in the industry, but I don't know

9    if it would be considered the same.  She is an HR employee.

10   She is not a PR, a public relations professional.  She works in

11   the PR industry.

12           THE COURT:  So taking that person as an example, the

13   close-knit nature of the PR industry may not affect her the

14   same way, wouldn't you agree?

15           MS. WIPPER:  She should probably have other

16   opportunities outside of PR if she is in HR.  Also, in HR to

17   submit a declaration in a discrimination case as an HR employee

18   is a pretty significant thing to do.  So I think her issues are

19   unique in that respect.  Also, she happens to be the HR

20   employee who investigated the sexual harassment complaint

21   against the president.  Also, I don't know how that makes her

22   obviously fearful about him in particular.  But, yes, I believe

23   that her opportunities would be broader than just PR because

24   she has no more transferable skills.

25           THE COURT:  Wouldn't that person's situation be less

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

C436mooc

1   unique and more general the fact that they are in HR and they

2   are involved in this sort of situation that it is no longer

3   unique to this industry.  It is just general sense of

4   retaliation from any and everybody, correct?  Because there

5   would be the fear if someone is working in HR and they are

6   involved in this sort of lawsuit, there is a concern that any

7   employer in any industry, whether it is PR, food service, sport

8   management, would not want that person working for them,

9   correct, that is a more generalized concern and fear of

10  retaliation and then how does that make this different from any

11  other case?

12        MS. WIPPER:  Well, what is different about this case

13  is I think this stage of the proceedings.  So because this is a

14  nondispositive motion, I think that is why this is different.

15  Where this normally comes up in the case law is on summary

16  judgment, which is a completely different stage of the case

17  where substantive rights are at issue and it is unquestionably

18  in the Second Circuit a judicial document and in support of a

19  summary judgment motion, which is what makes this different

20  than from the other case law that was referenced by defense

21  counsel.

22        With respect to the HR declarant, I do believe she has

23  more opportunities outside of PR.  I do think she does have a

24  real fear of the president here and specific retaliation with

25  respect to him because of her involvement with his complaint

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

C436mooc

1    that happened and is at issue in this case.  So she does have a

2    more general position and more general opportunities, but she

3    also has a more acute fear due to her relationship in that

4    investigation.

5          THE COURT:  That gets back again to what is it that

6    she is afraid of that he could possibly do to her?

7          MS. WIPPER:  The same comments I made earlier about

8    the disparagement.  Now his ability to negatively impact her

9    employment opportunities would be a lot less because I would

10   assume that his fear of influence would be in PR only.  So the

11   fact that she could go elsewhere would probably lessen his

12   ability to impact if he was doing that to impact her employment

13   opportunities.

14         THE COURT:  Defendants.

15         MS. CHAVEY:  Your Honor, what I wanted to mention was

16   all of this speculative retaliation is illegal.  There are laws

17   that prohibit the kinds of actions that plaintiffs' counsel is

18   speculating on.  There are laws that protect people who

19   participate in proceedings like this one.  Monique DaSilva

20   Moore has very cable counsel.  I am sure that any other

21   declarant who felt that they had been illegally retaliated

22   against by their employer would have the opportunity to retain

23   counsel or not and seek the remedies that are available by law.

24         So all of these possibilities that are under

25   discussion have already been reviewed by the lawmakers and

C436mooc

1    there are laws that prohibit this and there are remedies to

2    address them.  So whether it is the antiretaliation provisions

3    of the discrimination laws or defamation laws or other common

4    law theories, there are protections under the law that exist

5    already.  So to create remedies within the context of this case

6    for the potential that a third party who isn't represented here

7    might do something at the behest of somebody else is just way

8    out on a limb.  And if any of those things were to happen,

9    which we don't think they would but none of us can predict for

10   sure into the future, there are remedies for those things.

11             THE COURT:  Thank you.

12             Let me hear from plaintiffs.  Any other arguments the

13   plaintiffs would like to advance on this point?

14             MS. WIPPER:  Your Honor, the plaintiffs would propose

15   that we have the opportunity to brief the issue if you are

16   interested in more facts that we can provide from the

17   declarants to assist in your decision.

18             THE COURT:  Thank you.  I don't think it is necessary

19   to brief this.

20             Any other arguments from plaintiffs.

21             MS. WIPPER:  No.

22             THE COURT:  I am going to deny plaintiffs' requests to

23   have these declarations filed under seal.  I think good cause

24   has not been shown.

25             The other issue you wanted to address was this issue

C436mooc

1    of the filing of an amicus brief.  I am inclined to reject the

2    filing of an amicus brief.  I don't think it is necessary.  I

3    don't think I need to hear anything from amicus in this case.

4    I don't think an amicus case will be necessary so the parties'

5    position on that is moot.

6            I think that is everything we need to deal with today.

7    Is there anything else from plaintiffs today?

8            MS. WIPPER:  Yes, your Honor.  Can we have until

9    Friday to speak to the declarants about whether they would want

10   to withdrew any of the declarations given your ruling?

11           THE COURT:  Defendants have any position on that?

12           MS. CHAVEY:  We have no objection to that.

13           THE COURT:  That's fine.

14           Anything else from plaintiffs today?

15           MS. WIPPER:  No.

16           THE COURT:  Anything else from defendants today?

17           MS. CHAVEY:  Judge, there are two open issues.  One of

18   them is the plaintiffs submitted a letter I believe last week

19   and we received it yesterday asking your Honor to decide both

20   the motion for conditional certification and the motion to

21   amend the complaint.  I don't know if you wanted to hear from

22   defendant MSL on that or whether you or Magistrate Judge Peck

23   will rule on the motion to amend the complaint in the first

24   instance.

25           THE COURT:  I will rule on both of those in the first

C436mooc

1    instance.

2             MS. CHAVEY:  Okay.

3             THE COURT:  Thank you.  Anything else?

4             MS. CHAVEY:  No.  Thank you, your Honor.

5             THE COURT:  I think the defendants had a request to

6    file documents under seal.  There is no objection to that, is

7    that correct?

8             MS. CHAVEY:  Your Honor, that is right.  We did file a

9    request to seal the documents that we submitted in support of

10   our opposition to their conditional certification motion.

11   Those documents that had been marked as "confidential" in the

12   course of discovery, we were seeking to file those under seal

13   as the plaintiffs did.

14            MS. WIPPER:  Your Honor, we're going to object.  The

15   defendants have not articulated good cause for anything that

16   they have designated as "confidential" and "attorneys eyes

17   only."  Given your ruling today, we are going to object and we

18   would also like to unseal the documents that we filed because

19   it has complicated this filing -- filing the amended complaint

20   under seal, filing the briefing, filing all the documents.  So

21   we would request that they are articulate good cause on why all

22   of the company policies should be submitted under seal as well.

23            THE COURT:  Defense counsel.

24            MS. CHAVEY:  This is the first we're hearing this, but

25   in any event what we're most focused on in terms of the

         SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

C436mooc

1     briefing on the conditional certification motion is the

2     compensation information.  This is the salary information for

3     individuals who are or were employed by MSL Group during the

4     period in question.  I don't recall that we submitted in

5     support of our opposition brief any policies or things like

6     that -- if we could talk to the plaintiffs counsel about it,

7     there might be things that we would agree that don't need to be

8     confidential and filed under seal.  Certainly our position

9     would be that confidential information for individuals should

10    be filed under seal and should not be public information.

11            THE COURT:  Let's give the parties an opportunity to

12    try to speak to each other about this and then let's have the

13    parties file joint status report on April the 17th.  In that

14    status report let us know if the parties have been able to

15    resolve that.  And if not, let's have the parties submit a very

16    brief, proposed briefing schedule on this issue.  Let's have

17    the parties submit a briefing schedule on that if the parties

18    cannot have agreement on that on April 17th.

19            Anything else today?

20            MS. CHAVEY:  No.  Thank you.

21            MS. NURHUSSEIN:  No.  Thank you.

22            THE COURT:  Thank you very much.

23                           o0o

24

25