UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MONIQUE DA SILVA MOORE, MARYELLEN O'DONOHUE, LAURI MAYERS, HEATHER PIERCE and KATHERINE WILKINSON on behalf of themselves and all others similarly situated.

Plaintiffs,

- against -

PUBLICIS GROUPE SA and MSLGROUP,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11 CV 1279 (ALC) (AJP)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MSL GROUP'S MOTION TO RETAIN DOCUMENTS UNDER SEAL**

# TABLE OF CONTENTS

**Page**


PROCEDURAL AND FACTUAL BACKGROUND....................1

ARGUMENT....................4

A. MSL Justifiably Relied on the Confidentiality of the Documents....................5

B. The Documents Plaintiffs Requested the Court to File Under Seal Should Remain Sealed....................7

1. Documents revealing the MSL's internal administrative processes and salary information should not be made available for public inspection....................9

2. Documents that are proprietary to third parties must be protected from unnecessary disclosure....................11

3. Details of the internal complaints of MSL employees, not parties to this action, should continue to be protected....................12

CONCLUSION....................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*City of Hartford v. Chase*,
942 F.2d 130 (2d Cir. 1991)....................6

*Culligan v. Yamaha Motor Corp.*,
110 F.R.D. 122 (S.D.N.Y. 1986)....................10

*Dorsett v. County of Nassau*,
762 F. Supp. 2d 500 (E.D.N.Y. 2011)....................8

*Flaherty v. Abraham Seroussi*,
209 F.R.D. 300 (N.D.N.Y. 2002)....................13

*Gambale v. Deutsche Bank AG*,
377 F.3d 133 (2d Cir. 2004)....................8

*In re: Davitt/Adler Litig.*,
1997 U.S. Dist. LEXIS 23671 (N.D.N.Y. Dec. 23, 1997)....................13

*In re: NASDAQ Market-Makers Antitrust Litig.*,
164 F.R.D. 346 (S.D.N.Y. 1996)....................8

*Int'l Equity Invs. V. Opportunity Equity Partners Ltd.*,
2010 U.S. Dist. LEXIS 19510 (S.D.N.Y. Mar. 2, 2010)....................5

*Kelly v. City of N.Y*,
2003 U.S. Dist. LEXIS 2553 (S.D.N.Y. Feb. 24, 2003)....................5, 6, 14

*Palmieri v. DIC Concrete Corp.*,
779 F.2d 861 (2d Cir. 1985)....................5

*Roberts v. Valner*,
2004 U.S. Dist. LEXIS 20371 (E.D.N.Y. Oct. 4, 2004)....................8-9

*SEC v. TheStreet.com*,
273 F.3d 222 (2d Cir. 2001)....................4, 5

*Standard Investment Chartered, Inc. v. N.A.S.D.*,
No. 07 Civ. 21014, 2008 U.S. Dist. LEXIS 4617 (S.D.N.Y. Jan. 23, 2008)....................8

*Stern v. Crosby*,
529 F. Supp. 2d 417 (S.D.N.Y. 2007)....................7

*Stillman v. Vassileff*,
100 F.R.D. 467 (S.D.N.Y. 1984) ........................................................................................10

*Sullivan Marketing, Inc., v. Valassis Commc'ns, Inc.*,
No. 93 Civ. 6350, 1994 U.S. Dist. LEXIS (S.D.N.Y. May 5, 1994) .......................................10

*U.S. v. Chandler*,
220 F. Supp. 2d 165 (E.D.N.Y. 2002) ..................................................................................13

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995)...............................................................................................8, 12

*Vesta Corset Co., Inc. v. Carmen Foundations, Inc.*,
No. 97 Civ. 5139, 1999 U.S. Dist. LEXIS 124 (S.D.N.Y. Jan 13, 1999)................................10

*Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*,
1998 WL 186728 (E.D.La., 1998) ........................................................................................11

Defendant MSLGroup Americas, Inc. ("MSL") respectfully submits this memorandum of law in support of its motion to retain confidential and proprietary documents under seal, as ordered by this Court on February 29, 2012, pursuant to a request by Plaintiffs.

**PROCEDURAL AND FACTUAL BACKGROUND**

On February 28, 2012, Plaintiffs sent the Court a letter requesting permission to file certain documents and information, which had been designated by the parties in discovery as confidential, under seal. (Endorsed Letter dated February 29, 2012).[1] These documents included individual employees' salaries, MSL salary ranges, policies that are not publicly available, and related materials. Plaintiffs requested the sealing of the documents and information to allow them to be used in support of their Motion for Conditional Certification of a collective action and their Motion to Amend the Complaint and file a proposed Second Amended Complaint. *Id*. The Court granted Plaintiffs' request on February 29, 2012 with the caveat that MSL could object to the sealing once the documents were filed, if it deemed it appropriate. *Id*. MSL made no objections to Plaintiffs' request to file under seal documents that had been marked as confidential by MSL or Plaintiffs' request to redact the portions of the Motion for Conditional Certification and Motion to Amend (including the proposed Second Amended Complaint) that referred to or relied upon those confidential documents.[2]

---

[1] A copy of the Endorsed Letter order, dated February 29, 2012 [DKT 99] is attached to the Declaration of Jeffrey Brecher in support of motion to retain documents under seal ("Brecher Dec.") as Exhibit 1.

[2] *See* Brecher Dec. Exh. 2, letter from MSL to Judge Carter dated March 2, 2012. MSL did object to Plaintiffs' effort to file under seal the declarations of former MSL employees that purported to support Plaintiffs' Motion for Conditional Certification, finding no basis upon which the documents should have been filed under seal. *Id*. This Court denied Plaintiffs' request on April 3, 2012.

On March 19, 2012, MSL filed its briefs in opposition to Plaintiffs' Motion for Conditional Certification and Motion to Amend the Complaint. In its papers, MSL cited many of the same documents and information that Plaintiffs had already filed under seal in their motion papers, as well as some additional documents that had been marked confidential when produced in discovery. Accordingly, MSL requested the Court's permission to file the confidential documents under seal, as the Plaintiffs had done.

On April 3, 2012, the Court convened a conference to address Plaintiffs' request to file declarations in support of their motions under seal and MSL's objections. After argument, the Court denied Plaintiffs' request. *See* DKT, Minute Entry, April 3, 2012. While Plaintiffs had not made any application prior to that conference to vacate the Court's February 29, 2012 Order granting Plaintiffs' request to file documents marked as confidential under seal, after the Court denied *their* request to file their declarations under seal, Plaintiffs immediately then requested, for the first time, that Judge Carter vacate his order and unseal *all* documents used by any party in connection with the pending Motions for Conditional Certification and to Amend.

Notably, Plaintiffs had not previously challenged MSL's or Publicis Groupe's confidentiality designations in discovery in accordance with the Confidentiality Stipulation; had not previously indicated any objection to MSL's request on March 19 to seal confidential documents and information; and had themselves sought the Court's permission to seal some of the very same documents and information.

Having raised this request for the first time at the April 3, 2012 conference, the Court agreed to MSL's suggestion that the parties first discuss the Plaintiffs' request to determine whether they could reach an agreement regarding the confidential documents and information. The parties met and conferred and reported to the Court on April 17 that they had reached

agreement with regard to some, but not all, confidential documents and information.[3] The parties agreed that a pay comparison chart prepared by Plaintiffs that identified the salaries of the Plaintiffs and alleged comparators and an MSL chart identifying the individual salaries of employees should be sealed (Doc. No. 135, Ex Q; Doc. No. 119-5 Exh. 14), but otherwise disagreed.

Plaintiffs requested that even though *they* had made an application to file certain documents under seal, which the Court granted, the order should be vacated and the following documents unsealed:[4]

- proprietary policy and procedure manuals containing details on bonuses and salary increases (Doc. No. 135, Ex. D) (the "Janus Book");
- guidelines for performance management including the award of incentive compensation to MSL employees and promotional recommendations including information regarding the percentage of bonus pools and the frequency with which increases will be given and the percentages of increases based on performance (Doc. No. 135, Exhs. F, K and L);
- MSL's salary band data contained in confidential documents (Doc. No. 135, Exh. I; Doc. No. 119-2, Exh. 6; and
- industry compensation surveys purchased from third party vendors and designated as confidential by those vendors (Doc. No. 135, Exhs. G & H); (collectively referred to herein as "the Sealed Documents").[5]

One item not specifically mentioned in the April 17, 2012 letter to the Court identifying the disputes between the parties is the salary information included in the expert report of John Johnson, submitted by Defendants. That document was inadvertently filed in an unredacted

[3] *See* Brecher Dec. Exh. 3, joint letter dated April 17, 2012.

[4] Because these documents have been filed under seal, and although the Court has been previously provided courtesy copies of these documents, for ease of reference, additional copies have been sent to the Court with a courtesy copy of this motion for an in camera inspection.

[5] In the letter to the Court, dated April 17, 2012 (Brecher Dec. Exh. 3) Defendants requested that MSL job descriptions be retained under seal. Defendants withdraw their request with respect to the job descriptions.

form, but the error was quickly identified, the Clerk of the Court notified, and the document was removed the next day.[6]

Plaintiffs also objected to MSL's request to file under seal organizational charts containing the identity of MSL's management and staff, client assignments, and reporting relationships (Doc. No. 119-5, Exh. 15). Moreover, Plaintiffs propose to file a Second Amended Complaint containing detailed information regarding the internal, confidential complaints of former MSL employees who are not parties to this action, and as to which Plaintiffs also requested permission to file under seal, which was granted. (Proposed Second Amended Complaint ("SAC"), ¶¶ 44-45).

For the reasons set forth below, the Court should not vacate its prior order and strip confidential and proprietary documents of the "confidential" designation that Plaintiffs never challenged in discovery and then conceded was appropriate when they themselves sought to seal the documents on February 28, 2012.

## <u>ARGUMENT</u>

The Second Circuit has established a restrictive standard for modifying a protective order: "Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order . . . 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'" *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (*quoting Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)). The Court warned against the effects of granting requests to modify protective orders

[6] On the basis of Plaintiffs' agreement that individual salary information should remain confidential and under seal, MSL does not believe there is any dispute about the expert report of John Johnson.

without a compelling reason. *Id*. at 296. In the Second Circuit, whether there has been reasonable reliance by a party or deponent on the confidentiality order in giving testimony or producing materials, a district court should not modify an order under 26(c), "absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *Id*. Moreover, the burden to modify an existing protective order falls on the Plaintiffs to show "improvidence in the grant of the order or some extraordinary circumstance or compelling need." *Kelly v. City of N.Y*, 2003 U.S. Dist. LEXIS 2553 (S.D.N.Y. Feb. 24, 2003) (*quoting TheStreet.com*, 273 F.3d at 229. Absent such showing, a party "should be entitled to rely upon the enforceability of a protective order." *Palmieri v. DIC Concrete Corp.*, 779 F.2d 861, 864-65 (2d Cir. 1985) (citations omitted); *Int'l Equity Invs. V. Opportunity Equity Partners Ltd.*, 2010 U.S. Dist. LEXIS 19510, at *11 (S.D.N.Y. Mar. 2, 2010).

### A. MSL Justifiably Relied on the Confidentiality of the Documents

MSL reasonably relied on the Court's Order granting *Plaintiffs'* request to file the Sealed Documents under seal, based on the confidentiality designations used in discovery. Initially, the Stipulation and Order Regarding Production of Confidential Information, ordered by this Court on March 8, 2012, contains extensive language protecting the confidentiality of documents designated as "Confidential Information" or "Attorneys Eyes Only Information." The Confidentiality Order provides a protocol for parties to challenge the designation of documents marked with confidentiality designations – a protocol never invoked by Plaintiffs.[7] (Confidentiality Order, ¶ 12) The Confidentiality Order also provides a procedure for the filing of protected materials with the Court, including the filing of such documents under seal with the Court. (Confidentiality Order, ¶¶ 17 & 18.) Plaintiff followed this procedure, without objection,

[7] The Confidentiality Order is attached to the Brecher Dec. as Exhibit 4.

by requesting that the protected documents to be used in Court filings be sealed in accordance with the Confidentiality Order. Brecher Dec. Exh. 1. By invoking this procedure, Plaintiffs agreed both to the designation of the Sealed Documents as confidential and to their meriting sealing so as to prevent the dissemination of the confidential information contained in the Sealed Documents to the public at large. *See City of Hartford v. Chase*, 942 F.2d 130, 136 (2d Cir. 1991) (denying motion to unseal documents where the moving party had an opportunity to challenge the Confidentiality Order before it was adopted because they could not complain that their interests were not taken into account at that time).

The Court granted the request and offered MSL the opportunity to object to the filing of the Sealed Documents under seal. (DKT 99). In reliance on Plaintiffs' agreement to file the documents under seal, MSL made no such objection. In short, MSL had every reason to believe, in reliance on Plaintiffs' actions, that Plaintiffs intended to honor their commitment to protect the confidentiality of the Sealed Documents.

Plaintiffs have not met their burden of proving that the Court acted improvidently in granting Plaintiffs' request to have the Sealed Documents filed under seal or that there is some extraordinary circumstance or compelling need for the unsealing. Plaintiffs were fully prepared to file their motion for certification with sealed documents – they, in fact, specifically asked the Court for permission to do so. It is, therefore, impossible for Plaintiffs to now maintain that there is a need for unsealing based on extraordinary circumstance or compelling need, as required under the law. *See Kelly*, 2003 U.S. Dist. LEXIS 2553, at *8.

Because Plaintiffs cannot meet their burden for justifying the modification of the Court's Order to seal documents, the Court should deny Plaintiffs' request to unseal documents that they originally asked the Court to seal.

**B. The Documents Plaintiffs Requested the Court to File Under Seal Should Remain Sealed.**

MSL anticipates that Plaintiffs will argue that, despite the presumption against unsealing documents that were previously ordered sealed by the Court, the Sealed Documents should be unsealed as judicial documents, as they were attached to the Plaintiffs' motion for conditional certification and MSL's opposition to that motion. This argument is unavailing.

The Second Circuit has set forth a three-part analysis for determining whether documents relating to a lawsuit must be made available to the public:

> First, the court must determine whether the documents are indeed judicial documents, to which the public has a presumptive right of access. Second, if the documents are judicial documents, the court must determine the weight of the presumption, that is, whether the presumption is an especially strong one that can be overcome only by extraordinary circumstances or whether the presumption is a low one that amounts to little more than a prediction of public access absent a countervailing reason[,] or whether the presumption is somewhere in between. Third, once the weight of the presumption is determined, a court must balance competing considerations against it. Countervailing factors include, among others, the danger of impairing judicial efficiency and the privacy interests of those resisting disclosure.

*Stern v. Crosby*, 529 F. Supp. 2d 417, 420 (S.D.N.Y. 2007) (internal quotations and citations omitted) (*citing Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). Even if the Court were to determine that the Sealed Documents should be designated as judicial documents, the presumption in favor of public assess would be outweighed by the countervailing factors for retaining the documents under seal.

When considering the second step of the analysis for determining whether judicial documents should be made available to the public, the weight of the presumption of public access depends on the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (*Amodeo II*). Generally, the information will fall

somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance. *Id.*

The strongest presumption is generally given to documents that the Court considers in deciding dispositive motions, such as motions for summary judgment. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004); *Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 518 (E.D.N.Y. 2011). The lowest presumption is given to those documents presented to the Court for evidentiary rulings such as relevance. *Amodeo II*, 71 F.3d at 1049. Documents filed in support of motions that are not dispositive of the matter, such as a motion for conditional certification of a class, would likely fall within the middle range of presumption of public access. *See Standard Investment Chartered, Inc. v. N.A.S.D.*, No. 07 Civ. 21014, 2008 U.S. Dist. LEXIS 4617, at *45 (S.D.N.Y. Jan. 23, 2008) (finding that document appended to motion for reconsideration merited a "minimal presumption of public access" under the common law); *In re: NASDAQ Market-Makers Antitrust Litig.*, 164 F.R.D. 346, 353 (S.D.N.Y. 1996) (holding that a document filed under seal in support of a motion to compel discovery was "at the end of the continuum farther away from the presumption of access").

But even if the documents fall within the middle range, MSL's countervailing interests in the continued protection of the confidential documents and information of MSL and of third parties is extremely high. "Access to judicial documents is not absolute and can be restricted where the court is persuaded that the parties' interests in preventing disclosure outweigh those of the public in gaining it." *Roberts v. Valner*, 2004 U.S. Dist. LEXIS 20371, at *19 (E.D.N.Y. Oct. 4, 2004) (*citing Amodeo II*, 44 F.3d at 147). Such interests or "countervailing factors" can include "the privacy interests of those resisting disclosure." *Roberts*, 2004 U.S. Dist LEXIS 20371, *19-20.

> Among the factors for a court to consider in evaluating the privacy interest of those opposing disclosure are the following: (1) the privacy interests of 'innocent third parties," which constitute a venerable common law exception to the presumption of access'; (2) 'the degree to which the subject matter is traditionally considered private rather than public . . . (3) 'the nature and degree of the injury' that will be caused by revealing the information, which may include determining 'whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations therein.'

*Id.* at *20. The Sealed Documents meet the standard for remaining sealed under the law of this Circuit.

1. *Documents revealing the MSL's internal administrative processes and salary information should not be subject to public inspection*

Plaintiffs request the unsealing of a number of documents that provide a detailed roadmap of the policies and processes of MSL. Initially, the Janus Book, Volumes I and II, contain detailed information relating to litigation procedures, financial reporting procedures, external audit processes, mergers and acquisition processes and capital expenditure processes that are not available, and are, in fact, expressly protected from outside disclosure. (Doc. No. 135, Ex. D "This manual is the property of Publicis Groupe and its contents, which are confidential, must not be divulged to any third parties").[8] The documents relating to promotion determinations and the documents containing the salary ranges for MSL staff positions, contained in confidential company documents and attached as Exhibits to the Johnson Report are similarly protected from outside disclosure. (Doc. No. 135, Exh. I; Doc. No. 119-2, Exh. 6 and Johnson Report, Appendices D, E and F.) Finally, organizational charts containing the names of all of MSL's personnel, including titles and reporting and client relationships are guarded against disclosure outside of the organization. (Doc. No. 119-5, Exh. 15.) It is not hard to imagine the

benefit to be gained by MSL's competitors from having a detailed roadmap to all of the company's processes and policies to replicate for their own use. *See* Declaration of Tara Lilien, Senior Vice President of Human Resources for MSL, ¶¶6-8, attached to the Brecher Dec. as Exh. 5 ("The Public Relations field is highly competitive in recruiting employees. Our competitors regularly attempt to recruit our employees, and I believe our internal organization charts would be valuable to our competitors seeking to identify and recruit our employees"). For example, Ms. Lilien explains that competitors could use the organization charts to identify the specific individuals who work in particular areas of MSL's practice or work with specific clients or industries for the purpose of recruiting those individuals. *Id*. at ¶ 8. It is undisputable that the disclosure of MSL's innermost workings would greatly inure to the benefit of its competitors.

Similarly, MSL's "Pay for Performance Guide" is a proprietary document created by MSL, is marked "CONFIDENTIAL" on the face of the document, and is not even distributed to employees. It is used by Human Resources and senior managers. *Id*. at ¶9. The document indentifies MSL's compensation philosophy, including use of merit increases, and identifies differences in compensation practices between VPs and SVPs, among other things. *Id*.

Protective orders limiting access to highly confidential information to counsel and experts "are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information." *Vesta Corset Co., Inc. v. Carmen Foundations, Inc.*, No. 97 Civ. 5139, 1999 U.S. Dist. LEXIS 124, at *7 (S.D.N.Y. Jan 13, 1999) (citing *Quotron Systems, Inc., v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992) (limiting disclosure to counsel and experts); *Culligan v. Yamaha Motor Corp.*, 110 F.R.D.

[8] It is unclear whether Plaintiffs request to unseal is limited to only those pages filed with their motion or seek permission in the future to file any portion of the Janus Book.

122, 126 (S.D.N.Y. 1986) (limiting disclosure to plaintiff's counsel); *Stillman v. Vassileff*, 100 F.R.D. 467, 468 (S.D.N.Y. 1984) (limiting disclosure to plaintiff's counsel); *Sullivan Marketing, Inc., v. Valassis Commc'ns, Inc.*, No. 93 Civ. 6350, 1994 U.S. Dist. LEXIS, at *3-4 (S.D.N.Y. May 5, 1994) (limiting disclosure of documents relating to pricing and market strategies to outside counsel, their employees, and consultants retained for litigation). Ample precedent exists for limiting disclosure of ... proprietary information to attorneys and experts, particularly when there is some risk that a party might use the information ... to gain a competitive advantage over the producing party." *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 1998 WL 186728, at *2 (E.D.La., 1998) (citing cases).

Following this Circuit's precedent, the Court should continue to protect MSL's confidential and proprietary information from Plaintiff's unjustified attempts to disclose it to the public at large.

*2. Documents that are proprietary to third parties must be protected from unnecessary disclosure*

Two of the sealed documents at issue are surveys compiled by organizations that provided the rights to the surveys to MSL under strict non-disclosure obligations. The first document, the *2010 Mercer Global Marketing Compensation Survey/Public Relations Industry*, sold by Mercer LLC contains the following warning on the first page of the report:

> Survey materials and the data contained therein are copyrighted works owned exclusively by Mercer and may not be copied, modified, sold, transformed into any other media or otherwise transferred in whole or in part to any party other than the named subscriber without written consent from Mercer.

(Doc. No. 135, Exh. H, p. MSL002772.) Similarly, the *Council of Public Relations Firms/ 2011 "Seven Cities" Compensation Survey*, conducted by Deloitte Consulting LLP and provided to MSL as a member of the Council of Public Relations Firms, bears the following imprint on the

first page of the document: "Confidential Information – For Use by Participating Council Members Only." (Doc. No. 135, Exh. G, p. MSL004128.) Both documents were provided to MSL with specific restrictions to access, to guard against any inadvertent or unauthorized use or disclosure. Lilien Dec ¶ 13. Both were also obtained by MSL at significant cost. The Mercer survey was approximately $10,000 and the Deloitte Survey is only available to members of the Council of Public Relations Firms, and the cost of the membership is approximately $40,000 per year. Lilien Dec. ¶ 12. Because of these restrictions imposed by the entity that created the documents and provided them to MSL, MSL marked each page of the two documents as "Confidential" and "Attorney' Eyes Only."

Privacy interests of non-parties may weigh heavily against public access to the information at issue. *See Amodeo II*, 71 F.3d at 1050-51 (citing *Gardner v. Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990)). Among other things, courts should consider the extent to which the subject matter of the material in question is traditionally considered private rather than public. *See Amodeo II*, 71 F.3d at 1051. Likewise pertinent to a court's determination is the sensitivity of the information and the nature and degree of injury to the innocent third party likely to result from granting public access. *See id.* at 1051.

The harm to Mercer LLC and Deloitte Consulting LLP by the unrestricted publication of their valuable work product, which they took affirmative steps to protect from public disclosure, to the public at large is evident. Free access to their most lucrative surveys would serve to destroy any possibility of selling them to companies for a profit, resulting in financial hardship for both companies. As neither Mercer nor Deloitte has any involvement in this litigation, they should not be made to suffer as a result of Plaintiffs' improvident request. At a minimum, these

third parties would require notice an opportunity to object before confidential reports they provide for a fee are disclosed publically.

*3. Details of the internal complaints of MSL employees, not parties to this action, should continue to be protected*

Paragraphs 44 and 45 of the proposed Second Amended Complaint detail the contents of written complaints by two "PR professionals." (SAC, ¶¶ 44 & 45.) Because the SAC has not yet been permitted, there is no reason for the Court to rule on whether sections of the SAC should remain sealed on the docket. Unless and until the SAC is permitted to be filed, it would be premature to rule on the propriety of Plaintiffs' request to unseal sections that refer to confidential information.

Even if it were appropriate to address Plaintiffs' request now, however, the Court should order that the SAC remain redacted as to Paragraphs 44 and 45 in order to protect the confidentiality of the complaints brought forth by these two individuals, neither of whom is a party to this action, with an unredacted copy of the SAC be filed under seal.

Courts in this and other circuits have ordered the redaction of information in documents where the information could lead to the identification of "innocent third parties," thereby harming their reputations. *See, e.g., U.S. v. Chandler*, 220 F. Supp. 2d 165, 169 (E.D.N.Y. 2002) (finding that the countervailing interest of preventing harm to the reputation of third parties weighed against the presumption of access to documents under seal); *Flaherty v. Abraham Seroussi*, 209 F.R.D. 300, 304 (N.D.N.Y. 2002) ("the public dissemination of records relating to allegations and investigations, which have not ripened into employment actions carry with them a stigma and the potential for embarrassment, overriding any potential relevance to plaintiff's claims"); *In re: Davitt/Adler Litig.*, No. 95 Civ. 1842, 1997 U.S. Dist. LEXIS 23671, at *11 (N.D.N.Y. Dec. 23, 1997) (ordering redaction of identifying details to "protect the strong privacy

interests of non-part[ies]"). This consideration is particularly applicable here where the complainants had availed themselves of MSL's confidential complaint process, with no expectation that their complaints could be exposed in a public document. *See* Lilien Dec. ¶ 14 ("Human Resources treats complaint-related documents and information as confidential and does not publish them outside the company, or even to employees who do not have a need to know"). They did not, like the Plaintiffs here, inject themselves into the public by filing a complaint in federal court and simultaneously issuing press releases regarding the case and thereafter seeking publicity.

One case particularly instructive is *Kelly v. City of New York*, 01 Civ. 8906, 2003 U.S. Dist. LEXIS 2553 (S.D.N.Y. Feb. 24, 2003). In *Kelly*, a case involving denial of equal protections of the law to individuals identified as "Moorish-Americans," the Court declared that records of allegations or investigations of employee misconduct should be classified as confidential "to protect personal and potentially sensitive information from disclosure." *Id*. at *1. *The Daily News* sought to intervene for the limited purpose of moving for a modification of this order of confidentiality. *Id*. Denying *The Daily* News's motion to lift the confidentiality order, the Court concluded that the identifying information of the non-party employees involved in the allegations and investigations of misconduct should be redacted "as these records may contain a variety of types of personal information, as well as allegations that have not been fully investigated, substantiated or proven." *Id.* at *13. Like the individuals involved in complaints in *Kelly*, the individuals identified in Paragraphs 44 and 45 of the SAC deserve the consideration of this Court in ensuring that their identities and the details of their complaints be kept confidential. The Court should, therefore, order the redaction of those paragraphs from the SAC version to be filed in the record.

## CONCLUSION

For all the foregoing reasons, this Court should maintain as sealed the confidential documents and information that Plaintiffs themselves sought and received permission to file under seal, after never challenging MSL's confidentiality designations used in discovery. This Court also should permit the confidential documents and information used by MSL in its oppositions to Plaintiffs' Motion for Conditional Certification and Motion to Amend the Complaint, because MSL reasonably relied on this Court's prior rulings in submitting the confidential materials and the prevailing law favors protection of the confidential documents at issue here.

Respectfully submitted,

**JACKSON LEWIS LLP**

DATED: May 8, 2012

/s/
________________________________

VICTORIA WOODIN CHAVEY
JEFFREY W. BRECHER
90 State House Square, 8th Floor
Hartford, CT 06103-3708
Telephone: (860) 522-0404
Facsimile: (860) 247-1330

**CERTIFICATION OF SERVICE**

I hereby certify that on May 8, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/*
Victoria Woodin Chavey

**4825-6440-2191, v. 2**