C39AAMOOC                    Conference

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   MONIQUE DA SILVA MOORE,

 4                  Plaintiff,

 5            v.                          11 CV 1279 (AJP)

 6   PUBLICIS GROUPE, ET AL.,

 7                  Defendants.

 8   ------------------------------x
                                         New York, N.Y.
 9                                       March 9, 2012
                                         9:40 a.m.
10
     Before:
11
                         HON. ANDREW J. PECK,
12
                                         Magistrate Judge
13
                              APPEARANCES
14
     SANFORD WITTELS & HEISLER, LLP
15        Attorneys for Plaintiff Moore
     BY:  DEEPIKA BAINS
16   JEREMY HEISLER

17

18   MORGAN LEWIS
          Attorneys for Defendant Publicis
19   BY:  PAUL C. EVANS

20   JACKSON LEWIS
          Attorneys for Defendant MSL
21   BY:  BRETT M. ANDERS
     VICTORIA CHAVEY

22

23

24

25

1        (Case called)

2        THE COURT:  Be seated.

3        Okay.  Let's deal first with the scheduling order on

4   jurisdictional discovery.  I am inclined to grant it but I

5   would like to know more about what's slowing things down there

6   so I guess that's Mr. Evans

7        MR. EVANS:  Yes, your Honor.  Primarily, our problems

8   are in terms of timing of the discovery are twofold.  First, my

9   client is exclusively located in France.  It has about 70

10  employees.  Many of whom are more operational employees, so to

11  get the type of information that the plaintiffs have been

12  requesting and that we're producing, we're dealing with the CFO

13  of the company, sort of the top four or five level officers of

14  the company.  So in terms simply getting their time and getting

15  on their schedules we often have difficulties.

16       THE COURT:  Let me make a comment which is, that's not

17  acceptable.  And if they don't want to be found to be in

18  jurisdiction here they'd better free up their schedule much

19  more and I know it's -- I was a lawyer once.  I know that you

20  have to be delicate with senior executives but a delay because

21  they're only willing to clear an hour every third Thursday or

22  something is not going to cut it.

23       MR. EVANS:  I understand, your Honor.  And, perhaps, I

24  misspoke.  It's not that we can't get their time in order to

25  confer with them and get information.  It's collecting the

1   documents and types of things that the plaintiffs have

2   requested has taken more time because it requires a lot more of

3   their involvement.  But I understand and we have pushed them to

4   provide information.  We have provided documents already and we

5   are supplementing this month with additional information and we

6   are responding to a second set of discovery requests by the end

7   of this month.

8        The other issue we're dealing with is the French

9   blocking law which I know your Honor mentioned at the last

10  conference, so there are some delicate issues with respect to

11  the type of discovery with which we can engage.  So we're

12  navigating those waters as well which has slowed us down

13  somewhat in terms of making sure we're not violating French law

14  at the same time we're anticipating French discovery.

15       THE COURT:  Have you and do you anticipate that you

16  will successfully navigate that?  In other words, I don't want

17  to give an extension now only to find out that we have to then

18  start considering the Hague Convention or something else that

19  will --

20       MR. EVANS:  One thing I think that the schedule

21  contemplates is that I think we've navigated it with respect to

22  the discovery which we have agreed to produce.  There are still

23  outstanding issues that we're working through with the

24  plaintiffs.  We have disagreements with respect to the scope of

25  discovery.  If they persist in arguing for the type of

1   discovery they're arguing for, specifically, discovery related

2   to Publicis' interactions with up to 41 subsidiaries with

3   offices in New York other than simply MSL Groupe.  If they

4   continue to seek that sort of discovery we will not be able to

5   navigate those waters and we will be invoking the blocking

6   statute to protect ourselves from such discovery. so the

7   schedule sort of contemplates presently that our meet and

8   confer processes will continue and that if need be we'll be

9   able to raise those issues with the Court during the timeframe

10  we've talked about, probably, talking about April.

11          THE COURT:  Okay.  Anything from the plaintiff on this

12  other than you seem to agree with the extension?

13          MR. HEISLER:  Nothing, your Honor.

14          THE COURT:  All right.  Let me raise one other

15  consideration and maybe the answer is, you are going to have to

16  much shorten your motion schedule.  But the way this extension

17  is working out and while I recognize that the June 30 merits

18  fact cut-off date is probably going to slide, although, we

19  haven't really done anything with that, but you are now

20  finishing jurisdictional discovery contemporaneously with

21  finishing alleged merit discovery and, certainly, not finishing

22  the briefing of the jurisdictional discovery motion until lack

23  of jurisdiction motion and until much, much later in the

24  process.

25          Indeed, taking two plus full months or the briefing.

C39AAMOOC                    Conference

1   That is going to mean even though there will be participation

2   by Publicis in the fact discovery that is occurring against MSL

3   and with the plaintiffs, it means if the Court does have

4   jurisdiction over Publicis that after we finish all the other

5   discovery we're going to go into another six months or whatever

6   of discovery vis-a-vis plaintiffs and Publicis.  That doesn't

7   seem to be the greatest way to do this.

8          Anyone have any thoughts on that?  I mean how much

9   discovery do you think will be needed on the merits, if any,

10  once Publicis is in or are they really on a sort of responde

11  superior may not be the right way of putting it, but in other

12  words, if MSL is guilty of any of plaintiff's complaint then

13  Publicis is similarly on the hook or is there going to be

14  something else involved?

15         MR. HEISLER:  Your Honor, Publicis has held we will

16  need discovery.  We'll try to keep it as condensed as possible.

17         THE COURT:  But you know then you also get into a

18  similar problem which is the discovery is going to be from

19  France, I assume, and I think we all can recognize that because

20  of the French blocking statute that's got to be done carefully

21  and, presumably, carefully means more time than if we were just

22  doing U.S. based discovery.

23         MR. HEISLER:  The only possible suggestion would be a

24  shortened briefing schedule but I don't know if it's really a

25  tenable solution.

C39AAMOOC                    Conference

1          THE COURT:  For whatever reason you all have thrown an
2     extra week onto each of the opt and reply.  The typical time in
3     this district under the local rules is two weeks and one week.
4     Certainly, that's my chamber's rulings and I believe the local
5     rules are the same.  You are also taking a month plus from the
6     close of jurisdictional discovery until whoever is the movant
7     is moving.  And I think you are going to have to much sharpen
8     that time even if I leave the jurisdictional discovery deadline
9     where it is.

10         MR. EVANS:  From our perspective, your Honor, we have
11    no problem shortening the time.  I think we will be the moving
12    party under the current contemplated schedule.  We can
13    certainly do within two weeks of the close of jurisdictional
14    discovery and otherwise follow the typical Southern District
15    practices with respect to the time we reply.

16         MR. HEISLER:  We're okay with that.

17         THE COURT:  All right.  Okay.  July 2 for the motion.
18    That means July 16 for the opt and July 23 for the reply.  And,
19    frankly, if you can do it faster, that would be even better.  I
20    mean, frankly, if you are the movant on the Publicis side and
21    the discovery is largely to give the plaintiff the ammunition
22    to object to your motion to dismiss any reason why you can't do
23    it even sooner than two weeks.

24         MR. EVANS:  We have a deposition that we are currently
25    contemplating on June 6 assuming that deposition takes place

1    then we can do it contemporaneous with the end of discovery

2    absent some discovery issues at the end there that we don't

3    expect right now.

4              THE COURT:  All right.  Good.  So let's do that June

5    18 for the motion.  July 2, opt, and July 9, reply.

6              And why don't you, Mr. Evans, send in a new proposed

7    order.  You can just fax it in later.  With the new dates so I

8    can sign it.

9              MR. EVANS:  Yes, your Honor.

10             THE COURT:  Okay.  That took care of the easy one and

11   I guess the only other point I would make before we leave this

12   subject is I am not going to be inclined despite the difficulty

13   with French blocking statutes to further extend this period.

14   So whatever discussions you need to have, whatever you need to

15   get done, do it.  If it's something you can do fast, if it's

16   something where there is need for meet and confers get it done

17   quickly and get it raised before me quickly if you can't

18   resolve it on your own.

19             Okay.  Now we can do the subpoenas to Dr. Madden and

20   Dr. Vecker.  I guess my first question is, why were these

21   issued by Publicis instead of MSL?

22             MR. EVANS:  Your Honor, they were jointly issued by

23   both defendants.  I think there was a deposition that day that

24   the MSL lawyers attended and the plaintiffs attended, so we

25   served the subpoenas and we sent a letter but they're jointly

C39AAMOOC                        Conference

1    issued subpoenas.

2         THE COURT:  Technically, they are under your signature

3    and only our signature.  Who is going to take the lead in the

4    deposition if I allow the deposition?

5         MR. EVANS:  I am, your Honor.

6         THE COURT:  All right.  Well, I guess let me ask you

7    all because the agreement you all made that Publicis would

8    participate in discovery was that contemplated that you would

9    on co-motions or co-issues with MSL be able to take the lead or

10   was the contemplation that plaintiff would be doing its stuff

11   and you would attend and do whatever MSL would be taking its

12   discovery and you would also be able to participate so things

13   wouldn't have to be redone as opposed to even though you and

14   MSL are aligned in interest, Publicis taking the lead?

15        MR. EVANS:  I don't know that we contemplated one way

16   or the other that sort of scenario.  At the time the thinking

17   in terms of depositions that we were trying to insure it

18   continued during the jurisdictional discovery period were more

19   the depositions of the plaintiffs and MSL witnesses.  We,

20   certainly, indicated that we wanted to reserve our right to

21   attend those depositions and ask questions of those witnesses.

22   And I think that this falls within that same category,

23   although, we will be taking the lead in the depositions, I

24   expect that MSL will also be asking questions of those witness

25   in their capacity.

 1          THE COURT:  All right.  Mr. Heisler.  I'm sorry.

 2    Ms. Bains.

 3          MS. BAINS:  I believe, actually, during the meet and

 4    confer on this issue that the contemplation was more of what

 5    your Honor was describing that Publicis would attend, if they

 6    wanted to, the deposition scheduled by MSL or plaintiffs

 7    schedule.  So far they haven't attend any of them or asked any

 8    questions.  So it was, certainly, a surprise that Publicis

 9    issued this subpoena and intends to take the lead from

10    plaintiff's point of view.

11          THE COURT:  All right.  Does anything change if to the

12    extent this was a joint subpoena effort if I say, okay, it has

13    to be MSL taking lead, does that change anything from your

14    point of view other than which pocket of money gets used on the

15    defendant defense's side?

16          MS. BAINS:  We have our other arguments that we've

17    outlined in the letter.

18          THE COURT:  We are going to get to the other argument.

19    What I want to know, can I move off of whether this a Publicis

20    lead or an MSL lead and see the more merits based arguments?

21          MS. BAINS:  I think it does because, you know, the due

22    process argument made by Publicis that they should get

23    discovery, plaintiffs weren't allowed any discovery against

24    Publicis to support its motion, so I think it would matter.

25          THE COURT:  One other question for both, all three of

C39AAMOOC                          Conference

 1   you and I see Ms. Chavey is trying to rise.  Remind me on the

 2   motion or collective action certification, is it only against

 3   MSL employees or is it in some way against Publicis?  Let's

 4   hear from the plaintiffs first and then Ms. Chavey can respond.

 5         MS. BAINS:  Plaintiffs were ordered to file the

 6   motion, so we had to file it against Publicis and MSL but the

 7   employees are MSL employees.

 8         THE COURT:  But if the motion applies to Publicis and

 9   that's up to you, then I don't see why, particularly, since to

10   some extent it's a game as to who goes first, MSL or Publicis.

11   I don't see why this should make any difference.  If you want

12   them to be bound by and I assume -- and I'll ask Mr. Evans in a

13   minute -- that it's understood that if they're participating in

14   the deposition if it's allowed of your quote/unquote "experts"

15   and I assume they will be filing enough briefs when they're due

16   along with MSL, if they are going to be bound by this then this

17   is something that directly affects them if it's only a motion

18   as to MSL and whatever its effect, if any, on Publicis would

19   have to be decided after jurisdiction, then I might come out

20   differently.

21         In the end, I am not sure it'll make any difference

22   because, ultimately, if I had to guess, you know, if I say,

23   okay, this subpoena is quashed, not because it's a Publicis led

24   subpoena, it wouldn't surprise me that tomorrow or Monday you

25   get served with a subpoena from MSL and Ms. Chavey is shaking

1   other head "yes" on that.  So is this meaningful?

2              MS. BAINS:  Besides what I said, I mean I think --

3              THE COURT:  I think you are saying "no".

4              MS. BAINS:  There's nothing else.

5              THE COURT:  Ms. Chavey.

6              MS. CHAVEY:  Your Honor, the only point that I wanted

7   to address was the one that you raised which is the motion for

8   conditional certification.  Does seek relief against both

9   defendants and both defendants are seeking to protect their

10  clients interests by participating in the deposition.

11             THE COURT:  All right then, as to which of you take

12  the lead doesn't distress me and we'll move onto the merits

13  based arguments.

14             The first argument plaintiffs have made is that you

15  have not decided that these two people, and I take it it's

16  either/or term in terms of the deposition, but you've not

17  decided that they are going to be testifying experts at trial.

18  And with all due respect that argument sounds incredibly silly.

19             MS. BAINS:  Well, the argument is they don't have a

20  complete report yet, so they can't be considered experts who

21  will testify at trial.

22             THE COURT:  But the issue isn't they're testifying at

23  trial.  The issue is they're testifying by affidavit on this

24  motion.  You chose to put them in on the motion.  You didn't

25  have to or you know you did, you didn't but the rule about non

C39AAMOOC                         Conference

1    testifying experts is to protect the situation where a lawyer

2    hires a potential expert and says, advise me on this case, but

3    you haven't decided if you are testifying yet.  A decision that

4    is almost never made until the day that there is a deadline for

5    that having to be disclosed.  But putting that part of the

6    lawyer game aside, these are testifying experts.

7         MS. BAINS:  Plaintiff submitted expert reports from

8    these experts.  Their reports were incomplete due to the

9    incomplete nature of the data.

10        THE COURT:  Understood and that's something that

11   presumably you already explained to Judge Carter.  I have not

12   read very much of the motions that have been submitted on this

13   because that's Judge Carter's bailiwick and I'm sure you will

14   prep Dr. Madden or Dr. Vecker whoever gets deposed.  If I allow

15   the deposition to say that their report is not yet complete and

16   may change when the big bad defendants produce all the data

17   that you want from them etc., but seems to me you either

18   withdraw their reports for purposes of the certification motion

19   or it is fair for the defendants and very promptly to be able

20   to have a deposition of it's -- what am I missing?

21        MS. BAINS:  Well, Rule 26 18B requires a complete

22   report for --

23        THE COURT:  Well, Rule 26 and 37 also preclude experts

24   who have not given a complete report.  If this is the best you

25   can do, you know, make your full record because I want you to

1    have a full record so you can take objections to Judge Carter

2    after I rule which seems to be your side's want but that is a

3    silly argument.  I mean, I can't find a better, you know if we

4    didn't have history in this case I might be more polite other

5    than saying it's silly.  It is a non winnable argument.

6            Any other points you want to make either for me to had

7    listen to or so you have a full record for Judge Carter?

8            MS. BAINS:  Well, the arguments in the letter, the

9    second is that there's a low standard for conditional

10   certification and defendant's evidence is not even regarded.

11           THE COURT:  That me be but you put in the expert

12   reports and were the defendants to be able to show that the

13   experts were totally wrong.  Let's take a simple case.  You

14   know they can't add two and two.  And when they added two and

15   two in our report they came up with five and that's the reason

16   that all their information is wrong, why shouldn't they be able

17   to show that to Judge Carter?  You can't have it both ways.

18   Either you don't need these experts' testimony for the

19   conditional certification motion in which case pull them and

20   notify Judge Carter accordingly or a quick and dirty deposition

21   is appropriate.

22           Anything else?

23           MS. BAINS:  I believe that's all we had in our letter.

24           THE COURT:  Is there any other argument that you wish

25   to make whether it was in your letter or to the --

C39AAMOOC                        Conference

1          MS. BAINS:  Well, we would like to talk about the

2     scheduling if the deposition will go forward.

3          THE COURT:  Okay.  Well, that's a different issue.

4     Anything else as to whether it should or shouldn't go forward?

5          MS. BAINS:  No, your Honor.

6          THE COURT:  Okay.  The deposition and I take it you

7     prefer to have the deposition go forward as opposed to pulling

8     their affidavits from certification motion.

9          MS. BAINS:  Right.  We will comply with the order

10    to --

11         THE COURT:  Okay.

12         MS. BAINS:  -- produce.

13         THE COURT:  Good.  Then the order is that the

14    subpoenas as to testimony are not quashed.  I don't know if

15    there is any objection to the production requests and then we

16    also have to talk about scheduling.

17         MS. BAINS:  The objections to the production requests

18    we'll have to go through them and we will produce what is

19    required under the law of a testifying expert.  We have until

20    Monday to produce or object based on Rule 45.

21         THE COURT:  So should I schedule another conference

22    for Tuesday of next week, is that what you are telling me?

23         MS. BAINS:  No.

24         THE COURT:  Is there anything you object to now so

25    even though there probably going to meet and confer on this

C39AAMOOC                          Conference

1   once and not have to have you come back on an emergency basis

2   to deal with it next week?

3           MS. BAINS:  I can't go through request by request but

4   what I will say is if Drs. Madden and Vecker are considered

5   testifying experts we'll produce everything as required by the

6   rule.

7           THE COURT:  Okay.  That's fair.

8           MR. EVANS:  If I may, your Honor?

9           THE COURT:  Yes.

10          MR. EVANS:  We mentioned this in our letter as well.

11  The two most crucial aspects of the document requests are that

12  we receive Drs. Madden and Vecker's analytical data files and

13  the programs from those data files that resulted in the

14  conclusions and analyses they reached in their report.  So if

15  anything can be reviewed here today I would suggest that's one

16  I think is clearly covered by the rules and clearly appropriate

17  and if we can get a confirmation we'll receive that by Monday

18  we might short circuit future disputes.

19          THE COURT:  Ms. Bains.

20          MS. BAINS:  I am not prepared to address that.

21          THE COURT:  Well, I am prepared to rule on it, so I

22  suggest one of the two of you address it.

23          MS. BAINS:  I will have to review the rules on whether

24  it's required or not but --

25          THE COURT:  Counsel, you want a copy of the Federal

1    Rules?

2              MS. BAINS:  If it's --

3              THE COURT:  Counsel, I'm going to rule on this.  I

4    will help you.  If you need a copy of Rule 26, I will give it

5    to you.  If you need to confer with Mr. Heisler, confer with

6    Mr. Heisler.  We are not -- You know, you knew this issue was

7    on the table.  I am not waiting until Monday so that you can

8    show up at the deposition without this and I get a frantic call

9    that their brief is due in two days or whatever afterwards and

10   you've stonewalled the process.  You are speaking now or I am

11   ruling now.  So if you need Rule 26 I'll hand you the Federal

12   Rules book.

13             MS. BAINS:  Can I have a moment to --

14             THE COURT:  Sure.

15             (Pause)

16             MS. BAINS:  So with respect to the analytical files

17   and data program we'll produce those.

18             THE COURT:  On Monday?

19             MS. BAINS:  Yes.

20             THE COURT:  Good.  Okay.

21             MS. BAINS:  And we don't wish to delay the schedule

22   for briefing at all so we will produce Dr. Madden for a

23   deposition on Monday as noticed in the subpoena.  I think we

24   may need to move it back a couple hours to two p.m. I think

25   counsel has represented it'll be a half day deposition.

C39AAMOOC                    Conference

1           MR. EVANS:  No problem with that, your Honor.

2           THE COURT:  All right.  Is there a way you can get the

3    data to them first thing in the morning and do the position at

4    two so it'll save your witness time because otherwise the first

5    hour of the deposition is likely to be Mr. Evans and/or the MSL

6    counsel sitting there going through the data set.

7           MS. BAINS:  Yes.  We'll make every effort to do that.

8           THE COURT:  Okay.  Good.  So ordered.

9           What other issues, if any, do we have to deal with

10   today?

11          MS. CHAVEY:  Your Honor, I just wanted to clarify, you

12   just made reference to the due date for the motion for the

13   opposition to the motion for conditional certification.  The

14   motion was supposed to have been filed on the 29th.  Service

15   wasn't effected until Monday, the first of March, so our

16   calculation is that our opposition brief is due on Monday the

17   19th because of the three days for mailing from when it was

18   served.  So I just want to clarify that because you had made

19   reference to it being due on the 14th.

20          MS. BAINS:  Service was effectuated the next morning

21   because we filed under seal the night before.

22          THE COURT:  Okay.  So that would formally be the 15th

23   of March and then by adding the three days you get to the 19th.

24   If you can do it sooner, you should do it sooner.  I'd like to

25   get all of this wrapped up as quickly as possible.  You said

1    the 19th.

2              MS. CHAVEY:  Thank you.

3              THE COURT:  How are we doing on the review of the 2399

4    documents and/or whatever else that needs to be done for the

5    predictive coding operation?

6              MR. ANDERS:  We're moving along, your Honor.  Just to

7    give you a sense of what's taken place since we were here on

8    February 8th, very shortly after the conference we requested

9    that MSL provide us with e-mail accounts of Haas & Morseman

10   which were the two new people that were added.  We then were

11   working with plaintiff's counsel on putting together the

12   revised protocol based on your Honor's rulings.

13             One area which we had some discussions back and forth

14   was on the date ranges for certain witness.  Plaintiffs had

15   some questions regarding date ranges.  We chose based on their

16   understanding when a particular plaintiff worked in an office.

17   We worked that out.  We revised the date ranges.  That was

18   submitted to your Honor by the February 17 deadline.  At that

19   time we also requested that MSL provide us with the updated

20   e-mail accounts for those individuals.  We received those

21   recently.  Those have now all been uploaded onto the system.

22             The 2399 documents, those have been rereviewed based

23   on your Honor's updated relevancy rulings.  I think we're in a

24   position to produce those early next week.

25             The one issue or question, your Honor, is we had

1    prepared a streamlined call-back agreement in line with what

2    your Honor had commented on the 8th.  I had sent it to

3    plaintiff's counsel early in the week.  They had provided their

4    proposed changes.  And if I could address one of them now, your

5    Honor, I think it's the main one that we have issue with is

6    they would like to insert language that says -- well, let me go

7    back.  The language we proposed was in line with what your

8    Honor said which is, basically, unless we intentionally

9    disclose or intentionally intend to waive the privilege with

10   the disclosure, the privilege is not waived.  Plaintiff sought

11   to insert language of taking reasonable steps.

12           THE COURT:  That destroys the 502(D) purpose and puts

13   you back into 502(B).  So I would reject that even if it had

14   not been raised by Mr. Anders.  And if you want to shortcut all

15   the fighting, I am going to dictate your 502(D) order to the

16   reporter right now unless you've got some other bells and

17   whistles but I'd like to get this over with.  Do you have --

18           MR. ANDERS:  If I may present what we have prepared?

19           THE COURT:  Yes.  Hand it up.

20           MS. BAINS:  Your Honor, there was one other change

21   that we hadn't gotten confirmation with whether the defense

22   objects to --

23           THE COURT:  Hold on.  Let me get the document first so

24   I can --

25           (Pause)

1          THE COURT:  Okay.

2          MS. BAINS:  In the confidentiality order ordered

3     yesterday the parties had agreed to ten day period after which

4     the party, actually, discovers the inadvertent disclosure in

5     which it must take action and I believe that is not in this

6     order, in this proposed order.

7          THE COURT:  That's correct.  And I guess the question

8     becomes since I did endorse Paragraph 22 of your protective

9     order, except the typed version is 502(A) when it should say

10    502(D).  Yeah, let's do it the simple way.  Why don't you

11    revise what you've just handed me purely to add the time period

12    after "actual discovery" as an additional paragraph and then

13    fax it in later today and I'll sign it.

14         MR. ANDERS:  I will, your Honor.

15         MS. BAINS:  And I guess the only other change is

16    plaintiffs added a reference to the procedures identified in

17    26(B)(5)(B) which is also any signed after confidentiality

18    order.

19         MR. ANDERS:  Your Honor, I think that's the same

20    issue.  If we include those procedures it's we're now avoiding

21    what we're not doing with, we're intended to do by this order.

22    The idea is I don't want to have to abide by those procedures.

23    The purpose of this order was to relieve the parties of that

24    obligation.

25         THE COURT:  What is it you think 26(B)(5) get's you

C39AAMOOC                      Conference

```
 1    that the ten day after discovery process doesn't get you?  And
 2    frankly since the actual discovery is most likely to be at a
 3    deposition it's all going to be taken care of, virtually,
 4    simultaneously.  I mean, yes, there could be other ways in
 5    which MSL and, frankly, the protection goes both ways but we'll
 6    say MSL.  MSL in prepping for a deposition of a witness or
 7    prepping for defending the deposition of one of its witnesses
 8    and may find some documents and say, oops, yes, this was
 9    privileged and then within ten days send you the notice.
10        I am not sure what the 26(B)(5) protections get you
11    once there is a fight on any of this as long as you are within
12    my control you are going to get it brought before me promptly
13    one way or the other.  And about the only issue could be either
14    they waited 11 days, not ten or regardless of the 502(D)
15    protection it's not a privileged document.
16        MS. BAINS:  Right.  The language says reasonable steps
17    to retrieve the information if the party disclosed it before
18    being notified.  I guess the ten days takes care of that.
19        THE COURT:  Okay so that's the only thing you'll do is
20    add an extra paragraph here on the ten day revision and
21    everyone sign it and get it back to me today, if possible,
22    Monday if not.
23        MR. ANDERS:  Will do, your Honor.  Additionally in
24    terms of progress we've made the protocol called for you to
25    manually review all the e-mails that were in four different
```

C39AAMOOC                    Conference

1    suggestion box type e-mail accounts.  We've completed that

2    review.  None of those documents were remotely responsive.

3    They were some of them, for example, were responding to survey

4    requests.  Again, that has been reviewed and completed.  We

5    were also directed to obtain any employment related policies

6    from the company's intranet.  We've requested that from the

7    company.  We've received it.  We are going through those now to

8    make sure they sent us what was encompassed by your order.

9    We've produced those.

10           As it relates to know the bulk of the review, as of

11   March 6 all of the updated e-mail accounts were loaded into the

12   system.  Batches were created.  One of the four thousand e-mail

13   random samples of plaintiff's hit words, plus because these

14   additional e-mail accounts were added your Honor directed we

15   would have to do a rereview of defendant's key word hit list.

16   That was previously reviewed.  We'll rerun that.  So we now so

17   a batch of 13,507 e-mails to review.  Those have been batches

18   have been created.  That review started earlier in the week.

19   We have had one partner start the review.  We will now dive

20   into completing that reviewed by individuals that were at the

21   partner level.  I anticipate that will take 135 hours using a

22   100 document per hour review rate.  Presuming we divide up that

23   review by three partners, that's for, approximately, 45 hours

24   per person.  Obviously, we have other obligations in this case

25   as well as in other cases, so I would ask or anticipate that we

C39AAMOOC                    Conference

1    be provided 30 days to conduct a review of the 13,500.  In the

2    meantime though, your Honor, we will produce the 2399 to

3    plaintiffs next week so they can begin working on that.

4              THE COURT:  Can you be producing -- I am not sure the

5    30 days will work at all but in any event without disturbing

6    your work flow process cause I know you are doing a double

7    review, any reason that you can't do it in waves?

8              MR. ANDERS:  We can, certainly, do it in waves, your

9    Honor.  We will do that in waves.  For example, the plaintiff's

10   four thousand document hit list, that's been broken out into

11   four one thousand document batches.  As a batch is finished we

12   will produce it.

13             THE COURT:  All right.  Well, I mean, frankly, I am

14   just concerned that if we don't have the seed set done until

15   the middle of April and that's assuming and once you give it to

16   plaintiffs they have to review things and check the coding and

17   heaven forbid in this case there might, actually, be disputes

18   which I am going to have to resolve.  So I know this is not a

19   Staple's Easy Button process but I think you've got to review

20   faster.  I would like the seed set totally done by the end of

21   this month.  So figure out how to do that.  And I'd like

22   plaintiffs response since this will be going on a rolling basis

23   probably within a week after that, maybe ten days but I'd like

24   you all to be sort of jointly working on scheduling this and

25   figuring out how the whole process is going to work timewise

1   and then get me something in the next few days based on these

2   as the starting assumptions which is seed set done by March

3   30th from defendant rolling basis.  Plaintiff review since it

4   will be going on a rolling basis should finish within a week or

5   so of that.  And then figure out how long it's going to take to

6   run each round of the seven possible seven iterations, etc.,.

7   And try to come up with a plan so we'll know when document

8   production should be complete via the predicted coding system.

9            And, yes, I recognize that because you are doing this

10  at a partner level, review partners do not quite have the same

11  ability as contract attorneys or young associates to just do 18

12  hour days doing nothing else but reviewing documents but we got

13  to get this moving.  Obviously, the fact cut-off of June 30 is

14  most likely going to be extended.  When you get me the

15  guesstimate of how long the predictive coding operation is

16  going to take to completion we can then come up with a revision

17  of the cut-off date for what is likely to just be phase one.

18  And whether there will be a phase two or beyond we'll see as we

19  go.  I am not going to change the cut-off date now.  I do

20  recognize it will have to be changed but, obviously, I still

21  believe in a rocket docket and I want to get this over with.

22           Any comments from the defense side on -- sorry -- from

23  the plaintiffs on this issue?

24           MS. BAINS:  Outstanding ESU issues, we're also waiting

25  on defendants to give us some information regarding the content

1   of the shared folders which were discussed at the last

2   conference.

3              THE COURT:  Let me do it one at a time.

4              Mr. Anders, any news on that or are you still working

5   on it?

6              MR. ANDERS:  I received a breakdown of the types of

7   share folders.  I will go through that and give plaintiffs a

8   summary.  My thought was describe for them, generally, the

9   types of share folders there are.  Based on my initial review

10  it appears to be department based and then client or project

11  based.  So I could summarize that, provide that to plaintiffs.

12  And then if there's a particular department or project that

13  they believe is relevant we could discuss that and if we agree,

14  do a deeper dive on that particular share drive.

15             THE COURT:  Okay.  Ms. Bains, what else?

16             MS. BAINS:  I believe that's all we have at the

17  moment.

18             THE COURT:  Okay.  Anything else on any issues from

19  other either side other than a date for our next conference?

20             MS. CHAVEY:  Judge, there is one thing I'd like to

21  raise.  The plaintiffs have asked to us provide deposition

22  dates in May for our witnesses.  There are eight to ten MSL

23  witnesses whose depositions have been identified by plaintiffs

24  and we're preparing those dates.  What I want to --

25             THE COURT:  I don't know where you are going with this

1   but does that make any sense until the ESI production is

2   complete or until you are sure when it will be complete?

3           MS. CHAVEY:  That's why I am raising it.  We were

4   requested to provide dates in May and my understanding based on

5   your prior ruling was that once -- the depositions have been

6   scheduled several times and they have been put off because of

7   the document discovery and electronic discovery.  But our

8   understanding was that you had ruled that once the depositions

9   get set at this point they're going to go forward whether the

10  electronic discovery catches up with this or not.

11          THE COURT:  Ms. Bains or Mr. Heisler, what's your

12  pleasure?  You want me to have them set the dates in May?  But

13  I don't want when we find out, as we are, that you are still

14  going to be running this e-mail search through at least some

15  time in April, if not beyond, what's your pleasure?

16          MS. BAINS:  Plaintiffs were under the impression that

17  the discovery would be ending at the end of June.  So given

18  your Honor's inclination to extend that, I am going to confer

19  with the other attorneys on this case and if there are

20  particular depositions that we want to go forward with without

21  the document we will correspond with defense counsel on those.

22          THE COURT:  All right.  Very good.  And otherwise, I

23  mean once we have a fairly firm anticipated end date for the

24  predictive coding reduction, at that point when the plaintiff

25  says, okay, we've now figured out that you are going to be done

1   on tax day, April 15, they say but you won't be done by but

2   I'll use it as your example, you know you are not going to be

3   able to say my witnesses are extremely busy people and they're

4   not available for six months.  I am going to expect very quick

5   confirmation of reasonable deposition days thereafter.

6           Okay.  Anything else?

7           MR. ANDERS:  No, your Honor.

8           MS. CHAVEY:  No, thank you.

9           MS. BAINS:  No, your Honor.

10          THE COURT:  OK.  When do you all want to come back?  I

11  would think early to mid April just to make sure the

12  predicative coding process is running as fast as it possibly

13  can.

14          MS. BAINS:  Perhaps the second week of April.

15          MR. ANDERS:  April 11 works for defendants, your

16  Honor.

17          MS. BAINS:  Fine with the plaintiffs.

18          THE COURT:  Okay.  If we do it that week what I would

19  do is give you a five o'clock conference date because I am on

20  trial that week.  And if the trial resolves itself, as they

21  often do as we get closer, I would then send you an order

22  saying, okay, we've moved you from five p.m. to two p.m. or

23  something.  Alternatively, we can go over to Monday April 16th

24  and give you a more normal time slot, whatever you all prefer.

25          MS. BAINS:  April 16th would be more preferable to

C39AAMOOC                              Conference

 1 | plaintiffs.

 2 |          MS. CHAVEY:  Your Honor, I am not available on the 16

 3 | but if that's the desired date we'll cover the conference

 4 | otherwise.

 5 |          THE COURT:  Okay.  April 16th at 2:30.

 6 |          The usual drill.  I require both sides to split the

 7 | cost of the transcript.  I think you know the drill by now.

 8 | But I will one last time say that pursuant to 28 U.S.C. Section

 9 | 636 Federal Rules of Procedure 72, any party aggrieved by my

10 | rulings today has 14 days to bring objections to Judge Carter.

11 | The 14 days starts running immediately since you've heard my

12 | ruling from the bench regardless of how soon you get the

13 | transcript from the court reporter.  I likely will not say this

14 | at every conference but it, certainly, applies throughout.

15 |          Okay.  Thank you all.  We are adjourned.

16 |                         (Adjourned)

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |