UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

Monique da Silva Moore; Maryellen
O'Donohue; Laurie Mayers; Heather
Pierce; and Katherine Wilkinson, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

        - against -

Publicis Groupe SA and MSLGroup,

        Defendants.

---------------------------------------------------------X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 6 - 29 - 12 |

11 Civ. 1279 (ALC) (AJP)

**Memorandum & Order**

**ANDREW L. CARTER, JR., United States District Judge:**

Before the Court are Plaintiffs' motions to amend the first amended complaint, for

conditional certification under section 16(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et*

*seq.*, and for authorization to send notice to the potential opt-in plaintiffs. For the reasons set

forth below, the motions are granted.

I.
PLAINTIFFS' MOTION TO AMEND

**A. Procedural History**

The original complaint was filed by Monique da Silva Moore on February 24, 2011 against

Defendants MSLGroup ("MSL") and Publicis Groupe SA ("Publicis")[1]. Ms. da Silva Moore was

the sole class representative and the complaint contained allegations of gender discrimination

in violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e), *et seq.*,

N.Y. Exec. Law § 296, subd.1(a), N.Y.C. Admin. Code § 8-107, subd. 1(a), and Massachusetts

---

[1] Publicis is the parent company of MSL.

General Laws Chapter 151B.  The complaint also alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*., including unlawful retaliation.  Ms. da Silva Moore filed an amended complaint on April 14, 2011 ("FAC"), adding MaryEllen O'Donohue, Laurie Mayers, Heather Pierce, and Katherine Wilkinson as named plaintiffs and adding claims under the Equal Pay Act, 29 U.S.C. §§ 206, *et seq*. and N.Y. Labor Law § 194 (New York's Equal Pay Act).  The FAC also complained about pregnancy discrimination in violation of Title VII, 42 U.S.C. § 2000e(k) *et seq*., violations of the FMLA on behalf of Plaintiff Pierce and unlawful retaliation under the FMLA on behalf of Plaintiff Pierce.  The FAC withdrew the claim under the Massachusetts General Laws Chapter 151B.  MSL answered the FAC on June 3, 2011 and Publicis informed the Court of its intention to file a motion to dismiss for lack of personal jurisdiction.  Publicis recently filed its motion with the Court.

During a July 21, 2011 conference before Judge Sullivan, the original district judge assigned to the matter, the parties agreed that that no additional parties could be joined without leave of Court, but disagreed whether Plaintiffs could amend their pleadings until December 9, 2011 without leave of Court.  On August 9, 2011, Judge Sullivan entered a case management plan ordering that amended pleadings could no longer be filed without leave of Court.  (Docket No. 35.)  He also established a deadline for fact discovery for June 30, 2012.  The case was transferred to the undersigned on January 9, 2012 and the designated magistrate judge has been supervising all general pretrial matters.

Plaintiffs now move to file a second amended complaint ("SAC") that asserts additional facts and converts opt-in plaintiff, Ms. Zenata Hubbard, to a named plaintiff.  Plaintiffs submit that the proposed SAC simplifies and narrows the scope of their Equal Pay Act collective action class, sets forth additional facts concerning MSL's common policies and practices that Plaintiffs

contend are unlawful, and includes supplemental facts supporting personal jurisdiction over Publicis.  The SAC also seeks double awards for willful violations of the New York Equal Pay Law,[2] and clarifies that the claims brought under the New York Equal Pay Law, New York State Human Rights Law, and the New York City Human Rights Law are limited to those individuals employed in New York.  Defendants oppose the motion, but consent, *inter alia*, to the withdrawal of claims as reflected in the amendments contained in ¶¶ 281, 299, 307, and 324 of the proposed SAC.

### B.  Standard of Review

A party may amend its complaint once without leave of court up to 21 days after the service of either a responsive pleading or various Fed. R. Civ. P. 12 motions.  *See* Fed. R. Civ. P. 15(a)(1).  After that time has expired, any amendment requires the consent of the opposing parties or leave of court.  *See* Fed. R. Civ. P. 15(a)(2).  A court should "freely give leave when justice so requires."  *Id.*  Courts typically grant requests to amend under Rule 15(a).  *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).  It is, however, ultimately "within the sound discretion of the court whether to grant leave to amend."  *John Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962)).  A court may deny amendments to the complaint if they are futile or if they would unfairly prejudice the opposing parties.  *See Aetna Casualty & Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (citations omitted).  An amendment is considered futile if, for example, it cannot withstand a motion to dismiss.  *See Ricciuti*, 941 F.2d at 123.

---

[2] Plaintiffs withdraw their request for attorneys' fees under the New York State Human Rights Law and consent to striking paragraph 305 from their SAC.  (Pl. R. 7 n. 5.)

3

Where, as here, a scheduling order has been entered, the court must also examine Fed. R. Civ. P. 16.  "Although Rule 15(a) governs the amendment of pleadings, Rule 16(b) also may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed."  *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007).  Fed. R. Civ. P. 16(b)(1) directs a federal judge to issue a scheduling order in a civil case.  The pretrial schedule "may be modified only for good cause and with the judge's consent."  Rule 16(b)(4).  The purpose of Rule 16(b) is, in part, "to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000) (internal citations and quotation marks omitted).

The August 2011 scheduling order provides that the parties cannot file amended pleadings without leave of court, but it does not specify a date as to when the parties should seek leave. Defendants argue that the August 2011 scheduling order limits the time to amend the pleadings and the Court should resolve Plaintiffs' motion under the more restrictive standard of Rule 16(b) because the time to amend has expired.  Plaintiffs contend that the Court should evaluate their motion under the lenient standard set forth in Rule 15(a)(2) because the scheduling order failed to establish a deadline for when leave should be sought.  Defendants are correct.  The standard provided by Rule 16(b) is the governing standard because Rule 16(b)(3)(A) requires a court to set a fixed date for amendments of the pleadings.  *See* Fed. R. Civ. P. 16(b)(3)(A) ("The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.").  Any other interpretation of the scheduling order would contravene Rule 16(b)(3)(A) and frustrate the purpose of a scheduling order.  *See*

*Kassner*, 496 F.3d at 243 ("[A]mendment of the pleadings is one of four time limits that the trial court generally must include in a Rule 16(b) scheduling order.").

### C. Analysis Under Rule 16(b)

Rule 16(b)(4) provides that the scheduling order may not be modified except upon a showing of good cause. "Good cause depends on the diligence of the moving party." *Parker*, 204 F.3d at 340; *see also Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 117 (E.D.N.Y. 2011) (noting that even after the 2007 amendment to Rule 16(b)(4), good cause remains the prevailing factor). A party demonstrates good cause by a showing that "despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Oscar v. BMW of North Am.*, No. 09 Civ. 11, 2011 WL 6399505, at *2 (S.D.N.Y. Dec. 20, 2011) (internal quotation marks omitted and citations omitted). A party does not satisfy the good cause standard when the proposed amendment rests on information "that the party knew, or should have known, in advance of the deadline." *Sokol Holdings. Inc. v. BMD Munai, Inc.*, No. 05 Civ. 3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (citing *Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)).

While diligence should be a court's primary consideration, it is not the sole factor. *See Kassner*, 496 F.3d at 244. The court, in its discretion, may consider other relevant factors, including the prejudice suffered by the opposing parties because of the amendment, *see id.*, though "[t]he absence of prejudice to the non-moving party [] is not alone sufficient to satisfy the good cause requirement of Rule 16(b)." *Int'l Media Films, Inc. v. Lucas Entm't, Inc.*, No. 07 Civ. 1178, 2008 WL 781823, at *2 (S.D.N.Y. Mar. 20, 2008) (citing *Ratcliffe v. Pradera Realty Co.*, No. 05 Civ. 10272, 2007 WL 3084977, at *1 (S.D.N.Y. Oct. 19, 2007)). An amendment is prejudicial to the non-moving party if, for example, it "would require the opponent to expend

significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Wolk v. Kodak Imaging Network, Inc.*, --- F. Supp. 2d ----, No. 10 Civ. 4135, 2012 WL 11270, at *8 (S.D.N.Y. Jan. 3, 2012) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008)).

Defendants complain that Plaintiffs have not shown good cause, they have not been diligent in seeking the amendments, and that the amendments will prejudice Defendants. Plaintiffs waited nearly one year after the filing of the original complaint before making the motion and they previously represented to the Court that they did not intend to file another amended complaint. Defendants argue that the parties have engaged in extensive discovery, including negotiating a complicated, sophisticated ESI protocol based on the first amended complaint, deposing all named plaintiffs, and have had numerous discovery disputes resolved by the magistrate judge. They allege that they paid $25,000 alone for deposition transcripts and videographers. Defendants state that they will have to depose the Plaintiffs again and engage in further discovery if the amendments are allowed. They maintain that Plaintiffs' counsel were aware of the alleged discriminatory practices contained in the SAC, such as the salary freeze, because Plaintiffs were all employed by MSL, some for over twenty years. Finally, they argue that Ms. Hubbard filed her consent to join the EPA collective action on June 30, 2011 and Plaintiffs offer no explanation as to why they waited until now to convert her into a named plaintiff.

Plaintiffs respond that if the Court chooses to review the motion under Rule 16(b)(4), the amendments should be permitted because there are no new claims alleged in the SAC and that they meet the "good cause" standard. They argue that many of the factual allegations Defendants oppose in the SAC were made in the FAC and that the information regarding the

sexual harassment complaints and Defendants' centralized and mandatory company-wide

Human Resources policies was not produced to them until late January 2012.  They also allege

that the amendments will not prejudice Defendants because discovery remains incomplete and

that they intend to bring another amended complaint once discovery is finished.  Plaintiffs

further submit that any purported delay in bringing the motion was because of Defendants'

non-compliance and late disclosure of documents.  Plaintiffs also argue that converting Ms.

Hubbard into a named plaintiff is of no consequence because it is a change in form, not in

substance.

The issue of diligence is tricky.  The Court accepts Plaintiffs' assertions that some of the

additional facts were unknown until the parties proceeded with discovery.  Indeed, it would be

hard to allege discriminatory practices based on human resources policies that include hiring

and salary freezes, as well sexual harassment complaints, without the production of documents

from MSL.  All parties note that many of the new allegations contained in the SAC were

referenced in the discovery produced from October 2011 until late January/early February

2012.  (MSL Br. 10; Pls. R. 2.)  There have been many discovery disputes where the parties

disagreed as to the types of documents Defendants were obligated to produce and discovery

appears to be produced on a rolling basis.  Defendants, however, accurately remark that all

plaintiffs were employees of MSL and counsel could easily have discovered the information

earlier.  For example, some of the plaintiffs testified during the depositions that they were

aware of the salary freezes during their employment.  Plaintiffs also offer no explanation as to

why they are now converting Ms. Hubbard into a named Plaintiff though Ms. Hubbard filed her

consent to join the action on June 30, 2011.

Defendants' arguments are well grounded, but the Court concludes that Plaintiffs have shown good cause, albeit the decision is with hesitation.  Many of the new allegations were contained in the FAC and there is no proof submitted that Plaintiffs knew about the extent of the sexual harassment complaints or the human resources policies until MSL produced them.  Further, the documents helped Plaintiffs narrow their EPA class and Defendants have no issue with the amendments that favor their position.  The timing of the motion is excusable because courts have granted motions to amend a complaint when the motion is filed a couple of months after the production of documents.  *See e.g.*, *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023, 2010 WL 1257803, at *11 (E.D.N.Y. Mar. 26, 2010) (understanding that the plaintiffs preferred to have additional discovery before amending their complaint); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (citation omitted) (recognizing that "causes of action in a complaint must be based on factual allegations, not factual speculation.").

The prejudice faced by Defendants is insufficient to warrant denial of the motion.  Currently, the magistrate judge stayed discovery as to MSL until the present motions are resolved.  While some discovery will have to be conducted again, the parties expect to conduct much more discovery.  Moreover, the expense of additional discovery, does not, standing alone, justify a denial of a motion to amend.  *See e.g.*, *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514, 2010 WL 445192, at *12 (S.D.N.Y. Feb. 8, 2010) ("[T]he need to conduct additional discovery is not, in itself, sufficient to constitute prejudice) (citing cases); *Lawrence v. Starbucks Corp.*, No. 08 Civ. 3734, 2009 WL 4794247 (S.D.N.Y. Dec. 10, 2009) (citing cases); *Bridgeport Music, Inc. v. Universal Music Group, Inc.*, 248 F.R.D. 408, 414 (S.D.N.Y. 2008) ("[T]he burden on the current defendants of attending reopened depositions would be less because they have previously prepared for them.").  Defendants are not obligated to defend every plausible theory that was

8

not raised in a complaint, but Plaintiffs did serve document requests and interrogatories that covered the additional discriminatory practices.  The case is not in an advanced stage, there has not been any dispositive motion practice, and the new facts are unsurprising.[3]

### D.  Analysis Under Rule 15(a)

After the moving party demonstrates diligence under Rule 16, the court applies the standard set forth in Rule 15 to determine whether the amendment is proper.  *See Dumann Realty, LLC v. Faust*, No. 09 Civ. 7651, 2011 WL 2749553, at *3 (S.D.N.Y. Jul. 8, 2011) (citations omitted); *Samad Bros., Inc. v. Bokara Rug Co. Inc.*, No. 09 Civ. 5843, 2010 WL 4457196, at *2 (S.D.N.Y. Oct. 18, 2010).

#### i.    Title VII Claims

Defendants argue that Ms. Hubbard cannot be a named plaintiff because her Title VII claims are time-barred.

"A Title VII claimant may file suit in federal court only if she has filed a timely complaint with [the] EEOC and obtained a right-to-sue letter."  *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994); *see also Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993).  Title VII requires a claimant to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment action or, whereas here, within 300 days of the alleged discriminatory action if the claimant has already filed the charge with a state or local equal employment agency.  *See* 42 U.S.C. § 2000e-5(e); *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 2070, 153 L.Ed.2d 106 (2002).  There are exceptions to the time limitation, such as the "continuing

---

[3] The SAC also asserts additional facts about jurisdiction concerning Publicis.  The Court will allow Plaintiffs to assert those facts because Publicis recently filed motion to dismiss for lack of personal jurisdiction.  The additional facts contained in the SAC have little bearing as to whether the Court has personal jurisdiction.

violation exception," which provides that if a plaintiff "files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination," the statute of limitations is extended "for all claims of discriminatory acts committed under that policy." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997); *see also Harris v. City of New York*, 186 F.3d 243, 248-50 (2d Cir. 1999). In a class action involving similarly situated plaintiffs, there is also a so-called "single filer" rule, where "plaintiffs in class action discrimination suits have been allowed to 'piggyback' their otherwise untimely claims on to those of timely filed named plaintiffs." *Cronas v. Willis Group Holdings Ltd.*, No. 06 Civ. 15295, 2007 WL 2739769, at *3 (S.D.N.Y. Sept. 17, 2007) (citing *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1057 (2d Cir. 1990) and *Snell v. Suffolk County*, 782 F.2d 1094, 1101-02 (2d Cir. 1986)).

Here, because Ms. Hubbard did not file a charge of discrimination with the EEOC, she will have to rely on the charge filed by Ms. da Silva Moore for any alleged Title VII claim. Ms. da Silva Moore filed her charge of discrimination on January 26, 2010. Thus, only events that occurred during the 300-day period prior to filing, i.e., on or after April 1, 2009, are actionable under Title VII. It is undisputed that Ms. Hubbard's last day of employment was in December 2008. (SAC ¶ 224.) Defendants argue that Ms. Hubbard's claims are therefore untimely and she cannot be a named plaintiff for the Title VII claims. Plaintiffs do not refute Defendants' contentions[4], nor can the Court find fault in Defendants' arguments. Because Ms. Hubbard is no longer an employee and her last day of employment was more than 300 days before the filing of the EEOC charge, she cannot be a named plaintiff for the Title VII claims. *See Holowecki*

---

[4] Plaintiffs do not contest Defendants' arguments that Ms. Hubbard's Title VII claims are time-barred, rather, they argue that her individual EPA claim falls within the statute of limitations. Defendants never opposed the timeliness of her EPA claim, but stated that the maximum liability period is from June 30, 2008 to the present. (MSL Opp. 19 n. 16.) It is unnecessary to address whether Ms. Hubbard's EPA claims fall within the liability period during a motion to amend because the Court will have to make a determination of willfulness after examining a fuller record.

*v. Federal Exp. Corp.*, 644 F. Supp. 2d 338, 551 (S.D.N.Y. 2009) (holding that the non-filing

plaintiffs that terminated employment more than 300 days before the filing of the EEOC charge

could not "piggy-back" onto the charge); *Selzer v. Bd. of Educ. of City of New York*, 113 F.R.D.

165, 169 (S.D.N.Y. 1986) (holding that some of the former employees whose last day of

employment was outside the applicable 300-day period could not be a part of the Title VII

class); *Avagliano v. Sumitomo Shoji Am., Inc.*, 103 F.R.D. 562, 577-78 (S.D.N.Y. 1984).[5]

   Defendants argue that the additional allegations contained in the SAC under Title VII fall

outside of the scope of Ms. da Silva Moore's initial EEOC charge.  One of the central purposes of

the employment discrimination charge is to put employers on notice of "the existence and

nature of the charges against them."  *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77, 104 S. Ct. 1621, 80

L.Ed.2d 41 (1984).  Claims not raised in an EEOC complaint may be brought in federal court if

they are "reasonably related" to the claim filed with the agency, even if the claim was not

expressly addressed by the EEOC.  *Williams v. NYC Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006)

(per curiam) (citing *Butts*, 990 F.2d at 1401 (citing cases)); *Cornwell*, 23 F.3d at 706.  A claim

raised for the first time in district court is "reasonably related" to allegations in an EEOC charge

"where the conduct complained of would fall within the scope of the EEOC investigation which

can reasonably be expected to grow out of the charge of discrimination."  *Butts*, 990 F.2d at

1402 (internal quotation marks and citation omitted).  "The central question is whether the

complaint filed with the EEOC gave that agency adequate notice to investigate discrimination

on both bases."  *Williams*, 458 F.3d at 70 (internal quotation marks and citation omitted).  Ms.

---

[5] The Court is confused about changing Ms. Hubbard into a named plaintiff because the SAC does not list Ms. Hubbard as a named plaintiff for the Title VII or EPA claims.  (SAC ¶¶ 288, 315.)  Apart from her individual EPA claim, she has no other claims.  The Court conducted an analysis of whether Ms. Hubbard can be a named plaintiff for the Title VII claims out of an abundance of caution, but is skeptical of whether the analysis was necessary.

da Silva Moore's EEOC charged alleged gender-based discrimination that included, but was not limited to, pay, promotion, and other employment practices.  (Brecher Decl. Exh. 8 ¶ 15.)  It is not a stretch to conclude that Plaintiffs' additional claims, i.e., the salary freezes, mentoring policies, etc., fall within the boundaries of the charge and the charge provided Defendants with reasonable notice of these alleged discriminatory practices.

### ii.    New York Labor Law Penalties

Count V of the SAC alleges that Defendants violated the New York Equal Pay Law, N.Y. Labor Law § 194.  The SAC seeks double award damages, a change from the FAC where Plaintiffs sought 25% compensatory damages.  The N.Y. Labor Law § 198(1-a) was amended, effective April 9, 2011, to change the penalties from 25% to 100%.  Defendants argue that the Court set the class period for February 24, 2011 and the amendment occurred after the date any named plaintiff was employed.  They also maintain that the N.Y. Labor Law amendment is not retroactive.  In fact, the class period has not been set, but some discovery was limited to February 24, 2011.  Plaintiffs concede that the amendment is not retroactive, but argue that Defendants' arguments are premature and the applicable penalty percentage should be determined later.  They allege that the violations are continuous and the 100% penalty will apply to certain class members, but not all of them.  The Court agrees the argument is premature and for the purposes of a motion to amend, the Court will allow Plaintiffs to seek penalties under N.Y. Labor Law, but the proper amount of damages will depend on the window of liability.

### iii.    Individual EPA Claims

Defendants argue that Ms. Wilkinson's and Ms. Hubbard's individual EPA claims should be dismissed from this action because they cannot be included in the collective action.  They

complain that if these individual claims are allowed to proceed, Plaintiffs will seek individual

plaintiffs and will continue to amend the complaint.  Plaintiffs disagree and maintain that the

individual EPA claims should be allowed to proceed in this action because it is more efficient

and otherwise, Ms. Wilkinson and Ms. Hubbard would be forced to start the process from the

beginning.  They note that both women have already been deposed and that in the interest of

judicial efficiency, the individual claims should proceed in this action.  The Court is

uncomfortable with allowing the individual claims to proceed in a collective action, because to

do so would bypass the requirements of a collective action.  However, in the interest of judicial

economy, the Court will allow the two individual EPA claims to proceed in this action, but as the

case progresses, if the individual claims prove to be prejudicial or confusing, the Court may

sever them.  Plaintiffs are cautioned against amending the complaint to include additional

individual EPA claims.

## II.
## MOTION FOR CONDITIONAL CERTIFICATION

Named Plaintiffs Monique da Silva Moore, MaryEllen O'Donohue, Laurie Mayers, and

Heather Pierce and opt-in Plaintiff Carol Perlman's request that the Court (1) conditionally

certify the class under section 16(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., for

their claims under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and (2) authorize that notice be

sent to potential opt-in plaintiffs.  Plaintiffs are former employees of Defendants Publicis Group

SA ("Publicis") and MSLGroup ("MSL"), who worked as public relations professionals in the

management positions of Vice President and Senior Vice President Director (collectively "VP")

and Senior Vice President and Senior Vice President Deputy Managing Director (collectively

"SVP").  Plaintiffs allege that, in violation of the EPA, they and similarly situated female

employees were paid less than their male counterparts for performing substantially equivalent

work.  Plaintiffs request that the Court conditionally certify the following class:

> [F]emale public relations management employees who are, have been, or will be
> employed by Defendants in the following positions, including, but not limited to Vice
> President, Senior Vice President, Senior Vice President/Director and/or Senior Vice
> President/Deputy Managing Director (classified in the job codes of LM115 and LM120 in
> Defendants' compensation/payroll policies and records) in the United States, at any
> time during the applicable liability period ("female PR management employees")

(SAC ¶ 281.)  For the reasons set forth below, the motion is granted.

**A.  Standard of Review**

The EPA prohibits payment of unequal wages for equal work on grounds of sex, unless the

difference is justified by one of four enumerated defenses: a seniority system, a merit system, a

system that measures pay by quality or quantity of production, or any other factor not based on

sex.  29 U.S.C. § 206(d).  The EPA was enacted in 1963 as an amendment to the Fair Labor

Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA").  *See Northwest Airlines, Inc. v. Transp.*

*Workers Union of Am., AFL-CIO*, 451 U.S. 77, 79 n. 1, 101 S. Ct. 1571, 67 L.Ed.2d 750 (1981);

*Anderson v. State Univ. of N.Y.*, 169 F.3d 117, 119 (2d Cir. 1999), *vacated on other grounds*, 528

U.S. 1111, 120 S. Ct. 929, 145 L.Ed.2d 807; *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.

1991).  "As part of the FLSA, the EPA utilizes the FLSA's enforcement mechanisms and employs

its definitional provisions."  *Anderson*, 169 F.3d at 119.

Section 216(b) of the Fair Labor Standards Act ("FLSA") permits employees to sue "for and

in behalf of ... themselves and other employees similarly situated" for violations of the FLSA.  29

U.S.C. § 216(b).  Collective action treatment under section 216(b) reflects a policy in favor of

judicial economy by which "the judicial system benefits by efficient resolution in one

proceeding of common issues of law and fact arising from the same alleged discriminatory

14

activity." *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Similar to FLSA

claims, section 216(b) requires that claims brought under the EPA must also have all potential

plaintiffs "opt-in" to the action.  *See e.g., Ameritech Ben. Plan Comm. v. Commc'n Workers of

Am.*, 220 F.3d 814, 820 (7th Cir. 2000) (remarking that the EPA incorporates the requirements

of the FLSA and "compels the use of a more restrictive 'opt-in' procedure."); *Thompson v.

Sawyer*, 678 F.2d 257, 269 (D.C. Cir. 1982) (members of the class in an EPA action may only

recover if they "opt-in" under section 216(b)); *Ebbert v. Nassau County*, No. 05 Civ. 5445, 2007

WL 2295581 (E.D.N.Y.  Aug. 9, 2007) (applying the procedures set forth in section 216(b) for the

EPA claim); *Rochlin v. Cincinnati Ins. Co.*, No. IP00-1898, 2003 WL 21852341, at *14 (S.D. Ind.

July 08, 2003) (actions brought under EPA must follow section 216(b) of the FLSA rather than

the procedures set forth in Fed. R. Civ. P. 23); *Jarvaise v. Rand Corp.*, 212 F.R.D. 1, 4 (D.D.C.

2002).

   The Second Circuit recently sanctioned the two-step formula commonly followed by the

district courts in collective actions.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).

First, the court makes a preliminary determination of whether to send notice to potential opt-in

plaintiffs who may be "similarly situated" to the named plaintiffs.  *Id.*  (citing cases).  Neither

the FLSA nor its implementing regulations define "similarly situated."  However, courts in the

Second Circuit expect Plaintiffs to make only a "'modest factual showing' that they and

potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the

law.'"  *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y.

1997)); *Salomon v. Adderley Industries, Inc.*, --- F. Supp. 2d ----, No. 11 Civ. 6043, 2012 WL

716197, at *1 (S.D.N.Y. Mar. 6, 2012); *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 319

(S.D.N.Y. 2011) (the burden for showing plaintiffs are "similarly situated" is very low).  The

initial phase is often termed the "notice stage."  *See Lynch v. United Servs. Auto. Ass'n*, 491 F.

Supp. 2d 357, 368 (S.D.N.Y. 2007).

During this initial step, "the court does not resolve factual disputes, decide substantive

issues going to the ultimate merits, or make credibility determinations."  *Cunningham v. Elec.

Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (quoting *Lynch*, 491 F. Supp. 2d at 368

(internal citations omitted)); *see also Salomon*, 2012 WL 716197, at *3 (citation omitted);

*Raniere*, 827 F. Supp. 2d at 320; *Shajan v. Barolo, Ltd.*, No. 10 Civ. 1385, 2010 WL 2218095, at

*1 (S.D.N.Y. June 2, 2010) ("Weighing of the merits is absolutely inappropriate.").  The modest

factual showing "cannot be satisfied simply by 'unsupported assertions,'" but the showing is a

low standard of proof "because the purpose of this first stage is merely to determine *whether*

'similarly situated' plaintiffs do in fact exist."  *Myers*, 624 F.3d at 555 (emphasis in original,

citations and quotation marks omitted).  "Plaintiffs may satisfy [the "similarly situated"]

requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and

declarations of other potential class members."  *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785,

2008 WL 465112, at *1 (S.D.N.Y. 2008) (citing *Anglada v. Linens 'N Things, Inc.*, No. 06 Civ.

12901, 2007 WL 1552511, at *4 (S.D.N.Y. Apr. 26, 2007)); *Salomon*, 2012 WL 716197, at *1

(citation omitted).  If the plaintiffs demonstrate that "similarly situated" employees exist, the

court may conditionally certify the class, order that appropriate notice be provided to the

putative class members, and the action should continue as a "collective action throughout the

discovery process."  *Cunningham*, 754 F. Supp. 2d at 644 (citing cases).

The second step is applied after discovery is complete.  The district court will examine the

record and the opt-in plaintiffs and will determine whether they are in fact similarly situated to

the named plaintiffs.  *See Myers*, 624 F.3d at 555.  "The action may be 'de-certified' if the

record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id*; *see also Diaz v. S & H Bondi's Dept. Store*, No. 10 Civ. 7676, 2012 WL 137460, at *4 (S.D.N.Y. Jan. 18, 2012) (citations omitted). This second stage inquiry is more stringent because the court "is able to examine whether the *actual* plaintiffs brought into the case are similarly situated." *Gortat v. Capala Brothers, Inc.*, No. 07 Civ. 3629, 2010 WL 1423018, at *10 (E.D.N.Y. Apr. 9, 2010) (emphasis in original) (citation omitted).

### B. Discussion

Plaintiffs allege that MSL had a common scheme and practice of paying members of the purported class less than their male counterparts and the scheme was effectuated by the centralized corporate policies that made the compensation decisions. Plaintiffs estimate that there are approximately 125 female employees in the class. (P. Cert. 1.) They argue that these females are similarly situated because they all were subject to the same compensation policies and practices, which were implemented by a small highly centralized group of decision-makers. In support of their motion, Plaintiffs submit employment and compensation policies, sample pay data, policy documents, deposition excerpts of various plaintiffs, and declarations from the Named Plaintiffs, potential class members, and individuals with knowledge of Defendants' practices. Plaintiffs also submit the job descriptions, responsibilities, and qualifications for the VP and SVP positions and the salary benchmark data for each office. The submitted information shows that these females worked in various offices across the nation, but had similar responsibilities, despite geographic location. They worked on different client accounts, but the work was similar throughout each account and both male and female employees in other offices, with the same titles, performed substantially the same work as members of the putative class. Most of the VPs and SVPs had various duties that matched the job descriptions

of their titles, such as counseling and supporting MSL's clients, supervising and developing

other employees, financial management, budgeting and invoicing.  The declarations allege that

the company job descriptions for the VP and SVP positions substantially matched their actual

duties.

The Named Plaintiffs submit declarations averring that during the salary freeze

implemented by Defendants, they did not receive salary increases, while some of their male

counterparts did.  The declarations and deposition testimony also reveal that Named Plaintiffs

felt that they and other similarly situated female public relations professionals were paid less

than their male counterparts, though they had similar duties.  At a glance, Defendants'

employment handbook shows that the compensation policies require that the pay decisions

were made centrally, while the declarants believed that a core office determined

compensation.  Plaintiffs also submit a report by an expert about whether the compensation of

various management positions at MSLGroup differ by compensation (Ex. B to Hussein Decl.)

The report found that salary difference between male and female VPs and SVPs ranged from

8.5% to 11.2% between 2008 and 2010.  (Exh. B. to Hussein Decl.)  They also submit pay

comparison charts showing the salary differences between the men and women who occupy

the same title.

Defendants object that Plaintiffs have not met their burden for a conditional certification

under the EPA and that federal courts have conditionally certified fewer than ten EPA cases

since the statute was enacted.  They argue that Plaintiffs cannot show that they, and the

potential opt-in plaintiffs, are similarly situated.  For example, the proposed class held four

different job titles, worked in nine different establishments across the nation, worked in diverse

practice and industry segments, and had varying levels of responsibilities, numbers of

employees reporting directly to them, and years of experience.  Defendants also submit that

the Court should not apply the minimal standard used by the FLSA cases, but instead, it should

see if Plaintiffs satisfied the EPA statute: that the potential plaintiffs all performed "equal work"

requiring "equal skill, effort and responsibility" under "similar working conditions" within the

same "establishment" and were subject to a "common policy that was discriminatory."  They

state that Plaintiffs have not provided any factual basis to support a finding that all members of

the purported class performed "equal work" to others in the purported class and to the male

counterparts.  They point out the differences from VPs and SVPs and note that some females

were paid more than their male counterparts.  They also say that many females, with the same

title, were paid differently.  Thus, there is no standard pay scale for the VP and SVP positions.

They also submit an expert report that criticizes the flaws in Plaintiffs' expert report and argues

that Plaintiffs' expert performed the wrong analysis.  They present declarations from individuals

with knowledge of MSL's policies that contradict some of the statements made in Plaintiffs'

declarations.  Finally, they complain that the proposed class is unmanageable because each

individual Plaintiff's EPA claim presents unique and specific issues concerning her job duties.

Here, the Court concludes that Plaintiffs have met their burden by making a *modest* factual

showing to demonstrate that they and potential plaintiffs together were victims of a common

policy or plan that violated the law.  They submit sufficient information that because of a

common pay scale, they were paid wages lower than the wages paid to men for the

performance of substantially equal work.  The information also reveals that Plaintiffs had

similar responsibilities as other professionals with the same title.  Defendants may disagree

with Plaintiffs' contentions, but the Court cannot hold Plaintiffs to a higher standard simply

because it is an EPA action rather an action brought under the FLSA.  *See e.g.*, *Jarvaise*, 212

F.R.D. at 4 ("The only requirement for a collective action under the Equal Pay Act is that the represented employees be similarly situated to the representative employees, and plaintiffs have limited the description of the employees they seek to represent such that their collective action involves only similarly situated employees.").

Courts have conditionally certified classes where the plaintiffs have different job functions. *See e.g.*, *Diaz*, 2012 WL 137460, at *6 (citing cases); *Cunningham*, 754 F. Supp. 2d at 651. Plaintiffs have to make a mere showing that they are similarly situated to themselves and the potential opt-in members and Plaintiffs here have accomplished their goal.  While a large amount of discovery has been conducted, discovery remains incomplete.  Defendants' arguments are more appropriate after discovery is finished.  Then, Defendants can attack the validity of Plaintiffs' assertions and the Court will be in a better position to determine whether all class members are indeed similarly situated.

Defendants stress that Plaintiffs are not similarly situated because they work in nine different "establishments," i.e., they work in different cities.  While the EPA requires that the employees work in the same "establishment" to whom they compare themselves concerning compensation, *see* 29 U.S.C. § 206(d)(1), there is limited authority that district courts must engage in the establishment analysis when  considering the certification of a collective action under the EPA.  *See, e.g.*, *Jarvaise*, 212 F.R.D. at 4 (certifying an EPA collective action and allowing inclusion of employees from both the defendant's Washington, D.C. and California offices as similarly situated without discussing the establishment requirement); *Garner v. G.D. Searle Pharm. & Co.*, 802 F.Supp. 418, 422–23 (M.D. Ala. 1991) (facilitating conditional notice of plaintiff's EPA claim and right to opt-in to the forty female employees in the company's southern region, without addressing the establishment issue).  In the case relied on by

Defendants, *Collins v. Dollar Tree Stores, Inc.*, 788 F. Supp. 2d 1328 (N.D. Ala. 2011), the court

there engaged in a thorough analysis during the de-certification phase, not during the initial

phase.  In fact, the court in *Collins* did conditionally certify the EPA class.  *Id.* at 1331.  The other

cases cited did not resolve motions for conditional certification.  Plaintiffs have alleged that

their duties at MSL generally remained the same across accounts, practice areas, and offices.

They all had similar responsibilities, regardless of location, and they allege they were subject to

the same unlawful discriminatory pay practice.  At this stage, Plaintiffs' assertions are sufficient,

but remain vulnerable during a motion for de-certification.  *See, e.g.*, *Diaz*, 2012 WL 137460, at

*6 (reasoning that courts have found employees to be "similarly situated" when the employees

worked in different locations as long as they complain about the same unlawful compensatory

practice) (citing cases)[6].

    Defendants also argue that though Fed. R. Civ. P. 23 is not applicable to collective actions,

the "commonality" standard set forth in Rule 23(a) is analogous to the "similarly situated"

requirement in section 216(b).  Rule 23(a)(2) requires that, for a class action to be proper, there

must be questions of law or fact common to the class.  In a recent decision, the U.S. Supreme

Court clarified that for the commonality requirement to be satisfied, the common contention

upon which the plaintiffs' claims depend "must be of such a nature that it is capable of

classwide resolution—which means that determination of its truth or falsity will resolve an

issue that is central to the validity of each one of the claims in one stroke."  *Dukes v. Walmart*, -

-- U.S. ---, 131 S. Ct. 2541, 2551, 180 L.E.2d 374 (2011).  Defendants argue that the same

standard should be applied here and cite to three district court cases in support.  *See e.g.*, *Scott*

---

[6] Defendants also argue that Plaintiff Pierce cannot be similarly situated to the other plaintiffs because for her EPA claim to be viable, she has to show the violation was willful.  There is no legal support stating that during this preliminary stage, for all the class members to be similarly situated, the violations had to be non-willful.

*v. Family Dollar Stores, Inc.*, No. 3:08 Civ. 540, 2012 WL 113657, at *4 (W.D.N.C. Jan. 13, 2012)

(holding that that standard under section 216(b) and Rule 23(a)(2) are "nearly identical"); *Ruiz*

*v. Serco, Inc.*, No. 10 Civ. 394, 2011 WL 7138732, at *6-7  (W.D. Wis. Aug. 5, 2011) (reasoning

that *Dukes* is instructive in FLSA cases); *MacGregor v. Farmers Ins. Exchange*, No. 2:10 Civ.

03088, 2011 WL 2981466, *4 (D.S.C. Jul. 22, 2011) (looking to *Dukes* when deciding a collective

action motion).  However, most federal courts in New York have held that *Dukes* does not

heighten the standard in section 216(b) cases and continue to apply the minimal standard.  *See*

*e.g.*, *Winfield v. Citibank, N.A.*, --- F. Supp. 2d ----, 2012 WL 423346, *10 (S.D.N.Y.  Feb. 9, 2012)

(notwithstanding *Dukes*, "the stringent requirements for class certification under Rule 23 are

not identical to the minimal burden that plaintiffs carry on a motion for conditional certification

under § 216(b)…") (citing cases); *Pippins v. KPMG LLP*, No. 11 Civ. 0377, 2012 WL 19379, at *7

(S.D.N.Y. Jan. 3, 2012) (citing cases).[7]

### C.  Notice

Plaintiffs further request that the Court authorize notice of this action to be sent to all

potential members of the EPA action.  Though neither the EPA nor the FLSA specifically

authorizes district courts to order notice to potential opt-in plaintiffs, it is useful for a court to

authorize notice to all potential opt-in plaintiffs.  "By monitoring preparation and distribution of

the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and

the court benefit from settling disputes about the content of the notice before it is distributed."

*Hoffmann–La Roche*, 493 U.S. at 172.

---

[7] Defendant Publicis joins in MSL's opposition, but states that the Court lacks jurisdiction over Publicis.  This order will apply to Publicis if the Court finds that it does have personal jurisdiction over Publicis.

The parties should submit a joint proposed notice to the Court for approval in order to ensure that the drafting and distribution of the notice is timely, accurate and informative, no later than July 9, 2012. If the parties are unable to agree, they should submit their own versions and provide the Court with a comparison copy. The parties will meet with the Court on July 11 to discuss notice.

### III.
### CONCLUSION

For the reasons set forth above, Plaintiffs' motion to amend the first amended complaint (docket no. 154) is granted, but Plaintiffs are cautioned against amending the complaint again. Plaintiffs should file their second amended complaint consistent with this order no later than July 9, 2012. The motion for conditional certification and authorization of notice (docket nos. 111, 133) is granted.

Dated: New York, New York
June 28, 2012

SO ORDERED.

Andrew L. Carter, Jr.
United States District Judge