C7BJMOOM                        Motions

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MONIQUE DA SILVA MOORE, et al.,

                  Plaintiffs,

          v.                            11 Civ. 1279 ALC

PUBLICIS GROUPE and MSL GROUP,

                  Defendants.

------------------------------x

                                        July 11, 2012
                                        3:50 p.m.



Before:

                  HON. ANDREW L. CARTER, JR.,

                                        District Judge

                        APPEARANCES


SANFORD WITTELS & HEISLER, LLP
     Attorneys for plaintiffs
BY:  STEVEN WITTELS, Esq.
     – and –
CLIFFORD CHANCE US, LLP (NYC)
BY:  SIHAM NURHUSSEIN, Esq.
                Of counsel


JACKSON LEWIS, LLP
     Attorneys for defendants
BY:  VICTORIA WOODIN CHAVEY, Esq.
     JEFFREY BRECHER, Esq.
     – and –
MORGAN LEWIS & BOCHIUS, LLP (PA)
BY:  PAUL EVANS, Esq.
                Of counsel
```

1          (In open court)

2          (Case called)

3          THE COURT:  Good afternoon.

4          First let's deal with the plaintiffs' objections to

5   Judge Peck's rulings, discovery rulings on May 7th and May

6   14th.  I've reviewed the parties' submissions, obtained the

7   transcript.  I will overrule the plaintiffs' objections to

8   Judge Peck's rulings on May 7th and May 14th.  I find that his

9   rulings were not clearly erroneous or contrary to law.

10          Now let's move on to the issues concerning the notice

11   to be sent out.  Let's just make sure everyone has each party's

12   proposed notice next to each other and do them side-by-side.

13          Regarding, first of all, regarding defendants'

14   objection to Publicis Groupe S.A. may be included in the

15   notice, Publicis Groupe S.A. at this point is still a party to

16   the lawsuit and the name should be included in the notice.  If

17   at some later point they're dismissed from this action, we can

18   deal with that later.  They should be included in the notice.

19          Let's go looking at the notice section.

20          MR. WITTELS:  Your Honor, I hesitate to interrupt.

21          May I just make one introductory statement if you

22   don't mind --

23          THE COURT:  Sure.

24          MR. WITTELS:  -- because your Honor obviously has

25   carefully read these and we very much appreciate that.

1          There is a matter of grave concern to the plaintiffs

2     regarding these notices, and that is that we have learned

3     through our clients, who have learned from current employees,

4     that an e-mail was sent out after your Honor certified this as

5     a collective action.  In the e-mail, which we don't have a copy

6     of, and have been unable to get a copy of, the potential class

7     members are members of the women here who were essentially told

8     that there is no merit to this suit, there is going to be a

9     vigorous defense to this suit, and really from what we

10    understand from the tenor of the letter or e-mail, were sort of

11    discouraged not to participate.

12          Before notice goes out, we would ask that your Honor

13    order the defendants to produce that notice to us and the court

14    so that we can see it and evaluate whether there should be a

15    corrective notice within the notice that your Honor eventually

16    approves rather than having to escort in a secondary fashion.

17          If we did it through normal course of discovery by

18    asking for it, there would be 30 days and objections.  There

19    seems to be no reason not to know what they said.  This was

20    apparently authorized by the president, Jim Seconis, the person

21    who sent this of the company.  It is sort of a pattern of what

22    has happened in this lawsuit since the beginning of trying to

23    chill people's participation, which your Honor hasn't been

24    involved in the day-to-day but, for example, at the depositions

25    where the defendants engaged in far ranging types of questions

C7BJMOOM                          Motions

1     about family members, about their involvement in social media.

2              If you read their notices and go through it, it is

3     also designed to try to chill them from joining.  We would ask

4     as a preliminary matter that that be produced so the court can

5     determine if there should be correctiveness.  We believe there

6     should be once we have seen it.

7              THE COURT:  Before I do that, based on your

8     understanding of what is in the e-mail, and let's assume this

9     e-mail exists for argument's sake, the worst case, what would

10    be the corrective action you would be asking me to take?

11             MR. WITTELS:  Many times there are corrective actions

12    given by courts which tell the potential class members you

13    received information that is incorrect or inaccurate and you

14    should disregard it.  In fact, you are not being dissuaded from

15    participating and you will have the right to participate and

16    join.  That is just an off-the-cuff example of what one might

17    say depending upon what the defendant corporation has said to

18    the class members.  There is case law on that.

19             THE COURT:  You would ask me to say -- again your

20    recitation of what you believe is in the e-mail is something to

21    the effect this lawsuit has no merit, don't waste your time?

22             MR. WITTELS:  Right, don't waste your time.  It is set

23    out right away after the collective action decision.  It is a

24    communication that normally one doesn't have direct

25    communications when there is class certification and here there

 1    is a collective action certification, so everyone is not in the

 2    class until they join.

 3         If it were a Rule 23 class and the defendants

 4    automatically tried to communicate to class members about any

 5    matters, we would be making the same argument.  You're trying

 6    to dissuade the class members from joining, and that is what we

 7    believe is happening here.  It is evidence again by the

 8    language they're trying to use in their own version of the

 9    language designed to try to chill people.  You have to pay

10    litigation costs, you're going to be deposed, all things and

11    the other things.

12         We like to see what they said.  If I am not answering,

13    the corrective language would be you received information that

14    was misleading and inaccurate.  You have a right to participate

15    and join.  You should disregard the notice or the information

16    that was sent to you by the corporation and you will not be

17    penalized or punished or retaliated against for joining.  It

18    would be the opposite what the defendants apparently have said.

19         THE COURT:  Both sides of the proposed notice, there

20    is information about not being retaliated against.  I am not

21    sure how appropriate it would be for me, again even if this

22    e-mail exists, and even if this e-mail exists what you're

23    saying, the court should say what you received was misleading

24    and wrong.  That seems a little strong, doesn't it?

25         MR. WITTELS:  No, your Honor, respectfully.  There are

1   many instances in the case law -- we haven't briefed it --

2   where plaintiffs have made application to the court for

3   corrective notice, corrections of misleading, incorrect

4   statements.

5          Whether the court said it, it would be court-sponsored

6   in a sense, the court approving the language, but the court's

7   obligation in monitoring the class action is to ensure there is

8   equities and fairness for both sides, obviously, and to do that

9   and to make sure the class is protected under Rule 23 (f).  The

10  court has the power to fashion an appropriate remedy in its

11  monitoring of the class.

12         THE COURT:  It seems like what you're saying when you

13  talk about corrective notice, unless I am misunderstanding, you

14  are talking about including language in the notice to be sent

15  out that would be to correct that misimpression, or are you

16  talking about some separate indication, transmission from the

17  court?

18         MR. WITTELS:  It would not be from the court.  It

19  would be the court has approved that this corrective notice go

20  out.  If your Honor doesn't do it here, once we eventually got

21  hold of that and if it is what we think, the court would be

22  authorizing a second notice, assuming you approved that it

23  needed to be corrected.

24         THE COURT:  When did plaintiffs find out about this

25  alleged e-mail?

1          MR. WITTELS:  Right after your Honor on June 20 --

2     well, within a week I believe after that we started hearing

3     about it.  We tried to get it and we haven't been able to get

4     it.  The reason our plaintiffs can't get it is because the

5     current employees are afraid to give it to them.  There is a

6     real fear here among the class members.

7          THE COURT:  Have you raised this with defense counsel

8     before just now?

9          MS. NURHESSEIN:  Actually, your Honor, we have raised

10    it in the context of previous discovery requests we served

11    requesting disclosures, any disclosures, communications made

12    with potential class members, and that's one that had been

13    served a while ago.

14         We did confirm it.  I did bring to their attention we

15    are aware there had been communication that we believe was

16    improper and potentially misleading and coercive.  They are

17    taking the position they don't have to produce any of those

18    documents because they're protected by work product.

19         THE COURT:  My real question is this:

20         We are here today supposedly to deal with this notice.

21    I am trying to find out when did plaintiffs find out about this

22    and what steps did plaintiffs take to notify the defendants

23    about this in relation to the notice or notify the court so we

24    don't end in a situation in which we are wasting everybody's

25    time coming to court if plaintiffs -- my concern is if

1    plaintiffs knew you were making this request, why not submit

2    something in writing to the court, CC the defendants so that we

3    don't end up in a situation we are trying to go through this

4    notice all for nothing or coming to court for no reason.

5           Let me get a sense from plaintiffs in terms of, it

6    sounds like you found out about this in advance of today,

7    right?

8           MR. WITTELS:  Yes.

9           THE COURT:  Did plaintiffs -- I haven't received any

10   letter from plaintiffs CC'g the defendants indicating that this

11   is an issue that should be resolved prior to today -- did

12   plaintiffs have any written communications or other

13   communications with defense counsel to discuss this, to figure

14   out if maybe we should have an adjournment of the hearing

15   today?

16          MR. WITTELS:  The short answer to that last question

17   is no.  We tried until as recently as yesterday and today to

18   try to get hold of it because we didn't want to bring up an

19   issue if we had it, we could be more accurate about it.  Ms.

20   Nurhussein said she tried, as she indicated, to try to get it

21   from defendants by saying that we had heard about it.

22   Defendants have taken the position they won't produce it.

23   Therefore, your Honor's right.

24          I mean, perhaps it would have been more prudent to

25   have brought it up in a letter format and hashed it out, but we

1   are asking your Honor now to order that we at least see it so

2   we can know.  I don't know that it affects the other language

3   that is in dispute, their version versus our version.  The

4   corrected part of it could be an addendum or something at the

5   beginning.

6          THE COURT:  Le me hear from defendants.

7          MS. CHAVEY:  Your Honor, we were never asked to

8   provide the e-mail.  We did have a meet-and-confer on Thursday.

9   We spoke with both Mr. Wittels and Ms. Nurhussein.  They never

10  asked us for it.  I am not sure what e-mail they're referring

11  to.

12         If they had asked us for it before we came to court,

13  we might have been able to figure it out.  There was on Monday

14  morning come to our attention a press release from Sanford

15  Wittels about your Honor's ruling, and that press release was

16  given to a PR news wire which is, as I understand it, some type

17  of media service that then provides news reports to media

18  outlets.

19         In response to that press release that Sanford Wittels

20  issued, immediately upon the first business day after receiving

21  your ruling, dated June 29th, we felt there were highly

22  misleading portions of the press release, and so MSL did issue

23  a press release, a copy of which we have here if you like me to

24  to hand it up.  If that is what plaintiffs are referring to

25  now, I am referring to that.  An e-mail went out to everybody

1    at MSL about participating.  I don't know about any such e-mail

2    at all.

3          MS. NURHESSEIN:  Let me clarify one thing.  That is

4    not actually correct.  I did raise the issue of communication

5    that we had heard of that was potentially misleading and

6    coercive in the context of a broader request about general

7    communications or disclosures made to potential class members.

8          I didn't go into the specifics because I didn't have a

9    lot of information at the time.  As my colleague said, we

10   haven't seen the e-mail.  We have gradually acquired

11   information from our clients over the past few days or so, but

12   it was something that was raised on the call.

13         MS. CHAVEY:  Your Honor, this was last week we spoke

14   to plaintiffs' counsel, and they didn't raise this issue.  We

15   were discussing in a meet-and-confer context discovery requests

16   that had been issued before.  This was never raised.  If it had

17   been raised, we would have provided an e-mail.  If we could

18   have understood what it was, we could have provided a copy of

19   the press release.  I have one here.

20         This is a pattern of us not knowing before we come to

21   court what plaintiffs are going to ask for, and we have asked

22   plaintiffs' counsel in this courthouse to please confer with us

23   before coming to court and asking for things that they haven't

24   asked us for.

25         THE COURT:  Okay.  It appears to me that to the extent

1   that this e-mail does, in fact, exist, the parties need to sit

2   down and talk about this, try to locate this e-mail so that the

3   parties -- plaintiffs in particular -- can make the appropriate

4   request to the court.  So we're going to need to adjourn

5   today's conference.  Are the parties available on July the

6   27th?

7            MR. WITTELS:  What day of the week is that?

8            THE COURT:  A Friday.  It is two weeks from this

9   Friday.  We can go at 12:15.

10           MR. WITTELS:  Anyway, your Honor, respectfully, do we

11  have to do it next Friday?  I am out of the country for two

12  weeks after that.  That is the problem.

13           MR. EVANS:  I am out of the country as well starting

14  July 20th to July 29th, as is my colleague, Mr. Stoner, who

15  would otherwise be able to attend in my absence.

16           THE COURT:  The court may available the 20th.  The

17  bigger question is I am not sure -- are the parties going to be

18  able to resolve this or get the e-mail by then -- I am not sure

19  that is enough time for the parties to meet and confer.

20           MR. WITTELS:  Plaintiffs are not opposed to a separate

21  corrective notice.  In other words, we would like notice to go

22  out because we would like people to join.  Their clock is

23  running.  We would like notice to go out.  We would not like to

24  delay this in that sense.  If corrected notice is deemed

25  appropriate, we will ask for it, but we would like your Honor

1     to rule on the notices today if you so determine.

2             THE COURT:  It seems like, based on what plaintiffs

3     have just indicated, I was prepared to do it, but based on

4     plaintiffs' indication, I don't think that would be

5     particularly appropriate.

6             I am sure the defendants would object to a second

7     notice, and the court certainly is not in a position at this

8     point to make a determination as to whether or not a second

9     notice or a corrective notice is appropriate.  It very well may

10    be possible that any issues that the plaintiffs have could be

11    corrected in this notice, and I would like to do that if at all

12    possible.

13            If it is necessary to do a second notice, then fine.

14    Let me find out.  The court is available on the 20th.  I don't

15    know, are the parties going to be able to deal with this issue,

16    get this e-mail and figure out what their positions are going

17    to be by then?

18            MR. WITTELS:  If we get it today, tomorrow, yes, we

19    can come sooner.  I can come Monday.

20            THE COURT:  The defendants still need time to look for

21    it and find it.  I don't know.

22            MS. CHAVEY:  Based on the description given, an e-mail

23    from Mr. Seconis, I don't think it would take us a long time to

24    figure out if such an e-mail had been sent out.  I am available

25    on the 20th, but we would also like to get at the same time, if

 1    we are doing this, getting plaintiffs' counsel or plaintiffs'

 2    communications with putative class members because we don't

 3    know what the communication is.

 4           We see the press release and we saw the press release

 5    on July 2nd, saw the follow-up press release responding to our

 6    press release.  There is a press tension that plaintiffs'

 7    counsel is seeking.  What we don't know is whether plaintiffs'

 8    counsel has been communicating with, plaintiffs' have been

 9    communicating with putative opt-in plaintiffs as well.

10           THE COURT:  Do you have any specific belief there has

11    been some sort of communication or some sort of negative

12    communication from plaintiffs' counsel to the plaintiffs?

13           MS. CHAVEY:  We have the press releases.  We do know

14    plaintiffs' counsel have been contacting current and former

15    employees, not since your ruling on June 29th, but we know they

16    have been contacting people and engaging interest in the

17    lawsuit.

18           MS. NURHESSEIN:  That is incorrect, your Honor.  I am

19    not aware of us contacting people to engage, Judge, the

20    lawsuit.

21           THE COURT:  The question is, I guess, is it

22    plaintiffs' position that plaintiff has not been communicating

23    by e-mail with potential class action members?

24           MR. WITTELS:  If we are contacted or if a referral is

25    made for us to talk to someone who has information about a

C7BJMOOM                          Motions

1    lawsuit involving this matter, it is our obligation as class

2    counsel to talk to those people if they contact us.  Defendants

3    seem to think it is nefarious to talk to potential class

4    members about a lawsuit involving discrimination.  It is not.

5    In fact, it is our obligation to do that.  I would argue and

6    submit that every day that goes on in a class action, so there

7    is nothing wrong with it.

8          If there is a press battle, that again is not

9    something we're engaging in here.  If we issue information

10   publicly, just as the defendants have a right to do it, that is

11   what the country is built on, free press.  There is nothing

12   wrong with that.  If someone is inaccurate and making

13   misleading statements, that is a different story.

14         If the defendant, as we have argued to you, may have,

15   we don't have the e-mail, but it is again what we have heard,

16   made suggestions there is nothing to this lawsuit and suggested

17   you shouldn't join it, that is improper.  That is different

18   from what we have been doing.

19         THE COURT:  Okay, let's do this.  Are the parties

20   available on the 20th, at 10:00 o'clock?

21         MS. CHAVEY:  Yes.

22         MR. WITTELS:  Yes, your Honor.

23         THE COURT:  Okay.

24         MR. EVANS:  We will make ourselves available, your

25   Honor.

C7BJMOOM                          Motions

1          THE COURT:  Again the plaintiffs have indicated they

2     know there is a specific e-mail they're looking for.  They are

3     not looking for all e-mail communications related to this

4     notice.  Defendants should look for that e-mail and provide

5     that e-mail if it exists to plaintiffs.  Let's have that done

6     by Friday, the 13th.

7          If, in fact, the e-mail exists and the plaintiffs have

8     the e-mail, again we'll schedule this for the 20th, at 10:00

9     o'clock, but let's have plaintiffs' counsel, plaintiffs'

10    counsel is going to be asking for some sort of corrective

11    notice or some sort of secondary notice, let's have plaintiff

12    put that in writing, whatever it is you're suggesting, and

13    submit that to the Court and submit that to defense counsel by

14    the 16th.  We'll allow defense counsel until the 18th to

15    respond to that and then see where we are on the 20th.

16         MR. WITTELS:  One point.  So that we can have, make

17    some headway in advance of next week, would your Honor be

18    inclined at all to go through the notice because there are

19    obviously sharp distinctions here in both sides' positions on

20    language.

21         THE COURT:  No, not with this issue with this e-mail

22    out here.  Again I was prepared to do this until again it would

23    be helpful if plaintiffs, if you have an issue like this, raise

24    that ahead of time.

25         MR. WITTELS:  We are sorry.

1          THE COURT:  And the defendants would be prepared to

2     respond and the court would be prepared to do deal with it.  I

3     think that would be appropriate.  I don't want to go through

4     this notice and have a situation later in which you find this

5     e-mail and there is something that the court feels it may be

6     appropriate to include in the notice as opposed to sending out

7     a second communication from plaintiffs' counsel with the court

8     authorization.

9          It seems it is best to do this all at one time.  It

10    also would be easiest to, if there is going to be a decision,

11    to see about some sort of corrective notice, it would need to

12    be in the context of having conversations about the actual

13    notice in the first place, to see how corrected that notice was

14    being made.  Let's have the defendants be able to respond by

15    the 18th?

16         MS. CHAVEY:  Yes, your Honor, we will.  Would you be

17    imposing page limits or not on these submissions?

18         THE COURT:  Yes -- the parties can do this by -- yes,

19    I can't imagine why the parties would need more than five pages

20    on this.

21         MR. WITTELS:  That is sufficient.

22         THE COURT:  A five-page limit.

23         MS. CHAVEY:  If there were an e-mail that would fit

24    the description, given it will be privileged, we'll raise that

25    with the court.  There have certainly been communications

1    between client and counsel over the course of this lawsuit, and

2    I don't believe that is what Mr. Wittels is referring to, but I

3    wanted to raise that just to be sure.

4            THE COURT:  Let's do this:  Defendants will respond by

5    the 18th and then let's have the parties file a joint status

6    report on the 19th just so that we avoid any other potential

7    delays and find out if there is an issue of privilege or some

8    other issue the parties need more time, so we don't have the

9    parties and the court come here on the 20th and accomplish

10   nothing.

11           MR. WITTELS:  In terms of communications we are

12   concerned with, if there are communications from the lawyers to

13   class members, yes, we would want to see that.  If there is a

14   privilege issue, we want to know that.

15           But if this is instead what we believe, which is from

16   Mr. Seconis or another high executive or company-sponsored

17   person, that is what we believe it is, I apologize for not

18   bringing it up your Honor earlier.

19           THE COURT:  Is there anything else from plaintiffs

20   today?

21           MR. WITTELS:  No, your Honor.

22           THE COURT:  Is there anything else from defendants?

23           MS. CHAVEY:  I do want to say two additional things.

24           We are concerned about the false and misleading

25   statements that plaintiffs counsel have made through the press

1    discussing the certification of a class against Publicis

2    Groupe, which is not the case.  This was a conditional

3    certification issue.  Publicis Groupe, in Footnote 7 of your

4    order, is not part of that.  There have been words used to

5    describe the court's ruling which are wrong, they're

6    inaccurate, and particularly since there is a Rule 23 class

7    alleged here, it is very confusing, and our concern is that the

8    confusion, PR people read PR trade press, and our concern is

9    that putative opt-in plaintiffs may be confused about what is

10   going on.

11           This has been the subject of many prior press releases

12   by plaintiffs' counsel.  There has been press generated about

13   it, and we are concerned about misleading and characterizing by

14   plaintiffs' counsel the nature of the court's decision, which

15   was the initial certification of one claim of the vice

16   president and senior vice president, not including managing

17   directors, the language in an e-mail that Publicis and MSL

18   Groupe are now part of a certified class.

19           THE COURT:  What would you be asking me to do about

20   that?

21           MS. CHAVEY:  We would like to know what communications

22   plaintiffs' counsel have had with potential opt-in plaintiffs,

23   and we would like the court to require the plaintiffs not to

24   communicate in ways, in any way with putative opt-in plaintiffs

25   at this point about the lawsuit because the statements that

1    have been made in the press that obviously are directed to

2    these individuals have been false and misleading.

3              THE COURT:  Does that have any bearing on the notice?

4    Again what is it you ask me to do?

5              MS. CHAVEY:  We ask the court to require plaintiffs'

6    counsel not to communicate with potential opt-in plaintiffs in

7    the Equal Pay Act claim in any way about this lawsuit because

8    there has already been an indication that has been confusing

9    and misleading about the nature of the court's rulings.

10             THE COURT:  In any way?

11             MS. CHAVEY:  Yes.  The purpose of the notice that the

12   court has permitted is to offer a communication avenue with

13   this group of people.  Any side communications by plaintiffs'

14   counsel directly to these individuals that are misleading,

15   confusing are not appropriate.

16             THE COURT:  Okay.

17             MS. CHAVEY:  It obviates the need for the notice of

18   plaintiffs' counsel -- they do have the vast majority of the

19   names and all personal information of the people in this group.

20   They certainly have the access to these individuals, unlike in

21   many FSLA cases where the conditional certification comes so

22   early in the case, that there isn't that kind of access yet.

23             THE COURT:  Plaintiffs' position on that?

24             MR. WITTELS:  We have never heard an argument from a

25   defendant in a courtroom that the plaintiffs may not

C7BJMOOM                          Motions

1   communicate with potential class members who have a right to

2   join and seek counsel.  The suggestion that we made misleading

3   statements is completely inaccurate.  If anyone has made

4   misleading statements, it is statements in defendants' press

5   release where they say the EEOC dismissed the claims in 2010.

6   They weren't dismissed.  The EEOC said they needed more

7   information and gave us the right to sue.

8           We are not here to debate press releases; we are here

9   to proceed with the lawsuit, get notice out to the claim class

10   and invite anyone who wants to join.  That is the purpose of

11   the notice.  We are not trying to chill people, and they're

12   trying to clamp down on our right to communicate with class

13   members.

14           THE COURT:  From defendants' perspective, let me make

15   sure I am understanding this action that you want me to take

16   again has no bearing on this notice, correct?

17           MS. CHAVEY:  It is related to the notice because the

18   notice should be the means of communication about the group's

19   opportunity.

20           THE COURT:  The content of the notice, this doesn't

21   have any bearing on the content of the actual notice, correct?

22           MS. CHAVEY:  That's right.  What we are really talking

23   about is communications outside of the notice by plaintiffs'

24   counsel that are false and misleading and confusing and serve

25   to generate misinformation about what the nature of the court's

1    rulings has been.

2              THE COURT:  We can deal with that at a later time.  Go

3    ahead and try to get this issue with the notice resolved.  If

4    the parties wish to submit the press releases to the court, go

5    ahead and submit those as well.  Submit those.  They're not

6    technically related to the notice, but go ahead and submit

7    those as exhibits to your five-page-limited motions regarding

8    this e-mail issue, okay.

9              MS. CHAVEY:  Your Honor, as we are looking for the

10   e-mail that Mr. Wittels has described, may we also ask

11   plaintiffs to provide to us their communications with potential

12   opt-in plaintiffs?

13             THE COURT:  No, not in a general sense.

14             If there is something specific that you're looking

15   for, that is fine.  Plaintiffs have made a showing, at least

16   come forward and indicated they believe there is a particular

17   e-mail that they feel would be misleading and unfair in its

18   statements.  If they have any specific e-mails or

19   communications that you're concerned about, certainly you can

20   raise that with the court.  As a general matter, no.

21             MS. CHAVEY:  Thank you.  We will.

22             THE COURT:  Is there anything else from plaintiffs?

23             MR. WITTELS:  No, your Honor.

24             THE COURT:  Is there anything else from defendants?

25             MS. CHAVEY:  No, your Honor.

C7BJMOOM                          Motions

1           THE COURT:  Thank you very much.

2           Make sure the parties give me a status report on the

3    19th so I know all the issues.

4           (Court adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25