**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MONIQUE DA SILVA MOORE, MARYELLEN O'DONOHUE, LAURIE MAYERS, HEATHER PIERCE, and KATHERINE WILKINSON** on behalf of themselves and all others similarly situated, and **ZANETA HUBBARD**, on her own behalf. | **Civ No. 11-CV-1279 (ALC) (AJP)** |
| **PLAINTIFFS,** | |
| **v.** | **ORAL ARGUMENT REQUESTED** |
| **PUBLICIS GROUPE SA and MSLGROUP,** | |
| **DEFENDANTS** | |

**PLAINTIFFS' RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE PECK'S DECEMBER 14, 2012 RULINGS (1) REVOKING CLASS COUNSEL'S *PRO HAC VICE* ADMISSION AND  (2) PRECLUDING PRE-CLASS-CERTIFICATION DISCOVERY <u>REGARDING THE APPLICATION OF THE CHALLENGED POLICIES TO THE CLASS</u>**

# Table of Contents

OBJECTION #1: PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE PECK'S DECEMBER 14, 2012 RULING REVOKING CLASS COUNSEL'S PRO HAC VICE ADMISSION .......................1

I.     INTRODUCTION..................................................................................................................1

II.    FACTUAL BACKGROUND................................................................................................2

A.     DECEMBER 14, 2012 CONFERENCE ............................................................................2

B.     PRIOR HISTORY WITH JUDGE PECK.........................................................................4

III.   LEGAL STANDARD ...........................................................................................................5

A.     LEGAL STANDARD FOR RULE 72(a) OBJECTIONS..................................................5

B.     LEGAL STANDARD for REVOCATION of PRO HAC VICE ADMISSION...........................5

IV.    THE COURT'S REVOCATION OF JANETTE WIPPER'S PRO HAC VICE WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW.............................................................................9

A.     MAGISTRATE JUDGE PECK HAD NO FACTUAL BASIS TO REVOKE MS. WIPPER'S PRO HAC VICE ADMISSION ..............................................................................................................9

B.     MAGISTRATE JUDGE PECK HAD NO LEGAL BASIS TO REVOKE MS. WIPPER'S PRO HAC ADMISSION..............................................................................................................................11

        1.     MAGISTRATE JUDGE PECK OVERSTEPPED HIS AUTHORITY..................................11

        2.     PLAINTIFFS' COUNSEL OF CHOICE SHOULD NOT BE UPSET ABSENT EXTRAORDINARY CIRCUMSTANCES ..........................................................................................12

        3.     ONCE PRO HAC VICE STATUS IS GRANTED, IT CAN ONLY BE REVOKED IN RARE AND EXCEPTIONAL CIRCUMSTANCES WHERE THE ATTORNEY (1) HAS BEEN PROVIDED WITH ADEQUATE PROCEDURAL PROTECTIONS, AND (2) HAS COMMITTED SERIOUS VIOLATIONS WHICH COULD AFFECT THE INTEGRITY OF FUTURE PROCEEDINGS ..........15

        4.     THE SANCTION JUDGE PECK IMPOSED WOULD HAVE POTENTIALLY SERIOUS PROFESSIONAL CONSEQUENCES IF LEFT UNDISTURBED ......................................................17

V.     CONCLUSION.....................................................................................................................18

OBJECTION #2: PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE PECK'S DECEMBER 14, 2012 RULING PRECLUDING PRE-CLASS-CERTIFICATION DISCOVERY OF THE APPLICATION OF THE CHALLENGED POLICIES TO MEMBERS OF THE CLASS .........................................................19

I.     INTRODUCTION...............................................................................................................19

II.    FACTUAL BACKGROUND .............................................................................................20

III.   LEGAL STANDARD .........................................................................................................25

IV.    ARGUMENT .......................................................................................................................26

A.   THE PARTIES' PROPOSAL TO CONDUCT DISCOVERY ON CLASS CERTIFICATION AND CLASS MERITS ISSUES WAS ENTIRELY APPROPRIATE AND CONSISTENT WITH U.S. SUPREME COURT PRECEDENT...........................................................................................26

B.   THE REFUSAL TO ALLOW DISCOVERY OF THE APPLICATION AND IMPLEMENTATION OF DEFENDANTS' POLICIES AS TO THE PUTATIVE CLASS IS CONTRARY TO RULE 23, *DUKES*, AND OTHER BINDING PRECEDENT................................29

C.   THE RULINGS LIMITING PRE-CERTIFICATION DISCOVERY WILL DENY THIS COURT THE RECORD NECESSARY TO CONDUCT A "RIGOROUS ANALYSIS" AND MAKE FINDINGS REGARDING THE RULE 23 FACTORS IN DETERMINING CLASS CERTIFICATION................................................................................................................................34

V.     CONCLUSION ............................................................................................................................36

Plaintiffs file these Objections in response to two rulings made by Magistrate Judge Peck at the December 14, 2012 conference: (1) his revocation of class counsel Janette Wipper's *pro hac vice* admission, without any basis, explanation or due process; and (2) his refusal to allow pre-class-certification discovery regarding the application of the challenged policies to members of the class. Both rulings are clearly erroneous and contrary to law. For the Court's convenience, Plaintiffs have consolidated their Objections into one filing. Plaintiffs  request oral argument in connection with the second issue (class discovery).

## OBJECTION #1: PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE PECK'S DECEMBER 14, 2012 RULING REVOKING CLASS COUNSEL'S *PRO HAC VICE* ADMISSION

### I.   INTRODUCTION

On April 21, 2011, Judge Richard J. Sullivan signed an Order granting Janette Wipper admission to practice *pro hac vice* as Counsel for Plaintiffs and others similarly situated in *da Silva Moore, et al. v Publicis Group SA, et al.* (the "*da Silva Moore* case") in the United States District Court for the Southern District of New York.  *See* Order for Admission of Janette Wipper, Esq. *Pro Hac Vice* on Written Motion (Doc. 12).

On November 28, 2011, Judge Sullivan referred the *da Silva Moore* case to Magistrate Judge Peck for "general pretrial [matters, including] scheduling, discovery, non-dispositive motions and settlement."  *See* Referral Order (Doc. 48).

At a discovery conference on December 14, 2012, Magistrate Judge Peck *sua sponte* revoked the *pro hac vice* admission of Ms. Wipper, a key member of Plaintiffs' legal team.  The Magistrate Judge made no finding, nor did he suggest that Ms. Wipper had engaged in any misconduct or wrongdoing that would justify this action.  Ms. Wipper was not present in the courtroom and she was not offered any notice or opportunity to object to Magistrate Judge Peck's decision.

On December 21, 2012, Magistrate Judge Peck issued a written Order confirming his prior decision to revoke Ms. Wipper's *pro hac vice* admission. Again, there was no suggestion that Ms. Wipper had engaged in any misconduct. The Magistrate Judge's Order merely states, in relevant part that "Henderson & Rubenstein will be co-lead plaintiffs [sic] for trial. Therefore, Ms. Wipper's *pro hac* permission [sic] is withdrawn." *See* Dec. 21, 2012 Minute Entry for proceedings held before Magistrate Judge Andrew J. Peck: Status Conference held on 12/14/2012.

Magistrate Judge Peck's decision to revoke Ms. Wipper's *pro hac vice* admission was without any basis in fact or law. Moreover, the Magistrate Judge's action exceeded his authority and effectively overturned the decision of an Article III judge. The Magistrate Judge also failed to provide Ms. Wipper with the notice and due process protections required by law. In so doing, he harmed Plaintiffs and the Class by denying them their right to chosen counsel and potentially harmed Ms. Wipper's reputation and professional career.

Plaintiffs respectfully request that this Court overturn Magistrate Judge Peck's ruling and reinstate Ms. Wipper as counsel for the Plaintiffs.

**II.    FACTUAL BACKGROUND**

    A.   <u>DECEMBER 14, 2012 CONFERENCE</u>

During a conference before Magistrate Judge Peck on December 14, 2012, the parties were engaged in a discovery dispute. Tom Henderson, a Senior Litigation Counsel at Sanford Heisler, was present and took the lead in representing Plaintiffs during this dispute. Another senior member of Plaintiffs' legal team, Janette Wipper, was in San Francisco, California, and not involved in the proceedings. The following exchange occurred between Judge Peck and Mr. Henderson:

THE COURT:  Everything in Exhibit A to your letter,

  22  plaintiff's proposed discovery plan targeted for class
  23  certification, put aside the cover letter, promotion, updated
  24  policies, recruitment, hiring policies, pregnancy, updated

25   maternity leave, etc., policies, everything seems policy; and

p 14

1   then the interpretation issues you said, well, we'll figure
2   that out after the 30(b)(6) depositions.  Now when I say,
3   great, let's put teeth on that, I get a letter that says you
4   want everything and a pony and a zoo now.
5        So you are wasting my time.  I'm not happy.  And the
6   answer is going to be if you want merits discovery, you can
7   have merits discovery limited to the issue of class
8   certification, not every individual who was ever promoted or
9   anything like that.  And we'll go back to the predictive coding
10  world, and there will be no additional discovery at the end of
11  it, period.
12       Is that what you want?
13       MR. HENDERSON:  Your Honor, may I respond?
14       THE COURT:  Yes.
15       MR. HENDERSON:  I think there is a fundamental issue
16  that hasn't been -- well, the difficulty, the fundamental
17  difficulty is what one says is appropriate merits class
18  discovery.
19       THE COURT:  I guess you changed your mind on that
20  between the 7th and the 14th.
21       MR. HENDERSON:  Actually not, your Honor.  But let me
22  explain first, and then I can address whatever differences
23  there are.
24       THE COURT:  OK.  First, stop.  One thing.  The only
25  trial counsel will be the three of you who are here.  Is that

p 15

1   what you are telling me?  Because I'm tired of the changing
2   cast of characters, the changing position.  So if Ms. Wippel
3   wants to be trial counsel instead of pulling the strings from
4   California, if that's what's going on, then we can come here.
5   Otherwise, I don't want anything submitted from her.  I don't
6   want her to be here at trial if the case gets that far or I do
7   want her here.
8        But I have the feeling that between the departure of
9   your former named partner, I don't know what's going on, but
10  things keep changing, and enough is enough.
11       So are the two of you the only partner level -- and
12  I'm not even sure you are partners from your cards, I don't
13  really care -- are you two the ones who are going try the case
14  with Ms. Nurhussein, and that's it?  Yes or no.
15       MR. HENDERSON:  Yes.  We may be joined by some others,
16  but we are going to be lead counsel.
17       THE COURT:  OK.  And Ms. Wippel, who I would assume is

3

18   senior to you, is not going to be here at trial or she is?
19        MR. HENDERSON:  At this point we do not contemplate
20   that she would be.  It's Wipper.
21        THE COURT:  Wipper.  Sorry.  It's been a while.
22        **OK.  Her *pro hac vice* is therefore ended.  No more**
23   **papers from her, no more ghost writing.  You two are in charge.**
24   **Write it.**
25        OK.  Now that we have taken care of that, now you tell
p 16
1    me what you want.  Forget how we got here.  Tell me what you
2    want.

*See* Dec. 14, 2012 Tr. at 14-16 (attached as Exhibit F to the Declaration of Thomas J. Henderson

("Henderson Decl.")) (emphasis added).

Ms. Wipper's name was not even raised at the hearing until Judge Peck abruptly decided to

target her and sever her relationship with her clients and with this Court.

## B.  PRIOR HISTORY WITH JUDGE PECK

On February 8, 2012, Magistrate Judge Peck stripped Ms. Wipper, the most senior member

of Plaintiffs' litigation team, of her telephone privileges and threatened to withdraw her *pro hac vice*

admission after she politely requested a written ruling and refused to waive objections. (Doc. 97 at

22-23).  Judge Peck further chastised and attempted to intimidate Plaintiffs for disagreeing with his

rulings and characterized their Rule 72 objections as "whin[ing]" to Judge Carter that did not make

him "happy."  He implied that this "whining" could have consequences for Plaintiffs.  (*Id.* at 17, 20-

22)

Based upon these incidents and other conduct, Plaintiffs moved to recuse Judge Peck due to a

potential appearance of partiality and impropriety.  *See, e.g.*, 28 U.S.C. § 455(a); *U.S. v. Amico*, 486

F.3d 764, 775-76 (2d Cir. 2007); Docs. 169-171, 192-193, 251-252.  Ms. Wipper signed the recusal

papers to both Judge Peck and this Court as well as the pre-motion letter to Judge Peck.  In response,

Judge Peck warned Plaintiffs to "rethink their 'scorched earth' approach to this litigation."  (Doc.

158)  At an April 25, 2012 conference following the filing of the recusal motion, Judge Peck also: (1)

indicated Plaintiffs had already antagonized him and it was "a little late" to go back (Doc. 193-1 Ex. GG, Tr. at 14); (2) stated that he had a personal "interest" in recusal in that Plaintiffs had "attacked [his] integrity" (*id.* at 15); and (3) admitted that he was "yelling" at Plaintiffs' counsel (*id.* at 30), which he did multiple times.

## III.   LEGAL STANDARD

### A.   LEGAL STANDARD FOR RULE 72(a) OBJECTIONS

Rule 72(a) provides that "a district judge in the case must consider timely objections (to a nondispositive order) and modify or set aside any part of the order that is clearly erroneous or contrary law." Fed. R. Civ. P. 72(a).   Similarly, "the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provide[s] that a district court shall reverse a magistrate judge's ruling regarding a non-dispositive matter only where the order is 'clearly erroneous or contrary to law.'" *In re Consol. RNC Cases*, [No Number in Original], 2009 U.S. LEXIS 40293, at *16 (S.D.N.Y. Jan. 8, 2009) (quoting 28 U.S.C. § 636(b)(1)9A)). Pre-trial discovery matters such as the ones at issue here are "non-dispositive." *See id.*

"A ruling is 'clearly erroneous' if the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)).   "A ruling is 'contrary to law' 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Id.* (quoting *Thompson v. Keane*, No. 95 Civ. 2442 (SHS), 1996 U.S. Dist. LEXIS 6022, at *1 (S.D.N.Y. May 6, 1996) (internal quotation marks omitted)).

### B.   LEGAL STANDARD for REVOCATION of *PRO HAC VICE* ADMISSION

When evaluating whether the revocation of an attorney's *pro hac vice* admission is warranted, a court must apply the same standards and procedures that apply to the disqualification of an attorney who is a member of the district court bar. *See, e.g., Martens v. Thomann*, 273 F.3d 159, 175-76, 177 n11 (2d Cir. N.Y. 2001)("our holding today that *pro hac vice* counsel are entitled to the

5

same notice and opportunity to be heard as are admitted counsel prior to being sanctioned strongly suggests that the grounds for revoking *pro hac vice* status should not diverge significantly from the grounds for disqualifying admitted counsel."); *Belue v. Leventhal*, 640 F.3d 567, 576-77 (4th Cir. 2011)("*pro hac vice* attorneys should not be disqualified under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar."); *Cole v. U.S. Dist. Ct. for the Dist. of Idaho*, 366 F.3d 813, 821 (9th Cir. 2004)(same).   Any revocation of *pro hac vice* status is therefore subject to the relevant standards for attorney discipline. *See also McDraw, Inc. v. CIT Group Equipment Financing, Inc.*, 138 F.3d 33 (2d Cir. 1998) (upholding revocation of *pro hac vice* under local standard for attorney discipline, subject to notice and opportunity to be heard); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2010 U.S. Dist. LEXIS 62674, at *45 (W.D.N.Y. June 24, 2010) (no authority for revocation "in the absence of a formal disqualification motion based on alleged attorney misconduct").

It is well-established that disqualification motions are generally disfavored.   Courts within the Second Circuit apply "fairly strict scrutiny" in evaluating such motions. *See Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009); *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989); *accord Raadoll Prods. (UK) Ltd. v. Wal-Mart Stores, Inc.*, No. 99 CV 2101, 1999 WL 760209, at *1 (S.D.N.Y. Sept. 27, 1999) (holding that motions to disqualify are "subject to strict scrutiny"); *Stratavest Ltd. v. Rogers*, 903 F. Supp. 663, 666 (S.D.N.Y. 1995) (noting that "[m]otions to disqualify opposing counsel are viewed with disfavor in this Circuit"); *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (same); *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (observing that there is "a particularly trenchant reason for requiring a high standard of proof"); *Finkel v. Frattarelli Bros.*, Inc., 740 F. Supp. 2d 368, 372 (E.D.N.Y. Sept. 15, 2010) (courts thus require a "'high

standard of proof'" before granting a disqualification motion); *Sea Trade Mar. Corp. v. Coutsodontis*, 2011 U.S. Dist. LEXIS 80668, at *18-19 (S.D.N.Y. July 25, 2011) ("motions to disqualify opposing counsel are subject to particularly strict scrutiny"); *Hickman v. Burlington Bio-Medical Corp.*, 371 F. Supp. 2d 225, 229 (E.D.N.Y. 2005)("motions to disqualify are subject to a high burden of proof"); *Kubin v. Miller*, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992) ("the Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel . . .").

Courts apply strict scrutiny when deciding whether to revoke *pro hac vice* admission because revocation is a "drastic measure." *Ritchie v. Gano*, No. 07 Civ. 7269, 2008 U.S. Dist. LEXIS 67770 at *2 (S.D.N.Y. Sept. 8, 2008) (disqualification "is a 'drastic measure' that is viewed with disfavor in this Circuit"); *Sec. Ins. Co. of Hartford v. Mendon Leasing Corp.*, 2002 U.S. Dist. LEXIS 20188, at *4 (S.D.N.Y. Oct. 21, 2002) (same); *First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480, 489 (S.D.N.Y. 1997) (same); *A.V. by Versace, Inc. v. Gianni Versace*, S.P.A., 160 F. Supp. 2d 657, 663 (S.D.N.Y. 2001) (same); *Ross v. Blitzer*, 2009 U.S. Dist. LEXIS 119014, at *8 (S.D.N.Y. Dec. 21, 2009) (same); *Reilly v. Computer Assocs. Long-Term Disability Plan*, 423 F. Supp. 2d 5, 8 (E.D.N.Y. 2006) (same); *First Trust N.A. v. Moses & Singer*, 2000 U.S. Dist. LEXIS 10957, at *18 (S.D.N.Y. Aug. 4, 2000) (same).  Case law throughout the United States supports this view.[1]

---

[1] *Beneficiary Ass'n Trust v. Castellano*, 2009 U.S. Dist. LEXIS 56102, at *2 (E.D. Pa. July 1, 2009) (Disqualification is "an extreme sanction that should not be imposed lightly"); *Holcombe v. Quest Diagnostics, Inc.*, 675 F. Supp. 2d 515, 520 (E.D. Pa. 2009) (disqualification "is a drastic measure [that] courts should hesitate to impose except when absolutely necessary"); *Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999) (motions to disqualify are an "extreme sanction" that should not be imposed lightly); *Sakalowski v. Metron Servs.*, 2011 U.S. Dist. LEXIS 77785, at *9-10 (E.D. Mo. July 18, 2011) (the moving party must satisfy a high standard of proof to sustain a disqualification motion); *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) ("[b]ecause of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly  strict scrutiny") (citation omitted); *Crenshaw v. MONY Life Ins. Co.*, 318

Disqualification is appropriate only where there has been a clear violation of the Rules of Professional Conduct that leads to a significant risk of trial taint.  *See, e.g., Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) (Disqualification of an attorney is only appropriate where there has been a clear violation of the Rules of Professional Conduct that leads to a "significant risk of trial taint," such as when "the attorney is in a position to use privileged information acquired in the representation of a client against that client in another matter"); *Universal City Studios. Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000) (Disqualification is only appropriate if "there is a significant risk that [a conflict of interest] will affect the attorney's ability to represent his or her client with vigor"); *Mitchell v. Metro. Life Ins. Co., Inc.*, No. 01 CV 2112, 2002 U.S. Dist. LEXIS 4675 at *4 (E.D.N.Y. Mar. 21, 2002) (noting that "relief will be granted only when the facts concerning the lawyer's conduct pose[ ] a

---

F.Supp.2d 1015, 1020 (S.D. Cal. 2004) (disqualification "is a drastic measure that is disfavored"); *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 814 (N.D. Cal. 2004) ("Because disqualification is a drastic measure, it is generally disfavored and should only be imposed when absolutely necessary "); *Yumul v. Smart Balance, Inc.*, 2010 U.S. Dist. LEXIS 116960, at *9-12 (C.D. Cal. Oct. 8, 2010); *Jordan v. Philadelphia Hous. Auth.*, 337 F. Supp. 2d 666, 678 (E.D. Pa. 2004) ("Disqualification is a harsh measure, and therefore, motions to disqualify opposing counsel generally are not favored") (internal quotations omitted); *In re Jet 1 Ctr., Inc.*, 310 B.R. 649, 654 (Bankr. M.D. Fla. 2004); *First Impressions Design & Mgmt., Inc. v. All That Style Interiors, Inc.*, 122 F. Supp. 2d 1352, 1355 (S.D. Fla. 2000) (noting that "disqualification of a party's chosen counsel is an extraordinary remedy not generally in the public interest—a remedy that should be employed only sparingly"); *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982) (A disqualification order "is a harsh sanction, often working substantial hardship on the client" and should therefore "be resorted to sparingly"); *Fenik v. One Water Place*, 2007 U.S. Dist. LEXIS 10096, at *10-12 (N.D. Fla. Feb. 14, 2007); *Herrmann v. GutterGuard, Inc.*, 199 Fed. Appx. 745, 752 (11th Cir. 2006) (a disqualification order is a "harsh sanction" and should therefore "be resorted to sparingly"); *United States ex rel. Friddle v. Taylor, Bean & Whitaker Mortgage Corp.*, 2012 U.S. Dist. LEXIS 42473, at *23-24 (N.D. Ga. Mar. 27, 2012); *Reg'l Emp'rs' Assurance Leagues Voluntary Emps.' Beneficiary Ass'n Trust v. Castellano*, 2009 U.S. Dist. LEXIS 56102, at *2 (E.D. Pa. July 1, 2009) (Disqualification is "an extreme sanction that should not be imposed lightly"); *Cipressi v. Bristol Borough*, 2012 U.S. Dist. LEXIS 24705 (E.D. Pa. Feb. 27, 2012); *In re CellCyte Genetic Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 94761, at *14-15 (W.D. Wash. Nov. 20, 2008) ("Disqualification is a drastic measure"); *Todd v. Montoya*, 2011 U.S. Dist. LEXIS 14426, at *15-16 (D.N.M. Jan. 18, 2011) (disqualification is a "draconian remedy"); *Belue*, 640 F.3d 567 at 576-577 ("The party seeking to disqualify opposing counsel must make a clear showing that continued representation would be impermissible and that disqualification is 'necessary'"); *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994); *Commercial Credit Loans, Inc. v. Martin*, 590 F. Supp. 328, 335-36 (E.D. Pa. 1984).

significant risk of trial taint"); *Spinner v. City of New York*, 2002 U.S. Dist. LEXIS 26390, at *26-28 (E.D.N.Y. May 20, 2002).  Counsel should not be disqualified unless disqualification is necessary "to preserve the integrity of the proceedings."  *Board of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *Morin v. Trupin*, 728 F. Supp. 952 (S.D.N.Y. 1989).

## IV.   THE COURT'S REVOCATION OF JANETTE WIPPER'S *PRO HAC VICE* WAS CLEARLY ERRONEOUS AND CONTRARY TO LAW

### A.   MAGISTRATE JUDGE PECK HAD NO FACTUAL BASIS TO REVOKE MS. WIPPER'S *PRO HAC VICE* ADMISSION

There was no factual basis to revoke Ms. Wipper's *pro hac vice* admission in this case.  Ms. Wipper has committed no ethical violations or misconduct of any sort, let alone the type of misconduct which would warrant her disqualification from serving as Class Counsel in this matter or warrant any sanction whatsoever.  She has not violated any local rules or court orders and has at all times in this matter and in her career acted with the highest integrity.  Indeed, Magistrate Judge Peck did not accuse Ms. Wipper of any misconduct or wrong-doing before revoking her admission to practice in this case.

The record indicates that Judge Peck was displeased with the facts that:  (1) Plaintiffs have numerous attorneys working on this complex class action; (2) he believed Ms. Wipper was "ghostwriting" Plaintiffs' submissions to the Court; and (3) one of Plaintiffs' attorneys' mistaken statements that Ms. Wipper would not be serving as counsel at trial (*see* Henderson Decl. ¶¶ 6-7).  None of these reasons constitute improper conduct on the part of Plaintiffs' counsel, much less provide any basis for an attorney's disqualification.  As in *Coleman (Parent) Holdings, Inc*., 928 So. 2d 1246, 1249 (Fla. App. 2006), "[t]here was no suggestion let alone a finding of misconduct" by

Ms. Wipper.

First, it is true Plaintiffs have had multiple attorneys work on this matter. The same is true for Defendants. In addition, there are out-of-state defense counsel who have appeared in this case, including George Stohner, of Morgan Lewis & Bockius, and Peter Bulmer, of Jackson Lewis. Judge Peck has never inquired who will be lead trial counsel for any Defendant. How Plaintiffs' Counsel uses its attorneys in this complex class action given the various levels of experience of attorneys throughout the firm is certainly within the prerogative of the law firm to decide.

Second, within the parameters of the court rules and standards of professional conduct, counsel is generally permitted to try the case in accordance with its own prerogatives. Magistrate Judge Peck had no factual basis for his accusations that Ms. Wipper was "ghostwriting" the briefs on this case or "pulling the strings" from afar. Even if Judge Peck's suspicions had any validity, they do not justify any sanction and certainly not the harsh sanction of disqualification. A signatory of a court filing does not certify that he or she is its sole author, only that the paper has a reasonable basis in fact and law and is not being presented for an improper purpose. *See* Fed. R. Civ. P. 11(b).[2]

Third, and finally, Magistrate Judge Peck's improper revocation of Ms. Wipper's *pro hac vice* admission was apparently based on his colloquy with Mr. Henderson, one of the members of Plaintiffs' legal team, at the December 14 discovery conference:

> So are the two of you the only partner level -- and
> 12  I'm not even sure you are partners from your cards, I don't
> 13  really care -- are you two the ones who are going try the case
> 14  with Ms. Nurhussein, and that's it?  Yes or no.
> 15       MR. HENDERSON:  Yes.  We may be joined by some others,
> 16  but we are going to be lead counsel.
> 17       THE COURT:  OK.  And Ms. Wippel, who I would assume is
> 18  senior to you, is not going to be here at trial or she is?

---

[2] Here, there was no motion for sanctions under Rule 11. Nor is it suggested that Plaintiffs' submissions failed to comply with the Rule in any manner.

19          MR. HENDERSON:  At this point we do not contemplate
20   that she would be.  It's Wipper.
21          THE COURT:  Wipper.  Sorry.  It's been a while.
22          OK.  Her *pro hac vice* is therefore ended.  No more
23   papers from her, no more ghost writing.  You two are in charge.
24   Write it.

*See* Dec. 14, 2012 Tr. at 14-15 (attached as Ex. F to Henderson Decl.).

Even assuming that Ms. Wipper was not going to be a part of Plaintiffs' trial team – which is false (*see* Declaration of Janette Wipper ("Wipper Decl.") ¶ 19; Henderson Decl. ¶¶ 6-7) – it is not only trial counsel which is entitled to admission to a federal District Court and, accordingly, to *pro hac vice* status.  This Court's Local Rule 1.3 discusses Admission to the Bar and holds, in part, that "[a] member in good standing of the bar of any state or of any United States District Court may be permitted to argue or try a particular case in whole or in part as counsel or advocate. . . ."  Local Rule 1.3(c).

Thus, attorneys may appear in an action for various purposes without running afoul of court rules or ethical precepts.  If Plaintiffs want Ms. Wipper to represent them in pre-trial proceedings, there is no reason why a court should trample upon that wish and divest them of their counsel of choice.  Nor should a court sully Ms. Wipper's standing at the bar merely because she might not be participating in a trial.

    B.   <u>MAGISTRATE JUDGE PECK HAD NO LEGAL BASIS TO REVOKE MS. WIPPER'S *PRO HAC* ADMISSION</u>

        1.   <u>MAGISTRATE JUDGE PECK OVERSTEPPED HIS AUTHORITY</u>

Judge Peck's Order revoking Janette Wipper's *pro hac vice* admission in this case has no legal foundation.  Judge Sullivan admitted Janette Wipper *pro hac vice* on April 21, 2011.  *See* Order for Admission of Janette Wipper, Esq. *Pro Hac Vice* on Written Motion (Doc. 12).  Judge Sullivan subsequently assigned this matter to Magistrate Judge Peck on November 28, 2011 for

11

"general pretrial matters" only.  *See* Referral Order (Doc. 48).  Had the parties consented and had Judge Sullivan desired, Judge Sullivan could have assigned the matter to Magistrate Judge Peck "for all purposes" under 28 U.S.C. Section 636(c).  The parties did not so consent.  Magistrate Judge Peck's province was clearly and explicitly limited to matters "includ[ing] "scheduling, discovery, non-dispositive pretrial motions, and settlement."  *See* Referral Order (Doc. 48).

Magistrate Judge Peck thus acted without authority in revoking Ms. Wipper's *pro hac vice* admission.  In acting without authority, Judge Peck effectively overturned Judge Sullivan's Order admitting Ms. Wipper *pro hac vice*, which constitutes a striking inversion of judicial authority. For this reason alone, this Court should overturn Magistrate Judge Peck's revocation of Ms. Wipper's *pro hac vice* admission.

In addition, Magistrate Judge Peck acted contrary to Judge Carter's Individual Practices (Current as of July 2012):  Matters referred to assigned U.S. Magistrate Judges for the following: "Extension of time. . . ; stipulations amending pleadings; stipulations transferring venue or remanding to state court; pro hac vice motions; discovery disputes; ordering of subpoenas and confidentiality/protective orders; motions to quash subpoenas; unsealing orders; motions to be relieved as counsel; requests for adjournments or extensions of time in arbitration or mediation proceedings; and settlement matters."  Individual Practices of Andrew L. Carter, Jr. p. 6 (no. 4). Judge Carter's Practices nowhere envision that the Magistrate Judge to whom a case is referred will have the power to revoke *pro hac vice* admission.  The phrase "*pro hac vice* motions" clearly contemplates the granting of one's application to appear *pro hac vice*, not the *sua sponte* revocation of that admission once granted.  Thus, in yet another way, Magistrate Judge Peck has overstepped his explicit authority in this case.

2.  PLAINTIFFS' COUNSEL OF CHOICE SHOULD NOT BE UPSET ABSENT EXTRAORDINARY CIRCUMSTANCES

12

Disqualification of a litigant's attorney deprives that party of its counsel of choice. *See e.g.,*
*Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441 (Brennan, J., concurring) ("A fundamental
premise of the adversary system is that individuals have the right to retain the attorney of their choice
to represent their interests in judicial proceedings."); *id.* at 442 (Stevens J., dissenting) ("Everyone
must agree that the litigant's freedom to choose his own lawyer in a civil case is a fundamental
right."); *see also Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 180 (2d Cir. 2009) ("Parties have a
well-recognized and entirely reasonable interest in securing counsel of their choice"); *Bd. of Educ. of*
*the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) ("[motions to disqualify have
an] immediate adverse effect on the client by separating him from counsel of his choice"); *Sea Trade*
*Mar. Corp. v. Coutsodontis*, 2011 U.S. Dist. LEXIS 80668, at *19 (S.D.N.Y. July 25, 2011), *quoting*
*Hull v. Celanese Corp.*, 513 F.2d 568, 569 (2d Cir. 1975) (It is the duty of the Court "to preserve, to
the greatest extent possible, both the individual's right to be represented by counsel of his or her
choice and the public's interest in maintaining the highest standards of professional conduct and the
scrupulous administration of justice"); *Lieberman v. City of Rochester*, 681 F. Supp. 2d 418, 423
(W.D.N.Y. 2010)(the court may not interfere with or obstruct a party's knowing choice of counsel);
*Vincent v. Essent Healthcare of Conn.*, 465 F. Supp. 2d 142, 147 (D. Conn. 2006)(holding that it is
well established that courts should be deferential to clients' choice of counsel); *Armstrong v.*
*McAlpin*, 625 F.2d 433, 444 (2d Cir. 1980); *Daudier v. E&S Med. Staffing, Inc.*, 2012 U.S. Dist.
LEXIS 120870, at *3 (S.D.N.Y. Aug. 23, 2012); *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14,
18 (2d Cir. 1986); *Am. Int'l Group, Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 345 (S.D.N.Y.
2011); *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010); *Arista Records LLC v.*
*Lime Group LLC*, 2011 U.S. Dist. LEXIS 17434, at *18 (S.D.N.Y. Feb. 18, 2011); *General Motors*

13

*Corp. v. City of N.Y.*, 501 F.2d 639, 649 (2d Cir. 1974). A party's right to counsel of her choosing is well established in all jurisdictions.[3]

In this case, as is made abundantly clear in the attached declarations from six Named Plaintiffs in this matter, Plaintiffs have chosen Ms. Wipper to be their counsel and want her to continue representing them moving forward, including through trial. *See* Declarations of Monique Da Silva Moore, Maryellen O'Donohue, Laurie Mayers, Heather Pierce, Katherine Wilkinson and Zaneta Hubbard. The six Named Plaintiffs all declare that they have worked with Ms. Wipper since

---

[3] *See Mruz v. Caring, Inc.,* 166 F. Supp.2d 61, 70-71 (D.N.J. 2001) ("More importantly, the revocation of Mr. Green's pro hac vice admission deprived his clients of their chosen attorney well after the initiation of their case, indeed, in its third year."); *Reese v. Va. Int'l Terminals, Inc.*, 2012 U.S. Dist. LEXIS 109372, at *14-16 (E.D. Va. Aug. 2, 2012) ("It is, of course, important in our system of justice that the parties be free to retain counsel of their choice"); *Nesselrotte v. Allegheny Energy, Inc.*, 2008 U.S. Dist. LEXIS 56411, at *4 (W.D. Pa. Jul. 23, 2008)(holding that "a party's choice of counsel is entitled to substantial deference" and therefore "[m]otions to disqualify are generally disfavored"); *Reschke v. Baldwin Transfer Co.*, 2007 U.S. Dist. LEXIS 52427, at *5 (E.D. Ark. July 19, 2007) (denying a motion to disqualify counsel because "choice of counsel is a freedom that should not be lightly denied"); *Cipressi*, 2012 U.S. Dist. LEXIS 24705, at *7 ("motions to disqualify are generally disfavored given that they seek to deprive parties of their choice of counsel"); *Burt Hill, Inc. v. Hassan*, 2010 U.S. Dist. LEXIS 7492, at *20-21 (W.D. Pa. Jan. 29, 2010)( holding that a party's choice of counsel is entitled to substantial deference); *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992)("The drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel . . . ."); *SWS Fin. Fund A v. Salomon Bros., Inc.*, 790 F. Supp. 1392,1400 (N.D. Ill. 1992)("Disqualification [ ] is a blunt device. The sanction of disqualification foists substantial costs upon innocent third parties. The innocent client [ ] may suffer delay, inconvenience and expense and will be deprived of its choice of counsel"); *Macklem v. Sneddon*, 1996 U.S. Dist. LEXIS 18455, at *8-9 (N.D. Ill. Dec. 9, 1996)("motions to disqualify must be viewed with extreme caution because … [disqualification] depriv[es] one of the litigants of its choice of counsel"); *Commonwealth Land Title Ins. Co. v. St. Johns Bank & Trust Co.*, No. 4:08-CV-1433 CAS, 2009 U.S. Dist. LEXIS 87151 at *4 (E.D. Mo. Sept. 22, 2009) (Furthermore, a disqualification of counsel "serves to destroy a relationship by depriving a party of representation of their own choosing") (quoting another source); *Hamilton v. Merrill Lynch*, 645 F. Supp. 60, 61 (E.D. Pa. 1986) ("The court should not quickly deprive plaintiffs of their freedom to choose the advocate who will represent their claims, nor lightly dismiss the trust and confidence plaintiffs have placed in their chosen counsel…For these reasons, motions to disqualify opposing counsel generally are not favored"); *Graham Co. v. Griffing*, 2009 U.S. Dist. LEXIS 103222, at *5-6 (E.D. Pa. Nov. 3, 2009) (noting that "courts in this district have consistently held that plaintiff's choice of counsel is entitled to substantial deference"); *United States v. Brothers*, 856 F. Supp. 370, 375 (M.D. Tenn. 1992) ("Motions to disqualify opposing counsel are disfavored [as d]isqualification has a serious and immediate adverse effect by denying the client his choice of counsel"); *Herrmann*,199 Fed. Appx. at 752 ("Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist"); *Adkins v. Hosp. Auth. of Houston Cnty.*, No. 5:04-CV-80 (CAR), 2009 U.S. Dist. LEXIS 97361, at *6 (M.D. Ga. Oct. 20, 2009); *Fenik* 2007 U.S. Dist. LEXIS 10096, at *10-12.

they first contacted her about joining the lawsuit; that they chose Ms. Wipper specifically to be their counsel; they seek her advice regularly; they would like her to be trial counsel; and they feel that the Court's revocation of Ms. Wipper's admission as counsel in this matter abridges their right to have the counsel of their choice representing them. *Id*.

In addition, Ms. Wipper has worked on this matter for approximately three years, has been involved in every aspect of this case, and has maintained strong relations with the Plaintiffs. *See* Wipper Decl. ¶ 5. Ms. Wipper has "remained committed to representing" the clients in this matter and has "always intended to see their case to its conclusion." *Id.* ¶ 6. She has "planned to serve as trial counsel with a team of lawyers from [Sanford Heisler]." *Id.* ¶ 19.

Given the clients' desire to have Ms. Wipper as Class Counsel and Ms. Wipper's desire to be that Class Counsel, and given that no wrongdoing has occurred at all, Ms. Wipper should be reinstated as Counsel in this matter.

> 3. ONCE *PRO HAC VICE* STATUS IS GRANTED, IT CAN ONLY BE REVOKED IN RARE AND EXCEPTIONAL CIRCUMSTANCES WHERE THE ATTORNEY (1) HAS BEEN PROVIDED WITH ADEQUATE PROCEDURAL PROTECTIONS, AND (2) HAS COMMITTED SERIOUS VIOLATIONS WHICH COULD AFFECT THE INTEGRITY OF FUTURE PROCEEDINGS

In *Martens*, 273 F.3d 159 at 175, the Second Circuit held that revocation of *pro hac vice* status "is a form of sanction that cannot be imposed without notice and an opportunity to be heard." *See also, e.g., McDraw, Inc. v. CIT Group Equipment Financing, Inc.,* 138 F.3d 33 (2d Cir. 1998) (upholding revocation of pro hac vice under local standard for attorney discipline, subject to notice and opportunity to be heard in the form of an order to show cause); *Robbins*, 2010 U.S. Dist. LEXIS 62674, at *45 (no authority for revocation "in the absence of a formal disqualification motion based on alleged attorney misconduct"); *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92

(2d Cir. 1999)("due process requires that courts provide notice and an opportunity to be heard before imposing any kind of sanctions"); *Belue*, 640 F.3d 567 at 576-80; *Cole*, 366 F.3d 813 at 821-22; *U.S. v. Collins*, 920 F.2d 619, 627 (10th Cir. 1990); *Kirkland v. Nat'l Mortgage Network, Inc.,* 884 F.2d 1367, 1372 (11th Cir. 1989); *Johnson v. Trueblood*, 629 F.2d 302, 304 (3d Cir. 1980).   Courts require notice "of two things: the conduct of the attorney that is the subject of the inquiry, and the specific reason this conduct may justify revocation." *Johnson*, 629 F.2d at 304; *see also Belue*, 640 F.3d at 577 ("individualized" "notice of the specific grounds for revocation").   And, the opportunity to respond must be a "meaningful" one. *Id.*   In addition, the district court should "give written reasons for the revocation." *Johnson*, 629 F.2d at 304.

Ms. Wipper and the firm of Sanford Heisler were given neither notice nor an opportunity to be heard.   In the middle of a routine discovery conference, Judge Peck *sua sponte* stated, once he heard Ms. Wipper may not be trial counsel: "OK.   Her *pro hac vice* is therefore ended." *See* Dec. 14, 2012 Tr. at 15:22 (attached as Exhibit F to Henderson Decl.). Ms. Wipper was in San Francisco and therefore not present (physically or by phone) at this Conference.   She and the firm had been given no notice.   She and the firm did not have an opportunity to be heard on this issue.   And Ms. Wipper and the firm were given no recourse other than seeking Magistrate Judge Peck's reversal on this issue.

Further, the substantive grounds for *pro hac* revocation are narrow:

With rare exceptions, disqualification has been ordered in this Circuit only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violations of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage… But in other kinds of cases, we have shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct… Therefore, unless an attorney's conduct tends to taint the underlying trial by disturbing the balance of the presentations in one of these two ways… courts should be quite hesitant to disqualify an attorney.

*Martens*, 273 F.3d at 177 n.11 (citations omitted).  *See also, e.g., In re Davis*, 2012 Bankr. LEXIS 4028, at *8, *4 (Bankr. D.S.C. Aug. 30, 2012) (requiring "bad faith" or "egregious misconduct": "Revocation of an attorney's *pro hac* vice admission is a harsh sanction. As a result, it should be exercised sparingly and only in particularly egregious cases."); *Steinbuch v. Cutler*, 463 F. Supp.2d 4, 7-8 (D.D.C. 2006) ("extraordinarily high burden" of showing "truly egregious conduct likely to affect future proceedings") (citations omitted); *Vreeland v. Ethan Allen, Inc.*, 1993 U.S. Dist. LEXIS 21508, at *15-16 (S.D.N.Y. 1993).  Even where an attorney commits a violation of a disciplinary rule, disqualification may not be warranted.  *Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005); *M&T Mortg. Corp. v. White,* 2007 U.S. Dist. LEXIS 71589 (E.D.N.Y. 2007).

There is no conflict of interest here and no privileged information at stake.  No violations at all have occurred, let alone serious violations warranting revocation of *pro hac vice* admission. There is absolutely no justification whatsoever to revoke Ms. Wipper's *pro hac vice* admission.

4. <u>THE SANCTION JUDGE PECK IMPOSED WOULD HAVE POTENTIALLY SERIOUS PROFESSIONAL CONSEQUENCES IF LEFT UNDISTURBED</u>

Disqualification is a stern sanction that will follow the attorney in his or her career.  *See, e.g*., *Belue*, 640 F.3d at 577 (due process "ensures that the attorney's reputation and livelihood are not unnecessarily damaged"); *Kirkland*, 884 F.2d at 1370 (attorney's appeal of *pro hac* **revocation** not moot following dismissal of case because "the 'brand of disqualification'… could well hang over his name and career for years to come"); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1200 n. 14 (11th Cir. 1985) (effect upon counsel's career "will linger long after the closing of the case"); *Mruz*, 166 F.2d at 70 ("revocation of [*pro hac*] privilege, once bestowed, sends a strong message which works a lasting hardship on an attorney's reputation"); *Clare v. Coleman (Parent) Holdings,*

*Inc.*, 928 So.2d 1246, 1249 (Fla. App. 2006) (*pro hac* revocation causes attorney "irreparable harm by damaging his professional reputation and his ability to practice law in [this] and other jurisdictions"). For all the reasons stated herein, there is no justification whatsoever for Magistrate Judge Peck's revocation of Ms. Wipper's *pro hac vice* admission, and no justification whatsoever to impose the type of reputational and professional harm that comes with revocation.

## V.      CONCLUSION

Magistrate Judge Peck (1) effectively overturned Judge Sullivan; (2) acted outside the scope of authority as explicitly given to him by Judge Sullivan and Judge Carter; (3) made absolutely no finding of misconduct because there was no misconduct to find; (4) imposed the harshest of penalties on Ms. Wipper; and (5) imposed that penalty on Ms. Wipper without providing notice and an opportunity to be heard. In the process, Magistrate Judge Peck deprived Ms. Wipper's clients their counsel of choice and potentially harmed Ms. Wipper's reputation and professional career. Judge Peck's Order revoking Ms. Wipper's *pro hac vice* status is clearly erroneous and contrary to law, and therefore must be reversed by this Court.

**OBJECTION #2: PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE PECK'S DECEMBER 14, 2012 RULING PRECLUDING PRE-CLASS-CERTIFICATION DISCOVERY OF THE APPLICATION OF THE CHALLENGED POLICIES TO MEMBERS OF THE CLASS**

## I.      INTRODUCTION

During a December 14, 2012 conference, Magistrate Judge Peck ruled that the parties will be afforded only limited discovery prior to class certification proceedings in this action, and imposed an abbreviated schedule for that discovery.  Specifically, the Magistrate Judge rejected the parties' agreed-upon proposal for full discovery on issues related to Rule 23 class certification criteria and on the merits of the class claims.  Instead, the Magistrate Judge limited pre-class-certification discovery to policies and general interpretations of policies, explicitly excluding materials demonstrating how the challenged policies are applied to the putative class, including evidence of the discriminatory application of those policies.

The Magistrate Judge's ruling is contrary to law and an abuse of discretion because it: 1) denies the parties required discovery on the merits of the class claims, *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2551 (2011), and the ability to pursue their litigation strategies; 2) denies Plaintiffs discovery on the class claims "of a companywide discriminatory pay and promotion policy" at least sufficient to demonstrate the existence of a common question under Rule 23(a), *Dukes*, 131 S. Ct. at 2556-57; and, 3) denies this Court the record necessary to make the inquiries and findings required by Rule 23, including inquiries that overlap with the merits.  *In re Initial Public Offerings Securities Litigation* ("*In re IPO*"), 471 F.3d 24, 40-42 (2d Cir. 2006) ("the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met").

Without sufficient discovery on the merits of the class claims and an adequate record on which to base its class certification ruling, after this limited discovery and the parties' class certification briefing, this Court will have to remand the case for further discovery, resulting in substantial and unjustified delay, inefficiency, and waste of the resources of the Court and the parties. Instead, the Court should correct the scope of pre-class-certification discovery now so the parties can complete discovery necessary for class certification and advance the litigation efficiently and effectively.

## II.   FACTUAL BACKGROUND

On August 9, 2011, Judge Sullivan, the original District Judge assigned to this matter, entered a Scheduling Order that provided for full class and merits fact and expert discovery prior to class certification proceedings (Doc. No. 35). On November 28, 2011, Judge Sullivan referred discovery and pre-trial matters to Magistrate Judge Peck (Doc. No. 48). Although the Scheduling Order did not bifurcate discovery, Magistrate Judge Peck has since interposed restrictions on class discovery routinely provided to plaintiffs in employment discrimination class actions, ruling that Plaintiffs are not entitled to information about putative class members until *after* a class is certified.

Following this Court's conditional certification of Plaintiffs' Equal Pay Act claims as a collective action (Doc. No. 250), the Magistrate Judge asked the parties to consider any changes needed in the ESI protocol due to the addition of 26 new opt-in Plaintiffs. (Doc No. 322) At the next conference, on November 20, 2012, the Magistrate Judge recognized the impracticability of the use of predictive coding at that point and, thus, directed the parties to consider bifurcated discovery. *See* Nov. 20, 2012 Tr. at 3, 15 (Ex. A to Henderson Decl.).

After the parties exchanged information and met and conferred, they reported their positions in written submissions to the Court and at the December 14, 2012 conference.  *See* Exs. B-D and F to Henderson Decl. Plaintiffs and MSL both proposed that class certification and class merits discovery proceed now, to enable Plaintiffs to support a class certification motion and MSL to file a motion for summary judgment on the class claims. Specifically, MSL proposed that:

> [D]iscovery should be bifurcated between class discovery and individual discovery...the first phase of discovery should be focused on the existence and validity of the class issues (i.e., whether the requirements of Rule 23 are satisfied and the merits of the class theories) because the merits and class certification issues are intertwined. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2451, 2551 (2011)... Thus, Plaintiffs will have full discovery regarding their class theories before they file a motion for class certification, and because discovery necessary for that motion overlaps with the merits of the *class* claims, MSL may move for summary judgment regarding the merits of the class claims at the conclusion of the discovery relating to class issues (i.e., if Plaintiffs argue that the class should be certified because a particular promotion policy is allegedly discriminatory, plaintiffs would be permitted to rely on that policy in support of their claim that commonality exists, but MSL would be permitted to argue that the policy itself is not discriminatory on the merits). Only if class certification is granted (and MSL's motion for summary judgment denied) would additional discovery be conducted regarding the merits of any individual claims of absent putative class members of the Title VII class.

Dec. 7, 2012 Letter from V. Chavey to Judge Peck, at 3 (Ex. D to Henderson Decl.).

Referring to MSL's proposal, Plaintiffs' counsel indicated at the December 14 conference: "We agree with that, your Honor... there may be some theoretical way to separate class certification issues appropriate under Rule 23 from the merits of the class claim issues, but in practice, [Y]our Honor, it is just impossible to do.  That has been made all that much more difficult by reason of th[e] Supreme Court's decision in *Dukes*."  Dec. 14, 2012 Tr. at 7 (Ex. F to

Henderson Decl.).[4]   Plaintiffs also agreed with MSL's proposal that "[s]imultaneously with the class discovery… individual discovery will proceed regarding the Equal Pay Act claims of the individuals who have filed consent forms to join the action." Dec. 7, 2012 Letter from V. Chavey to J. Peck (Ex. D to Henderson Decl.); Dec. 14, 2012 Tr. at 25-26 (Ex. F to Henderson Decl.)

Nevertheless, the Magistrate Judge refused to allow full discovery on class certification issues and the merits of class claims.  He explicitly prohibited discovery of:  ESI and documents pertaining to members of the putative class, *id*. at 18:13-20, and pertaining to other than policy documents, *id*. at 30:20-31:5; ESI to be produced through "predictive coding," *id*. at 32:2-14; and ESI and documents applying the challenged policies to members of the putative class, including evidence of the discriminatory application of those policies.  The Magistrate Judge illustrated this latter limitation through an example:  "In other words, not, you know, Irene Adler applied for pregnancy leave, let's make sure to fire her; but our pregnancy leave policy is X, we interpret X to mean X, you know, or X plus 1.  That's what you get." *id*. at 29:6-10; *see also id*. at 30:20-31:12.  Further, the Magistrate Judge refused to extend the temporal period of discovery to the present, including employee HR and payroll data, despite the fact that some Plaintiffs are current employees, *id*. at 33:3-24; *see also id*. at 40:7-41:20, who allege a continuing violation and seek to certify a class for injunctive relief under Rule 23(b)(2)[5], and despite recognizing that such a

_____

[4] Although both parties sought class merits discovery for their own litigation needs –Plaintiffs for their class certification motion and  Defendants to support a motion for summary judgment on the class claims – denying Plaintiffs this discovery is far more prejudicial as it denies them the record needed for class certification, while Defendants' intended summary judgment motion can be filed after the completion of full merits discovery, or not at all, if Plaintiffs are unable to succeed in obtaining class certification.

[5] *See* Second Amended Complaint ("SAC") ¶¶ 253, 262, 272, 275-56, 293, 333, Prayer for Relief.

limitation might require a remand after class certification briefing for further discovery before this Court could decide Rule 23 issues.  Dec. 14, 2012 Tr. at 33:6-12.[6]

Instead, the Magistrate Judge limited pre-certification class discovery to documents and ESI pertaining to only the six named Plaintiffs, Dec. 14, 2012 Tr. at 16:3-20: 17:21-18:1 (Ex. F to Henderson Decl.); *see also id.* at 10:4-6; to written policies and documents reflecting policy "implementation [or] interpretation if it is from that so-called senior management group on a general basis" – "in essence… policy documents," *id.* at 29:3-6;[7] to "two, maybe three at most, 30(b)(6) depositions," *id.* at 39:10-11, *see also id.* at 29:11-13; and possibly to additional documents with the same limitations, identified after the 30(b)(6) depositions.  *Id.* at 30:11-19, *see also id.* at 29:13-15.

In making these rulings, the Magistrate Judge several times invited the parties to seek review by this Court:  "If you want to go to Judge Carter and get this clarified by him before we go down an expensive road, that is fine."  *Id.* at 24:11-13; *see also id.* at 18:4-5; 29:2-3.  Indeed, the Magistrate Judge not only indicated that the rulings might be modified if the parties "take objections to Judge Carter and this gets turned around in any way," but indicated that he would be inclined to stay them pending objections:  "If you want to tell me now [that objections will be filed], that's fine, because I would probably stay everyone's obligations while you deal with

---

[6] The Magistrate Judge also refused to permit the parties to proceed with agreed-upon merits discovery on the opt-in Plaintiffs' claims.  *Id.* at 38:2-39:18.  Only if the parties "can agree…on a way to do this that is not going to put us back into the doing predictive coding or key word searching or whatever twice," would it be considered, otherwise, "I will probably say we are not going to do that now."  *Id.* at 39:7-10.

[7] The Magistrate Judge later clarified this limitation as follows:  "The only interpretation or implementation documents you will get are ones that in essence are policy documents themselves."  12-14-12 Tr. 30:20-31:5.

Judge Carter on this just in terms of efficiency.  If you want to wait and ask for that on the 14th day or whenever you decide to file the objections, that's OK, too."  *Id*. at 42:18-43:3.

The Magistrate Judge interpreted the parties' proposal for discovery on both certification and class merits issues as eschewing bifurcation:  "Basically you are saying let's forget it and not do class discovery, let's do full-blown merits and class discovery."  *Id*. at 7.  Although Plaintiffs' counsel explained that bifurcating between class and individual discovery was consistent with the method for trying a pattern or practice case, first outlined in *Teamsters v. United States*, 431 U.S. 324, 358 (1977), *see Dukes*, 131 S. Ct. at 2552 & n. 7, Dec. 14, 2012 Tr. at 8-9, the Magistrate Judge still rejected the parties' proposal:  "That doesn't seem to work, which is why, even though you all convinced Judge Sullivan of that many years ago, I said at the beginning of my involvement in the case I didn't think that made sense."  Dec. 14, 2012 Tr. at 9:21-24. Even after Plaintiffs' counsel explained that pursuing class certification and class merits discovery first would allow Plaintiffs to move for class certification and Defendant MSL to move for summary judgment on the class claims, *see id*. at 11-12, the Magistrate Judge responded "…this is just not acceptable to the Court.  So we are going to do either policy oriented discovery or we are going to do all discovery with a significant either cost shift or cost cutoff, and you can't have discovery as if this is a class action, period."  *Id*. at 12-13.

Plaintiffs' counsel then pointed out the problems with limited "policy oriented" discovery:  "The problem, [Y]our Honor, is…what we need is discovery with regard to the manner in which the company treated the members of the class as a whole," *id*. at 16 (identifying this as the sort of *class* merits discovery that both parties had proposed).  Plaintiffs also described why class merits discovery was necessary both for the Court to properly to decide the Rule 23 issues and for Plaintiffs to be able to make the required Rule 23 showing:

I have described what we need for class merits discovery. The problem is, your Honor, that I think we share here is that there needs to be a record for the Rule 23 ruling so Judge Carter can make a decision. That record has to be adequate so that he can support that decision and has the record to make the findings that he needs to make under Rule 23.

We have the burden of proving Rule 23 criteria, including showing not just the policies and the outcomes, the statistics, but we have the burden to show, the Supreme Court says…how the policies connect or cause or create the disparities. To do that, as we indicated here, we need discovery with regard to how those policies were interpreted, how they were applied and how they were implemented with regard to the class.

*Id*. at 17. The Magistrate Judge expressed the view that depositions alone would allow Plaintiffs to gather that evidence. Depositions simply will not suffice, given that *no* documents applying policies to the class will be produced for use in depositions and only a few depositions are permitted. In response to a request to elaborate, the Magistrate Judge said: "At this point enough is enough. Take it to Judge Carter and let him decide." *Id*. at 18.

## III.    LEGAL STANDARD

Rule 72(a) provides that "a district judge in the case must consider timely objections (to a nondispositive order) and modify or set aside any part of the order that is clearly erroneous or contrary law." Fed. R. Civ. P. 72(a). Similarly, "the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provide[s] that a district court shall reverse a magistrate judge's ruling regarding a non-dispositive matter only where the order is 'clearly erroneous or contrary to law.'" *In re Consol. RNC Cases*, [No Number in Original], 2009 U.S. LEXIS 40293, at *16 (S.D.N.Y. Jan. 8, 2009) (quoting 28 U.S.C. § 636(b)(1)9A)).

"A ruling is 'clearly erroneous' if the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001). "A ruling is 'contrary to law' 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Id.* (quoting *Thompson v. Keane*, No. 95 Civ. 2442 (SHS), 1996 U.S. Dist. LEXIS 6022, at *1 (S.D.N.Y. May 6, 1996) (internal quotation marks omitted)).

## IV.   ARGUMENT

Magistrate Judge Peck's ruling is clearly erroneous and contrary to law because the limitations he imposed on class discovery (1) are inconsistent with Supreme Court precedent, (2) deny Plaintiffs the ability to demonstrate Rule 23 criteria, and (3) deny the Court an adequate record on which to make the required Rule 23 findings.

### A.   THE PARTIES' PROPOSAL TO CONDUCT DISCOVERY ON CLASS CERTIFICATION AND CLASS MERITS ISSUES WAS ENTIRELY APPROPRIATE AND CONSISTENT WITH U.S. SUPREME COURT PRECEDENT

The Magistrate Judge's refusal to grant Plaintiffs core discovery regarding the application of Defendants' pay, promotion/hiring and pregnancy/leave policies to the class was based on a fundamental misunderstanding: that no discovery into the merits of a class action is appropriate until after the class is certified. In fact, Rule 23, *Wal-Mart v. Dukes*, and other authority make clear that the merits of the class claims are inextricably intertwined with the Rule 23 requirements, especially commonality. Accordingly, pre-certification discovery on the merits of the class claims is not only permissible, but required.

In order for their class claims to be certified, Plaintiffs must demonstrate that all of the Rule 23 requirements – numerosity, typicality, commonality and adequacy of representation – have been met. Fed. R. Civ. P. 23(a). *See also Dukes*, 131 S. Ct. at 2551 (noting that Rule 23 "does not set forth a mere pleading standard; rather, the party seeking class certification "must affirmatively demonstrate his compliance with the Rule"). Certification is only appropriate if the "the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 131 S. Ct. at 2551-52 (citations omitted)(emphasis added). *See also In re IPO*, 471 F. 3d at 33. This analysis inevitably involves "some overlap with the merits." *Id*. A

necessary corollary is that the parties must be allowed to conduct discovery on the merits that will enable the court to do a "rigorous analysis" of whether there are common questions of law or fact among the class members' claims.[8]

Because Plaintiffs have the burden on class certification, and because the Court must base its certification decision on a robust record, courts have repeatedly held that it is reversible error to deny Plaintiffs pre-certification discovery relevant to the Rule 23 analysis. *See, e.g.,* Barbara T. Lindemann et al., *Employment Discrimination Law* (ABA Sec. of Labor and Employment Law 4th Ed. 2007), Vol. II at 2179-2180 ("unduly limited pre-class-certification discovery may constitute reversible error"); *Artis v. Deere & Co.,* 276 F.R.D. 348, 351 (N.D. Cal. 2011) (denial of discovery that is necessary to determine the existence of a class or set of subclasses constitutes an abuse of discretion); *Duke v. Univ. of Texas*, 729 F.2d 994, 997 (5th Cir. 1984) (failure to allow discovery of pay and promotion records from other departments, which were necessary for

---

[8] *See, e.g., Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 981 (9th Cir. 2011) (remanding to trial court: "It is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with the Rule 23(a) requirements."); *Chen-Oster v. Goldman, Sachs & Co*., 10 Civ. 6950 (LBS)(JCF), 2012 U.S. Dist. LEXIS 130123, at *17 (S.D.N.Y. Sept. 10, 2012) (noting that "cases subsequent to *Dukes* emphasize the importance of adjudicating a class motion only after class-related discovery is complete, discovery that often overlaps substantially with the merits"); *Burton v. District of Columbia*, 277 F.R.D. 224, 230 (D.D.C. 2011) ("the Supreme Court's ruling…confirms that pre-certification discovery should ordinarily be available where a plaintiff has alleged a potentially viable class claim because Wal-Mart emphasizes that the district court's class certification determination must rest on a 'rigorous analysis' to ensure '[a]ctual, not presumed, conformance' with Rule 23"); *Bell v. Lockheed Martin Corp*., 270 F.R.D. 186, 199 (D.N.J. 2010)("clearly the  court is required to consider merits issues if necessary to resolve class certification issues, which supports permitting pre-certification merits discovery"); 3 Newberg on Class Actions § 7:8 (4th ed.) ("class discovery is frequently not distinguishable from merits discovery"); *Barnhart v. Safeway Stores*, No. CIV S-92-0803 WBS JFM, 1992 U.S. Dist. LEXIS 22572, at *7 (E.D. Cal. Dec. 14, 1992) ("the 1985 Manual [for Complex Litigation] recognizes that consideration of the merits, to a certain extent, is usually inextricably bound up with the Rule 23 requirements of commonality and typicality"); *Gray v. First Winthrop Corp*., 133 F.R.D. 39, 40-41 (N.D. Cal. 1990)("Discovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation").

both Named Plaintiff's individual claim and class action certification, was an abuse of discretion).

Consistent with Rule 23 and *Dukes*, Plaintiffs sought discovery related to the Rule 23 requirements and the merits of the class allegations. In fact, the proposed approach to bifurcated discovery articulated at the December 14 conference (*see, e.g.,* Dec. 14, 2012 Tr. at 9)(Ex. F to Henderson Decl.) is virtually identical to that described in the Manual for Complex Litigation:

> Courts often bifurcate discovery between certification issues and those related to the merits of the allegations. Generally, discovery into certification issues pertains to the requirements of Rule 23 and tests whether the claims and defenses are susceptible to class-wide proof; discovery into the merits pertains to the strength or weaknesses of the claims or defenses and tests whether they are likely to succeed. *There is not always a bright line between the two. Courts have recognized that information about the nature of the claims on the merits and the proof that they require is important to deciding certification. Arbitrary insistence on the merits/class discovery distinction sometimes thwarts the informed judicial assessment that current class certification practice emphasizes.*

§ 21.14 Manual for Complex Litigation, Fourth (emphasis added).

Here, the parties agreed that the discovery related to class certification so overlapped with discovery related to the merits of the class claims that it made sense to combine that discovery and get it completed – in the words of Defendant MSL, "an approach that will streamline discovery and move this case forward."  Dec. 7, 2012 Letter from V. Chavey to Judge Peck, at 2 (Ex. D to Henderson Decl.).  Plaintiffs agreed that it may be difficult in certain cases to separate class certification and class merits issues.  Dec. 14, 2012 Tr. at 7 (Ex. F to Henderson Decl.). Further, the parties also agreed that combining class certification and class merits discovery would serve each of their interests in seeking decisions from this Court—Plaintiffs in presenting their class certification motion and Defendant MSL in filing a summary judgment motion on the class claims.  *Id.* at 11.  Having a complete record pertaining to class certification and the merits of the class claims enables the parties to accomplish those ends, eliminates the need for the Court

to expend its resources on closely supervising discovery, and significantly reduces the need for discovery following class certification. *See Gray v. First Winthrop Corp.* 133 F.R.D. 39, 40-41 (N.D. Cal. 1990)("An order restricting discovery to class issues would be impracticable because of the closely linked issues, and inefficient because it would be certain to require ongoing supervision of discovery.")   Where the parties agree to combine class certification and class merits discovery and it will advance the litigation and the manner in which the parties choose to litigate the case, there is no rational reason to foreclose it.[9]

B.  THE REFUSAL TO ALLOW DISCOVERY OF THE APPLICATION AND IMPLEMENTATION OF DEFENDANTS' POLICIES AS TO THE PUTATIVE CLASS IS CONTRARY TO RULE 23, *DUKES*, AND OTHER BINDING PRECEDENT

By limiting Plaintiffs' pre-certification discovery to "policy" documents and precluding discovery of documents and ESI related to the application of the challenged policies to members of the putative class, including current employees, the Magistrate Judge has denied Plaintiffs a major source of evidence typically used to support class certification in discrimination cases: evidence of discrimination in the administration of the policies.[10] This evidence, referred to as "anecdotal evidence" of discrimination, may take the form of e-mail, documents, declarations and deposition testimony, among other things, and "[brings] the cold numbers convincingly to life." *Teamsters*, 431 U.S. at 339.

---

[9] Indeed, this is similar to the approach Judge Sullivan took.

[10] With few exceptions, the discovery produced by MSL thus far has been policy-related documents, HR/payroll data and information relating to the Named Plaintiffs.

Here, discovery relating to the implementation of Defendants' policies is needed for the Rule 23 analysis – especially commonality[11] and typicality[12].  *See, e.g., Burton*, 277 at 222 (no finding of commonality because plaintiffs failed to allege *how* promotion exams operated in a biased manner). Plaintiffs do not allege that MSL's written policies are discriminatory on their face; they allege that the policies operate and are interpreted and applied in a discriminatory manner to the putative class of female employees. The Complaint is replete with allegations that, because of a lack of meaningful standards, implementation metrics and transparency, and the fact that decisions are made by a centralized team of mostly male decision-makers, the Company's

---

[11] In *Dukes*, the Court held "the crux of this case is commonality – the rule requiring a plaintiff to show that 'there are questions of law or fact common the class.'" *Dukes*, 131 S. Ct. 2550-51.  Plaintiffs need to show that the class claims "depend upon a common contention" that is "capable of classwide resolution." *Id.*, at 2551.  In other words, "without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question why was I disfavored." *Id.*, at 2552. Some means of providing this "glue" are by demonstrating "the assertion of discriminatory bias on the part of the same supervisor" or "a common mode of exercising discretion that pervades the entire company." *Id.*, at 2551, 2554-55. *See also id.* at 2553 ("significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes")(quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 159 n.15(1982).

[12] Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 268 (S.D.N.Y. 2007)(citation omitted). *See also Barnhart*, 1992 U.S. Dist. LEXIS 22572, at *8 (noting that "the key question in class certification is often the similarity or dissimilarity of the claims of the representative parties to those of the class members--an inquiry that may require some discovery on the 'merits' and development of the basic issues") (quoting Manual for Complex Litigation). The commonality and typicality analyses under Rule 23 tend to merge and to overlap somewhat with adequacy. *Falcon*, 457 U.S. at 157 n.13.  As Plaintiffs noted at the December 14 conference, discovery into the merits of the Plaintiffs' and class members' claims is necessary for the Court to assess typicality and adequacy. Dec. 14, 2012 Tr. at 21-22 (Ex. F to Henderson Decl.).

policies have been implemented in a discriminatory manner and with an adverse disparate impact on the class of female PR professionals. SAC ¶ 242.[13]

For example:

- *Discriminatory implementation of pay policies:* "Defendants' hiring and salary freeze and exceptions have been implemented in an intentionally discriminatory manner and have had an adverse disparate impact on female PR employees." SAC ¶ 242.

- *Discriminatory implementation of promotion policies*: "Employment opportunities are driven by personal familiarity, subjective decision-making, pre-selection, and interaction between male executives and subordinates, rather than by merit or equality of opportunity. As a result, male employees have advanced and continue to advance more rapidly to better and higher-paying jobs than do female employees." SAC ¶ 267. [14]

- *Discriminatory implementation of maternity leave/flex time policies:* "Without the appropriate standards, guidelines, or transparency necessary to ensure an equitable workplace… taking leave or flex time for pregnancy and caretaking reasons can constitute a negative factor in employees' evaluations, compensation, and promotion prospects..." SAC ¶ 243.

Given Plaintiffs' class allegations, it is critical that they receive—and that this Court consider—sufficient evidence for purposes of the Rule 23 inquiry of a "common mode of exercising discretion" in a discriminatory fashion. *Dukes*, 131 S. Ct. at 2554-55. *See also, e.g., Rossini v. Ogilvy & Mather*, 798 F.2d 590, 598 (2d Cir. 1986) (evidence showing that "many of the decisions affecting employees' opportunities for transfer, training and promotion were made

---

[13] Among other things, the recently terminated President of MSL, Jim Tsokanos, who personally made and approved employment decisions pertaining to the class, exhibited a bias against female employees and tendency to engage in gender stereotyping, which represents the decision-making process and overall culture at MSL. *See, e.g.,* SAC ¶ 56 ("[S]ystem-wide flaws allow President Tsokanos's direct participation in discrimination, and his active encouragement of others' discrimination, such that a sexist "old boys" culture is permitted to flourish at the Company."), ¶ 52 ("President Tsokanos hired like-minded men to fill his leadership ranks."). *See also generally* ¶¶ SAC 43-57.

[14] *See also* SAC ¶¶ 18, 27, 28, 37-39, 58, 135, 239-250, 263-267, 271 275, 283, 286, 295, 302, 309, 317, 374, 383.

by the same, central group of people… [could] indicate that O & M discriminated 'in the same general fashion' against [Plaintiff and members of the class]"); *Hnot v. Willis Group Holdings, Ltd.*, 228 F.R.D. 476, 485 (S.D.N.Y. 2005) (granting class certification where there was evidence that employer discriminated "in the same general fashion against employees and other class members through the agency of the same key actors"); *Ellis v. Costco Wholesale Corp.*, No. C-04-3341 EMC, 2012 U.S. Dist. LEXIS 137418, at *48 (N.D. Cal. Sept. 25, 2012) (finding commonality because Plaintiffs "identif[ied] specific employment practices Costco implements companywide under the influence and control of top management," which showed a "common mode of guided discretion directed from the top levels of the company").[15]

   Discovery of materials showing how the challenged policies were applied to the class is critical to connect the dots between the policies at issue in this case and the disparities Plaintiffs allege. *Dukes*, 131 S. Ct. at 2553.   Recognizing the importance of anecdotal evidence and the need to conduct a rigorous analysis at the class certification stage, courts have firmly and consistently rejected a policy-only approach to pre-certification discovery.[16] In a recent employment discrimination case from this District, the Court explained why discovery regarding *implementation of* policies is critical before certification, especially in a post-*Dukes* era:

---

[15] *See also Cronas v. Willis Group Holdings*, Ltd., 2011 U.S. Dist. LEXIS 122736, at *8 (S.D.N.Y. Oct. 18, 2011)(Plaintiffs met commonality requirement because "the delegation policy [the class] challenge[s] has subjected them all to discrimination at the hands of the same regional officers" and evidence was "sufficient to demonstrate common questions of fact regarding the discriminatory implementation of [Willis's] company-wide policies regarding promotion and [compensation]").

[16] By permitting discovery only on policies, the Magistrate Judge appears to be confusing the relatively less demanding standard for conditional certification of an FLSA/EPA collective action under Section 216 with the more rigorous Rule 23 standard for certification of a Title VII class action. For the former, Plaintiffs merely have to make a "modest" showing that they are "similarly situated" to the class members, a lenient standard that is typically satisfied based on the pleadings and a handful of declarations, *see, e.g., Jacob v. Duane Reade, Inc.*, 2012 U.S. Dist. LEXIS 11053, at *11-12 (S.D.N.Y. Jan. 26, 2012), while Rule 23 requires a more rigorous analysis, so the scope of pre-certification discovery is typically much broader in Title VII class actions than in FLSA collective actions. *Cedano v. Thrifty Payless, Inc.*, 2011 U.S. Dist. LEXIS 155956, 33-34 (D. Or. May 9, 2011)

> *Employment policies do not operate in a vacuum.* A seemingly neutral policy may have a discriminatory impact…That is the case even when the employment process includes some element of subjectivity… *In order to determine whether there is such an impact and to ascertain whether it is attributable to a common policy or practice, it is necessary to acquire data about the class and analyze it.* That analysis may show no discriminatory impact; it may show bias but fail to attribute it to any particular policies; it may show that there is evidence of discrimination in some segments of the defendant organization but not others. But *without such an analysis, the link that <u>Dukes</u> requires between an employment policy and discriminatory impact in order to support a finding of commonality can neither be proved nor disproved.*

*Chen-Oster*, 2012 U.S. Dist. LEXIS 130123, at *20-21 (citations omitted)(emphasis added). This reasoning applies to the importance of having both anecdotal and statistical evidence demonstrating how the challenged policies were applied to the putative class.  Judge Peck's policy-only limits on discovery preclude production of appropriate anecdotal evidence, and his refusal to require MSL to produce current HR and payroll data – even though the Plaintiffs now include some current employees –  precludes evidence of the alleged continuing violation and the requisites of a Rule 23(b)(2) class for injunctive relief. *See* SAC ¶¶ 253, 262, 272, 275-56, 293, 333, Prayer for Relief; Dec. 14, 2012 Tr. at 40-41 (Ex. F to Henderson Decl.)

Indeed, discovery regarding how the various policies at issue are applied to members of the class is routinely produced in employment discrimination cases before a class is certified. *See, e.g., Artis*, 276 F.R.D. at 351-52 (rejecting defendant's argument that  individualized discovery relating to class members was inappropriate in employment discrimination class action pre-certification); *Barghout v. Bayer*, Civ. No. 11-1576-DMC-JAD (D.N.J. June 14, 2012)(Doc. No. 53)(pre-certification discovery in employment discrimination class action includes, *inter alia*, "Defendants' employment and Human Resources policies, practices and procedures *and how these policies, practices and procedures are implemented and applied*" and "class-wide and comparator employment data and information such as job categories, job titles, job levels, job histories, and assignment, development, evaluation, promotion and compensation

information")(emphasis added); *Chen-Oster*, 2012 U.S. Dist. LEXIS 130123 (compelling pre-certification production of individualized personnel data, including compensation, promotion and performance evaluation data for absent class members); *Duling v. Gristede's Operating Corp*., 266 F.R.D. 66 (S.D.N.Y. 2010)(approximately 1000 personnel files of putative class members and other employees produced in employment discrimination case). *See also Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012) (relying on, *inter alia,* excerpts of audio recordings to certify class); *Floyd v. City of New York*, 82 Fed. R. Serv. 3d 833 (S.D.N.Y. 2012)(relying on audio recording, class-wide worksheets, and other forms of discovery to certify class).[17]

In short, denying Plaintiffs discovery regarding how MSL's pay, promotion and pregnancy/leave policies are implemented will hamstring Plaintiffs' ability to meet their burden to demonstrate that class certification is appropriate.

C. THE RULINGS LIMITING PRE-CERTIFICATION DISCOVERY WILL DENY THIS COURT THE RECORD NECESSARY TO CONDUCT A "RIGOROUS ANALYSIS" AND MAKE FINDINGS REGARDING THE RULE 23 FACTORS IN DETERMINING CLASS CERTIFICATION

The Magistrate Judge's rulings also have virtually ensured that this Court will have an inadequate record on which to base its class certification decision. *See Chen-Oster*, 2012 U.S. Dist. LEXIS 130123, at *12-13 ("if anything, *Dukes* illustrates the need to develop the record fully before a class motion is considered"); *Gutierrez v. Johnson & Johnson*, No. Civ. A. 01-5302, 2002 U.S. Dist. LEXIS 15418, at *14 (D.N.J. Aug. 15, 2002) (noting that all will benefit

---

[17] The Magistrate Judge's concern about Defendants' ability to locate relevant documents ("how is it you expect them to find this?," Dec. 14, 2012 Tr. at 18-19 (Ex. F to Henderson Decl.) is no reason to deny Plaintiffs' the information they need to demonstrate the propriety of class certification. Discovery regarding the implementation and application of challenged policies is routinely produced in employment discrimination cases, and can be identified and produced through established and traditional discovery methods, including electronic keyword searches and attorney interviews. Courts have long recognized that the employer typically has sole possession and greater knowledge of the documents in Title VII cases, and that plaintiffs "may employ 'liberal civil discovery rules' to obtain 'broad access to employer's records.'" *Avillan v. Digital Equip. Corp.*, 91 Civ. 8594 (LBS), 1994 U.S. Dist. LEXIS 6454, at *4 (S.D.N.Y. May 17, 1994) (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989)).

from broad pre-certification discovery, because when ruling on class certification, the Court "will have the necessary data before it to determine if the requirements of Fed. R. Civ. P. 23(a) are met"). As discussed above, the Court must conduct a "rigorous analysis" of the Rule 23 requirements at the class certification stage, and "some overlap" with the merits "cannot be helped." *Dukes*, 131 S. Ct. at 2551-52. Courts typically base their class certification decision on statistical and anecdotal evidence, including extensive documents, deposition testimony and declarations. *See, e.g., Public Emples. Ret. Sys. of Miss. v. Merrill Lynch*, 277 F.R.D. 97, 104 (S.D.N.Y. 2011) ("the district court 'must receive evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met"). For example, in *Ellis v. Costco*, the Court certified an employment discrimination class action only after a thorough review and analysis of various forms of discovery, including depositions, declarations, memoranda, letters and other documents. *See also generally McReynolds v. Merrill Lynch*, 672 F.3d 482 (7th Cir. 2012).

By narrowly limiting the scope of class discovery prior to a determination of Rule 23 factors, the Magistrate Judge has eschewed one of his central pre-certification tasks: creating a robust record so that the District Court can make a fully informed decision as to whether this case should proceed as a class action.  It is precisely for this reason that Magistrate Judges – who do not decide class certification motions – are normally loath to impose artificial restrictions on the scope of pre-certification discovery. As one Magistrate Judge aptly noted:

> [T]his court will not be the one ruling on class certification. Therefore, it is particularly inappropriate for this court to limit discovery, as defendant requests, based on this court's determination of the proper scope of a potential class. It is this court's duty to permit the parties to give the district court *all* information that the district court *might* find relevant in making a class action determination.

*Barnhart*, 1992 U.S. Dist. LEXIS 22572, at *9 (emphasis in original).

Indeed, without a sufficient record on which to base its certification decision, this Court may well have to remand proceedings for additional discovery and supplemental briefing after reviewing the parties' initial class certification submissions on the limited record that will be available. *See, e.g., Duke*, 729 F.2d at 997 ("Here, however, we are persuaded that the curbs on discovery were not sufficiently tailored to the case and undue prejudice resulted. We reverse and remand to allow the parties to complete discovery, for a new hearing on requested class certification, for a trial of the claims of any certified class and for a new trial of Duke's individual claim."); *Burton*, 277 F.R.D. at 230-31 (denying class certification but ordering pre-certification discovery "to ascertain additional facts that may enable the plaintiffs to satisfy their burden of proof"). *See also Ellis*, 657 F.3d at 981 (remanding to trial court to engage in "rigorous analysis" of whether there are common questions of law and fact).

In short, rather than ensuring that the case proceeds in a swifter, more efficient manner, the Magistrate Judge's overly restrictive discovery rulings will result in prejudice, delay and a waste of judicial resources.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order:

1) Vacating the December 14, 2012 discovery rulings of the Magistrate Judge;

2) Granting Plaintiffs pre-class-certification discovery, consistent with *Dukes* and other precedent, relating to the Rule 23(a) and (b) factors and to the merits of the class claims, including,

a) production of documents, ESI and current personnel and payroll data demonstrating how each of the challenged policies are interpreted, applied and implemented with respect to the putative class, identified through traditional discovery techniques, such as electronic keyword searches and attorney interviews,

b) A Rule 30(b)(6) deposition regarding each of the challenged policies and Human Resources, and

c) Depositions of those who make and approve decisions pursuant to each of the challenged policies; and

d) Other discovery consistent with the scope identified in 2) above, and

3) Remanding the matter of pre-class-certification discovery to the Magistrate Judge for implementation.

DATED: December 27, 2012

Respectfully submitted,

SANFORD HEISLER, LLP

/s/ Thomas J. Henderson
Thomas J. Henderson, Esq.
Susan Rubenstein, Esq.
Siham Nurhussein, Esq.
Deepika Bains, Esq.
*Attorneys for the Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Siham Nurhussein, hereby certify under penalty of perjury that on this 27th day of December 2012, true and correct copies of the foregoing Rule 72(a) Objections to Magistrate Judge Peck's December 14, 2012 Rulings were served on all counsel of record by operation of the Court's ECF system.


_____/s/ Siham Nurhussein_____

Siham Nurhussein