# Exhibit 1

```
                                                              1
    16gnmooc                    Conference
 1  UNITED STATES DISTRICT COURT
 1  SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x
 2
 3  MONIQUE DA SILVA MOORE, et
 3  al.,
 4
 4                  Plaintiffs,        New York, N.Y.
 5
 5              v.                     11 Civ. 1279 (RJS)
 6
 6  PUBLICIS GROUPE, and MSL
 7  GROUP,
 7
 8                  Defendants.
 8
 9  ------------------------------x
 9
10                                     June 16, 2011
10                                     9:25 a.m.
11
11  Before:
12
12                  HON. RICHARD J. SULLIVAN,
13
13                                     District Judge
14
14                      APPEARANCES
15
15  SANFORD WITTELS & HEISLER
16      Attorneys for Plaintiffs
16  BY:  DEEPIKA BAINS
17       SIHAM NURHUSSEIN
17       STEVEN L. WITTELS
18
18  JACKSON LEWIS LLP
19      Attorneys for Defendant MSL Group
19  BY:  JEFFREY W. BRECHER
20       VICTORIA WOODIN CHAVEY
20
21
22
23
24
25
```

16gnmooc                    Conference
```
 1                (In open court)
 2                (Case called)
 3                THE COURT:  This is an initial conference, though not
 4      a typical one because there seem to be a number of disputed
 5      issues, including, first of all, whether one of the defendants
 6      has been properly served.
 7                I have your joint letter.  Anything to report since
 8      that was submitted?
 9                MR. WITTELS:  Your Honor, will it be appropriate if we
10      divide up some of the responses to the questions instead of
11      just me speaking?  Is that all right?
12                THE COURT:  That's all right.
13                MR. WITTELS:  I think Ms. Nurhussein is going to
14      address that issue.
15                MS. NURHUSSEIN:  Your Honor, our position is set out
16      in the letter that we submitted.
17                THE COURT:  I read that, so nothing new?
18                MS. NURHUSSEIN:  Right.  The latest development is
19      about a month ago, over a month ago we served a number of
20      discovery requests on MSL Group seeking information about the
21      corporate structure, the relationship between Publicis Group
22      and MSL Group, including the revenue generated by MSL Group for
23      Publicis, the control exercised by Publicis group over MSL's
24      policies and employment practices.  We purposefully served
25      those over a month ago so that we could gather information to
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

16gnmooc                         Conference
 1   resolve these service issues before today's conference.
 2           We received defense counsel's responses on Monday, and
 3   they objected to all our requests, all of which were narrowly
 4   tailored and intended to resolve these issue.  We haven't
 5   received any responses bearing on the service issue.
 6           THE COURT:  All right.  The footnote to the proposed
 7   case management plan, and I use that term lightly because you
 8   folks have virtually agreed on nothing, basically says that
 9   Publicis, Inc. is a mere department, an agent of Publicis
10   Group.
11           These are separately incorporated entities, aren't
12   they, so what is the basis for saying that it is a mere
13   department?
14           MS. NURHUSSEIN:  Your Honor, in all the publicly
15   available information that we have seen on its website and
16   other documents, Publicis Group has held MSL Group out as
17   essentially its public relations arm in the United States, its
18   public relations arm.  So MSL Group essentially --
19           THE COURT:  I'm not asking about that.  I'm asking
20   about the sentence before that one, where you say Publicis Inc.
21   is a mere department and an agent of Publicis Group S.A.
22           You are arguing that MSL Group is basically authorized
23   to accept service on behalf of Publicis Group.  I will get to
24   that one in a minute, but what is the basis for saying that
25   Publicis Inc. is a mere department?

                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

4

16gnmooc                    Conference

```
 1          MS. NURHUSSEIN:  Your Honor, our understanding is that
 2    Publicis Inc. or Publicis Group S.A. does business in the
 3    United States as Publicis, Inc.
 4          THE COURT:  I am not sure that makes them a mere
 5    department.
 6          The second point is that MSL Group would suffice to
 7    serve Publicis Group S.A. because Publicis Group itself refers
 8    to MSL Group as its public relations department operating under
 9    one centralized management structure, and you refer to the
10    website.
11          So let me hear from defendants on that.  I am not sure
12    who's covering this.
13          MS. CHAVEY:  Thank you, your Honor.
14          Just to clarify, we only represent MSL Group.  We
15    don't represent Publicis Group.  I think there are two issues.
16    One is MSL Group was not served with papers for Publicis Group.
17          THE COURT:  Oh.  I am not sure the second point makes
18    any difference at all.
19          MS. CHAVEY:  Right.  So the only effort to serve
20    Publicis Group was service on Publicis, Inc., which does
21    business as Publicis USA.  The similarity of the names is
22    meaningless, and even cases that plaintiffs have cited suggest
23    that the standard is pretty strict for determining that, in the
24    Jazina case it was a personal jurisdiction issue, but the
25    standard is strict for deeming a foreign corporation to be
```

5

```
16gnmooc                    Conference
```

```
 1   properly served through a U.S. entity as its agent or
 2   department.
 3           There are various standards that need to be met.  Here
 4   there as been no showing, barely any pleading with regard to
 5   Publicis Inc. being a mere agent or department of Publicis
 6   Group, Inc.
 7           Publicis Group is a form corporation.  It has no
 8   employees in the U.S.  It does not itself operate in the U.S,
 9   although it has wholly owned subsidiaries like MSL Group that
10   do operate in the U.S.
11           THE COURT:  All right.  I don't think what you have
12   told me is enough to suggest that there's been proper service
13   on Publicis Group.
14           Mr. Wittels.
15           MR. WITTELS:  Your Honor, we have two options based on
16   that -- actually, three.  A, we can stand on our statements and
17   the summary of the law that we have given, because we do
18   believe that the case law would support a finding that, based
19   on our service of Publicis, Inc., there is enough to show an
20   agency relationship here with Publicis Group S.A.  So we would
21   be prepared --
22           THE COURT:  You can do that.  I have doubts, but
23   that's one option.
24           What are the other options?
25           MR. WITTELS:  Option two, perhaps the better course
```

6

16gnmooc                    Conference
1    would be to compel defendants to answer targeted discovery that
2    we have served so we can get to the bottom of it rather than
3    brief it.
4              Because if we're wrong on our motion, then we would
5    have to at some point obtain that discovery or likely that
6    discovery will come out, because if MSL Group is what we
7    believe, and what the defendants have represented, the
8    defendant here has represented as the PR arm of the public
9    relations department, there will be a host of documents from
10   the parent corporation that will come out in discovery and
11   we'll see the intertwined relationship.
12             THE COURT:  The third alternative is what?
13             MR. WITTELS:  The third alternative is to also serve
14   MSL Group, to serve Publicis Group through MSL Group, which is
15   what your Honor noted.  We hadn't done that.  We noted that's
16   something we felt that we could do.
17             THE COURT:  That raises the same issue as to whether
18   or not they are an agent or department and, therefore, may also
19   require some additional discovery.
20             MR. WITTELS:  Right.
21             THE COURT:  The guess the fourth option is you just
22   serve Publicis Group, right?  I mean that's not impossible.
23   They are not on the moon.  There are ways to serve foreign
24   corporations.  It's done all the time.  This is a complaint
25   that was filed in February, so you could have already done it
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

7

16gnmooc                        Conference
1    by now had you just decided to do it that way.
2              MR. WITTELS:  Well, yes, your Honor.  That is
3    absolutely correct.  We could have done it that way.  However,
4    we believe that we had enough to not have to do that because
5    there are certain practicalities involved in serving a foreign
6    corporation.
7              THE COURT:  It is not that tough, France.
8              MR. WITTELS:  When you think you have jurisdiction
9    here on a company, and the companies often do -- as you know
10   from the same defendants are representing Toshiba, one of the
11   Toshiba defendants, so we are engaged in the same issue in that
12   case.
13             THE COURT:  Yes.
14             MR. WITTELS:  This is something that the foreign
15   corporations --
16             THE COURT:  This is a decision you have made in two
17   cases.
18             MR. WITTELS:  Right.
19             THE COURT:  But I will say there are a lot of
20   plaintiffs that don't make that decision in cases and decide to
21   just follow the requirements of the convention and serve.
22             MR. WITTELS:  Yes.
23             THE COURT:  It is not that tough, and France is a lot
24   easier than China or some other countries that are implicated
25   all the time.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

8

16gnmooc                     Conference

1         MR. WITTELS:  Yes.
2         THE COURT:  So that is another option.  It's not my
3    job to tell you which option to pursue, but I think it might be
4    easier to just do the last one.
5         Why don't we take up the rest of this when we talk
6    about discovery, because there's going to be discovery and I
7    think some discovery of MSL is going to, should include I guess
8    what is the relationship between the defendants.  That's
9    improper.
10        Do you think that's improper to have discovery
11   extending to the relationship between the various entities, the
12   corporate entities
13        MS. CHAVEY:  We do think it is, your Honor, for the
14   purpose of determining if service were to be effected on MSL
15   Group, which it has not to date.  It would be improper to order
16   discovery as to the relationship between MSL Group and Publicis
17   Group for a couple of reasons.  One is on the face of the
18   pleading here, the amended complaint that was filed in April,
19   there is nothing to suggest, there are no facts pleaded to
20   suggest that plaintiffs would be able to meet the standard of
21   mere agent or department.
22        In the Jazina case that plaintiffs have cited, the
23   Second Circuit actually affirmed Judge Sand's decision not to
24   order discovery because the plaintiffs had not met even a prima
25   facie case through their allegations of the existence of a mere

9

16gnmooc                    Conference

1   agency or department relationship between the parent and the
2   subsidiary.
3          So our position is, as MSL Group, that the plaintiffs
4   cannot plead simply that, which they haven't yet, but they
5   couldn't just plead the legal standard that MSL Group is a mere
6   agent or department of Publicis Group and thereby get
7   discovery, and that essentially, your Honor, that would be
8   shifting the cost and the burden of service on a foreign
9   corporation to the defendant.
10          That is not what the rules contemplate.  That's not
11   what the case law contemplates.  I also want to clarify
12   something that attorney Wittels said, which is that Publicis
13   Group holds out MSL Group as its PR department.  It does not.
14          THE COURT:  All right.  But I am just looking at the
15   complaint.  Let's look at the complaint.  Paragraphs 31 and 32
16   define Publicis Group and MSL Group.
17          Are there additional paragraphs that you're referring
18   to, Mr. Wittels, that support this mere department or agency
19   relationship, because if this is all you have, then I think
20   there might be something to what Ms. Chavey has said.
21          Is that all there is or is there more?
22          MR. WITTELS:  I am not sure.  In the complaint there
23   is more.  Again, we've supplemented in our letter, in a
24   footnote noting when Ms. Chavey said they are not holding
25   themselves out, I don't know how she could probably make that
                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

10

16gnmooc                    Conference

1  statement when the annual report says MSL is the PR and events
2  arm of Publicis Group.
3          I don't know how she can make that statement.  So
4  there obviously is a representation by this foreign corporation
5  on the website about the relationship of the American entity,
6  and I believe discovery will bear out that there is an
7  intertwined relationship.
8          They may be trying to block it, and we've looked into
9  the foreign service.  It will take four months.  If they want
10 to delay it that way, I think we can in the interim try that
11 service, but we can also make a motion and see.
12         Your Honor seems disinclined.  However, I hate to ask
13 for leave to amend again to put in more details.  We went
14 through that route on Toshiba, and it seems that again this is
15 a company that is just trying to block what I think is normally
16 something one finds out from the beginning without this sort
17 of --
18         THE COURT:  I would say my experience, and maybe you
19 have more than I do, in my experience people serve the foreign
20 corporations.  That's my experience.  The complaint was filed
21 in February.  It is now June.
22         Had you gone that route and had those -- if four
23 months really is the time period, we would be there by now
24 anyway.
25         But, Ms. Chavey, I don't know that you did address the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

11

16gnmooc                    Conference
1   website that's referenced in footnote 1 on the case management
2   plan.
3          MS. CHAVEY:  Sure.
4          Well, the website of Publicis Group speaks of its
5   companies, its wholly owned subsidiaries around the world.  It
6   does not represent MSL Group as its PR department.  I also
7   think that to some extent the cart is being put before the
8   horse here, because MSL Group has not been served with papers
9   for Publicis Group.  The only entity that's been served with
10  papers for Publicis Group is Publicis, Inc., which does
11  business here in the States as Publicis USA.  It is an
12  advertising agency.  It is not part of MSL Group.  It's part of
13  the Publicis Group series of companies, but these are wholly
14  owned subsidiaries, and the case law is very clear, you don't
15  get service on a foreign corporation by dropping off papers at
16  the wholly owned sub.
17         MR. WITTELS:  The representations, your Honor -- with
18  all due respect, I mean, MSL is the Publicis Group's flagship
19  communications PR and events network.
20         THE COURT:  Right.  That is, they are a wholly owned
21  sub, right?  There is a parent that owns various independently
22  incorporated entities in the U.S. and elsewhere.
23         Your view is that any wholly owned sub is a mere
24  department or an agent?
25         MR. WITTELS:  Well, once they start making certain
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

12

16gnmooc                    Conference

1   representations about the relationship that support and inform
2   us, then you get into real questions about the relationship.
3          THE COURT:  What you have cited in this footnote in
4   quotes seems completely consistent with a parent describing its
5   subsidiaries.  The mere description of a subsidiary you think
6   makes it a mere agency or mere department?  That is a very bold
7   statement.  It basically turns a pretty well defined area of
8   law on its ear.
9          MR. WITTELS:  Your Honor, we also are representing
10  plaintiffs in this case who have been directly involved in all
11  of the public relations aspects of MSL Group.  They have told
12  us, again, as we understand from the website and the
13  disclosures, that MSL is doing all of the international and
14  local PR work for Publicis Group, that they're the arm, this is
15  the company that does it.
16         So, again, we are not just going as if this is some
17  severed agency, as if it's a foreign corporation that has no
18  tentacles and has no connections to this country.  It has
19  extensive communications.  It's particularly using this public
20  relations arm to do all of its media work.
21         So I don't mean to suggest that we are just standing
22  on the fact that it's an agency or a department alone.  We are
23  informed by our clients and by this information.
24         THE COURT:  All right.  I don't see it.
25         MR. WITTELS:  Sorry.  You don't see it?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

16gnmooc                    Conference

```
 1             THE COURT:  I don't see it.  I have to say from what I
 2   have seen I don't think there is a basis to conclude that
 3   Publicis Group has been served, so I think you should just go
 4   through the normal channels to do that.  In the meantime we'll
 5   start discovery with MSL Group.  I want to talk about that.
 6             MR. WITTELS:  Your Honor.
 7             THE COURT:  Yes.
 8             MR. WITTELS:  On that issue, I would absolutely defer
 9   to your Honor's ruling here that we serve again, but I would
10   ask that, or ask, I know there is a cutoff for service, that
11   that be extended so that we can accomplish the foreign service.
12             We had asked counsel to accept service at MSL Group
13   for Publicis Group.  They refused.  We will now serve Publicis
14   Group in Europe and serve MSL Group as the arm of Publicis
15   Group.  So we're going to do it two ways.  If they want to move
16   on that, I think in the end, if we're right, then they will
17   have put us through an unnecessary burden.  But we shall see on
18   that in terms of how the discovery shakes out.  I would ask
19   your Honor if the Court.
20             THE COURT:  The time in which to serve Publicis Group
21   through the international channels?
22             MR. WITTELS:  Yes.
23             THE COURT:  I think that's fair.  You have no
24   objection to that, do you, Ms. Chavey?
25             MS. CHAVEY:  I think Rule 4 allows for greater than
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

16gnmooc                    Conference
1   120 days for service on a foreign corporation.
2           THE COURT:  All right.
3           MS. CHAVEY:  So that's the normal rule.
4           THE COURT:  I clearly have the discretion to do it.
5   I'm asking whether you agree that there's no reason not to do
6   it.
7           MS. CHAVEY:  We don't object to plaintiffs' taking
8   longer than 120 days to serve Publicis Group through the Hague
9   Convention.
10          THE COURT:  Let's do that.
11          Now let's talk about the case management plan, which
12  largely breaks down into a dispute as to whether we should have
13  class discovery and then class certification first and then the
14  merits discovery or whether we should do it all together.  I
15  have to say, just looking at the complaint, it seems to me a
16  long shot to think that this is a class that would be
17  certified.
18          Ms. Da Silva certainly doesn't seem to be typical of
19  the class that has been proposed in the complaint.  I think
20  there are some other issues as well.  It seems to me that
21  individual issues with respect to damages are going to be
22  overwhelming.
23          So I am a little reluctant, frankly, to break this
24  down into class discovery that is going to just slow this
25  process down tremendously.  I'm inclined to have just one
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

```
16gnmooc                    Conference
```

1   discovery schedule that will include all aspects of the
2   complaint.
3          I'm happy to hear you on this, but, having read what
4   each of you have proposed, my clear inclination is to go into
5   just a single discovery schedule.
6          Mr. Wittels.
7          MR. WITTELS:  Yes, your Honor.  I don't believe that
8   it actually slows it down in a way that would mar the
9   effectiveness of the schedule that the Court would want to set.
10  The addition of the new plaintiffs shows that there is at the
11  highest levels an issue with women in terms of their being
12  promoted or paid.  These women all actually reported into the,
13  I think it was the president.
14         THE COURT:  The highest levels are not going to be a
15  problem.
16         MR. WITTELS:  Right.
17         THE COURT:  Numerosity is going to be a problem.
18         MR. WITTELS:  We have information and believe it
19  extends beyond that, so the discovery will bear that out.
20         Our allegation is that there is a systemic problem not
21  only at the high levels, but we certainly are seeing from the
22  addition of the new plaintiffs that there is a common practice
23  throughout the country with respect to women.
24         Our experience has been in Novartis, Sanofi, Dell and
25  a number of other cases that the courts ordinarily bifurcate.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

16

16gnmooc                    Conference

1   I can't think of a case in the discrimination context where we
2   have not bifurcated, and that allows for more efficient
3   management, I believe, of the class.
4              THE COURT:  Why would it be more efficient that way in
5   this case?
6              MR. WITTELS:  Well, you first get your data on the
7   class-wide discovery issues, such as statistical information,
8   which is where you really have to begin.
9              THE COURT:  I understand that.  I'm saying why is it
10  more efficient to do it that way?  Why not just do it on
11  parallel tracks simultaneously?
12             MR. WITTELS:  Well, it alleviates the issue of certain
13  damages issues.  Damages can be very expensive and costly to
14  get into an expert analysis on actual damages.  True, you might
15  need an expert on certain statistical issues with respect to
16  commonality.
17             THE COURT:  I think we can defer expert discovery
18  until after the class cert. motions are made.  But it is not
19  clear to me otherwise why there are efficiencies that come from
20  doing it the way you propose.
21             MR. WITTELS:  Just on the expert issue.  We would
22  still need expert submissions ordinarily on the issue of
23  class --
24             THE COURT:  For class cert.
25             MR. WITTELS:  Yes.  Because you want to put in
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

17

16gnmooc                    Conference

1  evidence through an exert as to the statistical disparities and
2  that has to come in through the expert who has analyzed the
3  data.
4          THE COURT:  Not a damages expert.
5          MR. WITTELS:  Right.  But there are efficiencies in
6  that you target in really the commonality, typicality issues
7  that one ordinarily gets to on this without getting into the
8  merits about the class merits.  We've already had the defendant
9  tell us they're not going -- we had served preliminary
10 discovery, our first round of discovery on issues regarding
11 statistical evidence, and we've already seen an objection.  So,
12 unless we can resolve it, we will be back before your Honor
13 arguing whether we get that.
14         THE COURT:  Arguing that?
15         MR. WITTELS:  They are arguing that --
16         THE COURT:  I didn't understand what you were saying.
17 Arguing over what?
18         MR. WITTELS:  We will be arguing over such issues as
19 whether we're entitled to class discovery because they are
20 taking the position we're not until --
21         THE COURT:  Maybe I need to hear from Ms. Chavey about
22 that.  You are arguing that there's no reason to bifurcate
23 discovery.  OK.  Fine.  But am I just setting myself up for
24 discovery dispute every week about the class discovery?
25         MS. CHAVEY:  I don't think so, your Honor.  I believe
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

18

16gnmooc                    Conference

1  what attorney Wittels is referring to is the parties convened,
2  at our request, an informal conversation last week about
3  electronic discovery so that we could begin to understand what
4  each side would be looking for --
5             THE COURT:  Right.
6             MS. CHAVEY:  -- and make sure that there's open
7  communication there.  And we had our E-discovery counsel on the
8  line.
9             As Attorney Wipper, who's not in the courtroom this
10  morning, was discussing, all that they would be looking for in
11  discovery that has not yet been served, I just indicated that
12  we may well object to the scope of what she had stated on the
13  phone, but we're nowhere near the point of anticipating that
14  there will be a discovery dispute every week.
15             To the extent Attorney Wittels was referring to the
16  fact that MSL Group had objected to discovery, that we served
17  our objections on Monday to discovery that had been served just
18  after the court had postponed the conference in May, that
19  discovery just dealt with the relationship between MSL Group
20  and Publicis Group.  And MLS Group's position is because
21  Publicis Group is not in the case, it's not appropriate to take
22  discovery about the relationship between the parent, which is
23  not a party and the sub, which is in the case.
24             So, no, in other words, I don't expect that there is
25  going done a lot of discovery disputes.  In fact, your Honor,

19

16gnmooc                    Conference
1   our concern, now that we have had an opportunity to review the
2   claims presented by the new four plaintiffs which were added in
3   April, and really weren't addressed in our submission in early
4   May, is that there is a significant issue here with regard to
5   the adequacy of these plaintiffs as class representatives
6   because of the insurmountable conflict among the class members
7   and even among the plaintiffs themselves.
8           THE COURT:  That is all fine.  But that's often the
9   case why defendants prefer to bifurcate the discovery.  I am
10  not sure off the top of my head whether the cases referred to
11  by Mr. Wittels Dell, Novartis and --
12          MR. WITTELS:  Sanofi.
13          THE COURT:  Whether those were situations in which the
14  defense heartily agreed to bifurcate.  But that is one reason
15  for it, because there are strong arguments that defendants
16  contemplate making concerning the lack of a class or the
17  inappropriateness of a class action.  And they like to settle
18  that before they then start into what could be expensive merits
19  discovery.
20          You don't share that view in this case.  You seem to
21  think it would be more efficient and less costly to do it all
22  at once.
23          MS. CHAVEY:  We do.  It's largely because the
24  discovery as to the class issues to a large extent is going to
25  overlap with the merits issues.  When we sit down and depose
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

20

16gnmooc                    Conference
1   the plaintiffs, for example, even the statisticians' issues go
2   both to merits and to class issues.
3           The concern is that if we bifurcate class discovery
4   from merits discovery, then we are going to have overlapping
5   efforts and ultimately duplicate efforts.  In the Novartis
6   case, your Honor, as you may know, class discovery was
7   bifurcated from merits discovering.  Each phase took something
8   in the order of two years.
9           What we would like to avoid is having four years of
10  discovery and we think by doing class and merits together, it
11  will be more efficient and we will avoid having duplication of
12  efforts both in deposition and experts and the rest.
13          THE COURT:  Mr. Wittels, I'm going to go with a
14  unified system.  I am not going to bifurcate.  If in practice
15  it turns out that this is just not working, I certainly reserve
16  the right to revisit that.  But for now at least I'm
17  unpersuaded that it would be more efficient to bifurcate.
18          With that then I guess I'm largely adopting
19  defendants' position on that, but we haven't talked about
20  dates.
21          So assuming what I'll refer to as a unified or
22  unbifurcated discovery schedule, are you in agreement with the
23  dates that are set forth by Ms. Chavey, or do you think
24  something else makes sense?
25          MR. WITTELS:  I would just ask that perhaps we have a
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

```
16gnmooc                    Conference
```

1  few minutes to confer outside and look back at the dates.
2         THE COURT:  Why don't we do this instead.
3         I told you that's what I want to do.  I don't want to
4  bifurcate.
5         MR. WITTELS:  All right.
6         THE COURT:  Why don't you folks now, with that
7  understanding, huddle up and then revise this in such a way as
8  makes the most sense.  It may be that you have concerns about
9  some of the dates that they've picked that you didn't really
10  address because you were proposing a different alternative
11  altogether.  Then send that to me.  Maybe there will be no
12  disagreements.  If there are disagreements, then I will get you
13  on the phone, and we can do this next week, today is Thursday,
14  early next week if necessary.  If there are no disagreements, I
15  will just endorse it and docket it.
16         All right?
17         MR. WITTELS:  Yes, your Honor.
18         So, to be clear, then, on the dates, we will confer
19  this week and perhaps into Monday --
20         THE COURT:  Right.
21         MR. WITTELS:  -- or so, and we would have then until
22  the end of next week.  If there is a dispute -- we will put in
23  a proposed letter to your Honor by next Friday regardless,
24  either it's joint or setting forth any differences.
25         THE COURT:  Yes.  Try to follow my template.  I'm not

22

16gnmooc                    Conference
1    married to.  It's not a one size fits all, but I think
2    generally my template sort of addresses most of the issues that
3    come up in litigation.
4            So try to follow it where you can.  Where there are
5    disputes, lay it out the way you have here, just hopefully
6    there will be fewer than two positions on every point.
7            We are really now talking about dates, and some of the
8    things we need to include, some other milestone, I'm open to
9    that.  For example, defendants suggest that we have a discovery
10   conference mid-discovery as opposed to a postdiscovery
11   conference.  I'm OK with that.  That might be actually a wise
12   thing to do in a case that is going to require more discovery
13   than my typical case, so I'm open to that.
14           If there are other things that you think we should
15   tweak, I am open to that as well.  But what I am hoping not to
16   get into is something that, although it's one document, it
17   might as well be two documents.  Agree where you can.
18           Be reasonable and see where you can actually find
19   common ground, and where there are differences try to keep them
20   as narrow as possible.  OK.  I think that's probably more
21   efficient than sending you into the hall and asking to you come
22   back and try to do it on the fly.
23           MS. CHAVEY:  Your Honor, one thing I would like to
24   request or suggest, is given that the Dukes decision is likely
25   to come down in the next two weeks --
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

16gnmooc                    Conference

1        THE COURT:  Yes.  It's going to come down, no question
2   about that.  I mean, unless they put it over, but I can't
3   imagine they would do that.
4        We had our Judicial Conference last week, and Justice
5   Ginsberg was there, and she was commenting on how many opinions
6   were left and she didn't suggest that any were getting held
7   over.  So, yes, I bet a dollar that we're going to get
8   something.
9        MS. CHAVEY:  So what I might suggest is that the
10  parties confer, but also give ourselves the opportunity to look
11  at the Dukes decision.  But it may actually change,
12  particularly 23(b)(2) is pleaded here as one basis of recovery.
13  That may no longer be viable after the Dukes decision comes out
14  and there may be other ways in which the Dukes decision informs
15  what we need to do in this case.
16       THE COURT:  For discovery.
17       MS. CHAVEY:  Yes, even for discovery.  As long as it's
18  just a couple of weeks, maybe we can put over the submission of
19  our joint report until the first week of July so that there
20  isn't another opportunity then to, OK, now Dukes has changed
21  our mind about something and we would like to consider it.
22       THE COURT:  I'm OK with that.  But, whatever the
23  Supreme Court says, there's certainly going to be a case here
24  that goes forward.  There are individual claims.  There are
25  other claims that are of a class nature that will be unaffected

24

16gnmooc                    Conference
1    I think by that decision.
2          So I guess I would ask you not to do nothing between
3    now and when that comes down.  So if you are sort of providing
4    each other with the discovery that would be appropriate at this
5    stage, but reserving on filing the case management plan or post
6    case management plan until after that decision, I can live with
7    that.
8          What I don't want to do is have a situation where we
9    all do nothing for two weeks.  I guess it really is not more
10   than two weeks.  July 1 is when the Court takes its summer
11   break I think.  So Mr. Wittels are you OK with that?
12          MR. WITTELS:  I don't want to be doing it twice.
13          THE COURT:  Yes.
14          MR. WITTELS:  However, I do agree with your Honor,
15   there will be a case that remains.
16          THE COURT:  Yes.
17          MR. WITTELS:  Unless the Supreme Court in its wisdom
18   eliminate class actions in total, but we still have a
19   collective action here.
20          THE COURT:  Exactly.  So there should be some
21   discovery that's starting right away.  So get on that, start
22   providing what you can, or at least going through the steps
23   necessary to begin production for the things you know you are
24   going to produce.
25          If the Supreme Court waits until the last day of the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

16gnmooc                    Conference

1    term, which is June 30 or July 1, then we're really talking a
2    week for you folks to review that, you have a holiday in
3    between, then we are really talking three weeks, right?  Three
4    weeks from today.  Today is the 16th.  Yes.  That's really what
5    we are talking about.
6            MS. CHAVEY:  Right.
7            THE COURT:  I'm OK with that, as long as you can
8    assure me that we're not just going to be dead in the water
9    doing nothing for the next three weeks.
10           MS. CHAVEY:  What I can tell your Honor is the parties
11   have both served written discovery on the other, and the
12   responses are due I think for us in the middle of July.
13   Plaintiffs' responses are due a little later in July, and we're
14   going forward with that.  I mean, we're preparing our
15   responses, so we're not sitting still.
16           THE COURT:  In view of that, why don't I ask you to
17   submit something to me in three weeks, the revised case
18   management plan with the provisos I just mentioned.  It just
19   gives you time to take into account the Supreme Court decision
20   that is clearly coming.  It's a hurricane.  We know it's
21   coming.
22           All right.  Anything else we should discuss today
23   before we adjourn.
24           MR. WITTELS:  Your Honor, which date shall we go by?
25   July 15?

16gnmooc                        Conference

```
 1              THE COURT:  I was going to suggest July 8, but do you
 2   think you will need more time to absorb the Supreme Court
 3   decision than a week?
 4              MR. WITTELS:  Perhaps.
 5              THE COURT:  Assuming it comes down on July 1?
 6              MR. WITTELS:  Perhaps given the holiday, if we could
 7   just have say until the 14th, 15th.
 8              THE COURT:  All right.  The 15th is a Friday.  That's
 9   fine.
10              MR. WITTELS:  Thank you.
11              Finally, I think there is an issue about mediation
12   that this case had been, I think under the Court's rules there
13   was an initial --
14              THE COURT:  I require the parties to identify which of
15   the two court-approved mediation programs you wish to
16   participate in.  I defer to you folks on that.  Then we discuss
17   timing because sometimes there is a legitimate disagreement as
18   to what is the optimal time to do that.
19              If one side really is adamant that they are not in a
20   position to talk settlement until later, then there's not much
21   point in demanding it earlier, it seems to me.
22              Let me just remind myself.  It is the magistrate judge
23   who wants -- I'm sorry.  I think you said the mediation
24   program, right?
25              MS. CHAVEY:  Judge, I don't think that that we did
```

27

16gnmooc                    Conference

1    request the mediation program.  But this is something the
2    parties agree on and we discussed last week.  We were referred
3    through the court's program to a mediator -- and both parties.
4         THE COURT:  Because it's a discrimination case, that's
5    automatic.  I'm sorry.
6         MS. CHAVEY:  OK.
7         THE COURT:  That's the reason.  We have a relatively
8    new local rule that requires any case involving certain subject
9    matters to be sent to the mediation program.  It used to be
10   parties could choose for employment discrimination cases, now
11   they have to go to the mediation program, the thinking being
12   that we do have a stable of very experienced experts in that
13   area, and we should take advantage of that.
14        So that's the reason for it.
15        MS. CHAVEY:  What we have agreed on is that it would
16   really be premature at this time to go to mediation.
17        THE COURT:  Yes.
18        MS. CHAVEY:  So we would like to go at some later
19   point to be determined as the case proceeds.
20        THE COURT:  I will make the referral.  Even though
21   it's automatic, I still fill out a referral form and I
22   typically will say when, roughly, the parties will be prepared
23   to do this.  Do you have a sense as to when that would be?  Why
24   don't you put that in what you send me on July 15.  And I'll do
25   the referral at that point.  If the mediator starts knocking on

```
16gnmooc                    Conference
```

1   your door, you can say the judge told us to wait.
2         MR. WITTELS:  Your Honor, just to perhaps get your
3   Honor's preemptive feeling on a few of the discovery issues so
4   we can perhaps inform ourselves on that, if I may while we are
5   here?
6         THE COURT:  OK, sure.
7         MR. WITTELS:  One of the issues is I guess just
8   initially, depositions.  Usually it is our practice, belief,
9   that before you get into depositions you want to have as
10  complete a discovery you can in terms of --
11        THE COURT:  Documents, yes.
12        MR. WITTELS:  I mean, there was a dispute I guess just
13  in preparing the plan.  The defendants' position was, well, if
14  it doesn't relate to that deponent, we don't have to have given
15  you the written discovery.  Our position is usually you don't
16  want to start the discovery on depositions and then be back
17  when you get more documents.  We like to try to do it in some
18  orderly fashion.
19        THE COURT:  I understand what you are saying.  The
20  goal is make sure you have sort of the full set of relevant
21  documents before you depose people.  I guess there is a
22  disagreement as to at what point have you received the full
23  complement of relevant documents.
24        If there is a way that document discovery is conducted
25  so that you have everything you need for witness A, even though

```
16gnmooc                    Conference
```

1   there are outstanding requests that are relevant to other
2   issues or other witnesses, it seems to me silly to wait until
3   you've got every document in the case before you depose
4   anybody.
5          MR. WITTELS:  Right.
6          THE COURT:  Now, that's all well and good to say, but
7   sometimes it is hard to know when you have hit that point, and
8   the risk, of course, is that other documents will show up that
9   are things you would have wanted to use in the deposition and
10  then you are forced to decide whether you want to go to the
11  expense of redeposing or whether the other side's objecting and
12  so then you have to get back in front of me.
13         I understand that.  It is just hard for me to know
14  when you have reached the point that you've got the documents
15  you need to do a deposition.  It's hard for you to know that,
16  too, I suppose.
17         I mean, Ms. Chavey, what is your response to that.
18  You understand this.  You are an experienced lawyer.
19         MS. CHAVEY:  Sure.  I didn't know this was a dispute.
20  We had some conversations, and we had noticed all five
21  plaintiffs' depositions for August, and plaintiffs' counsel
22  requested that they be moved back so that more document
23  discovery could proceed.  We said, OK, we just don't want to
24  push them back too far.  I don't know that there was a dispute
25  here.

30

16gnmooc                      Conference

1            THE COURT:  I think there is page 37(c) with respect
2    to depositions.  "All depositions shall be completed by," and
3    then it says, "Plaintiffs' position, absent an agreement
4    between the parties or an order from the Court, depositions are
5    not to be held until all parties have responded to initial
6    requests for document production."
7            You don't track that language in your position.  You
8    say something a little different:  "Absent an agreement between
9    the parties or an order from the court, depositions are not to
10   be held until all parties have served responses to initial
11   requests for document production, unless the outstanding
12   requests for document production are not related to the
13   deposition sought."
14           That's I think what Mr. Wittels is referring to,
15   right?
16           MR. WITTELS:  Yes, your Honor.
17           THE COURT:  So I don't know what you had in mind by
18   including that additional language.  I don't think it's
19   unreasonable on its face.  But the devil is in the actual
20   details.
21           MS. CHAVEY:  Right.  What we're thinking here is there
22   is likely to be a lot of discovery about what I would consider
23   more class-related issues, the statistics, what information the
24   statistical experts will need to review, and those relate to a
25   much broader group of people presumably than one plaintiff,

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

31

16gnmooc                        Conference

1    Heather Pierce, to take one name.  So we may want to proceed
2    with Heather Pierce's deposition after producing her personnel
3    file and other things that pertain directly to her without
4    producing everything and also cutting through what may be some
5    disputed issues about the scope of the discovery.
6               So we don't want to be held up on deposing people we
7    think need to be deposed until a year from now when all of the
8    document issues have been resolved.  We are trying to stake out
9    our position on that here as a matter of our conduct of the
10   case.  We're certainly going to try to cooperate and schedule
11   things as appropriate based on the particulars of the case and
12   deposition at hand.
13              THE COURT:  The problem is that there may be
14   good-faith disagreements between you as to what is related and
15   what is not related to the depositions sought.  So it may be
16   that Mr. Wittels thinks he certainly needs more than just the
17   personnel file and those things to do an adequate deposition or
18   to defend adequately a deposition.  It is hard for me to say
19   now.
20              Mr. Wittels, you are not necessarily objecting to that
21   language.  It is just that you are identifying a potential
22   problem, right?
23              MR. WITTELS:  That's fair to say, your Honor.
24              THE COURT:  All right.
25              Well, I would say if we hit the problems, let me know,

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

```
        16gnmooc                    Conference
 1   and get involved early, because I guess once I see a couple of
 2   these in practice, I will know sort of where I think fairness
 3   lies and what's more efficient.
 4         It is hard for me to decide now.  It's hard for any of
 5   us to talk about this intelligently when it's purely
 6   hypothetical.
 7         MR. WITTELS:  Right.
 8         The other area perhaps, just to briefly address No. 8,
 9   there also seems to be a dispute between the plaintiffs and the
10   defendants about this, it comes out different ways I suppose,
11   on whether the expert disclosures should be simultaneous or
12   whether the plaintiffs are compelled to go first and then the
13   defendants get to respond to that.
14         THE COURT:  My standard system has plaintiffs going
15   first and the defendants going second.  I just think there are
16   reasons for that.  It is not to punish plaintiff.  It is just
17   that plaintiff is bringing the case so they go first on these
18   things.  I don't think there is any reason to do it differently
19   here.
20         MR. WITTELS:  All right.
21         THE COURT:  So that's the reason why I have the
22   template that way.  There are some cases where the parties
23   agree that it makes sense actually to do them simultaneously,
24   and I don't generally get in the way when the parties agree.
25   But in the absence of an agreement that is my default,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

33

16gnmooc                    Conference
1   plaintiff first.
2          MR. WITTELS:  Thank you, your Honor.
3          THE COURT:  I think we have taken it about as far as
4   we can go.  Since I may not see you again, depending on how
5   successful you are in submitting the revised case management
6   plan, I'll tell you what I tell everybody, which is once we
7   have a plan I presume that's going to be the plan.
8          I don't change the dates lightly.  That's not to say
9   I'm wholly rigid.  If there are good reasons in light of
10  different circumstances and experiences, then obviously, it may
11  be necessary to change things, but what I urge you to do is let
12  me know well in advance of the impending deadline.  Don't wait
13  until the depositions are supposed to be done to tell me, well,
14  we haven't really done any because we were disagreeing over
15  documents.  That just drives me to distraction, and it's not a
16  sure thing that I am going to agree to what you think is
17  reasonable additional time.
18         I told you that, just so we all understand each other,
19  I think managing expectations is half the battle in life.  Keep
20  that mind an once we have a plan, once I have endorsed it and
21  put it on ECF, that will be the schedule unless you get
22  permission for an altered schedule.  If you think you need one,
23  do it early, not later.  I'm going to be reasonable.  But I
24  think it's important you to understand to that.
25         MR. WITTELS:  Thank you.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

34

16gnmooc                    Conference

 1          THE COURT:  I will a issue a short order that just
 2    memorializes these dates that we've talked about for the new
 3    submission.
 4          MS. CHAVEY:  Your Honor, maybe I should just clarify
 5    something.  You had asked me before whether we object to the
 6    service on Publicis Group beyond the normal time frame of 120
 7    days.  Our position that we state is only on behalf of MSL
 8    Group.  We obviously can't speak for a party we don't
 9    represent, just to clarify that.
10          THE COURT:  All right.  It may be that Publicis Group,
11    once served, is objecting and can voice those concerns if and
12    when that happens.  But I think I have very broad discretion on
13    that, and given the facts here, I'm completely comfortable
14    extending the time at which to serve.  My hope is that it is
15    not going to mess up the discovery schedule that we have all
16    worked towards.
17          MS. CHAVEY:  Thank you.
18          THE COURT:  I don't know that it will make much
19    difference in terms of the schedule, but we'll see.
20          Thanks.
21          (Adjourned)
22
23
24
25

                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300