# Exhibit 3

1

Ccenmooc                    Conference
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    MONIQUE DA SILVA MOORE, et
3    al.,
4
4                    Plaintiffs,        New York, N.Y.
5
5            v.                        11 Civ. 1279 (RJS)
6
6    PUBLICIS GROUPE, and MSL
7    GROUP,
7
8                    Defendants.
8
9    ------------------------------x
9
10                                    December 14, 2012
10                                    11:05 a.m.
11
11   Before:
12
12                    HON. ANDREW J. PECK,
13
13                                    U.S. Magistrate Judge
14
14                    APPEARANCES
15
15   SANFORD WITTELS & HEISLER
16       Attorneys for Plaintiffs
16   BY:  THOMAS J. HENDERSON
17       SUSAN RUBENSTEIN
17       SIHAM NURHUSSEIN
18
18   JACKSON LEWIS LLP
19       Attorneys for Defendant MSL Group
19   BY:  VICTORIA WOODIN CHAVEY
20       JEFFREY W. BRECHER
20       BRETT M. ANDERS
21
22   MORGAN LEWIS & BOCKIUS LLP
22       Attorneys for Defendant Publicis
23   BY:  PAUL C. EVANS
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

Ccenmooc                    Conference

```
 1              (In open court)
 2              (Case called)
 3              THE COURT:  First of all, with respect to
 4    Mr. Henderson, I signed the pro hac order this morning.  You
 5    all should have it on your ECF hits if you get them on your
 6    BlackBerrys, or, if not, when you get back to your office.
 7              MR. HENDERSON:  Thank you very much, your Honor.
 8              THE COURT:  Welcome aboard.
 9              As to the issue of class action discovery, I have at
10    least skimmed Ms. Rubenstein's letter.  I read the letter.
11    It's the attachments that were skimmed.  I have some thoughts
12    on it, but let me hear from the defense first.
13              MS. CHAVEY:  Thank you, your Honor.
14              It appears from the proposed discovery plan that the
15    plaintiffs submitted to the Court yesterday that they really
16    are anticipating full-blown discovery that's not limited in any
17    way to class certification issues.
18              They appear to seek to revisit many of the things that
19    have already been discovered and that this Court has ruled on
20    at some length, including HR data, policy documents, HR
21    complaints and many other categories.  But the breadth and
22    depth of the written discovery requests that are proposed
23    appear to contemplate class certification, discovery that would
24    be combined with and enmeshed with discovery on the merits of
25    the class claims.
```

Ccenmooc                    Conference
1              As to the depositions that are proposed --
2          THE COURT:  Forget the depositions.
3          MS. CHAVEY:  OK.
4          THE COURT:  For now.
5          OK.  Mr. Henderson or Ms. Rubenstein?
6          MR. HENDERSON:  Yes.  Good morning, your Honor.
7              I would like to say first I spent much of the last two
8      weeks trying to get up to speed trying to understand where
9      things are and to try to find a way forward here.  It's in
10     plaintiff's interest to move this case forward and get the
11     discovery complete and get the record prepared for Judge
12     Carter.
13             THE COURT:  With all due respect, the letter that was
14     submitted on the 7th that said we are going to want some
15     limited discovery and then what came in on the 13th are like
16     they were written by two different people.
17             MR. HENDERSON:  One of the things I have tried to do,
18     your Honor, coming into this situation is to try to see what's
19     feasible going forward, what agreements actually we may be able
20     to reach with counsel for the other side, and to the extent we
21     can't resolve everything, to the extent which we can narrow
22     them.
23             I would like to report a little bit on what we have
24     done and what I think are some areas that actually do suggest
25     possible agreement at least in terms of limiting the issues

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
     Ccenmooc                Conference
 1   that might have to be decided.
 2           THE COURT:  Does that mean there was discussion post
 3   the December 13 letter that came in I guess at 4:30 yesterday,
 4   or is that letter totally unrelated to whatever quote-unquote
 5   agreements there are?
 6           MR. HENDERSON:  Let me say that we have spoken at
 7   least three times over the last week and a half.  And with
 8   respect to Publicis' counsel, since Judge Carter has now --
 9           THE COURT:  Let's skip them.
10           MR. HENDERSON:  If I might just very briefly say this,
11   I think you might be encouraged, your Honor.
12           THE COURT:  OK.
13           MR. HENDERSON:  We have consulted with counsel for
14   Publicis about what discovery we think might be necessary with
15   respect to them.  We have agreed to continue to meet and confer
16   to try to reach some agreement on what would be required with
17   regard to discovery for Publicis, so I wanted to report that to
18   you.
19           THE COURT:  OK.
20           MR. HENDERSON:  Secondly, your Honor, we have
21   consulted with MSL regarding the whole situation of bifurcation
22   or not and what is appropriate class discovery.  As you may
23   note from the letters earlier, we sent them a proposal that we
24   thought was the appropriate scope of class discovery.  We had a
25   conversation about that.  We didn't get particularly a response
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

Ccenmooc                        Conference

1   as to any of those that they agreed or disagreed would be class
2   discovery, but they then proposed their own sort of discovery
3   plan, which is I think in Exhibit 2 of their letter of December
4   7, which we thought was very asymmetrical in terms of limiting
5   plaintiff's discovery and yet they would have full discovery
6   with regard to the EPA merits of all the intervenors -- or the
7   opt-ins, I'm sorry.  But I don't know that we're finished
8   discussing either.  We got your order, and we have responded to
9   your order.
10          THE COURT:  Time out.
11          First of all, just to bring you up to date on a rule
12  that you may not have read, if I talk, you stop.
13          That's rule number one in my court at all times.
14          MR. HENDERSON:  Certainly, your Honor.
15          THE COURT:  It may not be fair, it may not be polite,
16  but I have a heavy docket and everything you have just said is
17  information I know.
18          The problem I have -- and, look, I have sort of given
19  up keeping this case moving quickly because you all don't want
20  to between the two sides, and I won't say which side I think is
21  more or less at fault.  You are both at fault.  If I asked you
22  is today Friday, December 14, I would get four letters
23  explaining why it isn't or isn't and why six other issues
24  impact on that.
25          My problem is this.  Your December 7 letter,
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

6

Ccenmooc                    Conference

1  regardless of the approach they took, which also was indeed one
2  sided, said we need some very limited policy documents then we
3  will take some depositions and then we can move for class cert.
4  I said great.  Now let's put some teeth on it.
5          What I received yesterday is full merits discovery, or
6  if not full merits discovery, it is so deeply into the merits
7  that there is no point in doing it twice unless -- and frankly
8  I'm tempting to say I will take the approach that the Eastern
9  District of Pennsylvania or whatever district of Pennsylvania
10 it was took in Boeynaems v. LA Fitness and say, you want
11 certain class discovery, you can have a lot of what you want,
12 you are going to pay for it all, including their lawyer time,
13 to find the material.
14          This request is absurd.  So if you all want to try to
15 meet and confer and come back in January early we can do that.
16 Frankly, you are all not going to do much work between now and
17 the beginning of the year producing documents anyway.
18          MR. HENDERSON:  If I might, your Honor, and that may
19 be a wise outcome of this today, but I was going to try to get
20 to what I thought were some areas of agreement, at least
21 narrowing issues.
22          I read again last evening Ms. Chavey's letter of
23 December 7, and I was struck at the bottom of page 2 and the
24 top of page 3 that in this letter MSL is proposing that
25 discovery be focused on the existence and validity of the class

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

```
         Ccenmooc                    Conference
 1    issues, that is, whether the requirements of Rule 23 are
 2    satisfied and the merits of the class period, because the
 3    merits and class certifications are intertwined.
 4            We agree with that, your Honor.  I don't think, to be
 5    honest with you, and we had discussions about this, there may
 6    be some theoretical way to separate class certification issues
 7    appropriate under Rule 23 from the merits of the class claim
 8    issues, but in practice, your Honor, it is just impossible to
 9    do.  That has been made all that much more difficult by reason
10    of this Supreme Court's decision in Dukes, which clearly says
11    as a part of the Rule 23 --
12            THE COURT:  Basically you are saying let's forget it
13    and not do class discovery, let's do full-blown merits and
14    class discovery.
15            Is that what you are telling me?
16            MR. HENDERSON:  What I am saying is this, MSL's
17    counsel suggested that discovery should be focused on class
18    certification.
19            THE COURT:  Mr. Henderson, with all due respect, when
20    I ask a question, I like an answer.  When I ask a question that
21    is capable of a yes or no answer, I like a yes or no.  Forget
22    what they are saying, because you two can't agree on anything,
23    and you are purporting to say you agree with them when, if you
24    are saying you want full merits discovery, you are disagreeing
25    with them.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

Ccenmooc                     Conference

1          So yes or no.  Do you want to try to bifurcate or you
2    don't?
3          MR. HENDERSON:  I believe that the bifurcation that we
4    would propose is different than what the Court has thought
5    about and what the defendants have thought about.
6          THE COURT:  That is for sure.
7          MR. HENDERSON:  I would be happy to articulate that if
8    you would like, how we see bifurcation, the differences between
9    our view of bifurcation and others.
10         THE COURT:  OK.
11         MR. HENDERSON:  If you think about how a pattern and
12   practice case gets tried, there is a two-stage trial, a
13   two-stage process.  Basically it's been outlined in the
14   Teamsters decision in the Supreme Court.  The first stage of
15   the trial is class-wide liability.  So the only issues that get
16   tried in phase 1 are class-wide liability issues.
17         The Court decides then if there is a pattern and
18   practice or not, and, if so, if there is appropriate injunctive
19   relief.  If there is a finding of liability, that then leads to
20   stage 2 proceedings.  Stage 2 proceedings are then the
21   defendants have the opportunity -- the class members have the
22   opportunity to advance, assert their claims for individual
23   relief, and the defendants have the opportunity to oppose
24   those.
25         There is a presumption in favor of the class members,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

Ccenmooc                    Conference
1   but that presumption is rebuttable, and the defendants are
2   entitled to contest the individual class members' entitlement
3   to relief.  The bifurcation that we are talking about as we see
4   it would match that.  So the first stage of the trial --
5           THE COURT:  You are not talking trial.  Unless both
6   sides are willing to waive summary judgment motions -- look,
7   the reason we got into this, and I appreciate your catching up
8   but I'm getting a little upset that I've got a rotating cast of
9   characters, and I'm coming very close to saying lead trial
10  counsel must be at all court hearings.
11          Now I don't know if that's going to be one of you two
12  or whether that's Ms. Wippel in San Francisco, but the issue I
13  raised twice in this litigation, and this time I'm serious
14  about it, is that you can't have a schedule that says let's do
15  all discovery, then defendants are going to move for summary
16  judgment, and you are going to move for class certification at
17  the same time, which means if summary judgment is granted for
18  the defense, you are then going to say, well, it only binds the
19  five people here because there hasn't been certification or
20  whatever.
21          That doesn't seem to work, which is why, even though
22  you all convinced Judge Sullivan of that many years ago, I said
23  at the beginning of my involvement in the case I didn't think
24  that made sense.  I could not get your predecessor counsel from
25  your firm to agree to that, and I was sort of stuck with what
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

10

Ccenmooc                    Conference

1      Judge Sullivan had ordered.
2              When you all came back last time with Dr. Lewis and
3      all ready to start heading into the weeds of predictive coding
4      again, I said, look, I want to make sure that you're not
5      getting full class discovery as if the class were certified,
6      because the class hasn't been certified, nor do I want to have
7      to do discovery again.  So that if you are doing merits slash
8      should the class be certified discovery now and then you are
9      going to say once the class is certified then you need a lot
10     more discovery, I am not doing that.
11             If you want to say that because of Dukes and the
12     Teamster case and all of that you want enough merits-related
13     discovery for the merits of the five named plaintiffs and
14     whatever you do to amend the complaint on behalf of the
15     opt-ins, which has been discussed, and that if class cert. is
16     granted, at that point there will be no other discovery, I
17     might be convinced to go back to that.  But I'm tired of, in
18     the words of my friend Paul Grimm, you want everything and a
19     pony at all times.
20             MR. HENDERSON:  May I respond, your Honor?
21             THE COURT:  Yes.
22             MR. HENDERSON:  First, I think you can be assured that
23     lead counsel is going to be Ms. Rubenstein and myself, number
24     one.
25             Number two, I have been asked to get involved in this
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

11

Ccenmooc                        Conference

1   specifically to resolve these class issues and move it forward.
2   That is why I'm here today, your Honor.
3           Secondly, I think to try to directly answer your
4   question, the bifurcation that we're proposing really says, we
5   propose to do all class discovery associated with the issues
6   related to Rule 23 certification and the merits of the class
7   claims.
8           THE COURT:  OK.  Well that's not bifurcation.
9           MR. HENDERSON:  It is to this extent, your Honor.
10  Please let me disabuse you.
11          THE COURT:  OK.
12          MR. HENDERSON:  What I'm basically saying is when we
13  are done with that discovery and we move for class
14  certification, and MSL has indicated that they would be
15  interested in moving for summary judgment on the class claims,
16  not the individual claims, which is fine, they can do that, and
17  the Court can have before it both the certification question
18  and their summary judgment motion would say there is not enough
19  evidence to make out a pattern and practice case, therefore
20  summary judgment in their favor.
21          Those two motions are not incompatible.  They could be
22  before Judge Carter.  What I am saying is when that is done, as
23  far as plaintiffs are concerned, if we get full merits class
24  discovery, then we will not really have need of any further
25  discovery.  There may be a few issues that come up during the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

Ccenmooc                    Conference

1  briefing or class certification decision that the Court says we
2  should look at --
3           THE COURT:  Basically, so there's no bifurcation is
4  what you are saying.
5           MR. HENDERSON:  The bifurcation is this, your Honor.
6  If there is a finding of class-wide liability, then the
7  defendants are entitled to discovery as to the claims of the
8  individual absent class members.
9           In other words, if there is a finding of --
10          THE COURT:  So no discovery on your behalf, only
11 whatever discovery is asserted against you?
12          MR. HENDERSON:  I mean, well, to the extent they want
13 to contest the claims of individual class members for
14 individual relief, as I said, the Teamsters model says there's
15 a presumption for the class member and basically the defendants
16 can contest.
17          But those often, your Honor, are in stage 2
18 proceedings that are, as I think I indicated or I read in one
19 of the transcripts, sometimes there are agreements about how
20 those proceedings are going to be handled.  But my point is
21 that is very, very narrow discovery limited to the facts
22 relevant to the individual absent class members' claims for
23 relief.
24          THE COURT:  Well, that's not what you said in the
25 December 7 letter, and this is just not acceptable to the
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

```
         Ccenmooc                   Conference
1    Court.
2              So we are going to do either policy oriented discovery
3    or we are going to do all discovery with a significant either
4    cost shift or cost cutoff, and you can't have discovery as if
5    this is a class action, period.
6              So you decide, but either your position shifted in the
7    last week or somebody doesn't know how to write clearly,
8    because I certainly did not anticipate this position from the
9    December 7 letter.  This is a total reversal of your position,
10   and I'm tired of your wasting the Court's time.
11             MR. HENDERSON:  Your Honor, I understand your
12   frustration.  I simply want to say to you that we proposed this
13   as a way to get discovery done, to get the record prepared for
14   the class proceedings before Judge Carter.
15             THE COURT:  With all due respect, tell me how that is
16   consistent with your December 7 letter.
17             MR. HENDERSON:  We were making efforts in response to
18   your instructions to try to identify what discovery
19   specifically we would need for class certification.  If you
20   look, your Honor, it included both of our proposals --
21             THE COURT:  Everything in Exhibit A to your letter,
22   plaintiff's proposed discovery plan targeted for class
23   certification, put aside the cover letter, promotion, updated
24   policies, recruitment, hiring policies, pregnancy, updated
25   maternity leave, etc., policies, everything seems policy; and
```

14

Ccenmooc                    Conference

1   then the interpretation issues you said, well, we'll figure
2   that out after the 30(b)(6) depositions.  Now when I say,
3   great, let's put teeth on that, I get a letter that says you
4   want everything and a pony and a zoo now.
5          So you are wasting my time.  I'm not happy.  And the
6   answer is going to be if you want merits discovery, you can
7   have merits discovery limited to the issue of class
8   certification, not every individual who was ever promoted or
9   anything like that.  And we'll go back to the predictive coding
10  world, and there will be no additional discovery at the end of
11  it, period.
12         Is that what you want?
13         MR. HENDERSON:  Your Honor, may I respond?
14         THE COURT:  Yes.
15         MR. HENDERSON:  I think there is a fundamental issue
16  that hasn't been -- well, the difficulty, the fundamental
17  difficulty is what one says is appropriate merits class
18  discovery.
19         THE COURT:  I guess you changed your mind on that
20  between the 7th and the 14th.
21         MR. HENDERSON:  Actually not, your Honor.  But let me
22  explain first, and then I can address whatever differences
23  there are.
24         THE COURT:  OK.  First, stop.  One thing.  The only
25  trial counsel will be the three of you who are here.  Is that
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

15

Ccenmooc                    Conference

1   what you are telling me?  Because I'm tired of the changing
2   cast of characters, the changing position.  So if Ms. Wippel
3   wants to be trial counsel instead of pulling the strings from
4   California, if that's what's going on, then we can come here.
5   Otherwise, I don't want anything submitted from her.  I don't
6   want her to be here at trial if the case gets that far or I do
7   want her here.
8           But I have the feeling that between the departure of
9   your former named partner, I don't know what's going on, but
10  things keep changing, and enough is enough.
11          So are the two of you the only partner level -- and
12  I'm not even sure you are partners from your cards, I don't
13  really care -- are you two the ones who are going try the case
14  with Ms. Nurhussein, and that's it?  Yes or no.
15          MR. HENDERSON:  Yes.  We may be joined by some others,
16  but we are going to be lead counsel.
17          THE COURT:  OK.  And Ms. Wippel, who I would assume is
18  senior to you, is not going to be here at trial or she is?
19          MR. HENDERSON:  At this point we do not contemplate
20  that she would be.  It's Wipper.
21          THE COURT:  Wipper.  Sorry.  It's been a while.
22          OK.  Her pro hac vice is therefore ended.  No more
23  papers from her, no more ghost writing.  You two are in charge.
24  Write it.
25          OK.  Now that we have taken care of that, now you tell

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

Ccenmooc                     Conference

1   me what you want.  Forget how we got here.  Tell me what you
2   want.
3           MR. HENDERSON:  Thank you, your Honor.  I was trying
4   to make the point about what is merits, class-based merits
5   discovery.  The problem, your Honor, is and we tried to reflect
6   this in the outline we sent, but what we need is discovery with
7   regard to the manner in which the company treated the members
8   of the class as a whole.
9           THE COURT:  That is merits discovery.
10          MR. HENDERSON:  It is.  Well, it's on the class plan.
11          THE COURT:  OK.  So there can't be bifurcation is what
12  you are telling me?
13          MR. HENDERSON:  Between certification and merits, yes,
14  on the class issues.
15          THE COURT:  Let me be clear.
16          Without a class certified, you will get certain
17  discovery which we had previously discussed.  You will not get
18  discovery about what happened at offices outside the ones where
19  you've got named plaintiffs or any of the other things because
20  what you are trying to do is have your cake and eat it, too.
21          So if you want full discovery, there will be one round
22  of discovery, predictive coding, whatever else needs to be done
23  it will do it once and not again.  If that is what you want,
24  that is what I will allow, even though I think it is not the
25  best way to do it.  But I'm really tired of the way you are
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

```
        Ccenmooc                    Conference
 1   handling this.
 2              MR. HENDERSON:  May I ask for a clarification, your
 3   Honor.
 4              THE COURT:  Yes.
 5              MR. HENDERSON:  With respect to the discovery that --
 6   I have described what we need for class merits discovery.   The
 7   problem is, your Honor, that I think we share here is that
 8   there needs to be a record for the Rule 23 ruling so Judge
 9   Carter can make a decision.  That record has to be adequate so
10   that he can support that decision and has the record to make
11   the findings that he needs to make under Rule 23.
12              We have the burden of proving Rule 23 criteria,
13   including showing not just the policies and the outcomes, the
14   statistics, but we have the burden to show, the Supreme Court
15   says it includes how the policies connect or cause or create
16   the disparities.  To do that, as we indicated here, we need
17   discovery with regard to how those policies were interpreted,
18   how they were applied and how they were implemented with regard
19   to the class.
20              THE COURT:  You are going to get through that
21   depositions.  I am not giving you discovery of everybody who
22   was promoted over whatever is the statute of limitations period
23   until there is class certification.
24              So you want to do it your way, we'll do it your way.
25   But I am not giving you full-blown discovery as if the class
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
    Ccenmooc                 Conference
 1  were certified.
 2          MR. HENDERSON:  May I address that for a moment, your
 3  Honor.
 4          THE COURT:  No.  At this point enough is enough.  Take
 5  it to Judge Carter and let him decide.
 6          If you don't want to bifurcate in a way that is
 7  meaningful because of the overlap with merits, let me ask you
 8  this:  Looking at your document demands here, how is it you
 9  expect them to find this?  Are we having one predictive coding
10  round as to the quote-unquote merits/class discovery, and after
11  we have spent a few million bucks on that then we will do it
12  again for everything?
13          MR. HENDERSON:  No, your Honor.  In fact, I would
14  suggest that that is in fact the thing which will -- I read the
15  transcript.  I know you're concerned about doing it twice.  The
16  thing which is going to cause it to have to be done twice, your
17  Honor, is if you limit it only to the named plaintiffs the
18  first time, then it's going to have -- if the class is
19  certified, then it's going to be redone.
20          THE COURT:  We are not doing it twice.  Read my lips.
21          MR. HENDERSON:  I understand.  But what I am
22  suggesting --
23          THE COURT:  No, you are not understanding, so let me
24  take out the verbiage.  How do you expect -- let's take a look
25  at number D on your thing under pay.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

19

Ccenmooc                          Conference

1           All documents, including all e-mails, instant
2   messaging, or other electronic communications reflecting or
3   related to policies and implementation of policies and
4   decisions about compensation for PR professionals at MSL Group.
5           How do you want them to find those documents, and by
6   documents I'm including ESI.  Seriously.
7           MR. HENDERSON:  I believe, your Honor, this is done
8   routinely in class action.
9           THE COURT:  Counsel, answer the question.  How is it
10  you want them to find it?  Predictive coding, key word
11  searches, throwing things up in the air and seeing what falls
12  to the floor?
13          I mean, what?
14          MR. HENDERSON:  What we proposed, to try to be able to
15  focus a little bit on this, this is the 30(b)(6) proposal that
16  we had, that we would take 30(b)(6) depositions in each of
17  these policy areas and HR so that we can in the course of those
18  30(b)(6) depositions identify the documents that are associated
19  with the these policies and how they are administered and
20  implemented and any data that is generated in the company.
21          So we then have knowledge as to what the universe of
22  documents are that would be relevant to those policy issues.
23          THE COURT:  Your folks worked at the company.  If they
24  don't know how to identify documents, maybe we do this another
25  way.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

Ccenmooc                              Conference

1              Maybe you would get to take a 30(b)(6) deposition, we
2       go back to good old ancient New York practice, Rios v. Donovan,
3       New York State practice, where you have to take a deposition,
4       identify a document specifically, and then you get to ask for
5       that document.
6              MR. HENDERSON:  Well, your Honor, our proposal was to
7       try to identify the types of documents, the categories of
8       documents that are associated with, that are generated by these
9       policy and practices so we could then all speak more
10      intelligently about precisely what --
11             THE COURT:  Do you really not know that from your
12      clients?
13             MR. HENDERSON:  Your Honor, the clients worked there.
14      They didn't run the place.  And the point is, in employment
15      cases, it is always the case that the employer knows what the
16      documents are and the employees do not.
17             So it's long been recognized in these cases that the
18      defendants have access to all the information and the
19      plaintiffs don't.  We are trying to propose this 30(b)(6)
20      approach as a way of identifying categories of documents that
21      then reasonably we could identify.
22             THE COURT:  You have a lot of those document
23      categories here not identified as dependent on a 30(b)(6)
24      decision.
25             So let's move down to pregnancy for a moment.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ccenmooc                    Conference

1              Page 3, your letter, 3A:  All documents, including all
2     e-mails reflecting or relating to policies and implementation
3     of policies regarding family medical leave and pregnancy leave
4     at MSL.
5              policies I understand.
6              If implementation means every time someone asked for
7     pregnancy leave you got to have every communication about it,
8     then that's well beyond, and maybe that is not what you meant,
9     but what do you mean about reflecting or relating to
10    implementation of policies?
11             MR. HENDERSON:  So what are the documents associated
12    with the process that the company has for receiving and
13    addressing requests for leave.
14             THE COURT:  That is not an all-documents request, is
15    it?  If you want to know, you know, what form does somebody
16    have to fill out to get pregnancy leave and what does the form
17    look like that comes back in response, that is either a
18    document sufficient to show or it's a deposition.  I don't know
19    what you all were thinking when you wrote this.  That's what
20    gives me the greatest difficulty.
21             Next page, page 4, C, the fourth bullet:  All
22    documents that reflect, discuss, refer or relate to the
23    flexible schedule plaintiff O'Donohue worked from 1996 until
24    termination.
25             That is a class request?
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

22

Ccenmooc                    Conference

1            MR. HENDERSON:  She is a named plaintiff, your Honor.
2            THE COURT:  I understand that.  This is class
3    discovery that you say you want.  What on earth are we doing
4    here?
5            MR. HENDERSON:  She is a class rep, your Honor, so it
6    would be appropriate discovery for the class certainly.
7            THE COURT:  Why?  It's the merits --
8            MR. HENDERSON:  Because one of the issues before the
9    Court on Rule 23 is typicality, for example, and adequacy of
10   representation.
11           We've got to be able to speak to these individual
12   plaintiffs vis-a-vis the class.
13
14           THE COURT:  Basically it's full discovery about the
15   named plaintiffs and partial discovery as to the merits of the
16   absent class members.  And how much money is this going to cost
17   and how much are you willing to pay?  Are you willing to pay
18   for all of this?  Let's go the Boeynaems route maybe.
19           MR. HENDERSON:  I don't believe that cost shifting is
20   appropriate with respect to class discovery.
21           THE COURT:  Of course not.  The Court did it in
22   Boeynaems, the LA Fitness case.  I assume since it is your
23   industry and that is plaintiffs' class action cases, you're
24   probably familiar with it, are you?
25           MR. HENDERSON:  I am not specifically familiar with
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

23
```
      Ccenmooc                    Conference
 1    that decision, your Honor.
 2              THE COURT:  OK.
 3              MR. HENDERSON:  If I might --
 4              THE COURT:  Do you want to try this?  Do you want to
 5    try for the policy-related documents followed by a very limited
 6    number of 30(b)(6) depositions, plus whatever you have already
 7    gotten, which on pay was quite extensive.  And I don't think
 8    there's going to be an argument that you need to update it
 9    constantly.  You the details for most of the class period.
10    That is enough.  You have an extensive amount of information
11    that you used for the collective action.
12              Yes, the standard is different for Rule 23, but you
13    don't need to update everything you had there.
14              So if you want to try for the policy documents and a
15    small number of 30(b)(6) depositions, that may then get to
16    limited discovery on implementation of policies.  That's what I
17    was figuring you were doing.  Is that something that you want
18    to pursue?
19              MR. HENDERSON:  Your Honor, if I understood you to say
20    that that we would only have a limited number of 30(b)(6)
21    depositions that we could take and we would be limited to
22    policy documents and we would not get documents, for example,
23    communications about the interpretation of those policies or
24    how they were implemented, how those policies are administered
25    across the class, then we could not agree to that, your Honor,
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

Ccenmooc                    Conference

 1  because we would have to have evidence as to how the company
 2  treated the class as a whole in order to meet our burden on
 3  Rule 23 certification and to prove the merits of the case, on
 4  the class claims, not the individual claims, but the class
 5  claims.
 6          THE COURT:  Then there is no point in bifurcating.  If
 7  you don't want to bifurcate, you get one round of discovery,
 8  and that's it, and you don't get it as to, you know, absent
 9  class member specific information.  You get a certain amount of
10  policy implementation and that's it.
11          If you want to go to Judge Carter and get this
12  clarified by him before we go down an expensive road, that is
13  fine.  But I am not doing this twice.  I am not doing it twice.
14          MR. HENDERSON:  Your Honor, we don't want to do it
15  twice either.  I just want to be clear.
16          THE COURT:  You do, but that is OK.
17          MR. HENDERSON:  We actually do not, your Honor.  If I
18  haven't made that clear, I need to.  But we do not want to do
19  merits discovery twice.
20          THE COURT:  Right.
21          MR. HENDERSON:  The only discovery, as I've indicated
22  today, that we think would need to be done after class merits
23  and class certification discovery is discovery regarding
24  individual claims if the pattern and practice is proven.
25          THE COURT:  There is not going to be additional
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

25

```
         Ccenmooc                 Conference
 1   discovery.  So you figure out how to get where you want to go.
 2          MR. HENDERSON:  If I might raise one other thing, your
 3   Honor, because I think we ought to have this on the table as a
 4   part of the discussion.  One of the proposals as well from MSL
 5   we understand at least tentatively, I don't want bind Mr. Evans
 6   to this because we just had an initial discussion with
 7   Publicis, because they have both indicated that they believe
 8   that they want and are entitled to take, to do full discovery
 9   full merits discovery with each --
10          THE COURT:  What they want really doesn't matter
11   because what you want is full merits discovery, so I guess
12   that's what we are doing.
13          MR. HENDERSON:  I was trying to come to a point of
14   potential agreement, your Honor.  I'm anxious to get those out
15   where we can.  I know you would like to hear about them where
16   they exist.
17          THE COURT:  OK.
18          MR. HENDERSON:  They have proposed full merits
19   discovery with regard to the 26 opt-in EPA plaintiffs, with the
20   Equal Pay Act claims, including depositions.  We were just at a
21   hearing in front of Judge Carter, and they described also that
22   they that would involve deposition of comparators, document
23   discovery, e-mail discovery and so forth with regard to those
24   26 opt-in plaintiffs.
25          We could take the position that that should be
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

Ccenmooc                    Conference

1   deferred, there are also putative class members and so forth.
2   But we are willing to agree that that discovery could go ahead
3   along with what we would request to be the class merits
4   discovery.  So we are prepared to agree to that with the other
5   side's --
6          THE COURT:  With all due respect, that's meaningless,
7   because unless -- and I will now hear from the defendants --
8   unless somebody comes up with an appropriate way to limit the
9   class-related merits discovery so it is not all the merits
10  except for eventual damages as to particular, as to everybody
11  in the class, then it seems to me you are going to do
12  full-blown discovery, period.
13         So let me hear from the defense.
14         Thank you.
15         MR. HENDERSON:  Thank you, your Honor.
16         MR. BRECHER:  Thank you, your Honor.
17         I think that the biggest difficulty that we are having
18  is the inability to articulate exactly what the class theory is
19  so that we can target the discovery to that theory.  If the
20  theory is that the company discriminated against every woman in
21  every sort of way, then there is no ability to bifurcate or
22  limit the discovery.
23         If the discriminatory policy or practice is a written
24  policy that they are saying has been implemented in a
25  discriminatory way, we could target the discovery to that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
         Ccenmooc              Conference
 1    policy:  It's the FMLA policy, it's the mission critical
 2    reports, it's the approval process for bonuses.  But that is
 3    not what they are alleging.  They haven't articulated any class
 4    theory to permit the Court to direct the discovery to that
 5    theory.  That's the problem that we are having.
 6           So when we keep saying class issues, we are going to
 7    have discovery as to class issues, we can't identify it because
 8    there's no theory.
 9           We all agree there should be class certification
10    discovery, but when we can't articulate what the theory is, we
11    can't articulate or identify what the discovery should be.  And
12    that's where this case has been a problem from day one.
13           THE COURT:  What is the class theory?
14           MR. HENDERSON:  Your Honor, it was a 95-page very
15    specific complaint and there has already been conditional
16    certification of the EPA claims.
17           After this amount of time I think it is a bit
18    difficult to understand why defendants keep asking what the
19    theory of the case is.  We have been very clear that it is
20    promotion policy, it is compensation policies -- I'm sorry,
21    compensation, promotion, and hiring and when hiring is used and
22    when promotion is used to fill vacancies, and the
23    administration of the company's policies regarding pregnancy.
24    We say those policies and the way in which they have been
25    administered by a very close, small group of decision makers,
```

28

Ccenmooc                    Conference
1  discriminates against women.
2              I don't know how to be any clearer about it than to
3  say, as we go on -- I mean, there are not too many 95-page
4  complaints that I have seen, your Honor.  But my point is we go
5  on at length as to the policies in general, how they were
6  administered, how they were applied, and how they have been
7  applied in particular to the named plaintiffs.
8              So I am at a loss as to how it is the defense counsel
9  cannot figure out what the claims are.  We have been very clear
10 about it.
11             THE COURT:  Go ahead.
12             MR. BRECHER:  Judge, the length of the complaint
13 doesn't add any clarity to it.
14             What he just articulated, promotion policies,
15 compensation, hiring, administration of pregnancy, that's the
16 theory?  That's the class theory.  How are we to target
17 discovery to those things.  That would mean every promotion,
18 every hiring, every compensation decision, every decision
19 relating to pregnancy.  That's why we are going in this circle
20 back and forth, because we can't articulate a theory, target
21 the discovery to the theory and move the case along.
22             THE COURT:  OK.
23             MR. BRECHER:  If his explanation clarified for the
24 Court, I must be missing something.  It doesn't clarify it for
25 me.  It is vague, and that's the problem with the discovery.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

29
```
     Ccenmooc                 Conference
 1          THE COURT:  The Court orders as follows:
 2          We are going to bifurcate in my way, subject to your
 3   taking objections to Judge Carter.  So you can have document
 4   discovery, including ESI, as to policy documents and
 5   implementation, interpretation if it is from that so-called
 6   senior management group on a general basis.  In other words,
 7   not, you know, Irene Adler applied for pregnancy leave, let's
 8   make sure to fire her; but our pregnancy leave policy is X, we
 9   interpret X to mean X, you know, or X plus 1.  That's what you
10   get.
11          You could then take a limited number of 30(b)(6)
12   depositions, one HR, one senior exec, and I'll let you tell me
13   that perhaps you need one more two more.  If you can identify
14   other specific types of documents beyond what you already have,
15   I will consider granting you that.
16          So you will do a new document request.  How soon?
17   Comporting with what I have just ordered, we are going to say a
18   very limited time period to get this done and get the class
19   certification motion in front of Judge Carter.
20          MR. HENDERSON:  Your Honor, I am a little unclear on
21   the last part.  You said propound new requests.  Would that be
22   after the 30(b)(6)'s, your Honor?
23          THE COURT:  No.  Whatever policy documents you want
24   now, I want specific requests limited to that, and if you go
25   beyond it, they are going to object, and I'm not going to parse
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
                                                        30
     Ccenmooc               Conference
1    it.  If you go beyond what I have just allowed you to take at
2    this point and if you have a request that's overly broad, I am
3    not going to narrow it, I'm not going to interpret it, I'm
4    going to say the objection is sustained.
5              Can you get that done within a day?  A week?  What?
6    Because that will start their time, you will get the documents
7    responsive to it within 30 days, no extensions, and we will
8    start the 30(b)(6) depositions and then we will see if any
9    supplemental document requests are appropriate.
10             MR. HENDERSON:  I see.
11             After 30(b)(6)'s there would be another opportunity if
12   appropriate?
13             THE COURT:  You can't ask for it if you don't know
14   what to ask for.  You have said you don't know what to ask for
15   in specific terms other than when you talk to the 30(b)(6)
16   witness.  If you want to try talking to your clients and know
17   that for pregnancy leave they've have to file form PG-1 and you
18   want some samples of that or something, whatever, but not the
19   sort of requests that are in your December 13 letter.
20             MR. HENDERSON:  Just so I understood, you gave an
21   example, I think to clarify what you meant, where you said
22   implementation or interpretation documents --
23             THE COURT:  If it is a high level and general
24   interpretation.  Not we interpret Ms. Adler -- and I'm using
25   names from the Sherlock Holmes canon, you may or may not have
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ccenmooc                    Conference
1   figured that out, fictitious names -- Ms. Adler applied for
2   pregnancy leave, our policy is X, but in her case it's Y, no.
3           The only interpretation or implementation documents
4   you will get are ones that in essence are policy documents
5   themselves.
6           MR. HENDERSON:  Just so I understand, that would
7   preclude, for example, a message that said Ms. Adler applied
8   for pregnancy leave, we should terminate her?
9           THE COURT:  Yes.
10          MR. HENDERSON:  That would not be encompassed within
11  that?
12          THE COURT:  That is correct.
13          MR. HENDERSON:  OK.
14          And your question to me was how soon might we prepare
15  all of these requests.
16          THE COURT:  It is basically taking what you wrote in
17  this December 14 letter and limiting it to legitimate policy
18  document requests.  I assume you could do it pretty quickly.
19          MR. HENDERSON:  I'm getting assistance here from
20  counsel.
21          Two points.  One, I assume that the ruling today does
22  not supersede previous documents that the Court has ordered to
23  be produced.  So this would be, you are not going back --
24          THE COURT:  I have no idea what else you are talking
25  about because when we go back to predictive coding, we'll go
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

Ccenmooc                    Conference
1    back to that.
2              MR. HENDERSON:  No, I'm sorry.  I am talking about the
3    particular document requests that have previously been before
4    you and you have determined that the documents should be
5    produced.  You are not reversing those.  What we are talking
6    about here is in addition to the discovery that's already been
7    ordered.
8              THE COURT:  No.
9              Whatever documents they have given you, because you
10   had extensive discovery relating to the collective action,
11   whatever you have, you have.  Whatever I ordered produced via
12   the predictive coding system that you have now put on hold is
13   still on hold.  Those rulings will hold, but you are not
14   getting them until after the class is certified.
15             MR. HENDERSON:  What about documents that you have
16   ordered to be produced other than through predictive coding?
17             THE COURT:  Such as?
18             MR. HENDERSON:  I'm told that among the list we have,
19   there are categories, there are some categories in there where
20   you have already issued a ruling that they should be produced.
21             THE COURT:  I assume they were produced.  If not, you
22   will have to give me something specific.
23             MR. HENDERSON:  All right.
24             THE COURT:  Ms. Rubenstein, why don't you just take
25   over for a minute instead of whispering to him.  You both can
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

33

Ccenmooc                    Conference

1    talk, you can tag team.  I am OK with that, whatever will get
2    us to an answer quickly.
3            MR. HENDERSON:  Two things.  With regard to updating,
4    your Honor, I just wanted to be clear.  The rules, of course,
5    require seasonable --
6            THE COURT:  Counsel, no.  Read my lips, no.
7            Whatever you have, you have.  If they make an argument
8    in opposition to class cert. that the payroll record they gave
9    you when we went through some of that in laborious detail is
10   too old to show that the class should be certified, then you
11   will come back to me and their hand will be royally slapped.
12   Otherwise, use what you've got.
13           MR. HENDERSON:  I was only trying to make this point,
14   your Honor:  That every party has the duty under the rules
15   seasonably to supplement their responses if there's something
16   that is different or is now incorrect.
17           THE COURT:  Correct.
18           MR. HENDERSON:  Correct?
19           THE COURT:  Yes.
20           MR. HENDERSON:  I was just talking about that, your
21   Honor.
22           THE COURT:  All right.  But that is different than
23   saying we have certain payroll information as of 2011 and now
24   you want it as of 2013.  So if they gave you a policy document
25   previously and all of a sudden they have changed their policy,

34

Ccenmooc                    Conference
1   yes, they have to supplement on that.  I don't think that's
2   what you are talking about.
3           MR. HENDERSON:  That is actually what I was talking
4   about, your Honor.
5           THE COURT:  So if the Janus book or whatever has
6   changed --
7           MR. HENDERSON:  If the policies have been amended or
8   changed in any way, they would have a duty to supplement.
9           THE COURT:  Put that in your request.  That's the
10  simplest way to deal with it.  But policy, not lists of people
11  and all of that nonsense.
12          MR. HENDERSON:  All right, your Honor.
13          Then, with regard to the time, I think we would like
14  at least a week to try to put this together and do a good job,
15  your Honor.
16          THE COURT:  OK.  December 21.
17          Let's talk about the 30(b)(6) for a minute.  One HR
18  person, one senior exec from that organization team.  What else
19  do you think you would need?
20          MR. HENDERSON:  What we have indicated, your Honor, is
21  we would like to do a 30(b)(6) with respect to each of the
22  three policies areas.  That is, the compensation policies, the
23  administration of those, the promotional one and the hiring
24  policies associated with, you know, filling vacancies whether
25  by promotion or hiring.  The third would be with regard to the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

Ccenmooc                    Conference

1   pregnancy leave policies.  And then an HR one so that we make
2   sure we get all the HR policies and sort of the ways in which
3   HR intersects with the decision makers in these policy areas.
4           THE COURT:  All right.  So, looking at it from the
5   policy perspective, plus HR, you have one senior exec who can
6   handle all of that, or will it be multiple on the defense side?
7           MS. CHAVEY:  Your Honor, we are going to have to
8   determine that, but I think that the HR person and probably
9   somebody from finance would cover many of these topics.
10          THE COURT:  All right.  So I am assuming two, maybe
11  three at most, 30(b)(6) depositions.
12          So December 21 you are going to get the requests.  I
13  know we are hitting Christmas.  I would like to get objections
14  within 14 days, which gets us to about January 4.
15          Is that doable?
16          MS. CHAVEY:  Yes.  I do have some questions, your
17  Honor, that I would like to ask at the appropriate time.
18          THE COURT:  OK.  Now is probably it.
19          MS. CHAVEY:  OK.  Thank you.
20          One of them is, you had directed plaintiffs' counsel
21  to craft document requests pertaining to implementation by the
22  senior management group.  That is one characterization that we
23  are not sure what it means in this case, because it does seem
24  to have taken on some different people at different times.  So
25  we would like that clarified.  I don't know if this is the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

36

Ccenmooc                    Conference

1   appropriate time or that would be done in the requests
2   themselves.
3           THE COURT:  They can do that in the requests by
4   identifying by name or by position who was in the senior
5   management group, and/or you can do that in your response
6   because it's really going to be an issue of who you are going
7   to go to, to get the policies.
8           So the two sides may want to just talk about that, but
9   we are not going to the office manager or whatever it's called.
10  We are talking about the president, the CEO, and the people
11  that are alleged to be the conspirers here, or whatever you
12  want to call it, the people who instituted allegedly improper
13  policies.
14          MS. CHAVEY:  Judge, also in this conception of
15  discovery what we want to be sure we are allowed to do to
16  protect our clients' interests is, if there is a class
17  certification motion that uses in support of its arguments
18  declarations of 20 people, we would like to be able to have the
19  opportunity to take discovery of those people.
20          They may be opt-in plaintiffs.  They may be other
21  people.  We saw in connection with the conditional
22  certification motion there were declarations submitted of
23  people who were not within the collective action definition or
24  frankly within the class action definition.  So we don't want
25  to be precluded from defending against whatever allegations or

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ccenmooc                    Conference
```
 1   assertions might be made.
 2            THE COURT:  By the end of January.  So let's put an
 3   exact date on it.  By January 31 each side will identify their
 4   witnesses for the class cert. motion and op.  That goes both
 5   ways.  That means if you identified John H. Watson for the
 6   first time or whatever on the defense side, they get to take
 7   his deposition, even if that goes beyond our 30(b)(6)-ers, etc.
 8            And you can only name people within your own control.
 9   So the defendants cannot say, you know, we are going to use
10   Sherlock Holmes, the new CFO of MSL, because that's just a way
11   around my ruling.  But if you are going to put up certainly
12   your plaintiffs and they haven't already been deposed or some
13   employee that has said they will to testify for you, then they
14   will be fair game for deposition.
15            MS. CHAVEY:  By the same token, your Honor, if there
16   is say let's say an opt-in plaintiff who submits a declaration
17   or is identified as anticipated to submit a declaration in
18   support of the class certification motion, if we don't know
19   that until January 21, we might not know to list, for example,
20   that person's manager or somebody else who may be related to
21   the allegations that that person makes.
22            THE COURT:  You will each get a little chance within
23   two or three days to do a rebuttal list of that because the
24   30(b)(6) depositions will still be going on at that point
25   anyway.  We will give you a week, so that's February 7 to do
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

38

Ccenmooc                          Conference

```
 1    any further responsiveness, cleanup, whatever it may be.
 2             MS. CHAVEY:  Your Honor, as Mr. Henderson has advised
 3    the Court, the parties do agree to proceed with discovery on
 4    the Equal Pay Act claims.  We would like to prepare our motion
 5    for decertification of the collective action.  So we would like
 6    to proceed on a parallel track really to the Title VII class
 7    action.  We would like to proceed with discovery on the Equal
 8    Pay Act claims.
 9             THE COURT:  Is that going to then open up that they
10    need discovery of you on the Equal Pay Act claims?
11             MS. CHAVEY:  We anticipate that it will, as
12    Mr. Henderson alluded to, we were discussing before Judge
13    Carter earlier today our position that because six of the
14    opt-in plaintiffs have signed releases of all claims --
15             THE COURT:  Is that all we are talking about, the
16    release issue, or --
17             MS. CHAVEY:  Not exactly, because Judge Carter held
18    that those issues should wait until a summary judgment motion.
19    So, rather than decide issues just relating to that discrete
20    issue now, he ruled that that would be considered only at the
21    end of really full-blown discovery.
22             THE COURT:  I am going to put a pin in that, because
23    on the one hand you are each saying you agree, on the other, I
24    have my doubts, both because of the general nature of this case
25    and because they may agree that you can take discovery, but
```

Ccenmooc                    Conference

1    that's going to just open the door that they need discovery as
2    well, I think.  But if you can work it out so that there is
3    efficiency here, either to go simultaneous with this or
4    obviously there will be a period of time while the class cert.
5    motion is being briefed and then is under consideration by
6    Judge Carter, that might be a good time for this.
7          If you all can agree -- emphasis on agree -- on a way
8    to do this that is not going to put us back into the doing
9    predictive coding or key word searching or whatever twice, I'm
10   OK with that.
11         I really do like to move cases along.  This case is an
12   exception because -- I will leave it as because.  Work with
13   Mr. Henderson and Ms. Rubenstein.  If you can actually reach an
14   agreement on that you will report back to me in writing that
15   there is such an agreement and what it is and we'll go from
16   there.
17         If you can't, I will probably say we are not going to
18   do that now, but we'll see how that plays out.
19         MS. CHAVEY:  Judge, we would also ask the Court to
20   indicate how many document requests the plaintiffs are
21   permitted to prepare.
22         THE COURT:  How many is useless.  The real issue is --
23   I mean?  How many policies do you have.  If we are limiting
24   it --
25         MS. CHAVEY:  We believe we have produced them all.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
                                                        40
          Ccenmooc              Conference
 1              THE COURT:  I understand that, which is why this all
 2       may be going in circles.  Therefore whether they ask you in one
 3       document request that says, please give me all policy documents
 4       about promotion, pay, hiring and pregnancy leaves and the FMLA
 5       and/or break that down into 5 or 50 it doesn't much matter.  So
 6       you all may want to talk further about this.
 7              MS. RUBENSTEIN:  Your Honor, I have just one question
 8       for clarification, because at the last hearing in the context
 9       of the predictive coding discussion, and recognizing that
10       because we are currently representing opt-ins, including
11       current employees, the date was moved up.
12              I believe your Honor said a few moments ago that with
13       respect to any new document requests that what we've got is
14       what we've got, to use your Honor's words.  I think I would
15       like to clarify that.
16              I think that was the defendants' suggestion that the
17       date was moved up to, the operative date to November 2012, I
18       believe in terms of what the documents, the discovery that we
19       would be entitled to for our opt-ins.
20              THE COURT:  I am not sure what you're referring to.
21       Ms. Chavey?
22              MS. CHAVEY:  Judge, the plaintiffs had presented an
23       argument months ago that the document requests on MSL should be
24       considered to have an end date that was moving.
25              Your Honor ruled that the documents that needed to be
                     SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

41

Ccenmooc                    Conference

```
 1   produced would have an end date of February of 2011, when the
 2   lawsuit was filed.  The plaintiffs appealed that discovery
 3   ruling to Judge Carter, who upheld your ruling.
 4              We have not indicated that we think that the date
 5   should be moved up.  It would be a never-ending target if we
 6   keep moving it up.  The fact that there are opt-ins in the case
 7   doesn't change that as far as the Title VII policy-based
 8   challenges that the plaintiffs are making.
 9              THE COURT:  I am not sure what you are asking me,
10   Ms. Rubenstein.  Can you be a little clearer.
11              MS. RUBENSTEIN:  Yes.
12              My recollection, I think it's very specific, is that
13   we discussed the fact that we have current employees.  We are
14   currently representing women who are working there.  And to the
15   extent we are entitled to discovery that is relevant to them, I
16   believe my understanding was that the Court agreed and the
17   defendants agreed --
18              THE COURT:  Whatever I ruled, that's the joy of the
19   transcript.  It is there.  If what you are saying is you want
20   any of that discovery now, the answer is no.  We are doing
21   class discovery subject to whatever else you all agree on on
22   individual party discovery, equal Pay Act or anything else.
23              In addition, you said you may be amending the
24   complaint to assert Title VII claims for some of the opt-ins.
25   If you are going to do it as a fallback or anything else, let's
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
       Ccenmooc                  Conference
 1     do it.
 2            MR. HENDERSON:  On that issue, your Honor, just very
 3     briefly, the rule is that the pendency of the class action
 4     initiated by Ms. Da Silva tolls the statute for any putative
 5     class member.  If class is denied, then it begins to run again
 6     and they have the choice of pursuing an individual case.  We
 7     don't intend on pursuing the individual cases of the plaintiffs
 8     that got it.  They are putative class members.  They are
 9     parties.
10            THE COURT:  All right.
11            MR. HENDERSON:  They have Title VII claims.  That's a
12     class thing, but they are not asserting them individually.
13            THE COURT:  I take it your saying if class
14     certification is denied, you may amend at that point or you may
15     not.
16            MR. HENDERSON:  They have the choice at that point to
17     pursue their individual claims or not.
18            THE COURT:  All right.
19            Since we are not doing discovery on individual claims,
20     it doesn't much matter.  If you take objections to Judge Carter
21     and this gets turned around in any way, then we will have to
22     see what we are doing on that.
23            At the moment I guess we will find out within 14 days
24     what you are doing.  If you want to tell me now, that's fine,
25     because I would probably stay everyone's obligations while you
```

Ccenmooc                    Conference

```
 1   deal with Judge Carter on this just in terms of efficiency.  If
 2   you want to wait and ask for that on the 14th day or whenever
 3   you decide to file the objections, that's OK, too.
 4             MR. HENDERSON:  In that regard, your Honor, I mean,
 5   first of all, I don't know as I stand here now.  We have to
 6   evaluate this and see.
 7             THE COURT:  OK.
 8             MR. HENDERSON:  In connection with evaluating that,
 9   we, of course, have a transcript of the proceedings today.  I
10   guess my question is, do you intend to memorialize your rulings
11   in an order?
12             THE COURT:  No.
13             MR. HENDERSON:  In a written order.
14             THE COURT:  No, unless I tell you otherwise.  Because
15   on predictive coding there is a greater good perhaps or a
16   greater bad to having written opinions out there, so that
17   whatever is done is accurately out there as opposed to what
18   some bloggers do with it.  There I might be inclined, even
19   after a ruling from the bench, to issue a written opinion or
20   order.
21             For the run-of-the-mill discovery, as I told your
22   predecessor, Ms. Wipper, in the first and second hearings, the
23   transcript rules, and the 14 days calendar days issue begins
24   running immediately from the conference time, regardless of how
25   long it takes you to get the transcript.
```

44

Ccenmooc                    Conference

1           So within 14 business days of today, which is probably
2      the 28th of December, if you want to file objections with Judge
3      Carter, go right ahead.
4           MR. HENDERSON:  I just wanted to make sure.  In
5      evaluating your ruling today, we have the transcript, that's
6      it.
7           THE COURT:  Yes.
8           MR. HENDERSON:  OK.
9           THE COURT:  That is correct.
10          Anything else other than we are going to pick a
11     January date?
12          MS. CHAVEY:  Two other things I would like to raise,
13     your Honor.
14          One is on the issue of the potential individual Title
15     VII claims of the opt-in plaintiffs, plaintiffs' counsel at the
16     last conference had suggested that they may be asserting those
17     claims or would be --
18          THE COURT:  What Mr. Henderson just said is they are
19     holding off on that until class certification.
20          MS. CHAVEY:  What we would ask, on the individuals who
21     are represented by plaintiff's counsel, unlike another absent
22     class member who is not represented by plaintiffs' counsel, we
23     would ask the Court, those are the people who asserted Equal
24     Pay Act claims, we would ask the Court not to, in other words,
25     to order that the tolling that would otherwise apply to those

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

45

Ccenmooc                        Conference

1  people on their individual Title VII claims doesn't apply,
2  because what we have otherwise is the specter of individuals
3  with Equal Pay Act claims and --
4          THE COURT:  Mr. Chavey, maybe I'm missing something,
5  but absent either of you filing objections to what I have just
6  done, we are having limited class certification discovery.
7          We are then going to stop everything except what you
8  all agree on while Judge Carter decides the class cert. motion.
9  If he grants the class cert. motion, what I understand
10 Mr. Henderson is saying is the opt-in EPA plaintiffs are no
11 different than the absent class members.  They are covered by
12 the Title VII class action.
13         If class certification is denied, then they are also
14 similar to everybody else out there except they are a little
15 closer to the party, and they will either assert their
16 individual claims then, and you will certainly remind me, and
17 we will make sure that's done before we go back into predictive
18 coding mode so we know who has an individual Title VII claim
19 and who doesn't.  Unless I'm missing something, I think the
20 issue you are raising is largely moot.
21         MS. CHAVEY:  The only point that I was making is that
22 those individuals are not like any other putative class member
23 because they are represented by class counsel on the Equal Pay
24 Act claims.
25         THE COURT:  So?  If you want to give me some case law
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

46

Ccenmooc                    Conference

1  that says that you want me to rule now that they don't have a
2  further toll or they would have had the toll up through either
3  their opt-in date or when you make your motion, it seems like
4  an entire waste of time.  But if there is case law that says
5  they are different folks and it's worth making a motion, you
6  will make the motion, although I think that motion, if it's
7  substantive, goes to Judge Carter.  So if you want to bother
8  him with that motion, do what you need to do to get his
9  permission.
10            MS. CHAVEY:  Thank you.
11            The last issue is we would just ask the Court to set a
12 briefing schedule for the class certification.
13            THE COURT:  It is kind of hard to do because we have
14 to finish the 30(b)(6) depositions.  As soon as I know that
15 document production is complete, which I am assuming is going
16 to be January 21 or sooner, and you then tell me and you have
17 now scheduled the two, three, 30(b)(6) depositions, we'll then
18 set a date for when there have to be any follow-up document
19 requests based on the 30(b)(6) depositions, and they better be
20 very targeted and specific.
21            Then when that's done we'll set a date for the motion
22 schedule.  It's kind of premature to do that now.
23            MR. EVANS:  Your Honor, if I may, I want to clarify
24 those rulings with respect to the scope of the discovery apply
25 to Publicis group as well?  My own position, and I stated this

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

47

Ccenmooc                     Conference

1   to Mr. Henderson before, particularly in light of the scope we
2   have identified here today, is that that has all been done as
3   part of the jurisdictional discovery issues.  We produced
4   policies kept back and forth and we have already had a
5   deposition on those policies.
6          To the extent they want to include additional
7   information on Publicis, I assume that would fall under the
8   same schedule.
9          THE COURT:  It would.  Although I can't imagine that
10  there is anything else.  Is there anything like that
11  contemplated?
12         MR. HENDERSON:  Your Honor, what we had agreed when we
13  spoke last week or this week.
14         MR. EVANS:  It was Wednesday, two days ago.
15         MR. HENDERSON:  A couple of days ago.  Because the
16  decision just came down, we've got to go back and take a look
17  at what we have requested and what remains outstanding.  My
18  understanding is that the discovery that was permitted against
19  Publicis was very -- it was specifically defined as those going
20  to jurisdictional issues.
21         THE COURT:  Yes.
22         MR. HENDERSON:  So I assume that.
23         THE COURT:  The other issue here is you're largely --
24  I am not sure what the term is, you're largely having them in
25  here as the deep pocket, not that a deeper pocket is needed,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

48

Ccenmooc                    Conference

1    but that they are running MSL and they are the employer in that
2    context.
3            I doubt that there is much that you need that you
4    don't already have for class certification, because the class
5    are employees of MSL however much they are affected by
6    Publicis' policies, but if you need to Publicis policy
7    documents, you know, as to how they're treating MSL and only
8    MSL, meaning not how they're treating the XYZ affiliate, ask
9    for it, but it will be on this schedule.
10           MR. HENDERSON:  Well, that was going to be my next
11   question, whether we could have a little more time with respect
12   to Publicis, because this is all new since the judge issued --
13           THE COURT:  No.  It's policies.  If they have any
14   policy documents about pregnancy leave at MSL, if you haven't
15   already gotten that, ask for it.  I don't understand what else
16   you might want, and I'm trying to keep this moving.
17           MR. HENDERSON:  I think in addition to the policy
18   documents, the record, I believe, reflects that, in fact,
19   Publicis executives were actually making and approving
20   decisions with regard to compensation for class members.
21           So it is not just the overarching policies.  They are
22   among the decision makers that I think you referred to.  That
23   is, the people that the complaint alleges were making the
24   discriminatory decisions.
25           THE COURT:  Right.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

49

Ccenmooc                    Conference

```
 1            MR. HENDERSON:  So it's not just whatever policies
 2   they have, but in fact their actions in doing this.
 3            THE COURT:  Again, it's going to be policy oriented,
 4   not individual.  The fact that they approved a pay raise for
 5   Mr. X and didn't approve it for Ms. Z who is not a plaintiff,
 6   we are not doing this as if it's full-blown, everything
 7   discovery.  You are going to get their policy decisions as to
 8   why they did what they did with MSL, and we are going to move
 9   on.
10            MR. HENDERSON:  Thank you.
11            MR. EVANS:  Your Honor, I would only point out that's
12   all been done.  We answered discovery with respect to all of
13   that.  We had a 30(b)(6) deponent who talked about the approval
14   process at a high level.  Insofar as the requests are
15   duplicative, I assume we are not expected to do it again.
16            THE COURT:  That is correct --
17            MR. EVANS:  Thank you, your Honor.
18            THE COURT:  -- unless there is something new or
19   different since.
20            So, with the objections coming in January 4, let's
21   give you a day or two to try to get together and work anything
22   out that can be worked out.  How about either the afternoon of
23   January 8 or the morning of the 9th does that give you enough
24   time.
25            The problem is I am unavailable the 10th and 11th, and
```
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

50

Ccenmooc                    Conference

1  by the 14th we're getting much too close to when documents have
2  to be produced for my comfort level.
3          MR. HENDERSON:  Your Honor, forgive me.  Without my
4  telephone, which has my calendar, I'm a bit adrift can you just
5  state the days of the week.
6          THE COURT:  Yes.  Tuesday, January 8, Wednesday,
7  January 9.  Otherwise, we go over to the week starting Monday,
8  January 14, but that's kind of late.  I apologize that you
9  can't have your phone.  We have certain policies here, not by
10  unanimity but by majority vote, that your New York colleagues
11  can bring their phone in if they've got the right pass, but you
12  can't.  We have a certain sense of paranoia around here in
13  certain ways.
14          MR. HENDERSON:  I have just gotten used to using it as
15  my calendar.
16          MR. BRECHER:  That is an implementation so we don't --
17          THE COURT:  Ms. Rubenstein, based on your calendar,
18  the 8th?  The 9th?  What is your pleasure?
19          MS. RUBENSTEIN:  It doesn't matter to me.
20          THE COURT:  OK.  2 o'clock on January 8.
21          MS. CHAVEY:  Your Honor, I'm not going to be able to
22  be here that day, so if I could be excused from that
23  conference.
24          THE COURT:  Unless the 9th works better for you.
25          MS. CHAVEY:  It doesn't.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

```
       Ccenmooc                    Conference
 1                 THE COURT:  OK.
 2                 MS. CHAVEY:  Thank you.
 3                 THE COURT:  If you can get your objections in earlier
 4      than the 4th, you know, I don't want to totally destroy
 5      everyone's potential holiday period, but the more time you have
 6      all to discuss it between the requests on the 21st of December
 7      and when you're seeing me on the 8th, you know, I would hope
 8      that you will be able to work out things that are work out-able
 9      and not say that you didn't have enough time or whatever.
10                 MS. CHAVEY:  Your Honor, I just want to make sure I
11      didn't miss something.  On the 8th will you set a date for
12      production of the documents that are required.
13                 THE COURT:  No.  The documents are due January 21
14      unless that is a holiday, which it might be.
15                 MS. CHAVEY:  OK.
16                 THE COURT:  I think that's Martin Luther King Day, so
17      I guess you earn an extra day out of that.
18                 Documents, certainly the documents to which there were
19      no objections I expect to be done then.
20                 If there is, you know, too much to do between the 8th
21      and the 22nd, we will see, but I'm anticipating full and
22      complete document production on January 22, because I don't
23      think we are talking about too many documents.  I think it's
24      mostly going to be a question of you making sure you have
25      talked to your quote-unquote control group or whatever you want
```

52

Ccenmooc                    Conference
1    to call it and making sure that you have anything that could
2    possibly be considered a policy document or a high-level
3    interpretation or implementation on a general scale and make
4    sure you get all that to the plaintiffs.
5             In addition, this may all become moot depending on
6    what happens between now and 14 days from now.
7             All right.
8             Anything else from either side?
9             MR. HENDERSON:  I don't believe so, your Honor.
10            MS. CHAVEY:  No, thank you, your Honor.
11            THE COURT:  All right.  The usual drill.
12            Both sides are required to purchase the transcript,
13   and happy holidays, all.
14            I'll see you in January.
15            (Adjourned)
16
17
18
19
20
21
22
23
24
25