# Exhibit 7

```
                                                          1
         CBKAAMOOC              Conference
 1       UNITED STATES DISTRICT COURT
 1       SOUTHERN DISTRICT OF NEW YORK
 2       ------------------------------x
 2
 3       DASILVA MOORE,
 3
 4                 Plaintiff,
 4
 5            v.                        11 CV 1279 (AJP)
 5
 6       PUBLICIS GROUPE,
 6
 7                 Defendant.
 7
 8       ------------------------------x
 8                                     New York, N.Y.
 9                                     November 20, 2012
 9                                     9:30 a.m.
10
10       Before:
11
11                     HON. ANDREW J. PECK,
12
12                                     Magistrate Judge
13
13                          APPEARANCES
14
14       SANFORD HEISLER, LLP
15            Attorneys for Plaintiff
15       BY:  SUSAN RUBENSTEIN
16
16       SANFORD WITTELS & HEISLER
17            Attorneys for Plaintiff
17       BY:  SIHAM NURHUSSEIN
18       DEEPIKA BAINS
19
19       JACKSON LEWIS LLP
20            Attorneys for Defendant
20       BY:  VICTORIA WOODIN CHAVEY
21       BRETT M. ANDERS
22
22       Also present:  Dave Lewis, Ph.D.
23       Douglas Forrest, ILS
23
24
25
                       SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

2

```
CBKAAMOOC                  Conference
```
1          (Case called)
2          THE COURT:  Be seated.  All right.  Welcome back.
3     It's been a long time.
4          And I guess, Ms. Rubenstein, you are the newest member
5     of the plaintiff's team.  Welcome aboard.
6          MS. RUBENSTEIN:  Good morning.  Nice to meet you.
7          THE COURT:  I am hopeful despite the size of the
8     letters and attachments you each gave me that, perhaps, things
9     can move more cooperatively with each other and with the Court
10    going forward.  I am glad to see you've reached certain
11    agreements.  You, obviously, haven't agreed on everything.
12    That's too much to hope for in any case but, certainly, in this
13    one.
14          Here's my biggest concern in looking at what you've
15    put before me and then we'll go through some of the other
16    issues in great detail.  As the counsel who have been here from
17    the beginning know, this idea of not doing class certification
18    until after all discovery has been something that I have been
19    unhappy with since I took this case over from Judge Sullivan or
20    whoever was the initial -- yes, Judge Sullivan.  And I was
21    unable to convince plaintiffs to do anything about that.  Your
22    current papers seem to be saying well, we should have Title VII
23    related discovery for all the opt-ins even though they don't
24    have a Title VII claim because, well, they're going to be part
25    of the class.  And in addition to that, we're going to have to
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

3

CBKAAMOOC                    Conference

1  do more Title VII discovery a second time around.  This is
2  expensive enough and has taken up more than this case's share
3  of judicial resources and I don't want to do that.  So, it's a
4  purported class.
5        Either there is class related discovery, not
6  individual plaintiff discovery that can go on now to establish
7  whether there is a common policy practice, whatever, that makes
8  what happened to everybody who worked for MSL appropriate or
9  there isn't.  Or we're going to do limited discovery only as to
10 class issues and then have a class certification motion and I
11 am willing to listen to all of you or send you all away and
12 have you come back after you think about it but considering how
13 much money has already been spent, how many motions or
14 objections, whatever conferences both Judge Carter and I have
15 dealt with, I really do not want to go through this period
16 however we adjust it and then have you say, OK, then we're
17 going to do it all over again.
18       So, Ms. Rubenstein, if you have any thoughts on that
19 as you stand here --
20       MS. RUBENSTEIN:  Thank you, your Honor.
21       We absolutely do and we welcome the Court's comments
22 because at least from where we sit we completely agree with
23 them.  I am new to the case but having just entered the case at
24 a time when we now have 26 new named parties, you can see what
25 a nightmare it's become to try to figure out a way with which

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

CBKAAMOOC                    Conference

1    we can avail ourselves -- predictive coding without having to
2    go back and revamp and start over and over and over again which
3    is why we brought Dr. Lewis and Doug Forrest with us today
4    because they can speak to the subject in a far more fluent
5    manner than I can.
6            But having said all that have, yes, I concur with the
7    Court's opinion.  It is a situation where irrespective of
8    whether our class is going to be certified or not, there will
9    be a sizable number of additional named plaintiffs, all of whom
10   will be wanting and entitled to see discovery.
11           THE COURT:  OK.  But there are two separate issues, so
12   let me just interrupt you there.  If the opt-ins want to bring
13   individual claims, you know if the time hasn't also passed, now
14   is the time to do it.  What you've said in your letters in
15   front of me is sort of they may, they probably will, they
16   might, you know, whatever.  We're not doing it that way.  So I
17   see that as one issue.  If those 26 minus, plus or minus the
18   ones who are disputed but if they are going to assert claims
19   and subject to whatever defendants have to say and whatever
20   reminder there may be, that it's too late under a case
21   management order or whatever but if they're going do a claim,
22   let's do it before we start going through document discovery
23   again.  But I'd really rather address directly the class issue.
24           MS. RUBENSTEIN:  Well, as my colleague just pointed
25   out, what we are talking here and we're anticipating, your

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5
CBKAAMOOC                    Conference
1    Honor, is that there will be far more plaintiffs than 26.
2    There will be, you know --
3            THE COURT:  I am sorry.  Then I am missing something.
4    How will there be more plaintiffs other than that there'll be
5    members of the class?
6            MS. RUBENSTEIN:  Well, there'll be members of class
7    but all of these members will have individual claims that they
8    could pursue.
9            THE COURT:  Not if there's a class action.
10           MS. RUBENSTEIN:  If there's a class action then the
11   individuals --
12           THE COURT:  Let me be clear and I'm sorry to interrupt
13   you.  And I don't want to start on the wrong foot with a new
14   lawyer, something to the rules of -- if you want to go survey
15   the world and search for plaintiffs to be actual named
16   plaintiffs that's one thing.  And either they'll join or they
17   won't and either they'll be allowed to appear or they won't.
18   If this is a class action you've got 33 named plaintiffs or
19   opt-ins but my understanding of a class action is there is
20   either a common practice that applied to the class and then
21   there might be some separate issues as to an individual
22   person's damages handled by a proof of claim form or by a
23   formula you work for X years and we'll give you however many
24   dollars per year, whatever, but there aren't going to be any
25   new plaintiffs after the very near future.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

6

CBKAAMOOC                    Conference

1          MS. RUBENSTEIN:  But is the issue that your Honor is
2      suggesting that could we use predictive coding.
3          THE COURT:  Forget predictive coding.  I want to get
4      this case organized so that we do discovery twice.  We've
5      already half done it once but I want to do it once from here on
6      out, not two to three times.
7          MS. RUBENSTEIN:  But if I understand the Court's
8      position you are, I think we're saying maybe similar things
9      but, of course, you are saying it better than I can say it.
10     But you want to avoid having to go through this whole episode
11     again.  And what we are trying to do is anticipate what the
12     prospective class claims are going to be and therefore trial to
13     deal with those now, is that correct?
14         THE COURT:  Yes.  But the problem is this, is a class
15     has not been certified and you are doing what often is the case
16     which is you want your cake and eat is too.  You don't want to
17     move for class certification but you want discovery as if class
18     has been certified, including all the bells and whistles and
19     that's not going to happen unless you pay for it all and even
20     then I am not sure I'll let it happen.
21         MS. RUBENSTEIN:  Well, we haven't had bifurcated
22     discovery.
23         THE COURT:  Well, that's what I am suggesting and your
24     colleagues who have been here from day one may recall that
25     virtually the first two conferences when I inherited this case

CBKAAMOOC                    Conference

1   on referral from Judge Sullivan, the original district judge, I
2   said I don't have in your scheduling order a requirement to
3   move for opt-in collective action status or for class action
4   status until after the close of discovery and that makes no
5   sense.  And the argument was sort of well, we convinced Judge
6   Sullivan of that.  Leave us alone.  And I did for a while and
7   then insisted that you do the collective action motion and lo
8   and behold you won which you know.  So the question is, can you
9   either move for class certification immediately or what minimal
10  discovery.  You do need to move for class certification but I
11  am not going to give you full class action discovery as if the
12  class were certified, nor am I going to allow you to use this
13  current scheduling order as a way to do it twice.  Once.  Now
14  you know and then come back another time and say you want more
15  because you've gotten class certification, if indeed, you get
16  it.
17          MS. RUBENSTEIN:  Before I respond, your Honor, and I
18  know you don't like tag-teaming but because I wasn't there at
19  the hearing with Judge Sullivan, I'd like to just refer to you
20  my colleague because my understanding is that the plaintiffs
21  did ask for bifurcation.
22          MS. NURHUSSEIN:  If I could just interject very
23  briefly and to clarify a couple of points.  Since the very
24  beginning of the case plaintiff's position has been that the
25  most efficient way to pursue discovery in this case would be to

8

CBKAAMOOC                    Conference

1   work within a bifurcated schedule because we agree with you
2   it's a little bit nonsensical to have a class cert deadline
3   then no discovery period following that.  So that puts us in a
4   very difficult position because in order to file our class
5   certificate motion we need class discovery including anecdotal
6   evidence.
7            THE COURT:  But that's merits discovery too.  The
8   problem I have with your bifurcation and I believe we talked
9   about this at, probably, the second conference is that what you
10  are saying you want for quote/unquote limited class action
11  discovery, exactly the same material or maybe 90 percent of
12  what you are asking for any way which in that case makes no
13  sense to bifurcate because, again, we're doing it twice.  If
14  there were the argument that what you need is policy documents
15  from the company and a 30(B)(6) composition and then you are
16  prepared to move for class certification, we could then hold
17  off on all the predictive coding until that motion was decided.
18  If what you are asking for is 50 to 90 percent of what you're
19  asking for any way, then it makes no sense to do it that way
20  because, again, it's going to cause whether you use predictive
21  code coding or key words or monkeys it's going to cause to you
22  do it two to three times anyway.  So what would you need to
23  revisit that bifurcated discovery besides everything?
24           MS. NURHUSSEIN:  I probably want to confer with my
25  colleagues about this.  I wouldn't agree what we're seeking is

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

9

CBKAAMOOC                    Conference
1  everything.  I think a couple of conferences that my colleagues
2  did identify a few categories of documents and, perhaps, we can
3  try to identify additional ones.
4          THE COURT:  That's backwards.  What I want is either
5  very limited discovery without necessarily predictive coding,
6  mostly core key operating manual type things, whatever and a
7  30(B)(6) deposition and you've got your witnesses and then we
8  have class certification.  Then Judge Carter will decide that
9  one way or the other and then the 26 opt-ins will, if there's
10  no class certification, assert their own claims or they
11  won't -- either there'll be class certification, then we can do
12  it right but if we're back to where we were previously and I
13  haven't looked at that transcript in a long time but,
14  basically, you are saying you want three quarters of what we're
15  doing now for a class motion and I am happy to defer this and
16  let you all come back in a week or to two or whatever it takes
17  to see if you all can work it out.  Now that I am seeing from
18  the letters at least some more cooperation but I can't see
19  spending the money to do predictive coding whether I accept all
20  of your proposals or their proposals or mix and match or send
21  you to a master and any of that, I can't see doing of that only
22  to have you then say.  And now we want either the 26 or we want
23  class discovery for everybody because we now have got a class
24  certified after the close of all other discovery.  It doesn't
25  make sense.  So I am willing to hear from the defendants since
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

10

CBKAAMOOC                    Conference
1    this is probably catching all of you equally by surprise.
2          MS. CHAVEZ:  Your Honor, thank you.  All our
3    recollection of the history here is probably the same as yours
4    which is that we were looking for discovery to go forward on
5    both, on all issues because the plaintiffs in identifying the
6    common policy or practice were articulating a scope of
7    discovery for class certification that was almost as broad as
8    all discovery.  And you've heard us say this before but part of
9    the, I think, the nub of the problem is that the common policy
10   or practice isn't particularly articulated.  The centralized
11   decision makes notion the reorganization motion are both very,
12   very broad and they have been interpreted by the plaintiffs in
13   this, in the scope of discovery as kind of reaching everything.
14   So that's been why we have been looking to have discovery
15   proceed in this way but if discovery could proceed on a more
16   limited basis, focused narrowly on a common policy or practice,
17   we would be more than happy to consider that as a way of moving
18   things forward more expeditiously.
19         THE COURT:  OK.  Anything else from the plaintiffs or?
20         MS. RUBENSTEIN:  In regard, your Honor?
21         THE COURT:  Yes.
22         MS. RUBENSTEIN:  I mean, no, I would be -- perhaps you
23   can take a break or we can meet and confer further.  I can meet
24   with co-defense counsel.  We can discuss an alternative
25   approach.  I don't think that we've ever sought full and
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

11

CBKAAMOOC                    Conference
1    complete discovery.
2            THE COURT:  Not full, just like three quarters.
3            MS. RUBENSTEIN:  But again the interest has been to
4    try to avoid, I think, the we anticipated there would be
5    additional claims opt-ins and people.  Anyway I have no problem
6    with that and we'll be pleased to meet and confer and get back
7    to the Court when ever you suggest.
8            THE COURT:  All right.  In light of that I am,
9    frankly, not sure it makes too much sense to go through the
10   side issues.  I do want to note for the record in light of the
11   history of this case that Mr. Lewis and I have been at least
12   one for sure and I think two or three E-Discovery programs
13   together.  I know we were at -- I am sorry -- Dr. Lewis.  I
14   know we were at the Cardinal Valley Conference this past summer
15   and had either back to back panels or something like that but I
16   can't say I have any memory of meeting Mr. Forrest.  That may
17   be because I didn't or it may be because my memory isn't that
18   great but I did want that on the record in light of the history
19   of this case.
20           MS. CHAVEZ:  Your Honor, on that point we would ask
21   the plaintiffs to state whether they have any objection to you
22   proceeding on this case in light of what you've just disclosed.
23   We'd just like to clarify that so there aren't any problems
24   later.
25           THE COURT:  Normally I wouldn't ask for that but I
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

12

CBKAAMOOC                    Conference

1    think in light of the history of this case both of you should
2    state your opinion now and then we can go to motion practice if
3    need be which, hopefully, we don't.
4                MS. RUBENSTEIN:  Well, I don't have any objection.
5                MS. CHAVEZ:  We don't have any objection on that basis
6    to Mr. Lewis' involvement.
7                THE COURT:  Good.  One other point to throw out there.
8    To the extent plaintiff's recusal papers were commenting that
9    there is this core E-Discovery industry and I'm too friendly
10   with some people in it, all I would say is I suspect that Dr.
11   Lewis is a big part of that industry as well.  I more than
12   suspect it.  And I only bring that up because if we're going to
13   a special master here, the only way I would do it is if
14   Dr. Lewis and Recomind or whoever has to make the decisions but
15   with those input can come up with somebody that both sides
16   respect and are willing to do some of that on a non appealable
17   basis.  That may be of no interest to anybody and I am not
18   trying to put Dr. Lewis or anybody on the spot.  Obviously, I
19   think he knows some of the people who would be good special
20   masters but as defendant said in their letter.  If we're only
21   going to build in three levels of review so that the special
22   master does something which is then reviewable by me which is
23   then reviewable by Judge Carter it's only adding more expense.
24   So if we're going to go the special master route and I think
25   there are some technical issues here with sampling and the like

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13
CBKAAMOOC                    Conference
 1   where a master might be helpful but I don't want it to be
 2   adding levels of expectancy.  So you can all think about that
 3   as well.  No one has to answer now.
 4          As to the rest of this, I mean I've gone through the
 5   letters.  I could do more with you, you know on the one and you
 6   are all here on the other.  It may get mooted depending on what
 7   you're going to do with the class issue and the 26 opt-ins,
 8   etc., so I am inclined to say we can defer that until you come
 9   back.  But if there's one particular thing or something really
10   crucial that you think would be helpful I can give you rulings
11   or nonbinding thoughts so you don't feel you've come here and
12   brought experts at the expense from Chicago and just being told
13   go away, come back in a week or two.
14          MS. RUBENSTEIN:  Your Honor, would it be possible to
15   take a five to ten minute break to discuss a couple of your
16   suggestions --
17          THE COURT:  Sure.
18          MS. RUBENSTEIN:  -- see how we can best make sure of
19   our experts being here?
20          THE COURT:  OK.  What do you want, ten minutes?
21          MS. RUBENSTEIN:  That would be great.
22          THE COURT:  Off the record.
23           Recess)
24          THE COURT:  Be seated.
25          All right.  Now that you have had about 30 or 40
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

14

CBKAAMOOC                    Conference

```
 1   minutes, have you been able to reach any --
 2        MS. RUBENSTEIN:  Time flies when you enjoy yourself.
 3   Your Honor, we decided that we would like to reconvene at the
 4   Court's convenience so we can all, perhaps, discuss this
 5   together.  I would like to talk this over with defense counsel.
 6   I would like to talk further with my colleagues to determine a
 7   way in which we can come to some agreement perhaps and not take
 8   up any more of this Court's time.  However, when the Court
 9   schedules the next conference I am just wondering if you could
10   let us know if we should bring Dr. Lewis and Mr. Forrest along
11   with us if you contemplate wanting to hear any information
12   about protocol or any discussion about it.  I mean, we brought
13   them with us today because my understanding of your directive
14   is that you would want to discuss changes to the protocol in
15   light of the 26 opt-ins.
16        THE COURT:  Correct.  And I must say, by the time all
17   your papers came in and things had been busy, I was reading
18   your letters at 8 o'clock this morning which is why I didn't
19   say, don't bring Dr. Lewis because we're going to talk about
20   class issues.  I didn't focus on that until it jumped off the
21   page of your letter even though you sent it in late Friday
22   night.
23        MS. RUBENSTEIN:  Sorry about that, your Honor.  I take
24   full responsibility for that.
25        THE COURT:  It's your money being paid for Dr. Lewis,
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

CBKAAMOOC                    Conference

1   so that's OK.  But, yeah, I would have given you warning had I
2   had a chance to read your papers beforehand but believe it or
3   not, you are not my only case and there are other things that
4   keep me busy all the time.
5           MS. RUBENSTEIN:  Do you anticipate though hearing or
6   expecting to hear information or having a discussion about the
7   proposed protocol?
8           THE COURT:  I mean it depends.  Frankly, I have no
9   interest in going forward with predicative coding until we
10  figure out what you are going to do on class action.  If the
11  answer is, you know, the existing proposals on the protocol
12  will suffice and there will be no requests for class related
13  discovery, if the class is certified, you know, in six months
14  or whatever your schedule calls for then we'll deal with the
15  protocol.  If we're dealing with how to get a handle finally on
16  the limited amount of discovery necessary for an initial class
17  action determination, then we're probably not going to be
18  talking protocol because we are not doing two rounds of
19  predicative coding one for class and another for the
20  quote/unquote merits.
21          So I mean, seriously, if there are policies that are
22  applicable, sufficiently applicable to make all the people who
23  worked in a certain position at MSL to make that a class or a
24  group of subclasses or whatever, that's probably not going to
25  be based on anecdotal evidence per se as much as some sort of

```
        CBKAAMOOC                 Conference
 1    uniform policy the company.  If you have to prove it by
 2    anecdotal, figure out how to take ten depositions without
 3    documents or whatever it's going to be, I don't know.  You're
 4    paid the big money to figure out on both sides here how you
 5    want to prove your case but it has frustrated me from day one
 6    in this letter, really brought it again to the fore.  We can't
 7    economically do this two to three times, so you need to figure
 8    out how to do enough.  This is like Goldilocks, not too little,
 9    not too much but just the right amount of cost effective
10    discovery to make a class action motion or determine that the
11    discovery you are doing on, quote/unquote, merits discovery
12    will give you enough information that if a class is certified
13    you don't need anything else except the possibility of proof of
14    claim forms or that sort of individualized damage determination
15    if there turns out to be a uniform policy that discriminated
16    against women in one or more of the ways that you allege they
17    were.
18             So when do you all think you'll be ready to come back?
19             MS. CHAVEZ:  Your Honor, I just wanted to say on the
20    point about conferring over the next couple of weeks because I
21    think all of us want to move this forward as much as possible.
22    It would be helpful for the common policy or practice that's
23    being alleged here to be articulated and we have gone through
24    this.
25             THE COURT:  You are all going to -- this, frankly,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

17

CBKAAMOOC                    Conference

1   goes to both sides.  You are going to sit down and try
2   something really novel which is, both sides are going to
3   cooperate with each other, OK.  And we have been through this
4   repeatedly in terms of you saying there was no common policy.
5   There was no core group, etc., and then them saying the
6   contrary.  That's sort of the merits.  You all are going to
7   figure out strictly from a procedural process whether you are
8   doing one shot complete discovery or whether you are doing some
9   class discovery and then we'll do predictive coding down the
10  road.  We are not doing it twice.  That, I am telling you that
11  now.  We're not doing it twice.
12          The other thing, I am not sure I want to wait till
13  December 15th or thereabouts but do you have a December 14
14  conference before Judge Carter which I believe -- tell me if I
15  am looking at things correctly -- is dealing with the issue of
16  the six people who you want to knock out.  So that will avoid
17  the fight that you are having in these letters about are they
18  in or are they out.  Even if we do our conference before then
19  you know that issue will probably fall out before you have to
20  do very much more in the way of ESI protocols for predictive
21  coding assuming you are not coming back till after
22  Thanksgiving, etc.
23          MS. CHAVEZ:  Your Honor, the conference on the 14th is
24  our premotion conference, so it may be that's a preliminary
25  filing motion.  I don't know.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

CBKAAMOOC                    Conference

```
 1              THE COURT:  Neither do I.
 2              MS. RUBENSTEIN:  Your Honor, the only issue that we
 3     would raise at this point, the final issue that is, and I don't
 4     know if the Court would be interested in entertaining this is
 5     the Sircanus hard drive issue which was the subject I believe
 6     that's been fully briefed and the Court did not request a
 7     pre-conference -- I mean a hearing on that but that is a
 8     matter --
 9              THE COURT:  I, frankly, thought based on defendant's
10     response that the issue was largely moot and was going to be
11     resolved when you deposed him.  But if you think there is
12     something worth further talking about I am not giving you
13     massive relieve of everything they did to --
14              MS. RUBENSTEIN:  I am not asking that, your Honor.  I
15     just want to make sure that the Court understands that the guy
16     was a central decision maker and is right there on the
17     forefront of the case and he actually, personally, terminated
18     the women and made discriminatory comments.  He claims his hard
19     drive is completely crashed and corrupted and this was going
20     back more than a year ago and there have been subsequent --
21              THE COURT:  But with what relief?
22              MS. RUBENSTEIN:  What's of concern to me, your Honor,
23     is the continuing shifting and changing responses about whether
24     they've captured data, whether it's report, whether they have
25     access to the hard drive.  All we're asking for -- and I don't
```

19

CBKAAMOOC                    Conference

1   want to make a spoliation motion -- I don't want to go to Judge
2   Carter.  I don't want to take up any more of your time.  I am
3   looking at this as a straight up discovery issue where the guy
4   who is the central person in our case claims to have blown up
5   his hard drive, when we heard that he didn't blow up his hard
6   drive.  Then we heard from the defendants -- and I don't mean
7   to ruin the honeymoon but it's important that this is why I am
8   raising it in this courtroom right now because we had asked for
9   the information.  They said, please propound instead of doing
10  this informally, please propound discovery and ask for the
11  information you want.  And my colleague did, in fact, do that,
12  propounded six very succinct, very direct, nothing cute,
13  nothing out of the box, very succinct interrogatory saying
14  please give us the information that we need to determine
15  whether or not there could be spoliation, what the reason is
16  for this purported hard drive crash and why we are getting
17  various responses.  They proceeded to object.  And this is a
18  gamesmanship that I don't understand.  They objected to every
19  single legitimate interrogatory.
20      So then it wasn't until we had to bring you into it,
21  bring the Court into it that we finally got additional
22  explanations.  Well, we were able to capture some documents.
23  We weren't able to capture others and I don't want to say
24  anything that would mischaracterize the record but that's
25  essentially it and I really think that all we want at this

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

CBKAAMOOC                    Conference
1   point is to have a forensic analyst go in there and to look at
2   it to determine the reason why we're getting very shifting
3   responses.  And this is a very important guy.  If it wasn't --
4            THE COURT:  Stop.  Stop.  Stop.
5            MS. RUBENSTEIN:  And it begs the question --
6            THE COURT:  Counsel.  Counsel.  Thank you.
7            MS. RUBENSTEIN:  OK.  Sorry.
8            THE COURT:  Look, it seems to me -- and I am looking
9   at the August 31 response letter from Mr. Anders -- that it was
10  a hard drive crash.  That is not a violation of the
11  preservation duty, assuming that it was a legitimate crash.  In
12  other words, it is perfectly appropriate under Zubulake and a
13  pension committee and all the other cases on the need to
14  preserve that you put the hard drive in a closet somewhere.
15           Now, whether they really put the hard drive in the
16  closet but what you are sort of saying assuming that what we're
17  representing in this letter is correct and we will get to prove
18  that in a minute is that somehow they should have made multiple
19  duplicates of everybody's hard drive that they were preserving
20  in case of a hard drive failure.
21           So as I read what they say.  They preserved the hard
22  drive.  It crashed.  They then tried to get material off of it
23  and wound up sending it out to BIA to analyze the hard drive.
24  Now, I suppose that if you think BIA is not capable or
25  something and you want to spend the money to hire an
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

21

CBKAAMOOC                    Conference

1    independent expert to take that hard drive and see what can be
2    gotten off of it, what can be gotten off of it will then be
3    turned over to defense counsel for review, for relevance and
4    privilege, all of which will be at plaintiff's expense, I will
5    consider that request.  I think it's, frankly, a waste of
6    money, particularly, until you depose Mr. Tsokanos,
7    T-s-o-k-a-n-o-s, but I will consider that if that is the relief
8    you are it asking for now.
9            MS. RUBENSTEIN:  That is the relief we're going for
10   now, your Honor, and if I may the E-Discovery protocol that's
11   entered by the court but hard drives, laptops and desktops as a
12   phase two area of discovery which is a point that we are not
13   even at yet.
14           THE COURT:  I understand.  If an effort to -- whether
15   we're at phase two or whether we'll ever get to phase two
16   Sircanus is important.  You have said -- and I take what
17   lawyers say as officers of the court seriously in terms of
18   factual representations.  I may distrust some of what they try
19   to tell me in technical areas but you told me, you know,
20   failed, there's a hard drive failure, good faith.  You spent a
21   lot of money that you probably didn't need to sending it to
22   BIA.  I assume that they have returned that hard drive to you
23   or they're holding it somewhere and that somebody else can look
24   at it, right?
25           MR. ANDERS:  Yeah.  We still have access to the hard
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

22

CBKAAMOOC                    Conference
1    drive.
2              THE COURT:  Do you have any objection however
3    irrelevant it may be in terms of timing -- and by irrelevant I
4    just mean it may be earlier than it would other otherwise come
5    up -- to put an end to this and, perhaps, get you all being
6    less suspicious of each other.  Any objection to them
7    designating a reputable company or forensic examiner, give him
8    the hard drive or her or it?  They will pay for it, whatever
9    comes off it that's beyond what you've already been able
10   through BIA to pull off it of it will be shown to you and
11   you'll then give the other side the relevant material and
12   whatever is not relevant you will do the equivalent of a
13   privilege log or you'll just put in another pile and if they
14   then don't trust that we'll worry about what do with that at a
15   later point?
16             MR. ANDERS:  I guess, your Honor, if I may, as an
17   interim step we provide you with the report that we obtained.
18   The issue now of whether or not the crash legitimately or not
19   or whether somebody can pull off additional information?
20             THE COURT:  Probably both.
21             MR. ANDERS:  Cause it sounds like we are at a point
22   where we're doing discovery now from the source.
23             THE COURT:  Whatever.  I mean, look, seems to me
24   they're suspicious, perhaps, because it's their nature,
25   perhaps, because he is the president of MSL that lo and behold
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

23

CBKAAMOOC                    Conference

1   his computer crashed.  You've certainly all seen plenty of
2   cases in which computers were crashed, wiped, evidence
3   eliminated or run over it, any of that one.  Could say that
4   you've got to wait and take Mr. Sircanus's deposition.  If you
5   want to give them the report that BIA gave you and see if that
6   satisfies them, I am trying on this to lower the temperature
7   between the two sides, start you down a road of further
8   cooperation and doing it at zero costs or close to zero cost to
9   you.  You want to give them the BIA report in the first
10  instance and see if that satisfies them.  We can then refer the
11  next step till later.  You want to give them access to the hard
12  drive but then there will be a forensic examiner that they
13  choose but that is acceptable to you?
14          MR. ANDERS:  Your Honor, I would suggest giving them
15  the report first, letting them review what the results of the
16  report were and then deciding if they want to go through the
17  expense of finding their own expert.
18          THE COURT:  Does that work?
19          MS. RUBENSTEIN:  I think that's fine.  I am not able
20  as a lawyer to assess just to look at a report from --
21          THE COURT:  Well, assume either Mr. Lewis will look at
22  the report if that's within his area or Dr. Forrest if that's
23  within his area of expertise.  Or if it's not, I assume that
24  whoever you would be hiring to look at their hard drive will
25  charge you a lot less to look at the BIA report and say is that

24

CBKAAMOOC                    Conference

1   reasonable than to actually redo what BIA did.  And then if you
2   still want access to the hard drive, you know we'll see where
3   we go on that.  I am meaning to giving it to you if you need it
4   but I would really like you to use your money in its most
5   efficient way.
6            MS. RUBENSTEIN:  We're trying to use this Court maybe
7   hence forth in a more efficient way and to not come to you and
8   that's why we just want the opportunity in the event we don't
9   believe the report is dispositive to have the full opportunity
10  in the event our experts believe --
11           THE COURT:  All you need to do is put it on an agenda.
12  You don't need to brief it.  We can talk about it.
13           MS. CHAVEZ:  Or, your Honor, the parties could also
14  confer about that before bringing it to the Court.
15           THE COURT:  Oh, my God.  You two want to talk to each
16  other?  I am shocked.  There's gambling going on.
17           OK.  When do you want to come back, folks?  How long
18  do you think you are going to need to arm wrestle over whatever
19  you are going to be doing?
20           MS. CHAVEZ:  Your Honor, if you are available on the
21  14th we'll be here with Judge Carter that day anyway.  That
22  would give us from our perspective any way sufficient time to
23  confer.
24           THE COURT:  Well --
25           MS. RUBENSTEIN:  It's fine with us.  I just would like
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

25

CBKAAMOOC                    Conference

1   to get an idea from the Court as to whether or not you would
2   entertain any testimony or questions or answers from our
3   experts because I'd like to then talk with them.
4           THE COURT:  What you are going to need do in order for
5   that to occur is letter write in advance if we're going forward
6   with some version of an ESI protocol meaning, you've decided
7   you are not going to do any further class action discovery
8   other than whatever I decide you are entitled to under the
9   current process.  The other thing that if you are going that
10  route, if the new 26 opt-ins are going to bring Title VII
11  claims as co-plaintiffs for the class, whatever, then you are
12  going to have to amend the complaint.  I am not doing it with a
13  maybe.  So either they're part of the class and don't have an
14  individual Title VII claim and then we treat it as the class or
15  they have an individual Title VII claim and if so now is the
16  time to decide that.  So if all of that is done before December
17  14th we'll deal with whatever we need to deal with.
18          What time is your conference in front of Judge Carter?
19          MS. CHAVEZ:  Your Honor, we don't remember.
20          MS. BAINS:  I believe it's at 9:30.
21          THE COURT:  It is at 9:30.  Back row wins the prize.
22  So how long -- you know I don't want to say 10:00/10:30 and
23  then you are stuck up there and my morning goes to hell in a
24  handbasket.  You want to do it at two o'clock?  You want to do
25  it at 11 and it'd better be done?
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

26

CBKAAMOOC                    Conference
1              MR. BRECHER:  I think 11, your Honor, fine by us.
2              THE COURT:  OK.  I guess the question is without
3     repeating everything in a nice free and stack of material
4     you've already given me what I am going to need to know in
5     advance is whether we are going to be talking ESI protocol or
6     whether we're still bogged down on the threshold question of
7     class type issues.  If we are doing the ESI protocol I would
8     probably want Dr. Lewis to be here and his counterpart from
9     Recomind or whatever.  If we're not doing that then he doesn't
10    have to be here.
11             And I need you all to get me that information in a
12    timely manner, not as part of a six inch stack which therefore
13    doesn't necessarily get read when there are other crises going
14    on and then I'll let you know otherwise.  All I can say is you
15    are all burning money like it's going out of style.  Have your
16    experts here and it may be meaningless and it may be
17    meaningful.  But if you give me enough advance notice meaning,
18    at least a week in advance, then probably a week in advance Dr.
19    Lewis and I will be in the same place.
20             For the record, for the rest of you that the
21    Georgetown E-Discovery Conference.
22             The sooner you let me know what you're planning on
23    doing, the sooner I can deal with that.  So that's all I can
24    tell you now.
25             MS. CHAVEZ:  Judge, so you'd like to hear from us by
                      SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

```
CBKAAMOOC                    Conference
1    December 7th then as to what we would expect, request the Court
2    to.
3                THE COURT:  Yes.  All it really needs to be is sort of
4    like an agenda list and whether you think we're going to get to
5    the ESI protocol question or not.  Obviously, somewhere in
6    advance of the 14th any new information you each want me to
7    consider without going to multiple stacks of detachments and
8    all that, get in to me because I do prepare for conferences,
9    OK.
10               MS. RUBENSTEIN:  We did not get a date.  I just would
11   expect for the defendants to turnover the reports.
12               THE COURT:  Monday after Thanksgiving.
13               MR. ANDERS:  I can get it to them next week.  It just
14   has to be put in final form.  I just don't know the BIA
15   schedule.  I should be able to get it to you by the end of next
16   week.
17               THE COURT:  If not whatever you've got, even if it's a
18   draft, give it to them.
19               MR. ANDERS:  It'll be fine.
20               THE COURT:  Tuesday of next week.  Certainly sooner if
21   possible.
22               All right.  Usual drill.  You all need to buy the
23   transcript from the reporter.  Certainly, don't have to remind
24   but the rules about objections but, hopefully, we're not taking
25   any today and I'll see you on the 14th.
```

28

CBKAAMOOC                    Conference

1          MS. RUBENSTEIN:  Thank you very much, your Honor.
2     Have a nice Thanksgiving.
3          THE COURT:  Same to you all.
4                    (Adjourned)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300