# Exhibit 8



Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis LLP
96 State House Square
8th Floor
Hartford, Connecticut 06103
Tel 860 522-0404
Fax 860 247-1330
www.jacksonlewis.com

| ALBANY, NY | DETROIT, MI | MINNEAPOLIS, MN | PORTSMOUTH, NH |
| ALBUQUERQUE, NM | GREENVILLE, SC | MORRISTOWN, NJ | PROVIDENCE, RI |
| ATLANTA, GA | HARTFORD, CT | NEW ORLEANS, LA | RALEIGH-DURHAM, NC |
| AUSTIN, TX | HOUSTON, TX | NEW YORK, NY | RICHMOND, VA |
| BALTIMORE, MD | INDIANAPOLIS, IN | NORFOLK, VA | SACRAMENTO, CA |
| BIRMINGHAM, AL | JACKSONVILLE, FL | OMAHA, NE | SAINT LOUIS, MO |
| BOSTON, MA | LAS VEGAS, NV | ORANGE COUNTY, CA | SAN DIEGO, CA |
| CHICAGO, IL | LONG ISLAND, NY | ORLANDO, FL | SAN FRANCISCO, CA |
| CINCINNATI, OH | LOS ANGELES, CA | PHILADELPHIA, PA | SEATTLE, WA |
| CLEVELAND, OH | MEMPHIS, TN | PHOENIX, AZ | STAMFORD, CT |
| DALLAS, TX | MIAMI, FL | PITTSBURGH, PA | WASHINGTON, DC REGION |
| DENVER, CO | MILWAUKEE, WI | PORTLAND, OR | WHITE PLAINS, NY |

My Direct Dial Is: (860) 331-1534
My Email Address Is: Victoria.Chavey@jacksonlewis.com

December 7, 2012

<u>**VIA FACSIMILE (212) 805-7933**</u>

Hon. Andrew J. Peck
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *da Silva Moore, et al. v. Publicis Groupe SA, et al.*
Case No. 11-CV-1279

Dear Magistrate Judge Peck:

We are counsel to Defendant MSLGroup Americas Inc. ("MSL").  In accordance with your Order on November 20, 2012, we are writing to provide a status report regarding the parties' discussions relating to further discovery in this case.

At the November 20 conference, the Court noted this case has utilized substantial judicial resources and that discovery needed to be focused.  The Court queried whether the ESI protocol and predictive coding could be avoided by focusing discovery on core documents and key depositions that would enable Plaintiffs to move for class certification.  *See* Nov. 20 Tr. p. 9 ("What I want is either very limited discovery without necessarily predictive coding, mostly core key operating manual type things, whatever and a 30(b)(6) deposition and you've got your witnesses and then we have class certification").  The Court explained, however, "if what you are asking for is 50 to 90 percent of what you're asking for any way, then it makes no sense to do it that way," and posed the following question to Plaintiffs: "so what would you need to revisit that bifurcated discovery besides everything?" *Id.* at p. 8.  The Court repeatedly cautioned that Plaintiffs could not take full discovery regarding the merits of the individual claims of putative class members as if the case had already been certified, finding that approach "backwards" and noting that what Plaintiffs appeared to seek was two rounds of full discovery regarding the putative members of the Title VII class—one prior to class certification, and then another round if the case was certified, which the Court would not do.  Tr. p. 15 ("we are not doing two rounds of predictive coding one for class and another for the quote/unquote merits").  The Court again asked: "So the question is, can you either move for class certification immediately or what



minimal discovery [do you] need to move for class certification[,] but I am not going to give you full class action discovery as if the class were certified, nor am I going to allow you to use this current scheduling order as a way to do it twice." In light of the Court's comments, the parties were to meet and confer regarding a proposed discovery plan focused on class issues and report back to the Court.

Following the November 20, 2012 conference, Plaintiffs submitted a proposal on the evening of Friday November 30, 2012 (Exhibit 1). MSL responded on Monday, December 3, and the parties had a telephonic conference to discuss a proposed discovery plan on Tuesday, December 4. MSL provided further suggestions on a proposed discovery plan on December 6 (Exhibit 2) and the parties exchanged additional e-mail correspondence today, including a revised proposal submitted by Plaintiffs this afternoon (Exhibit 3). We also offered to hold an in-person meeting to continue discussing an agreed discovery plan. The parties have agreed it would be preferable not to conduct the predictive coding now in accordance with the ESI protocol and instead to focus discovery on class issues, as the Court suggested. But the parties could not agree regarding the parameters of that discovery. MSL believes, as the Court foreshadowed at the conference, that the discovery sought by Plaintiffs relating to class issues is essentially the same discovery they would seek regarding the merits of individual claims. For example, Plaintiffs' proposal seeks "job postings for any positions;" "documents re: any adverse action (removal from accounts, bad performance review, discipline, termination, etc.) taken against an employee within two years of returning from maternity leave or working a flex schedule); and all "e-mail to and from HR personnel regarding pay, promotion, and pregnancy issues." (Exhibit 1.) The more recent proposal add even more amorphous items such as "documents reflecting interpretation, *application and implementation* of compensation policies and practices" (emphasis added), code for individual discovery. (Exhibit 3.) Such discovery is not limited to "class issues" nor will it result in any efficiency. Instead, as the Court predicted, this approach would simply result in MSL conducting discovery "twice."

Additionally, Plaintiffs stated they would need to take a "limited number" of depositions, but then identified numerous categories of deponents, including "HR employees," the "Company's top leadership" and "other members of the Company's leadership team," including "regional management" and the CEO of MSL. Plaintiffs state the depositions would be limited to issues bearing on "class certification," and that they would seek to depose them *again* on the "merits," thus necessitating two depositions. Plaintiffs did not respond to MSL's request that they clarify further regarding the depositions they would need, nor did they respond to MSL's inquiry about whether Plaintiffs would object to MSL's reliance on witnesses, in opposing class certification, who had not been deposed. Determining which is a "class certification" question versus a "merits" question appears, in a case like this where every decision is being challenged, an impossible line to draw. Plaintiffs' approach will simply result in the waste of additional judicial resources in which the Court is continually called upon to identify whether the question is a "merits" question or a "certification" question, not to mention high level executives being deposed twice, once on the "class issue" and again on the "merits."

Defendants propose an approach that will streamline discovery and move this case forward. Defendants believe that discovery should be bifurcated between class discovery and



individual discovery.   Specifically, the first phase of discovery should be focused on the existence and validity of the class issues (*i.e.*, whether the requirements of Rule 23 are satisfied *and* the merits of the *class* theories) because the merits and class certification issues are intertwined. *See Wal-Mart Stores, Inc., v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (nothing that in determining whether the prerequisites for certification have been satisfied, the analysis "will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."). Thus, Plaintiffs will have full discovery regarding their class theories before they file a motion for class certification, and because discovery necessary for that motion overlaps with merits of the *class* claims, MSL may move for summary judgment regarding the merits of the class claims at the conclusion of the discovery relating to class issues (*i.e.*, if Plaintiffs argue that the class should be certified because a particular promotion policy is allegedly discriminatory, plaintiffs would be permitted to rely on that policy in support of their claim that commonality exists, but MSL would be permitted to argue that the policy itself is not discriminatory on the merits).  Only if class certification is granted (and MSL's motion for summary judgment denied) would additional discovery be conducted regarding the merits of any individual claims of absent putative class members of the Title VII class.  Simultaneously with the class discovery, however, individual discovery will proceed regarding the Equal Pay Act claims of the individuals who have filed consent forms to join the action.

We look forward to discussing these issues with the Court at the conference scheduled on December 14, 2012.  In light of the parties' agreement to conduct predictive coding at a later date, we do not intend to bring any experts regarding predictive coding to the conference.  If, however, the Court would like them to attend, please advise.

Respectfully submitted,

JACKSON LEWIS LLP

/s/
Victoria Woodin Chavey

cc:     All counsel of record (via e-mail)

# EXHIBIT 1

**From:** Kevin Castillo [mailto:KCastillo@sanfordheisler.com]
**Sent:** Friday, November 30, 2012 7:07 PM
**To:** Anders, Brett M. (Morristown); Chavey, Victoria Woodin (Hartford); Brecher, Jeffrey W. (Long Island)
**Cc:** Janette Wipper; Deepika Bains; Susan Rubenstein; Siham Nurhussein; Tom Henderson; Jennifer Siegel
**Subject:** Re: da Silva Moore v. Publicis, et al. - Proposed List of Class Discovery

On behalf of Susan Rubenstein:

Tory/Jeff,

We would like to schedule a meet and confer to discuss the joint status report, which Judge Peck ordered the parties to submit by December 7th. Please let us know if you are available next Monday, December 3rd. To facilitate our discussion, we have identified a few discrete categories of class discovery that Plaintiffs would seek under a bifurcated discovery schedule. Unless otherwise specified, Plaintiffs are seeking discovery during the class period (through the present). Please let us know your position on our proposal.

**DOCUMENTS**

1. **Pay**
   a. Updated HR and payroll data
   b. Updated compensation policies
   c. Utilization reports noting billability and targets
2. **Promotion**
   a. Job postings for any positions along PR professional track
   b. Updated promotion policies
3. **Pregnancy**
   a. Updated maternity leave / flexible work schedule policies
   b. Documents re: maternity leave plans created by HR
   c. Documents re: any adverse action (removal from accounts, bad performance review, discipline, termination, etc.) taken against an employee within two years of returning from maternity leave or working on a flex schedule
4. **HR Documents**
   a. List of HR files (e.g., directory)
   b. HR training documents
   c. HR complaints, including documents re: investigation/resolution of complaints (e.g., any remedial action taken)
   d. E-mails to and from HR personnel regarding pay, promotion, and pregnancy issues and complaints
5. **Other (e.g., corporate structure; centralized decision-making)**
   a. Company directory
   b. Organizational charts (updated)
   c. Forecasts rolled up to headquarters
   d. Documents relating to Tsokanos' termination (including investigation leading up to termination)
   e. Annual Office Plans

**DEPOSITIONS**

Plaintiffs would also need to take a limited number of depositions before filing the class certification motion. These would include, e.g., one or more 30(b)(6) depositions (on HR policies and practices, decision-making process, etc.), as well as depositions of HR employees, the Company's top leadership (e.g., Tsokanos, Fleurot), and other members of the Company's leadership team (e.g., CFO, regional management). The scope of these depositions would be limited to issues bearing on class certification; accordingly, Plaintiffs reserve the right to re-depose witnesses for merits discovery.

Please note that this is a preliminary list of documents and depositions; Plaintiffs may update/modify the list depending on how the case progresses.

Thanks,

Kevin Castillo
Legal Assistant | Sanford Heisler, LLP
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
kcastillo@sanfordheisler.com | www.sanfordheisler.com
direct: 415 795 2016 | main: 415 795 2020 | fax: 415 795 2021

Please note that our phone numbers changed.  Please update your records accordingly!

*CONFIDENTIAL INFORMATION: This message and any information contained herein or attached hereto is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any review, copying, dissemination or distribution of this communication to anyone other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify this firm immediately by return e-mail and delete this message from your computer. Thank you.*

Representing management exclusively in workplace law and related litigation

Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only for the use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.

# EXHIBIT 2

## Brecher, Jeffrey W. (Long Island)

| | |
|---|---|
| **From:** | Chavey, Victoria Woodin (Hartford) |
| **Sent:** | Thursday, December 06, 2012 11:58 AM |
| **To:** | Susan Rubenstein |
| **Cc:** | Tom Henderson (THenderson@sanfordheisler.com); Deepika Bains (DBains@sanfordheisler.com); Siham Nurhussein (SNurhussein@sanfordheisler.com); Brecher, Jeffrey W. (Long Island); Bulmer, Peter R. (Chicago); Anders, Brett M. (Morristown); Evans, Paul C. (pevans@morganlewis.com) |
| **Subject:** | RE: da Silva Moore v. Publicis, et al. - Proposed List of Class Discovery |

Susan, Deepika, and Tom,

Following up on our meet and confer on Tuesday, we write this email in a further effort to discuss the discovery plan going forward.

After reviewing your email from Friday night, we had several questions that we raised with you concerning your proposal. During our discussion on Tuesday, we confirmed that you believe that class certification discovery is different than class merits discovery, but we were not able to discern how you think they are different. Also, in our discussion on Tuesday, you confirmed that your statement in the Friday email about potentially modifying or updating your proposal as the case progresses was intended only to mean that, during the meet and confer process, but not after we reach an agreement (if we can reach agreement), you may need to modify or change your proposal. You further confirmed that your proposal contemplates that the parties would not use the ESI protocol during class certification discovery. Finally, in our discussion on Tuesday, we tried to discuss how your proposal relates to your alleged class theories, but you were unwilling to discuss that issue further and directed us to Paragraphs 262 and 263 of the SAC.

Having further considered your proposal, we are concerned that class certification issues and class merits issues overlap to such an extent that separating them is infeasible, and we still do not understand how your proposal limits that which you would be seeking for class merits discovery. We are, however, interested in further exploring limited discovery as follows. First, we would like you to identify more specifically what depositions you would seek to take as part of limited discovery focused on class issues only. On a related note, we would seek your agreement, as part of an agreement to engage in limited discovery, that, even if you do not depose a particular witness during the limited discovery period, you would not oppose our reliance on that witness's testimony/affidavit/other evidence in opposing class certification or moving for summary judgment. Similarly, MSL would not be limited, in opposing your class certification motion, to relying on matters on which you took discovery, and thus you would not oppose MSL's use of any available information in its presentation of its opposition to class certification. Furthermore, MSL still would proceed with discovery on the EPA claims, including issuing written discovery requests, noticing the opt-in plaintiffs' depositions, deposing other witnesses who may be relevant to the EPA claims, and conducting any other discovery necessary to the defense of those claims (possibly including targeted e-mail searches). Finally, MSL may seek to move for summary judgment at or before the time you move for class certification, and we would undertake limited discovery only if you would not oppose that motion on the ground that you have not had sufficient discovery.

There will likely be other issues that arise as we continue to discuss the parameters of a proposed limited discovery plan, but we can address them as necessary. Please feel free to respond to this email by email, or we can schedule a call for later today or Friday morning.

Thank you.
Tory

**Victoria Woodin Chavey**
**Attorney at Law**
**Jackson Lewis LLP**

1

# EXHIBIT 3

## Brecher, Jeffrey W. (Long Island)

| | |
|---|---|
| **From:** | Susan Rubenstein [SRubenstein@sanfordheisler.com] |
| **Sent:** | Friday, December 07, 2012 12:24 PM |
| **To:** | Chavey, Victoria Woodin (Hartford); Brecher, Jeffrey W. (Long Island) |
| **Cc:** | Janette Wipper; Tom Henderson; Siham Nurhussein; Deepika Bains; Publicis |
| **Subject:** | Meet and confer/joint submission |

Dear Victoria and Jeff:

We have reviewed the discovery plan you proposed in your e-mail message yesterday. What MSL is proposing is not a bifurcated discovery plan; rather, your proposal seeks to limit Plaintiffs' class discovery while allowing MSL to not only pursue full merits discovery regarding the EPA claims, but also rely on discovery withheld from Plaintiffs to oppose class certification. We will be pleased to discuss any aspect of MSL's proposal, however MSL's approach at this time is neither fair nor workable.

In accordance with Judge Peck's directive, Plaintiffs set forth a very specific proposal setting forth the targeted discovery needed for class certification. To the extent MSL disagrees with the scope of discovery being sought by Plaintiffs, the reasons for any such disagreement have not been forthcoming. We would again renew our request that MSL engage in a dialogue with Plaintiffs' counsel regarding Plaintiffs' proposal. Perhaps the parties can confer in person along with counsel for Publicis next week.

Given that the Court asked for an agenda from the parties, we propose that the parties jointly submit their respective positions in one document to the Court. That would include our proposal below and the proposal you sent yesterday, with any further revisions you might want to make. If you agree to such joint submission to the Court, we ask that you provide your section to us by 3pm today so that we can consolidate and finalize everything before the Court's deadline. We also will note in the report that we plan to confer with Publicis regarding discovery next week and we expect to be able to provide a report at the December 14 conference.

Please note that we have made some modest revisions to our discovery proposal. The updated version is as follows:

## DOCUMENTS

1. **Pay**
   a. Updated HR data, payroll data and W2 data (including data to correct for errors & omissions, provide added itemization, etc. necessary for statistical analysis)
   b. Updated compensation policies
   c. Utilization reports noting billability and targets
   d. Documents reflecting interpretation, application and implementation of compensation policies and practices (to be identified after 30(b)(6) depositions)
2. **Promotion**
   a. Job postings for any positions along PR professional track
   b. Updated promotion policies
   c. Recruitment/hiring policies
   d. Documents reflecting interpretation, application and implementation of promotion and recruitment/hiring policies and practices (to be identified after 30(b)(6) depositions)

3. **Pregnancy/Caregiver**
   a. Updated maternity leave / flexible work schedule / other leave policies
   b. Documents re: maternity leave plans and other leave plans created by HR

1

   c.  Documents re: any adverse action (removal from accounts, bad performance review, discipline, termination, etc.) taken against an employee within two years of returning from maternity leave, any other leave or working on a flex schedule

   d.  Documents reflecting interpretation, application and implementation of maternity leave / other leave/ flexible work schedule policies and practices (to be identified after 30(b)(6) depositions)

**4. HR Documents**

   a.  Directory of HR files

   b.  HR training documents

   c.  HR complaints, including documents re: investigation/resolution of complaints (e.g., any remedial action taken)

   d.  E-mails to and from HR personnel regarding pay, promotion, pregnancy/caregiver and sexual harassment issues and complaints

   e.  Documents reflecting interpretation, application and implementation of HR policies related to compensation, promotion/hire/recruitment, and pregnancy/caregiver/ flexible work schedules / leave policies and practices (to be identified after 30(b)(6) depositions)

**5. Other (e.g., corporate structure; centralized decision-making)**

   a.  Company directory

   b.  Updated Organizational charts

   c.  Budgets/forecasts rolled up to headquarters

   d.  Documents relating to Tsokanos' termination (including investigation leading up to termination)

   e.  Annual Office Plans

   f.  Salary/hiring freeze documents (updated)

   g.  restructuring/ reorganizations of brand, management structure, offices, practice areas, personnel

   h.  layoffs/ severance

**DEPOSITIONS**

Plaintiffs would also need to take a number of depositions before filing the class certification motion. These would include 30(b)(6) depositions on compensation policies and practices; policies and practices regarding how vacancies are filled through promotion or outside hire; policies and practices regarding maternity leave, other leave and flexible work schedules; and other relevant HR policies and practices. These depositions also would be used to identify any additional categories of documents and data that reflect the interpretation, application and implementation of these policies, practices and their decision-making processes, that would need to be produced. After production of any additional responsive documents, Plaintiffs would also take depositions of HR employees, the Company's top leadership (e.g., Tsokanos, Fleurot), and other members of the Company's leadership team (e.g., CFO, regional management). As we previously indicated, these depositions would be focused on issues bearing on class certification; accordingly, Plaintiffs reserve the right to re-depose witnesses for merits discovery.

Thank you for your courtesy and cooperation in letting me know how you wish to proceed with the joint submission.

Susan Rubenstein

Susan Rubenstein
Senior Litigation Counsel | Sanford Heisler, LLP
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
srubenstein@sanfordheisler.com

2

ph: (646) 402-5650| fax: (646) 402-5651

**Please note that our phone numbers changed.  Please update your records accordingly!**

*CONFIDENTIAL INFORMATION: This message and any information contained herein or attached hereto is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any review, copying, dissemination or distribution of this communication to anyone other than the intended recipient is strictly prohibited.  If you have received this communication in error, please notify this firm immediately by return e-mail and delete this message from your computer.  Thank you.*

# Exhibit 9

# SANFORD HEISLER, LLP

1350 Avenue of the Americas, 31st Floor
New York, New York 10019
(646) 402-5650
Fax: (646) 402-5651
Email: srubenstein@sanfordheisler.com
**www.sanfordheisler.com**

555 Montgomery Street
Suite 1206
San Francisco, CA 94111
Fax: (415) 795-2021

1666 Connecticut Avenue
Suite 300
Washington, D.C. 20009
Fax: (202) 499-5199

December 7, 2012

**VIA FAX**
Honorable Andrew J. Peck
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 20 D
New York, New York  10007-1312

### Re:  *da Silva Moore, et al. v. Publicis  Groupe SA, et al., Case No. 11-CV-1279*

Dear Judge Peck:

On November 20, 2012, this Court directed the Parties to meet and confer regarding the anticipated scope of discovery necessary for a class action determination. Recognizing the impracticability of predictive coding at this juncture of the case, the Court ordered the parties to engage in a dialogue and jointly submit an "agenda" on how discovery should proceed in a bifurcated fashion, focused on class issues. This letter is not being served jointly in accordance with the Court's wishes because MSL's counsel indicated a preference to submit a "separate letter."

In accordance with the Court's directive, Plaintiffs prepared a specific proposal setting forth examples of targeted discovery necessary for the determination of class certification (attached hereto as Exhibit A). The discovery sought consists of updates of discovery previously produced, in addition to information directed at class issues. Plaintiffs also propose taking 30(b)(6) depositions to identify additional documents and data relevant to class issues. Plaintiffs sent their proposal to MSL's counsel on November 30, 2012. On December 4, 2012, counsel participated in a scheduled telephone conference; however, MSL's counsel did not respond to Plaintiffs' proposal. Instead, on December 6, 2012, MSL sent Plaintiffs its own proposed discovery plan (attached hereto as Exhibit B). There are stark and substantial differences between the proposed plans. MSL's plan is not a bifurcated discovery plan; rather, it is a proposal to allow MSL to seek full merits discovery of individual Plaintiffs. **MSL's proposal further seeks to limit Plaintiffs' class discovery, while allowing MSL to rely on discovery withheld from Plaintiffs to attack class certification** (see underlined portion of Exhibit B).

1

Notwithstanding the differences in their respective approaches to discovery, the Parties have agreed on two main points: (1) it is not preferable to continue with predictive coding at this time, and (2) it is preferable to focus discovery at this stage on class issues. The Parties have further agreed to meet and confer next week, and to include counsel for Publicis Groupe, given Judge Carter's recent decision. Counsel for Plaintiffs and counsel for Publicis Group had previously planned to confer next week regarding discovery.

Plaintiffs will make every effort to abide by this Court's directive and continue to confer to determine whether an agreement can be reached prior to the hearing on December 14, 2012.


Respectfully Submitted,

/s/Susan Rubenstein

Susan Rubenstein


Cc:     All counsel of record
        Judge Andrew L. Carter

Enclosures

2

# Exhibit A

**PLAINTIFFS' PROPOSED DISCOVERY PLAN TARGETED FOR CLASS
CERTIFICATION**

<u>**DOCUMENTS**</u>

**1. Pay**
   a) Updated HR data, payroll data and W2 data (including data to correct for errors &
   omissions, provide added itemization, etc. necessary for statistical analysis)
   b) Updated compensation policies
   c) Utilization reports noting billability and targets
   d) Documents reflecting interpretation, application and implementation of compensation
   policies and practices (to be identified after 30(b)(6) depositions)

**2. Promotion**
   a) Job postings for any positions along PR professional track
   b) Updated promotion policies
   c) Recruitment/hiring policies
   d) Documents reflecting interpretation, application and implementation of promotion
   and recruitment/hiring policies and practices (to be identified after 30(b)(6)
   depositions)

**3. Pregnancy/Caregiver**
   a) Updated maternity leave / flexible work schedule / other leave policies
   b) Documents re: maternity leave plans and other leave plans created by HR
   c) Documents re: any adverse action (removal from accounts, bad performance review,
   discipline, termination, etc.) taken against an employee within two years of returning
   from maternity leave, any other leave or working on a flex schedule
   d) Documents reflecting interpretation, application and implementation of maternity
   leave / other leave/ flexible work schedule policies and practices (to be identified
   after 30(b)(6) depositions)

**4. HR Documents**
   a) Directory of HR files
   b) Updated HR training documents
   c) HR complaints, including documents re: investigation/resolution of complaints (e.g.,
   any remedial action taken)
   d) E-mails to and from HR personnel regarding pay, promotion, pregnancy/caregiver
   and sexual harassment issues and complaints
   e) Documents reflecting interpretation, application and implementation of HR policies
   related to compensation, promotion/hire/recruitment, and pregnancy/caregiver/
   flexible work schedules / leave policies and practices (to be identified after 30(b)(6)
   depositions)

**5. Other (e.g., corporate structure; centralized decision-making)**
   a) Company directory
   b) Updated Organizational charts
   c) Budgets/forecasts rolled up to headquarters
   d) Documents relating to Tsokanos' termination (including investigation leading up to termination)
   e) Annual Office Plans
   f) Updated salary/hiring freeze documents
   g) Updated Restructuring/ reorganizations of brand, management structure, offices, practice areas, personnel layoffs/ severance

## DEPOSITIONS

Plaintiffs would also need to take a number of depositions before filing the class certification motion. These would include 30(b)(6) depositions on compensation policies and practices; policies and practices regarding how vacancies are filled through promotion or outside hire; policies and practices regarding maternity leave, other leave and flexible work schedules; and other relevant HR policies and practices. These depositions also would be used to identify any additional categories of documents and data that reflect the interpretation, application and implementation of these policies, practices and their decision-making processes, that would need to be produced. After production of any additional responsive documents, Plaintiffs would also take depositions of HR employees, the Company's top leadership (e.g., Tsokanos, Fleurot), and other members of the Company's leadership team (e.g., CFO, regional management). As we previously indicated, these depositions would be focused on issues bearing on class certification; accordingly, Plaintiffs reserve the right to re-depose witnesses for merits discovery.

# Exhibit B

| From: | Michelle Gilenke |
|---|---|
| To: | Michelle Gilenke |
| Subject: | FW: da Silva Moore v. Publicis, et al. - Proposed List of Class Discovery |
| Date: | Thursday, December 06, 2012 12:04:48 PM |

**From:** Chavey, Victoria Woodin (Hartford) [mailto:Victoria.Chavey@jacksonlewis.com]
**Sent:** Thursday, December 06, 2012 11:58 AM
**To:** Susan Rubenstein
**Cc:** Tom Henderson; Deepika Bains; Siham Nurhussein; Brecher, Jeffrey W. (Long Island); Bulmer, Peter R. (Chicago); Anders, Brett M. (Morristown); Evans, Paul C. (pevans@morganlewis.com)
**Subject:** RE: da Silva Moore v. Publicis, et al. - Proposed List of Class Discovery

Susan, Deepika, and Tom,

Following up on our meet and confer on Tuesday, we write this email in a further effort to discuss the discovery plan going forward.

After reviewing your email from Friday night, we had several questions that we raised with you concerning your proposal. During our discussion on Tuesday, we confirmed that you believe that class certification discovery is different than class merits discovery, but we were not able to discern how you think they are different. Also, in our discussion on Tuesday, you confirmed that your statement in the Friday email about potentially modifying or updating your proposal as the case progresses was intended only to mean that, during the meet and confer process, but not after we reach an agreement (if we can reach agreement), you may need to modify or change your proposal. You further confirmed that your proposal contemplates that the parties would not use the ESI protocol during class certification discovery. Finally, in our discussion on Tuesday, we tried to discuss how your proposal relates to your alleged class theories, but you were unwilling to discuss that issue further and directed us to Paragraphs 262 and 263 of the SAC.

Having further considered your proposal, we are concerned that class certification issues and class merits issues overlap to such an extent that separating them is infeasible, and we still do not understand how your proposal limits that which you would be seeking for class merits discovery. We are, however, interested in further exploring limited discovery as follows. First, we would like you to identify more specifically what depositions you would seek to take as part of limited discovery focused on class issues only. On a related note, we would seek your agreement, as part of an agreement to engage in limited discovery, that, even if you do not depose a particular witness during the limited discovery period, you would not oppose our reliance on that witness's testimony/affidavit/other evidence in opposing class certification or moving for summary judgment. Similarly, MSL would not be limited, in opposing your class certification motion, to relying on matters on which you took discovery, and thus you would not oppose MSL's use of any available information in its presentation of its opposition to class certification. Furthermore, MSL still would proceed with discovery on the EPA claims, including issuing written discovery requests, noticing the opt-in plaintiffs' depositions, deposing other witnesses who may be relevant to the EPA claims, and conducting any other discovery necessary to the defense of those claims (possibly including targeted e-mail searches). Finally, MSL may seek to move for summary judgment at or before the time you move for class certification, and we would undertake limited discovery only if you would not oppose

that motion on the ground that you have not had sufficient discovery.

There will likely be other issues that arise as we continue to discuss the parameters of a proposed limited discovery plan, but we can address them as necessary.  Please feel free to respond to this email by email, or we can schedule a call for later today or Friday morning.

Thank you.
Tory

**Victoria Woodin Chavey**
**Attorney at Law**
**Jackson Lewis LLP**
**90 State House Square, 8th Floor**
**Hartford, CT 06103-3708**

860.331.1534| Direct
860.522.0404| Main
860.247.1330| Fax

victoria.chavey@jacksonlewis.com

www.jacksonlewis.com

# Exhibit 10

# SANFORD HEISLER, LLP

1350 Avenue of the Americas, 31st Floor
New York, New York 10019
(646) 402-5650
Fax: (646) 402-5651
Email: srubenstein@sanfordheisler.com
**www.sanfordheisler.com**

555 Montgomery Street
Suite 1206
San Francisco, CA 94111
Fax: (415) 795-2021

1666 Connecticut Avenue
Suite 300
Washington, D.C. 20009
Fax: (202) 499-5199

December 13, 2012

**VIA EMAIL**
Victoria Woodin Chavey
Jackson Lewis LLP
90 State House Square, 8th Floor
Hartford, CT 06103-3708
victoria.chavey@jacksonlewis.com

Paul Evans
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
pevans@morganlewis.com

**Re:** *da Silva Moore, et al. v. Publicis Groupe SA, et al., Case No. 11-CV-1279*

Counsel:

    Enclosed please find an updated version of Plaintiffs' proposed discovery plan. As discussed yesterday, Plaintiffs have agreed to provide Defendants with a detailed summary of the discovery sought in our proposed plan. This summary was faxed to Judge Peck's chambers today in accordance with his directive of December 10, 2012.

Very Truly Yours,

Susan Rubenstein

Cc:    All counsel of record

Enclosures

1

## PLAINTIFFS' PROPOSED DISCOVERY PLAN TARGETED FOR CLASS CERTIFICATION

## **DOCUMENTS**

### 1. PAY
#### a) UPDATED HR DATA, PAYROLL DATA AND W2 DATA (INCLUDING DATA TO CORRECT FOR ERRORS & OMISSIONS, PROVIDE ADDED ITEMIZATION, ETC. NECESSARY FOR STATISTICAL ANALYSIS)

- Any database or computerized information (to be provided with metadata) used, created or maintained by Defendants, or now in the possession, custody or control of Defendants, from which information can be obtained concerning the following data for each Public Relations professional employed by Defendants in the United States, including but not limited to Account Executive through Director, from February 2008 forward (February 2005 for compensation data):

  a. Name of the employee;
  b. employee ID or unique identifier;
  c. gender of the employee;
  d. age and number of children;
  e. dates of employment;
  f. job history, including all job assignment(s)/job title(s) held;
  g. job function, job sub-function and/or job family, including unit, region, office, division or department worked in;
  h. compensation, including salary, bonuses, benefits and other forms of compensation by year, including data from Box 5 of W-2 form;
  i. any promotion received, applied for, or denied, including date on which employee received, applied for or was denied a promotion, and any reason for non-selection for promotion (if applicable);
  j. any demotion, including date of demotion and any reasons for demotion;
  k. any resignation or termination, including date of resignation or termination, any reasons for resignation or termination, and whether the employee signed a severance agreement and/or received severance pay;
  l. any transfer received, including those associated with any restructuring, the date of the transfer, and any reasons for the transfer;
  m. dates and nature of any leave of absence or other extended absence from employment, including maternity or paternity leave. **(*See* Plaintiffs' 1st Set of Request for Production, Request No. 1)**

b) **UPDATED COMPENSATION POLICIES**

- Any documents reflecting Company policies or procedures regarding compensation, benefits, promotion, performance evaluation, leave, discipline, or termination of MSLGroup and/or Publicis Groupe SA employees. (*See* **Plaintiffs' 1st Set of Request for Production, Request No. 12).**

- All documents related to the Employee Referral Bonus Program, as referenced in MSL001512. (*See* **Plaintiffs' 4th Set of Request for Production, Request No. 10).**

c) **UTILIZATION REPORTS NOTING BILLABILITY AND TARGETS**

- All monthly time records from 2006 through the present for PR professionals employed at MSLGroup, including but not limited to documents indicating hours worked, targets, percent billability, and percent productivity. (*See* **Plaintiffs' 5th Set of Requests for Production, Request No. 1).**

d) **DOCUMENTS REFLECTING INTERPRETATION, APPLICATION AND IMPLEMENTATION OF COMPENSATION POLICIES AND PRACTICES (TO BE IDENTIFIED AFTER 30(B)(6) DEPOSITIONS)**

- All documents, including all e-mails, instant messaging or other electronic communications, reflecting or relating to policies and implementation of policies and decisions about compensation for PR professionals at MSLGroup in the U.S. (*See* **Plaintiffs' 2nd Set of Request for Production, Request No. 23).**

**2. PROMOTION**

a) **JOB POSTINGS FOR ANY POSITIONS ALONG PR PROFESSIONAL TRACK**

- All documents that define, describe, explain, or relate to the job qualifications and requirements for each position along MSLGroup's PR professional track (including but not limited to Account Executive, Senior Account Executive, Account Supervisor, Director, Vice President, Senior Vice President, Managing Director, Region Head, or Officer positions), including all job descriptions and job analyses. (*See* **Plaintiffs' 2nd Set of Request for Production, Request No. 37).**

b) **UPDATED PROMOTION POLICIES**

- Any documents reflecting Company policies or procedures regarding compensation, benefits, promotion, performance evaluation, leave, discipline, or termination of MSLGroup and/or Publicis Groupe SA employees. (*See* **Plaintiffs' 1st Set of Requests for Production, Request No. 12).**

2

- All documents relating to recruitment and hiring of Regional Presidents, Managing Directors, and Practice Directors, including but not limited to candidate lists, email correspondence, interview notes, and memoranda of Jim Tsokonas, Deborah Levy, Tara Lilien, and any other MSLGroup employee. (*See* Plaintiffs' 5th Set of Requests for Production, Request No. 3).

- All promotion policies, practices, processes, and protocols for every year since 2006, including the Promotion Recommendation Process form for each year, and all drafts, revisions, notes and other documents related to any changes made to Promotion Recommendation Process documents and forms. (*See* Plaintiffs' 5th Set of Requests for Production, Request No. 5).

c) **RECRUITMENT/HIRING POLICIES**

- All documents that refer or relate to policies or practices relating to the posting of jobs at MSLGroup. (*See* Plaintiffs' 2nd Set of Requests for Production, Request No. 38).

- All documents that describe or reflect factors or criteria considered in the decision-making process for job selection and assignments, promotion, training, transfers, and compensation, for each position along MSLGroup's PR professional track throughout the U.S. (*See* Plaintiffs' 2nd Set of Requests for Production, Request No. 39).

d) **DOCUMENTS REFLECTING INTERPRETATION, APPLICATION AND IMPLEMENTATION OF PROMOTION AND RECRUITMENT/HIRING POLICIES AND PRACTICES (TO BE IDENTIFIED AFTER 30(B)(6) DEPOSITIONS)**

- All documents, including all e-mails, instant messaging or other electronic communications, reflecting or relating to policies and implementation of policies and decisions about recruitment, hiring, appointments and promotions at MSLGroup in the U.S. (*See* Plaintiffs' 2nd Set of Requests for Production, Request No. 22).

3. **PREGNANCY/CAREGIVER**
   a) **UPDATED MATERNITY LEAVE / FLEXIBLE WORK SCHEDULE / OTHER LEAVE POLICIES**

- All documents, including all e-mails, reflecting or relating to policies and implementation of policies regarding Family Medical Leave and pregnancy leave at MSLGroup. (*See* Plaintiffs' 2nd Set of Requests for Production, Request No. 24).

b) **DOCUMENTS RE: MATERNITY LEAVE PLANS AND OTHER LEAVE PLANS CREATED BY HR**

3

**c)   DOCUMENTS RE: ANY ADVERSE ACTION (REMOVAL FROM ACCOUNTS, BAD PERFORMANCE REVIEW, DISCIPLINE, TERMINATION, ETC.) TAKEN AGAINST AN EMPLOYEE WITHIN TWO YEARS OF RETURNING FROM MATERNITY LEAVE, ANY OTHER LEAVE OR WORKING ON A FLEX SCHEDULE**

- Any document concerning any disciplinary or remedial action, including, but not limited to, placement in any Performance Improvement Program, or other disciplinary program, reduced compensation, pay or salary, demotion or termination, taken against any female PR professional at MSLGroup in the U.S. within two years of announcing her pregnancy, working on a flexible schedule, or taking Family Medical Leave, maternity leave or short-term disability. **(*See* Plaintiffs' 2nd Set of Requests for Production, Request No. 25).**

- Any document concerning any job elimination, termination or resignation of any female PR professional at MSLGroup in the U.S. within two years of announcing her pregnancy, working on a flexible schedule, or taking Family Medical Leave, maternity leave or short-term disability. **(*See* Plaintiffs' 2nd Set of Requests for Production, Request No. 26).**

- Any document concerning any formal or informal evaluation, appraisal, assessment, review or rating, including, but not limited to, any probationary report, by any supervisor, manager, or peer or by the employee herself, for any female employee who has taken Family Medical Leave, maternity leave or short-term disability or any female employee who has worked a flexible schedule. **(*See* Plaintiffs' 2nd Set of Requests for Production, Request No. 27).**

- All documents that reflect, discuss, refer or relate to the flexible schedule Plaintiff O'Donohue worked from 1996 until the termination of employment with Defendants. **(*See* Plaintiffs' 2nd Set of Requests for Production, Request No. 58).**

**d)   DOCUMENTS REFLECTING INTERPRETATION, APPLICATION AND IMPLEMENTATION OF MATERNITY LEAVE / OTHER LEAVE/ FLEXIBLE WORK SCHEDULE POLICIES AND PRACTICES (TO BE IDENTIFIED AFTER 30(B)(6) DEPOSITIONS)**

- All documents, including all e-mails, reflecting or relating to policies and implementation of policies regarding Family Medical Leave and pregnancy leave at MSLGroup. **(*See* Plaintiffs' 2nd Set of Requests for Production, Request No. 24).**

## 4. HR DOCUMENTS
### a) DIRECTORY OF HR FILES

### b) UPDATED HR TRAINING DOCUMENTS

- Any document concerning any training conducted by or for MSLGroup employees relating to discrimination, harassment, retaliation, or diversity, including, but not limited to, any document distributed to employees during such training. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 35**).

- Any document concerning any management, leadership, development or training programs offered, required and/or recommended by MSLGroup for promotion or advancement, including policies or procedures concerning such training, criteria for acceptance into training program, names of participants, how and when employees are trained, and copies of any training materials. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 48**).

- All documents relating to the distribution, acknowledgement or training of EEO policies to MSLGroup employees. (*See* **Plaintiffs' 6th Set of Requests for Production, Request No. 12**).

### c) HR COMPLAINTS, INCLUDING DOCUMENTS RE: INVESTIGATION/RESOLUTION OF COMPLAINTS (E.G., ANY REMEDIAL ACTION TAKEN)

- All documents concerning complaints or concerns (whether internal or external, formal or informal, verbal or written) raised with MSLGroup by any female employee in the U.S. about her employment, including but not limited to issues concerning compensation, job assignment, promotions, demotions, transfers, job duties, performance reviews, discipline, maternity or other leave, flexible schedules, termination, or any form of gender discrimination or harassment. Please include all documents showing the identity of the individual reporting; the nature of the conduct being alleged; the identity of the victim(s), perpetrator(s), and/or witness(es); any investigation undertaken and by whom; the result of the investigation; and the ultimate resolution of the matter, if any. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 1**).

- To the extent not already produced in response to Request for Production 1, all documents concerning complaints (whether internal or external, formal or informal, verbal or written) about any discrimination or harassment involving MSLGroup or any of its employees in the U.S.. Please include all documents showing the identity of the individual reporting; the nature of the conduct being alleged; the identity of the victim(s),perpetrator(s), and/or witnesses; any investigation undertaken and by whom; the result of the investigation; and

5

the ultimate resolution of the matter, if any. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 2).**

- To the extent not already produced in response to Request for Production 1, all documents concerning any complaint (whether internal or external, formal or informal, verbal or written) lodged with MSLGroup by any Plaintiff, any individual referenced in ¶¶ 161-170 of the Amended Complaint, or any individual identified in Plaintiffs' responses to Interrogatory 11 of Defendant MSLGroup's First Set of Interrogatories. Please include all documents showing the identity of the individual reporting; the nature of the conduct being alleged; the identity of the victim(s),perpetrator(s), and/or witnesses; any investigation undertaken and by whom; the result of the investigation; and the ultimate resolution of the matter, if any. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 3).**

- Any documents reflecting or relating to any complaints, comments or other communications about the Holiday party hosted at Neil Dhillon's residence in 2008. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 6).**

- All e-mails, communications and/or documents sent to any of the e-mail addresses utilized by MSLGroup for employee feedback or complaints, including but not limited to powerofone@mslworldwide.com, poweroftheindividual@mslworldwide.com, townhall@mslworldwide.com, and whatsonyourmind@mslworldwide.com, and the anonymous suggestion box added to the Company's Intranet (Noovoo), that relate to complaints or concerns about discrimination, harassment, unfair treatment, diversity, work-life balance, pay, promotion, leave and/or other employment decisions. (*See* **Plaintiffs' 4th Set of Requests for Production, Request No. 1).**

- All documents responding to any e-mails, communications and/or documents sent to any of the e-mail addresses utilized by MSLGroup for employee feedback or complaints, including but not limited to powerofone@mslworldwide.com, poweroftheindividual@mslworldwide.com, townhall@mslworldwide.com, and whatsonyourmind@mslworldwide.com, and the anonymous suggestion box added to the Company's Intranet (Noovoo), that relate to complaints or concerns about discrimination, harassment, unfair treatment, diversity, work-life balance, pay, promotion, leave and/or other employment decisions. (*See* **Plaintiffs' 4th Set of Requests for Production, Request No. 2).**

**d) E-MAILS TO AND FROM HR PERSONNEL REGARDING PAY, PROMOTION, PREGNANCY/CAREGIVER AND SEXUAL HARASSMENT ISSUES AND COMPLAINTS**

- All documents, including but not limited to e-mails, memoranda, and meeting minutes, reflecting or relating to personnel decisions made by MSLGroup since January 1, 2008, including but not limited to hiring, job assignment, pay, promotion, leave, discipline, and termination of any potential, current or former PR professionals in the U.S. Please include in your response all documents reflecting, inter alia, who suggested and approved each personnel decision. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 16).**

**e) DOCUMENTS REFLECTING INTERPRETATION, APPLICATION AND IMPLEMENTATION OF HR POLICIES RELATED TO COMPENSATION, PROMOTION/HIRE/RECRUITMENT, AND PREGNANCY/CAREGIVER/ FLEXIBLE WORK SCHEDULES / LEAVE POLICIES AND PRACTICES (TO BE IDENTIFIED AFTER 30(B)(6) DEPOSITIONS)**

- All documents relating to MSLGroup's Human Resources ("HR") department's role in (a) preventing discrimination, harassment and/or retaliation; and (b) responding to complaints regarding the same, including but not limited to:
  a. the names, titles and number of HR staff tasked with investigating, processing and/or resolving complaints or concerns regarding discrimination and/or harassment;
  b. EEO or other training received by HR staff regarding the investigation, processing, and/or resolution of complaints, including frequency, duration, format, and content of training;
  c. any databases or other recordkeeping systems used to track complaints, investigations, and/or resolutions of complaints;
  d. guidelines for addressing complaints, including timeframe for responding to and investigating complaints, and the handling of confidentiality and/or anonymity during the investigation process. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 7).**

- All documents relating to MSLGroup employee resources for reporting concerns or complaints of discrimination, including but not limited to employee hotlines, HR, Ombuds, Legal, or other reporting channels, and the Company's efforts to publicize or disseminate information regarding same. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 8).**

**5. OTHER (E.G., CORPORATE STRUCTURE; CENTRALIZED DECISION-MAKING)**
   **a) COMPANY DIRECTORY**

   **b) UPDATED ORGANIZATIONAL CHARTS**

- Any organizational charts or other documents showing the corporate structure and management hierarchy of the Company, including the relationship among its parents, subsidiaries and/or affiliates, and the categories of jobs, job functions and departments within the Company. (*See* **Plaintiffs' 1st Set of Requests for Production, Request No. 6).**

- Any documents reflecting or relating to the composition, duties and decision-making authority of Publicis's "P12" Board Executive Committee since January 1, 2008. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 10).**

- Any documents reflecting or relating to the composition, duties and decision-making authority of MSLGroup's executive-level team in the U.S., including but not limited to President of the Americas Jim Tsokanos and Chief Financial Officer Maury Shapiro, since January 1, 2008. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 11).**

- Any documents reflecting or relating to the composition, duties and decision-making authority of MSLGroup's regional management team in the U.S., including but not limited to the individuals referenced in ¶ 17 of the Amended Complaint, since January 1, 2008. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 12).**

- Any documents reflecting or relating to the identities, duties and decision-making authority of the Managing Directors of MSLGroup's offices in the U.S. since January 1, 2008. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 13).**

   **c) BUDGETS/FORECASTS ROLLED UP TO HEADQUARTERS**

- All documents, including but not limited to e-mails, memoranda, reports, and meeting minutes, concerning MSLGroup's budget since January 1, 2008, including but not limited to components of the budget, changes to the budget, individuals responsible for reviewing the budget, the budget approval process, and any communications regarding the budget. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 17).**

- Any document regarding a "forecast," as referenced in MSL002234, which reads, "This promotion was budgeted in the forecast." (*See* **Plaintiffs' 5th Set of Requests for Production, Request No. 14).**

**d) DOCUMENTS RELATING TO TSOKANOS' TERMINATION (INCLUDING INVESTIGATION LEADING UP TO TERMINATION)**

- Jim Tsokanos' entire personnel file, including but not limited to any complaints lodged against him for discrimination or harassment. (*See* **Plaintiffs' 4th Set of Requests for Production, Request No. 53**).

- All documents from the personnel file of Demitrious Tsokanos. (*See* **Plaintiffs' 4th Set of Requests for Production, Request No. 15**).

- All memos, notes, agendas, emails and drafts thereof, and any other documents relating to any interviews or investigations conducted regarding Jim Tsokanos, including interviews or investigations about statements made by Jim Tsokanos, decisions made by Jim Tsokanos, and/or complaints about Jim Tsokanos, including statements, decisions, and/or complaints regarding allegations in this lawsuit. (*See* **Plaintiffs' 9th Set of Requests for Production, Request No. 1**).

- All memos, notes, agendas, emails and drafts thereof, and any other documents relating to any meetings between Jim Tsokanos and Olivier Fleurot regarding the departure of Jim Tsokanos from MSLGroup and the installment of Renee Wilson as President of MSLGroup North America. (*See* **Plaintiffs' 9th Set of Requests for Production, Request No. 2**).

- All documents reflecting and/or related to communications regarding the departure of Jim Tsokanos from MSLGroup and the installment of Renee Wilson as President of MSLGroup North America. (*See* **Plaintiffs' 9th Set of Requests for Production, Request No. 3**).

- All memos, notes, agendas, emails and drafts thereof, and any other documents relating to the departure of Jim Tsokanos from MSLGroup, the installment of Renee Wilson as President of MSLGroup North America, or the transition of duties from Jim Tsokanos to Renee Wilson. (*See* **Plaintiffs' 9th Set of Requests for Production, Request No. 4**).

- All documents reflecting and/or related to any severance agreement or payment offered to Jim Tsokanos prior to his departure from MSLGroup, including any memos, notes, agendas, emails and drafts thereof, and any other documents relating to this severance agreement or payment or meetings about this severance agreement or payment. (*See* **Plaintiffs' 9th Set of Requests for Production, Request No. 5**).

- The "tweet" posted by Olivier Fleurot on Twitter, and later removed from Twitter, which stated: "If you lose money for the company, I'll be understanding. If you lose a shred of the company's reputation, I'll be ruthless.-W Buffet." (*See* **Plaintiffs' 10th Set of Requests for Production, Request No. 1).**

- All memos, notes, agendas, emails and drafts thereof, and any other documents relating to any meetings or communications regarding Olivier Fleurot's "tweet" referenced above in Request for Production 1. (*See* **Plaintiffs' 10th Set of Requests for Production, Request No. 2).**

- All documents reflecting and/or related to communications regarding Olivier Fleurot's "tweet" referenced above in Request for Production 1. (*See* **Plaintiffs' 10th Set of Requests for Production, Request No. 3).**

- Any emails, memos, or other communications from Olivier Fleurot, any MSLGroup board or staff member, or any client regarding the departure of Jim Tsokanos, including but not limited to communications regarding the consequences of damaging the Company's reputation and/or communications conveying a message similar to that contained in the "tweet" referenced above in Request for Production 1. (*See* **Plaintiffs' 10th Set of Requests for Production, Request No. 4).**

### e) ANNUAL OFFICE PLANS

- All documents (PowerPoint presentations, Excel spreadsheets and others) reflecting or relating to national plans, regional plans, office plans, practice plans, or other plans prepared for, distributed during, or otherwise relating to MSLGroup Americas' annual plan and budget submitted to MSLGroup headquarters, including but not limited to plans relating to revenue, employee compensation, and other employment issues. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 18).**

### f) UPDATED SALARY/HIRING FREEZE DOCUMENTS

- All documents concerning any salary freeze at MSLGroup during the period Plaintiffs were employed by Defendants. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 20).**

- All documents regarding any hiring, salary, or promotion freeze (referenced in MSL002228) at MSLGroup. (*See* **Plaintiffs' 5th Set of Requests for Production, Request No. 17).**

g) **UPDATED RESTRUCTURING/ REORGANIZATIONS OF BRAND, MANAGEMENT STRUCTURE, OFFICES, PRACTICE AREAS, PERSONNEL LAYOFFS/ SEVERANCE**

- All documents relating to the Company's restructuring or reorganization of its Public Relations practice under the MSLGroup network, beginning in or around 2008. (*See* **Plaintiffs' 1st Set of Requests for Production, Request No. 11**).

- Any documents reflecting or relating to severance pay for any female PR professional at MSLGroup, including any severance agreement or package, and any discussions (whether formal or informal) regarding severance, regardless of whether an agreement was reached regarding severance. (*See* **Plaintiffs' 2nd Set of Requests for Production, Request No. 29**).

- All documents relating to Project Name: "MS&L Corp - Restructure," including but not limited to all project summaries and financial estimates. (See MSL001448). (*See* **Plaintiffs' 5th Set of Requests for Production, Request No. 5**).

- All documents regarding the management hierarchy, reporting structure and decision-making authority of employees working in specialized business units, including: PBJS, Publicis Meetings, TMG Strategies, MS&L Digital (AA), Schwartz MSL and Winner & Associates. (*See* **Plaintiffs' 5th Set of Requests for Production, Request No. 10**).

- Any severance agreement signed by any MSLGroup employee since February 2008 (February 2005 for New York employees). (*See* **Plaintiffs' 8th Set of Requests for Production, Request No. 3**).

## DEPOSITIONS

Plaintiffs would also need to take a number of depositions before filing the class certification motion. These would include 30(b)(6) depositions on compensation policies and practices; policies and practices regarding how vacancies are filled through promotion or outside hire; policies and practices regarding maternity leave, other leave and flexible work schedules; and other relevant HR policies and practices. These depositions also would be used to identify any additional categories of documents and data that reflect the interpretation, application and implementation of these policies, practices and their decision-making processes, that would need to be produced. After production of any additional responsive documents, Plaintiffs would also take depositions of HR employees, the Company's top leadership (e.g., Tsokanos, Fleurot), and other members of the Company's leadership team (e.g., CFO, regional management). As we previously indicated, these depositions would be focused on issues bearing on class certification; accordingly, Plaintiffs reserve the right to re-depose witnesses for merits discovery.

# Exhibit 11

1

```
      C5E3DAS1
 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 2
 3    MONIQUE DA SILVA MOORE, et
 3    al.,
 4
 4                    Plaintiffs,
 5
 5             v.                          11 CV 1279 (ALC)(AJP)
 6
 6    PUBLICIS GROUPE SA, et al.,
 7
 7                    Defendants.
 8
 8    ------------------------------x
 9                                        New York, N.Y.
 9                                        May 14, 2012
10                                        9:35 a.m.
10
11    Before:
11
12                        HON. ANDREW J. PECK,
12
13                                        Magistrate Judge
13
14                        APPEARANCES
14
15    SANFORD WITTELS & HEISLER, LLP
15         Attorneys for Plaintiffs
16    BY:  STEVEN WITTELS
16         SIHAM NURHUSSEIN
17         DEEPIKA BAINS
17
18    JACKSON LEWIS LLP
18         Attorneys for Defendants MSLGroup
19    BY:  VICTORIA WOODIN CHAVEY
19         JEFFREY W. BRECHER
20         BRETT M. ANDERS
20
21    MORGAN, LEWIS BOCKIUS
21         Attorneys for Defendant Publicis
22    BY:  PAUL C. EVANS
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

C5E3DAS1

```
 1              (In open court)
 2              THE COURT:  We have at least two items if not more on
 3    the agenda today.  One is the jurisdictional discovery and the
 4    other is the additional documents in dispute and whatever
 5    information, since I see you have your experts here, you all
 6    want to give me with regard to the predictive coding documents
 7    we've been looking at.
 8              I think we should start with the Publicis issue.  Any
 9    reason not to, Mr. Wittels?
10              MR. WITTELS:  No, your Honor.  Before we get started,
11    your Honor, I'd like to put something on the record.  A, I'd
12    ask your Honor again to voluntarily recuse yourself from this
13    matter.  And not rule on any further disputes until the recusal
14    motion is decided.
15              THE COURT:  Is there anything new you have to add or
16    are we going to keep revisiting this issue?
17              MR. WITTELS:  No, there are new things, your Honor.
18    As we said in our papers, before the recusal motion was filed
19    we believe your Honor had exhibited the appearance of
20    impropriety to a reasonable person, but even since filing the
21    motion --
22              THE COURT:  I've read your reply papers.  Is there
23    anything new?
24              MR. WITTELS:  There is not, your Honor.  Last week, I
25    believe that last week and on April 25, your Honor had shown a
```
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

                                                                12

C5E3DAS1

1              THE COURT:  What are you talking about?
2              MR. WITTELS:  After the seed set and all of the
3    documents found were gone through, through the different
4    iterations, if it was more than 40,000, to use your Honor's
5    example, the defendants were required to produce all the
6    documents to plaintiffs.  There wasn't -- well -- well, your
7    Honor is shaking his head.
8              THE COURT:  I have no idea what you are talking about.
9    If you are saying that after I decided hypothetically that
10   40,000 was the right stopping point that nevertheless they had
11   to produce every other document from 40,001 to 10 million to
12   you, then I have no idea what you are talking about.  After
13   whatever the cutoff was, that was it.  You were done except for
14   a certain sampling, period.
15             MR. WITTELS:  Well, that's my point.  There is no --
16   there has never been in any proceeding until now that I am
17   aware of any stopping point --
18             THE COURT:  You're absolutely wrong.  And that's the
19   whole thing that's before the federal rules committee, that's
20   the whole thing with the proportionality decisions which are
21   becoming much more numerous.  You don't get every single
22   relevant document regardless of the cost.
23             MR. WITTELS:  Well, but relevancy, which is what your
24   Honor is determining now, is never determined based on
25   proportionality.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

13

C5E3DAS1

```
 1              THE COURT:  Of course it is.
 2              MR. WITTELS:  Relevancy is -- may I finish.  Relevancy
 3    is whether a document is relevant or not and whether it -- you
 4    don't have to determine out of the box whether a document is
 5    admissible, whether a document --
 6              THE COURT:  Counsel, you still seem to be saying that
 7    you are entitled to every relevant document that MSL has
 8    regardless of the cost and I would like you to cite a case to
 9    me that says that.
10              MR. WITTELS:  Well, I can cite to you --
11              THE COURT:  Not now.  Put it in a brief.  Put it in a
12    memo, put it in a letter.  Look, there is a limit.  I've been
13    very patient with you despite what you may think.  I've given
14    many, many hours to this case.  It is unusual for me to have
15    full day hearings on discovery matters and to review hundreds
16    of documents.  I'm doing that and have done that with you.  I
17    don't really feel like engaging in endless debates with you,
18    the only purpose of which seems to be for you to find a gotcha.
19              So, you obviously are not shy.  Your argument in your
20    recusal papers that you're somehow scared of me is laughable.
21    File any motions you want, file any objections you want.  Let's
22    move on.
23              On the Publicis issue.
24              MS. NURHUSSEIN:  Your Honor, so your Honor, as we
25    noted in our letter that was submitted last week, we're now
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300