UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MONIQUE DA SILVA MOORE, et al.,                    :

            Plaintiffs,                    :                    11 Civ. 1279 (ALC) (AJP)

      -against-                    :                    **REPORT AND RECOMMENDATION**

PUBLICIS GROUPE SA & MSL GROUP,                    :

           Defendants.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Andrew L. Carter, United States District Judge:**

           Plaintiffs move for leave to amend their complaint for a third time seeking to, inter

alia, add individual Title VII and class FMLA claims. (Dkt. No. 435: Notice of Motion; see also,

e.g., Dkt. No. 436: Pls. Br. at 2; Dkt. No. 442: Pls. Reply Br. at 2.) Defendants Publicis Groupe and

MSL Group (collectively, "MSL") oppose plaintiffs' motion on the grounds that, inter alia, plaintiffs

"cannot establish 'good cause' as required by Rule 16(b)." (Dkt. No. 440: MSL Opp. Br. at 3.)

           For the reasons set forth below, plaintiffs' motion for leave to file a third amended

complaint should be DENIED.

# BACKGROUND[1]

Plaintiff Monique Da Silva Moore filed the original class action complaint on February 24, 2011, alleging, inter alia, a class claim for gender discrimination in violation of Title VII and an individual claim for unlawful retaliation in violation of the Family and Medical Leave Act ("FMLA"). (See Dkt. No. 1: Compl.) See also Da Silva Moore v. Publicis Groupe SA, 2012 WL 6082454 at *1. Plaintiffs filed the first amended complaint on April 14, 2011 on behalf of Da Silva Moore and four additional named plaintiffs and added class claims for violations of the Equal Pay Act ("EPA") and pregnancy discrimination in violation of Title VII, as well as two individual FMLA claims. (See Dkt. No. 4: 1st Am. Compl.) See also Da Silva Moore v. Publicis Groupe SA, 2012 WL 6082454 at *1. MSL answered on June 3, 2011. (See Dkt. No. 19: Answer.)[2]

At a conference on July 21, 2011, then-assigned District Judge Sullivan instructed the parties to hone in "on what this case is really about" because the Court would "keep this discovery very focused and reasonable and not [allow] a general fishing expedition." (Dkt. No. 33: 7/21/11 Conf. Tr. at 13-14; see also id. at 10.) Judge Sullivan also specifically raised concerns about

---

[1] While only the information relevant to the present motion is recounted herein, the Court's opinion is informed by its heavy involvement in this case since its inception. See, e.g., Da Silva Moore v. Publicis Groupe SA, 868 F. Supp. 2d 137 (S.D.N.Y. 2012) (Peck, M.J.); Da Silva Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 1698980 (S.D.N.Y. May 14, 2012) (Peck, M.J.); Da Silva Moore v. Publicis Groupe SA, 287 F.R.D. 182 (S.D.N.Y. 2012) (Peck, M.J.), adopted, 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012) (Carter, D.J.); Da Silva Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 517207 (S.D.N.Y. Feb. 14, 2012) (Carter, D.J.). Additional background information also can be found in Judge Carter's prior opinions. See Da Silva Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 6082454 at *1-3 (S.D.N.Y. Dec. 3, 2012) (Carter, D.J.); Da Silva Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at *1 (S.D.N.Y. June 29, 2012) (Carter, D.J.).

[2] Defendant Publicis Groupe's motion to dismiss for lack of personal jurisdiction was denied on December 3, 2012. See Da Silva Moore v. Publicis Groupe SA, 2012 WL 6082454 at *11.

whether the named plaintiffs were similarly situated with respect to the broadly-defined class. (7/21/11 Conf. Tr. at 13-14: "[I]t doesn't appear to me to be the case that the named plaintiffs are going to be similarly situated with every female employee in the company.") The August 9, 2011 Case Management Plan and Scheduling Order ordered that the parties could not amend their pleadings or join additional parties without leave of Court. (Dkt. No. 35: 8/9/11 Case Mgmt. Plan & Scheduling Order ¶¶ 3-4.)

The parties almost immediately had discovery disputes. (See, e.g., Dkt. No. 40: 9/14/11 Sullivan Order.) The case was referred to me on November 28, 2011 (Dkt. No. 48: 11/28/11 Referral Order), and reassigned from Judge Sullivan to Judge Carter on January 9, 2012 (Dkt. No. 63: 1/9/12 Notice of Case Reassignment).

During a conference on February 8, 2012, I ordered plaintiffs to move for conditional collective action certification of their EPA claim by February 29, 2012, despite plaintiffs' protestations that they should not be required to do so until the close of discovery:

> THE COURT: . . . I remind you we talked about this last time as to the date for your motion. And particularly now that the case is no longer in front of Judge Sullivan, it seems to me at least the collective action application needs to be made very quickly.[3] How soon can you do it?
>
> . . . .
>
> [Plaintiffs' Counsel]: Your Honor, we would object to moving the briefing schedule to an earlier period given the discovery disputes in this case.
>
> THE COURT: That wasn't my question. My question is, how soon can you do it? . . . Collective action is a very easy standard. The preliminary collective action motion is very easy.

---

[3]     Under Judge Sullivan's original Case Management Plan, plaintiffs' motions "for class and collective action certification [were to] be filed at [plaintiffs'] discretion, but no later than April 1, 2013." (8/9/11 Case Mgmt. Plan & Scheduling Order ¶ 10.)

. . . .

> [Plaintiffs' Counsel]: Your Honor, there is no guarantee what standard would be applied. That would be up to Judge Carter. Depending on his judgment on the level of discovery --
>
> THE COURT: [Counselor], your motion is due two weeks from today. . . .
>
> [Plaintiffs' Counsel]: Your Honor, can I ask you to reconsider given the fact that we don't have the payroll data?
>
> THE COURT: No. February 29th. I'll give you one extra week. February 29th. If you don't move by that point, you never get to move.

(Dkt. No. 97: 2/8/12 Conf. Tr. at 20-22, fn. added; see also Dkt. No. 71: 1/4/12 Conf. Tr. at 67-69.)

On February 29, 2012, plaintiffs moved for conditional collective action certification of their EPA claim and for leave to file a second amended complaint ("SAC"). (Dkt. No. 133: 3/29/12 Notice of Motion for Conditional Certification; Dkt. No. 154: 3/30/12 Notice of Motion for Leave to File 2d Am. Compl.)[4/] In a June 29, 2012 Order, Judge Carter granted plaintiffs leave to file the second amended complaint, but did so "with hesitation." Da Silva Moore v. Publicis Groupe SA, 2012 WL 2574742 at *4. In fact, Judge Carter "cautioned" the plaintiffs "against amending the complaint again." Id. at *13. The second amended complaint, although dated February 29, 2012, officially was filed on July 9, 2012. (Dkt. No. 257: 2d Am. Compl. Dkt. Entry.)

Judge Carter granted plaintiffs' motion for conditional certification of their EPA claim and authorized plaintiffs to issue the collective action notice. See Da Silva Moore v. Publicis Groupe SA, 2012 WL 2574742 at *7-13. Approximately twenty-six additional plaintiffs opted in

---

[4/]    While plaintiffs' motion for leave to file the second amended complaint was docketed on March 30, 2012, the motion papers are dated February 29, 2012 (see 3/30/12 Notice of Motion for Leave to File 2d Am. Compl.), and the second amended complaint itself was docketed on February 29, 2012 (Dkt. No. 110: 2d Am. Compl.). In their briefs, both parties characterize it as being filed together with the motion for EPA collective action certification. (Dkt. No. 436: Pls. Br. at 4; Dkt. No. 440: MSL Opp. Br. at 4.)

5

between August and October 2012. (Pls. Br. at 4; compare MSL Opp. Br. at 13 n.8.) The Court

instructed plaintiffs unequivocally that if any of the opt-in plaintiffs intended to assert individual

claims, the complaint would need to be amended immediately, before class discovery:

> THE COURT: . . . If the opt-ins want to bring individual claims, you know if the
> time hasn't also passed, now is the time to do it. What you've said in your letters in
> front of me is sort of they may, they probably will, they might, you know, whatever.
> We're not doing it that way. So I see that as one issue. If those 26 minus, plus or
> minus the ones who are disputed but if they are going to assert claims and subject to
> whatever defendants have to say and whatever reminder there may be, that it's too
> late under a case management order or whatever but if they're going [to] do a claim,
> let's do it before we start going through document discovery again. . . .
>
> . . . .
>
> . . . [I]f the new 26 opt-ins are going to bring Title VII claims as co-plaintiffs for the
> class, whatever, then you are going to have to amend the complaint. I am not doing
> it with a maybe. So either they're part of the class and don't have an individual Title
> VII claim and then we treat it as the class or they have an individual Title VII claim
> and if so now is the time to decide that. So if all of that is done before December
> 14th we'll deal with whatever we need to deal with.

(Dkt. No. 346: 11/20/12 Conf. Tr. at 4, 25, emphasis added.)

The Court reiterated this on December 14, 2012, and was reassured by plaintiffs'

counsel that there were not going to be additional individual claims:

> THE COURT: . . . In addition, you said you may be amending the complaint to assert
> Title VII claims for some of the opt-ins. If you are going to do it as a fallback or
> anything else, let's do it.
>
> . . . .
>
> [Plaintiffs' Counsel]: . . . We don't intend on pursuing the individual cases of the
> plaintiffs that got it. They are putative class members. They are parties.
>
> THE COURT: All right.
>
> [Plaintiffs' Counsel]: They have Title VII claims. That's a class thing, but they are
> not asserting them individually.

(Dkt. No. 367: 12/14/12 Conf. Tr. at 41-42, emphasis added.)

MSL expressed concern as to the scope of class discovery because of plaintiffs'

failure to specifically identify MSL's allegedly discriminatory policies. (See, e.g., 12/14/12 Conf.

Tr. at 26-27.) When plaintiffs responded that they lacked the information necessary to make more

specific discovery requests, the Court instructed plaintiffs' counsel to "try talking to [their] clients"

about the subject policies. (12/14/12 Conf. Tr. at 30.) On March 28, 2013, plaintiffs' counsel stated:

> [Plaintiffs' counsel]: . . . There are five opt-in plaintiffs, we believe, who also have
> pregnancy claims.
>
> THE COURT: What is the class cert? This is class discovery?
>
> [Plaintiffs' counsel]: Yes. We are seeking a sub class with regard to pregnancy
> discrimination with regard to Title 7.
>
> THE COURT: Is that in the complaint at all?
>
> [Plaintiffs' counsel]: Yes.
>
> THE COURT: So what do the opt-ins have to do with any of this?
>
> [Plaintiffs' counsel]: The policies regarding maternity leave and so forth would also
> be a 30(b)(6).

(Dkt. No. 382: 3/28/13 Conf. Tr. at 8, emphasis added.) The Court ordered class discovery to be

completed by June 21, 2013, with the class certification motion due July 12, 2013. (Dkt. No. 381:

3/28/13 Scheduling Order.)[2/] The parties engaged in extensive class discovery, including expert

reports and approximately twenty-eight depositions. (See Pls. Br. at 5-9; MSL Opp. Br. at 4.)

On July 2, 2013, plaintiffs wrote to Judge Carter requesting permission to move for

leave to file a third amended complaint "to conform [their] Complaint to [their] Motion for Class

Certification." (Dkt. No. 439-1: MSL Ex. A: Pls. 7/2/13 Letter.) On July 9, 2013 plaintiffs wrote:

> Plaintiffs seek leave to conform their class allegations to recently obtained evidence
> that could not have been attained earlier given the recent closure of class discovery.
> Through class discovery, Plaintiffs have been able to obtain evidence concerning
> their class claims inclusive of testimony regarding pregnancy discrimination,
> caregiver discrimination, and FMLA interference and retaliation from pertinent
> witnesses (beyond the originally named Plaintiffs who had individual FMLA
> claims).

(MSL Ex. A: Pls. 7/9/13 Letter at 2, fn. omitted.) The "examples of such newly obtained testimony"

listed in plaintiffs' letter included excerpts from depositions of opt-in plaintiffs Lauer, McLean,

Leventhal, Webster, Scott, Ortiz, McKenna, Surchin, Caruso and Andrzejewski. (MSL Ex. A: Pls.

---

[2/]     Again, I had to insist that plaintiffs move for class certification before discovery closed:

> [W]hen I inherited this case on referral from Judge Sullivan, the original district
> judge, I said I don't have in your scheduling order a requirement to move for opt-in
> collective action status or for class action status until after the close of discovery and
> that makes no sense. And [plaintiffs'] argument was sort of well, we convinced
> Judge Sullivan of that. Leave us alone. And I did for a while and then insisted that
> you do the collective action motion and lo and behold you won which you know. So
> the question is, can you either move for class certification immediately or what
> minimal discovery. You do need to move for class certification but I am not going
> to give you full class action discovery as if the class were certified, nor am I going
> to allow you to use this current scheduling order as a way to do [discovery] twice.

(11/20/12 Conf. Tr. at 6-7.)

7/9/13 Letter at 2-4.)[6/] Following additional letter submissions, Judge Carter referred plaintiffs'

request to amend to me. (Dkt. No. 429: 7/15/13 Memo Endorsed Order.)

On July 15, 2013, plaintiffs filed their motion for class certification, seeking

certification of the following sub-classes:

(1) A **pay class** consisting of all female PR professionals in MSL's U.S. offices employed in job codes LM115 (SVPs) and/or LM 120 (VPs) at any point between February 2008 and the date of final judgment, a definition that is consistent with the Equal Pay Act ("EPA") class that this Court conditionally certified in June 2012 (Doc. No. 250);

(2) An **FMLA/pregnancy leave class** consisting of all female PR professionals in MSL's U.S. offices who:

(i) took FMLA leave and/or pregnancy/maternity leave at any point between February 2008 and the date of judgment; or

(ii) took FMLA and/or pregnancy/maternity leave since January 2007 and whose employment terminated at any point between February 2008 and the date of judgment;

(3) A **caregiver class** consisting of all female PR professionals in MSL's U.S. offices who worked a reduced schedule (less than 35 hours per week) or had any other flexible work arrangement at any point between February 2008 and the date of judgment;

(4) A **(b)(2) injunctive relief class** for class-wide declaratory and injunctive relief.

(Dkt. No. 431: Pls. Class Cert. Br. at 4, fn. omitted.)

---

[6/] These plaintiffs opted in on July 12, 2012 (Lauer), August 24, 2012 (McKenna and Andrzejewski), September 19, 2012 (Leventhal), September 21, 2012 (Scott and Caruso), October 5, 2012 (Webster), and October 15, 2012 (McLean, Surchin and Ortiz). (Dkt. No. 254: Lauer Consent; Dkt. No. 289: McKenna Consent; Dkt. No. 302: Andrzejewski Consent; Dkt. No. 310: Leventhal Consent; Dkt. No. 311: Scott Consent; Dkt. No. 313: Caruso Consent; Dkt. No. 333: Webster Consent; Dkt. No. 324: McLean Consent; Dkt. No. 325: Surchin Consent; Dkt. No. 329: Ortiz Consent.)

On July 26, 2013, plaintiffs filed the instant motion (Dkt. No. 435) for leave to amend

their complaint for a third time to "narrow" existing Title VII class claims and add individual Title

VII and class FMLA claims. (Pls. Br. at 2.)[2/] Plaintiffs proposed the following class definitions:

> 272. The first class, the Pay Class, consists of all female public relations
> employees who are, have been, or will be employed in the positions of Vice
> President or Senior Vice President (classified as job codes LM115 and LM120) by
> Defendants in the United States at any time during the applicable liability period,
> including until the date of judgment in this case. This class definition is consistent
> with the Equal Pay Act class already conditionally certified by this Court. Upon
> information and belief, there are hundreds of such employees in the proposed class.
>
> 273. The second class, the FMLA / Pregnancy Leave Class, consists of any
> and all female PR professional employees who are, have been, or will be employed
> in the United States who: (i) took an FMLA and/or pregnancy/maternity leave of any
> duration pursuant to MSL's leave policies at any point from February 2008 to the
> date of judgment, or (ii) took an FMLA and/or pregnancy/maternity leave of any
> duration pursuant to MSL's leave policies at any point since January 2007 and whose
> employment terminated at any point between February 2008 and the date of
> judgment. Upon information and belief, there are more than forty such employees
> in the proposed class. The third class, the Caregiver Class, consists of any and all
> female PR professional employees who are, have been, or will be employed in the
> United States who have children and sought or worked on a reduced or less than
> full-time schedule or otherwise sought or worked a flexible work schedule or
> arrangement at any time during the applicable liability period, including until the
> date of judgment. Upon information and belief, there are more than forty such
> employees in the proposed class.

(Dkt. No. 437: Nurhussein Aff. Ex. 4-A: Proposed 3d Am. Compl. ¶¶ 272-73, emphasis added.)[8/]

---

[2/]    Despite the fact that plaintiffs moved for class certification of the claims in their proposed
third amended complaint on July 15, 2013, they objected to an expedited resolution of their
application to amend the complaint, instead filing the instant motion two weeks after their
class certification motion. (See Dkt. No. 451: MSL 8/13/13 Br. in Support of Motion to
Strike at 2 n.3.)

[8/]    As the redlined version of the proposed third amended complaint makes clear, the "second"
and "third" class allegations are brand new. (Nurhussein Aff. Ex. 4-B: Redlined Proposed
3d Am. Compl. ¶¶ 272-73.)

The proposed third amended complaint ("TAC") also seeks to add Sheila McLean as a named plaintiff. (Nurhussein Aff. Ex. 4-A: Proposed 3d Am. Compl. ¶¶ 70, 228-45.)

## ANALYSIS

## I. RULE 16(b) LEGAL STANDARD

The parties agree that this motion to amend is governed by Fed. R. Civ. P. 16(b), under which plaintiffs bear the burden of establishing "good cause" for their proposed amendment. (Dkt. No. 436: Pls. Br. at 10; Dkt. No. 440: MSL Opp. Br. at 6-7.)[9] "Whether a party has established 'good cause' depends upon that party's diligence." DiGennaro v. Whitehair, 467 F. App'x 42, 44 (2d Cir. 2012).[10] "A party demonstrates good cause by a showing that 'despite its having exercised diligence, the applicable deadline could not have been reasonably met.'" Da Silva Moore v. Publicis Groupe SA, 2012 WL 2574742 at *3.[11] The good cause standard is not met "'when the proposed amendment rests on information that the [moving] party knew, or should have known,'" earlier. See, e.g., iMedicor, Inc. v. Access Pharm., Inc., 290 F.R.D. at 52; Da Silva Moore v. Publicis Groupe SA, 2012 WL 2574742 at *3.

---

[9]  E.g., Murphy v. Snyder, No. CV 10-1513, 2013 WL 934603 at *21 (E.D.N.Y. Mar. 8, 2013) ("[T]he Second Circuit has effectively stated that the good cause standard of Rule 16 must be applied before consideration [of] the more liberal standard of Rule 15(a)." (& cases cited therein)), report & rec. adopted, 2013 WL 1335757 (E.D.N.Y. Mar. 29, 2013); Da Silva Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at *3 (S.D.N.Y. June 29, 2012) (Carter, D.J.).

[10]  Accord, e.g., Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007); Da Silva Moore v. Publicis Groupe SA, 2012 WL 2574742 at *3.

[11]  Accord, e.g., Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000); iMedicor, Inc. v. Access Pharm., Inc., 290 F.R.D. 50, 52 (S.D.N.Y. 2013).

11

While diligence is the primary consideration, the Court "also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d at 244.[12] A proposed amendment that would cause the parties "'to expend significant additional resources to conduct discovery'" or "'significantly delay the resolution of the dispute'" is prejudicial. Da Silva Moore v. Publicis Groupe SA, 2012 WL 2574742 at *3.[13]

## II. APPLICATION OF LEGAL STANDARD TO PLAINTIFFS' MOTION

In substance, plaintiffs' proposed amendments would: (1) redefine the Title VII class to include a "caregiver" class and add class FMLA claims; (2) convert McLean from an opt-in to a named plaintiff and class representative; and (3) redefine the Title VII class to exclude McLean's promotion claim and Wilkinson's pregnancy and pay claims, and assert Wilkinson's claims individually.[14]

---

[12] Accord, e.g., Henry v. Dep't of Transp., 69 F. App'x 478, 481 (2d Cir. 2003); Da Silva Moore v. Publicis Groupe SA, 2012 WL 2574742 at *3.

[13] See also, e.g., Scott v. N.Y.C. Dep't of Corr., 445 F. App'x 389, 391 (2d Cir. 2011) ("defendants would have been prejudiced by the untimely filing of an amended complaint" where "they had already deposed [plaintiff], otherwise completed discovery, and" the amendment would require them "to reopen discovery"); Ouedraogo v. A-1 Int'l Courier Serv., Inc., 12 Civ. 5651, 2013 WL 3466810 at *5 (S.D.N.Y. July 8, 2013).

[14] In the operative second amended complaint, the class is defined as follows:

> The class consists of all female public relations employees, who are, have been, or will be employed by Defendants in the United States at any time during the applicable liability period, including until the date of judgment in this case ("female public relations employees" or "female public relations professionals"). Upon information and belief, there are hundreds of such employees in the proposed class.

(Dkt. No. 110: 2d Am. Compl. ¶ 252.)

Plaintiffs argue that good cause exists because they "diligently seek leave to amend one month after the close of class discovery on June 24, 2013." (Dkt. No. 436: Pls. Br. at 1.) According to plaintiffs, they "were unable to plead the FMLA class claim until critical facts emerged through class discovery," and the facts necessary to plead the proposed caregiver class claim were unknown until class discovery, when plaintiffs "finally received valuable information previously sought regarding female employees who took leave and who worked flexible work schedules." (Pls. Br. at 1; see also Dkt. No. 442: Pls. Reply Br. at 2, 6-8.) Plaintiffs argue that MSL "will suffer no prejudice if Plaintiffs are granted leave to amend" because, inter alia, the proposed "narrowed class definitions, including the caregiver class, are part of Plaintiffs' originally-pled Title VII claims," and the FMLA class claim is "closely aligned with the pregnancy discrimination class claims in the complaint." (Pls. Br. at 1-2, 20-21.)[15] Plaintiffs further argue that MSL will not be prejudiced because it already took "full class discovery" from McLean and "extensively deposed the Plaintiffs, including Sheila McLean and Katherine Wilkinson, and Plaintiffs' experts regarding the proposed amendments." (Pls. Br. at 1-2; see also Pls. Reply Br. at 4, 9.)[16]

[15] Plaintiffs reiterate this argument throughout their reply brief. (See, e.g., Pls. Reply Br. at 1 ("Whether framed as a unitary gender discrimination class . . . or divided into additional subclasses, these core allegations are constant. . . . The seeds were rooted all along."); id. at 5 ("Plaintiffs clearly and specifically pled a widespread pattern of terminating women who returned from maternity leave . . . . The only thing remaining was to append the label 'FMLA,' hardly an earth-shattering development."); id. at 6 ("Plaintiffs' FMLA class claims are essentially the same as their Title VII maternity leave claims." (citation omitted)); id. at 10 ("none of the claims asserted in the TAC are really anything new").)

[16] In the words of Yogi Berra, this is "deja vu all over again." Plaintiffs' arguments are remarkably similar to those advanced in support of their motion for leave to file the second amended complaint in February 2012. See Da Silva Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at *4 (S.D.N.Y. June 29, 2012) (Carter, D.J.) ("Plaintiffs respond that . . . the amendments should be permitted because there are no new claims alleged in the SAC and that they meet the [Rule 16(b)(4)] 'good cause' standard. They argue that many of (continued...)

13

MSL counters that plaintiffs fail to meet the good cause standard because when plaintiffs actually identify the "'critical facts'" that emerged during class discovery, "it becomes clear that the information came from their own clients, whom Plaintiffs' counsel has represented for at least nine months." (Dkt. No. 440: MSL Opp. Br. at 2.) As to the MSL 30(b)(6) depositions and MSL documents cited in plaintiffs' brief, MSL argues that plaintiffs disingenuously "alter[ed] their arguments" when MSL's premotion letters showed plaintiffs could not rely on their own clients' testimony to justify amendment, and in any event, plaintiffs fail to explain how any new MSL evidence "led to the discovery of new information, never before possessed by Plaintiffs, on which they now base their new class theories." (MSL Opp. Br. at 9-10.) Finally, MSL argues that amending class claims now that class discovery is over and the motion for class certification is pending would prejudice MSL. (MSL Opp. Br. at 17-22.)

As Judge Carter noted in the face of these same arguments on plaintiffs' application to file the second amended complaint, "[t]he issue of diligence is tricky." Da Silva Moore v. Publicis Groupe SA, 2012 WL 2574742 at *4. Nevertheless, it is clear here that plaintiffs' proposed amendments are based on information that was in their control well before class discovery and the class certification motion, and MSL would be unduly prejudiced by the amendments at this stage.

---

16/ (...continued)
the factual allegations Defendants oppose in the SAC were made in the FAC and that the information regarding the sexual harassment complaints and Defendants' centralized and mandatory company-wide Human Resources policies was not produced to them until late January 2012. . . . Plaintiffs further submit that any purported delay in bringing the motion was because of Defendants' non-compliance and late disclosure of documents. Plaintiffs also argue that converting [opt-in plaintiff] Ms. Hubbard into a named plaintiff is of no consequence because it is a change in form, not in substance.").

## A. Plaintiffs' Good Cause And Prejudice Arguments Are Mutually Contradictory

In an effort to establish good cause based on purportedly new facts while simultaneously showing an absence of prejudice to MSL, plaintiffs rendered their own arguments contradictory and thus incredible. (See page 12 above.) As MSL accurately observed:

> [I]f, as Plaintiffs argue, Defendants should have known that there were FMLA and 'caregiver' class-based theories in the case, then it is necessarily true that Plaintiffs could have asserted those new claims earlier and that their failure to do so reveals a lack of diligence. Plaintiffs cannot have it both ways—both that they acted diligently in presenting the new class claims after completing class discovery and after filing their motion for class certification, and also that Defendants were sufficiently aware of the new claims that they conducted class discovery.

(Dkt. No. 440: MSL Opp. Br. at 19.) E.g., Knoll, Inc. v. Moderno, Inc., 11 Civ. 488, 2012 WL 3613896 at *3 (S.D.N.Y. Aug. 22, 2012) ("Defendants . . . argu[e] that because '[t]he issue of whether the furniture is generic is already being litigated in this case, . . . Defendants do not need to show that they learned of new facts to assert this claim.' Yet whether or not this claim is related to issues already in the case, Defendants must show good cause as to why their pleading was not timely amended. Defendants make no such showing, [i]ndeed, Defendants' admission that this claim is related to issues already in the case makes plain that the substance of this claim was known to Defendants before the Case Management Plan's amendment deadline. Defendants have failed to show good cause with respect to this claim." (emphasis added)); Oscar v. BMW of N. Am., LLC, 09 Civ. 11, 2011 WL 6399505 at *5 n.2 (S.D.N.Y. Dec. 20, 2011) (Plaintiff's "assertion that [defendant] would not suffer from unfair surprise presents, of course, a double-edged sword. It also reinforces that [plaintiff] could have sought an amendment with a redefined class at an earlier stage of the litigation—i.e., that he was dilatory in waiting until now to pursue a broader class . . . .").[17]

---

[17]    See, e.g., Oppenheimer & Co. v. Metal Mgmt., Inc., 08 Civ. 3697, 2009 WL 2432729 at *3
(continued...)

**B.** **Plaintiffs Have Not Established Good Cause For The Proposed Amendments**

**1.** **Adding FMLA And "Caregiver" Class Claims**

As plaintiffs revealed in their July 9, 2013 letter to Judge Carter, the primary basis

for the proposed amendments is testimony elicited from plaintiffs during class discovery. (See

pages 7-8 above.) Indeed, despite plaintiffs' efforts to now identify MSL-based sources of "new"

evidence (see page 12 above; see also Dkt. No. 442: Pls. Reply Br. at 2 n.3), their motion papers are

replete with citations to plaintiffs' depositions. (E.g., Dkt. No. 436: Pls. Br. at 8 n.12, 9 n.14, 19.)

With reasonable diligence, information obtained from plaintiffs themselves should

have been gathered by plaintiffs' counsel when those individuals opted into the case in or before

October 2012 (see page 8 n.6 above), well in advance of class discovery depositions. It is well-

established that a party's failure to act on previously available information precludes a finding of

good cause. See, e.g., Knoll, Inc. v. Moderno, Inc., 11 Civ. 488, 2012 WL 3613896 at *5 (S.D.N.Y.

Aug. 22, 2012) ("'Defendants seek to amend their claim to reflect the new information Defendants

have learned.' However, '[w]hatever additional research led counsel to realize the potential for relief

[pursuant to this affirmative defense], that work could have taken place before the initial [answer]

---

17/    (...continued)

n.3 (S.D.N.Y. July 31, 2009) ("[T]he fact that [defendant] sought consent to amend its
answer '[i]mmediately after [counsel] reached the conclusion that an amendment was
necessary,' does not mean it is reasonable to assume that only the most recent document
production allowed it to discover the need for new defenses and counterclaims. Indeed,
there obviously is some tension between [defendant's] contention that its proposed
amendments 'raise no new issues, add no new parties, and are based upon the same set of
operative facts as those in the original pleadings,' and therefore are not prejudicial, and its
claim that certain newly-discovered evidence forms the basis for its motion to amend."
(citations omitted)), report & rec. adopted, 2010 WL 743793 (S.D.N.Y. Mar. 2, 2010); see
also, e.g., Oscar v. BMW of N. Am., LLC, 2011 WL 6399505 at *5 (Plaintiff "argues that
the amendment would not prejudice [defendant] because . . . among other things, the . . .
[new] claims here parallel the extant claims (albeit as to a different class) . . . . These
arguments are unpersuasive.").

was filed' as '[t]he availability of discovery had nothing to do with [this] belated addition . . . .' Defendants have failed to show good cause with respect to this defense." (citation omitted)); 380544 Can., Inc. v. Aspen Tech., Inc., 07 Civ. 1204, 2011 WL 4089876 at *5 (S.D.N.Y. Sept. 14, 2011) ("Whatever additional research led counsel to realize the potential for relief under [the proposed additional] law, that work could have taken place before the initial complaint was filed. Although the Court appreciates counsel's candor, attorney oversight is no excuse for late amendment.").[18]

The Court is not persuaded that recent MSL discovery formed the basis of the proposed amendments. As an initial matter, plaintiffs' attempts to identify such MSL discovery are so vague as to be meaningless. (E.g., Pls. Br. at 8: "These [MSL] depositions were instructive and informed Plaintiffs' decision to add a class FMLA claim for the pregnancy class. . . . Plaintiffs also received documents in class discovery which demonstrate the highly centralized nature of

---

[18]  See also, e.g., iMedicor, Inc. v. Access Pharm., Inc., 290 F.R.D. 50, 53 (S.D.N.Y. 2013) ("[T]he fact that plaintiff's initial counsel did not think to assert quasi-contract and equitable claims arising out of the same facts as the breach of contract claim is not an excuse for late amendment."); Da Silva Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at *4 (S.D.N.Y. June 29, 2012) (Carter, D.J.) ("Defendants, however, accurately remark that all plaintiffs were employees of MSL and counsel could easily have discovered the information earlier. For example, some of the plaintiffs testified during the depositions that they were aware of the salary freezes during their employment."); Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 458-59 (S.D.N.Y. 2012) ("But it would have taken [plaintiff] little investigation and probably no more than 15 minutes' time to determine that [defendant's] publicly-accessible website continued to falsely claim registered trademark status. Moreover, it is undisputed that printouts of [defendant's] website, including the Q & A section containing the False Comparative Advertising Statement, were produced to [plaintiff] in discovery in early January 2011, [plaintiff] has not shown good cause under Rule 16 for waiting until November 2011 to act on information that was clearly in its possession some 10 months earlier." (fn. omitted)).

Defendants' leave policies, including documents which equate pregnancy leave with FMLA leave.")[19]

Moreover, even assuming _arguendo_ that the cited MSL discovery contained some new information, that alone would not suffice to establish good cause.[20] As MSL points out, "Plaintiffs do not explain, nor could they, how the production of these documents led to the discovery of new information, never before possessed by Plaintiffs, on which they now base their new class theories." (MSL Opp. Br. at 10.) At most, the recent MSL discovery may have provided

---

[19] See, e.g., Knoll, Inc. v. Moderno, Inc., 2012 WL 3613896 at *3 ("Defendants contend that this claim is based on new information but fail to sufficiently identify the new information. . . . 'Without specific information regarding the new evidence at issue . . . the Court is unable to find that [the movant] has demonstrated good cause . . . .'"); Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland, 09 Civ. 4622, 2010 WL 4968247 at *4 (S.D.N.Y. Nov. 24, 2010) ("Plaintiff here appears to argue that new information has come to light, but its argument is unavailing. Plaintiff states, without elaboration, 'The relevancy of the Defendant's conduct as set forth in the complaint and the proposed amended complaint was not immediate [sic] known.'" (fn. omitted)).

[20] MSL's opposition brief explains why the discovery plaintiffs cite did not reveal any "new" information. For example, the "'Maternity Leave Check List'" that plaintiffs claim was produced for the first time in May 2013 (Pls. Br. at 11 & Ex. 26), "had been produced years ago" (Dkt. No. 440: MSL Opp. Br. at 10 & Ex. B). Likewise, the purported "'moms' list" and the April/May 2013 emails appear to include little if any previously undisclosed maternity leave information. (Pls. Br. at 6-7 & Ex. 11; MSL Opp. Br. at 10-11 & Ex. C.) See, e.g., Kodak Graphic Commc'ns Can. Co. v. E.I. du Pont de Nemours & Co., No. 08-CV-6553, 2011 WL 4711968 at *6 (W.D.N.Y. Sept. 23, 2011) (Plaintiff "has demonstrated that the [purportedly new] email . . . was first produced to [defendant] in October 2009 . . . . Accordingly, nearly a year before this motion was filed, [defendant] had the basis to allege [the proposed new claim] . . . . Its failure to move in a more timely manner amounts to impermissible delay and does not satisfy the good cause standard."), report & rec. adopted, 2011 WL 6826650 (W.D.N.Y. Dec. 28, 2011); Oppenheimer & Co. v. Metal Mgmt., Inc., 08 Civ. 3697, 2009 WL 2432729 at *4 (S.D.N.Y. July 31, 2009) ("Given the paucity of new information contained in the exhibit annexed to its reply papers, [defendant] has not shown, as it must, that it diligently sought to comply with the scheduling order, and therefore lacks the good cause necessary to grant its motion."), report & rec. adopted, 2010 WL 743793 (S.D.N.Y. Mar. 2, 2010).

18

some additional support for the proposed new claims,[21] but certainly it was not the primary basis; plaintiffs had access to enough information—whether from the named or opt-in plaintiffs or previously produced MSL policy documents—long before class discovery began, let alone ended. See, e.g., Oppenheimer & Co. v. Metal Mgmt., Inc., 2009 WL 2432729 at *3 ("As [plaintiff] correctly observes, [defendant] has had notice of the waiver issue since the outset of this suit. . . . [Defendant] concedes that at least 'some' of the documents supporting [plaintiff's] position 'were produced in December.' Although the documents more recently produced . . . may further have underscored the potential viability of [plaintiff's] waiver argument, the issue was not new. [Defendant] therefore had ample opportunity to assert its partial breach of contract defense and make any other required amendments before the deadline for doing so expired." (citation omitted)); Apollo Theater Found., Inc. v. W. Int'l Syndication, 02 Civ. 10037, 2005 WL 1041141 at *19 (S.D.N.Y. May 5, 2005) (Plaintiff "claims that it has good cause for the amendment because 'it was only on September 14, 2004, during the deposition of [a witness] that the [plaintiff] learned of the full extent of [defendant's] bad faith and intentional abuse of its fiduciary position.' . . . [Plaintiff] also states that [defendant's] expert reports and depositions, 'all of which were provided in September 2004,' further support these facts. [Plaintiff's] good cause arguments are transparent. . . . Plainly, it was unnecessary for [plaintiff] to wait until after the deposition of [that witness] to raise a claim based on information within its control even before the initiation of this action.").[22]

---

[21]   Indeed, plaintiffs' counsel expressly describes the MSL testimony as "consistent with" testimony from the deposed plaintiffs, i.e., the MSL 30(b)(6) witness merely corroborated testimony that had always been obtainable from plaintiffs themselves. (Pls. Br. at 9.)

[22]   See also, e.g., N. Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC, 887 F. Supp. 2d 78, 89 (D.D.C. 2012) ("When deciding which claims to bring and which facts to allege, apparently neither the plaintiff nor its counsel (continued...)

## 2. Converting McLean From An Opt-In To A Named Plaintiff

Plaintiffs' moving brief offers no explanation as to why they waited until now to try
to convert McLean to a named plaintiff when she opted in on October 15, 2012 (see page 8 n.6
above), other than to say that she "was deposed last month, on June 14, 2013" and testified
extensively about "the details of her claims during her recent deposition." (Dkt. No. 436: Pls. Br.
at 15.) While plaintiffs argue that they "could not have added Ms. McLean prior to the scheduling
deadline, which expired even before the issuance of EPA collective action notice" (Pls. Br. at 15),
this does not explain why she could not have been added during the eight months that elapsed
between her opt-in and the close of class discovery.[23] As with the proposed addition of class claims,

---

22/ (...continued)

bothered to examine key evidence to which it had access. Even if we accept plaintiff's
argument that it did not know of the facts giving rise to the amendments until recently,
plaintiff had in its possession—for six years—facts sufficient to make the allegations it now
seeks to assert. Justice does not require this Court to bless plaintiff's attempts to plead first
and investigate later."); Lamothe v. Town of Oyster Bay, No. 08-cv-2078, 2011 WL
4974804 at *8 (E.D.N.Y. Oct. 19, 2011) ("Plaintiffs state that 'it took years to put the pieces
of the puzzle together' and that '[m]any items were tipped off to from the depositions.'
Regardless, even if the Plaintiffs have learned new facts through the discovery process, this
does not automatically entitle the Plaintiffs to amend." (citation omitted)); 380544 Can., Inc.
v. Aspen Tech., Inc., 2011 WL 4089876 at *4 ("The discovery provided by their former
employer did not unearth misrepresentations previously unknown to Plaintiffs. The
documents may have buttressed Plaintiffs' allegations of scienter, but they have had enough
information to plead [the proposed new claim] . . . since . . . long before discovery began.
The Court is unconvinced that Plaintiffs could not have included the substance of the
proposed allegations prior to the May 2, 2008 deadline for amendment."); Volunteer Fire
Ass'n of Tappan, Inc. v. Cnty. of Rockland, 2010 WL 4968247 at *4 (Plaintiff "fails to
explain why the information to which it had access prior to October 13, 2009 was
insufficient for it to amend in a timely fashion. . . . Plaintiff thus fails to demonstrate that the
October 13, 2009 deadline could not have been reasonably met despite its diligence.").

23/ Compare, e.g., Da Silva Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at
*4 (S.D.N.Y. June 29, 2012) (Carter, D.J.) ("Plaintiffs also offer no explanation as to why
they are now converting Ms. Hubbard into a named Plaintiff though Ms. Hubbard filed her
consent to join the action on June 30, 2011."); with, e.g., Ouedraogo v. A-1 Int'l Courier
(continued...)

plaintiffs' untimely request to add a class representative is not excused by plaintiffs' counsel's failure to discuss McLean's claims with her prior to her deposition. (See cases cited at pages 15-16 above.) Similarly, there is no merit to the argument that, since McLean is a current employee, plaintiffs now should be permitted to convert McLean to a named plaintiff in order to save the injunctive relief class claim. (Pls. Br. at 23.) As plaintiffs readily admit, the prayer for injunctive relief is not new.[24] (See Dkt. No. 1: Compl. Wherefore ¶¶ C-D; Dkt. No. 110: 2d Am. Compl. Wherefore ¶¶ E-F; Dkt. No. 442: Pls. Reply Br. at 4: "the addition of Sheila McLean, a current employee, as a class representative will strengthen the claims for injunctive relief, which date from the original Complaint" (emphasis added).)[25]

---

[23] (...continued)
Serv., Inc., 12 Civ. 5651, 2013 WL 3466810 at *5 (S.D.N.Y. July 8, 2013) ("Plaintiff seeks leave to amend based on the addition of a second named party plaintiff . . . . [T]he record reflects that the new party plaintiff . . . filed his 'Consent to Become Party Plaintiff Under the FLSA' . . . less than six weeks from when Plaintiff filed this motion to amend . . . . [W]ith consideration to where this matter currently is in the discovery process . . . , the Court concludes that—absent a showing of prejudice by Defendants—Plaintiff has sufficiently demonstrated good cause under Rule 16(b).").

[24] Indeed, plaintiffs were instructed by Judge Sullivan to consider the adequacy of their named plaintiffs as early as the first Court conference in July 2011. (See pages 2-3 above.)

[25] Cf., e.g., Smith v. Manhattan Club Timeshare Ass'n, Inc., 12 Civ. 6363, --- F. Supp. 2d ----, 2013 WL 1955882 at *9, *11 (S.D.N.Y. May 10, 2013) ("[T]he Court denies [plaintiff's] request to substitute a new named plaintiff. . . . Minimal legal research would have indicated that [the current plaintiff's claims were barred] . . . . Significantly, [plaintiff] has not offered the Court any explanation whatsoever for her failure to recognize the [need to name a different plaintiff] at the time of filing, or her subsequent delay in seeking leave to amend. Under these circumstances, the Court concludes that Defendants would be unduly prejudiced if Plaintiff was now given a fifth bite at the apple." (citations omitted)); LSSi Data Corp. v. Time Warner Cable, Inc., 11 Civ. 7780, 2012 WL 933078 at *4 (S.D.N.Y. Mar. 20, 2012) ("But in fact adding [plaintiff's corporate parent] as a plaintiff at this point would . . . require reopening discovery and depositions deep into the long-set briefing schedule before the Court. Further, the timing of [plaintiff's] eleventh-hour motion strongly suggests that it seeks to add [its corporate parent] because [plaintiff's] entitlement to [defendant's] data may
(continued...)

Nor is the Court persuaded by the unsubstantiated assertion in plaintiffs' reply brief that "McLean was unwilling to step forward as a Named Plaintiff until now" because "current employees fear retaliation as a consequence of being named on a complaint." (Pls. Reply Br. at 5; see also Pls. Br. at 15 n.23.) First, there is no explanation as to what actually convinced McLean to step forward now at this relatively late stage in the litigation. (See Pls. Reply Br. at 5.) Second, plaintiffs fail to submit an affidavit or any other proof from McLean attesting to her fear of retaliation as the justification for the delayed application to convert her to a named plaintiff.[26/] Since McLean opted in on October 15, 2012, and since plaintiffs' counsel fail to explain what changed between then and now that alleviated any purported retaliation fears and justifies belatedly converting her to a named plaintiff, plaintiffs' request to do so should be denied.[27/]

---

[25/]   (...continued)

be open to question. [Plaintiff] has not articulated a bona fide reason for its delay in making this motion. Under these circumstances, where [plaintiff] knew six months before its motion to amend that [defendant] disputed that [plaintiff] could invoke [its corporate parent's] rights without adding [it] as a party, and where there is evident prejudice to [defendant] from the belated addition of [the corporate parent], [plaintiff's] unexplained delay in moving to do so provides an independent basis to deny its Rule 15 motion.").

[26/]   The only submitted McLean-related evidence are deposition excerpts, which make no mention of a retaliation fear. (See Dkt. No. 445: Henderson Aff. Exs. A & B: McLean Dep.) Since plaintiffs insisted on formal motion practice for this motion, their failure to submit an affidavit from McLean cannot be excused, nor cured now that the motion is fully submitted.

[27/]   The Court rejects plaintiffs' counsel's attempted reliance on a distinction between the level of risk associated with becoming a named plaintiff and the risk McLean was willing to take back in October 2012 when she opted in to the collective action. (See Pls. Reply Br. at 5: "While opting into a collective action entails some risk, placing one's name on the Complaint is a considerably more formal, public, and intimidating gesture.") Indeed, as plaintiffs admit, the cases cited in their brief recognize retaliation fear as a legitimate factor in the opt-in context. (Pls. Br. at 15 n.23: "In fact, courts have acknowledged that fear of retaliation may often prevent employees – particularly those still employed by the defendant – from taking the lesser step of opting in to a collective action as a non-named party plaintiff.")

22

## 3. Adding Individual Title VII Claims

Plaintiffs' motion seeks to assert individual Title VII claims on behalf of McLean (promotion) and Wilkinson (pay and pregnancy). (Dkt. No. 436: Pls. Br. at 2 & n.3, 16 & n.25.) Buried in a footnote in their reply brief, is the assertion that "Plaintiffs no longer intend to assert an individual promotion claim on behalf of Ms. McLean." (Dkt. No. 442: Pls. Reply Br. at 4 n.12.) The Court therefore treats that proposed claim as abandoned, and will not discuss it further.

Plaintiffs fail to establish good cause for only now seeking to assert Wilkinson's individual Title VII claims. In November 2012, the Court told plaintiffs' counsel unequivocally that if they intended to amend to assert individual Title VII claims on behalf of any opt-in plaintiffs, they needed to do so at that time. (See page 5 above.)[28] In December 2012, plaintiffs' counsel stated they would not seek to add individual claims. (See page 5 above.) There is no excuse for an unexplained attempt to do so now, eight months later.[29] Plaintiffs argue that Wilkinson's Title VII pay claim will not be encompassed by the Title VII class claim because they "propose to narrow the scope of the Title VII pay class to Vice Presidents and Senior Vice Presidents," consistent with the EPA collective action class that was certified on June 29, 2012. (Pls. Br. at 2 n.3; see also page 11 above.) It cannot be disputed that plaintiffs knew of the definition of the collective action, and thus

---

[28] This instruction was in part to avoid precisely this situation. The Court shares in MSL's concern that permitting Wilkinson's individual claim "would open the door to a potential flood of other individual claims from Opt-In Plaintiffs." (Dkt. No. 440: MSL Opp. Br. at 25 n.21.)

[29] "This conclusion admittedly may seem harsh since discovery in this case is not complete and the prejudice to [plaintiff] may well be minimal. Nevertheless, to allow the lack of prejudice to trump [defendant's] lack of good cause would be to ignore the important distinction between Rules 15(a) and 16(b)." Oppenheimer & Co. v. Metal Mgmt., Inc., 08 Civ. 3697, 2009 WL 2432729 at *4 (S.D.N.Y. July 31, 2009), report & rec. adopted, 2010 WL 743793 (S.D.N.Y. Mar. 2, 2010).

23

that their Title VII pay class would exclude Wilkinson well in advance of the instant motion, and their failure to offer any explanation for this delayed application precludes the necessary finding of diligence. (Dkt. No. 382: 3/28/13 Conf. Tr. at 19 ("the EPA claims substantially overlap the Title 7 claims"); see also MSL Opp. Br. at 13 n.8 (Wilkinson is "outside the scope of the Equal Pay Act collective act and the putative Title VII class action").)[30/]

Likewise, plaintiffs argue that Wilkinson "is no longer a part of the Title VII pregnancy classes" because the "pregnancy class has been narrowed to include pregnancy leave takers because Defendants withheld discovery concerning a broader pregnancy class." (Pls. Br. at 16 & n.25.) As discussed above, having determined that the proposed amendments to the scope of the Title VII class are based on testimony that plaintiffs' counsel had access to for at least eight months, plaintiffs' delay in seeking to amend the scope (and assert individual claims on behalf of those who fell outside the amended scope) precludes a finding of good cause. (See pages 15-16 above.) Plaintiffs were instructed to discern the scope of the class claim and assert individual claims in November 2012, not July 2013. (See page 5 above.) Finally, the Court rejects plaintiffs' attempt to blame their delay on a purported lack of discovery—the fact that plaintiffs believed they were entitled to information outside the Court-ordered scope of class discovery does not mean MSL withheld discovery. Plaintiffs should not have been waiting on additional discovery to assert their individual claims, particularly in light of this Court's instruction: "If you are going to do it as a fallback or anything else, let's do it." (Dkt. No. 367: 12/14/12 Conf. Tr. at 41-42; see page 5 above.)

---

[30/]    See also Da Silva Moore v. Publicis Groupe SA, 11 Civ. 1279, 2012 WL 2574742 at *7 (S.D.N.Y. June 29, 2012) (Carter, D.J.) (Defendants "complain that if these individual [EPA] claims are allowed to proceed, Plaintiffs will seek individual plaintiffs and will continue to amend the complaint. . . . [I]n the interest of judicial economy, the Court will allow the two individual EPA claims to proceed in this action, but . . . Plaintiffs are cautioned against amending the complaint to include additional individual EPA claims.").

See, e.g., Knoll, Inc. v. Moderno, Inc., 11 Civ. 488, 2012 WL 3613896 at *4 (S.D.N.Y. Aug. 22, 2012) ("Defendants also contend that they 'are still waiting for Plaintiff to produce additional information that would shed more light on this issue,' but good cause requires a showing of new information, not a lack of information."); Oscar v. BMW of N. Am., LLC, 09 Civ. 11, 2011 WL 6399505 at *4 (S.D.N.Y. Dec. 20, 2011) (holding the "time lag precludes a finding of diligence" where plaintiff "has been aware for more than two years" that defendant would not produce the discovery "yet has only now sought to remedy that situation by amending the class definition"); In re GPC Biotech AG Sec. Litig., 07 Civ. 6728, 2009 WL 5125130 at *4 (S.D.N.Y. Dec. 29, 2009) (Chin, D.J.) ("The record is clear that plaintiffs knew or should have known, well before the completion of briefing on the motion to dismiss, that their critical allegations were false. . . . [P]laintiffs argue that they did not take action . . . because defendants refused to provide them with the proper evidence. It was not defendants' responsibility, however, to provide plaintiffs with evidence to prove or disprove the allegations of plaintiffs' own complaint."); Pilates, Inc. v. Current Concepts, Inc., 120 F. Supp. 2d 286, 315-16 (S.D.N.Y. 2000).[31/]

---

[31/]   While plaintiffs' failure to make a good cause showing precludes them from "narrowing" their class claims by way of an amended pleading, Judge Carter of course has the discretion to utilize whatever subclasses he deems appropriate under the class claims that were properly pleaded in the operative second amended complaint. Fed. R. Civ. P. 23(c)(5); see, e.g., Spencer v. No Parking Today, Inc., 12 Civ. 6323, 2013 WL 1040052 at *9 & nn.25-27 (S.D.N.Y. Mar. 15, 2013) (Peck, M.J.) (& cases cited therein), report & rec. adopted, 2013 WL 2473039 (S.D.N.Y. June 7, 2013) (Carter, D.J.). Further, to the extent plaintiffs' proposed amendments in fact would drop or narrow previously pleaded claims, the parties can agree to do so by stipulation, should MSL agree with plaintiffs' characterization of the amendments as narrowing. (See, e.g., Dkt. No. 451: MSL 8/13/13 Br. in Support of Motion to Strike at 3: "[I]t is plain that the specific 'caregiver sub-class' on which Plaintiffs have moved for class certification is not [in] the SAC. If it were, Plaintiffs obviously would not need to amend their claims to 'narrow and refine [them] into' such a sub-class.") Cf., e.g., In re GPC Biotech AG Sec. Litig., 2009 WL 5125130 at *5 ("Defendants have spent considerable resources defending against charges that plaintiffs now acknowledge [should
(continued...)

## C.   MSL Would Be Significantly Prejudiced By The Proposed Amendments

Despite plaintiffs' assertion that MSL "will suffer no prejudice" (Dkt. No. 436: Pls.

Br. at 2), MSL has sufficiently detailed the ways in which it would be prejudiced if plaintiffs were

permitted to amend their complaint with class discovery closed and the class certification motion

pending:

> Defendants have not cross-examined all Plaintiffs on the proposed new class-based allegations, have not sought or obtained through discovery any definition of "caregiver" or the proposed putative class of "caregivers," did not identify potential declarants who could provide evidence regarding an FMLA class claim or a "caregiver" class claim, did not consider or analyze, using the defense experts, the new class theories that Plaintiffs now wish to put forward, or otherwise prepare to defend themselves against these claims. . . .
>
> . . . .
>
> Specifically, Defendants already have completed the depositions of all Named Plaintiffs in the SAC and 16 additional Opt-In Plaintiffs, traveling across the country (including Atlanta, Washington DC, and San Francisco) to do so. If the amendment were permitted, these depositions would need to be reopened to permit Defendants to explore the bases for the alleged FMLA and "caregiver" class claims in the TAC—asking about the deponents' knowledge of alleged bias, their own and others' flexible schedules and part-time arrangements, whom they claim allegedly made decisions concerning leave, the existence of any comparators who were treated differently, their knowledge and understanding of policies and practices regarding FMLA and flexible work arrangements, to name just a few. Defendants also would need to be permitted to identify additional declarants to provide evidence in support of their opposition to class certification, and Plaintiffs might then request to depose those additional declarants. Moreover, Defendants should be permitted, if the TAC is allowed, to inquire whether Sheila McLean is an appropriate class representative, including such topics as whether she supervised other putative class members or has other potential conflicts with members of the class that would preclude her from serving as a class representative.

---

31/   (...continued)
be withdrawn] . . . . The allegations should never have been made, and, at a minimum, they should have been withdrawn much earlier. Yet, defendants were required to defend against them. . . . I conclude that defendants would be prejudiced if leave to amend were to be granted.").

Perhaps most importantly, Defendants would be prejudiced by the granting of Plaintiffs' motion because doing so would necessitate the reopening of expert discovery to permit Defendants' experts to analyze the new class claims. Particularly with regard to the statistical expert evidence, it is critical that Defendants' expert have the opportunity to review the exact scope of Plaintiffs' asserted class claims and to assess any alleged statistical disparities, as well as any damages issues. Indeed, Plaintiffs' class certification motion relies heavily on statistics with regard to the new FMLA and caregiver class claims.

(Dkt. No. 440: MSL Opp. Br. at 18-21.)[32]

As an initial matter, plaintiffs' argument that MSL will suffer no prejudice because "the amendments are substantially aligned with the originally-asserted individual and class claims" (Pls. Br. at 20) cannot be credited in the face of plaintiffs' diligence arguments. (See Part II.A above.) In any event, while plaintiffs assert that the "caregiver" class claim is already pleaded in the second amended complaint (Pls. Br. at 19: "For example, the word caregiver (or a variation of the word) is mentioned 24 times in the SAC"), merely referencing "caregivers" in passing is not tantamount to stating a claim.[33]

---

[32] The resulting prejudice also extends to MSL's ability to defend plaintiffs' pending motion for class certification. (See Dkt. No. 451: MSL 8/13/13 Br. in Support of Motion to Strike at 4.)

[33] See, e.g., Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009) ("Plaintiffs also argue that the proposed amendment would not have required new discovery and that the dates in the scheduling order were irrelevant because the theories pled in the Third Amended Complaint were already in the case. However, the Second Amended Complaint reads as if [defendant] operated directly in the Sudan with no intervening subsidiaries, and it does not allege that [defendant] acted through GNPOC. While references to GNPOC are sprinkled throughout the Second Amended Complaint, the gravamen is that [defendant] conspired directly with the Sudanese government. Thus, the Third Amended Complaint, which alleged that [defendant] aided and abetted GNPOC and that it conspired with Greater Nile, substantially revised plaintiffs' theory." (emphasis added)), cert. denied, 131 S. Ct. 79, 122 (2010); cf., e.g., iMedicor, Inc. v. Access Pharm., Inc., 290 F.R.D. 50, 53 (S.D.N.Y. 2013) ("[T]he Court rejects the notion that informing opposing counsel of the intention to move to amend the complaint, as plaintiff did here in July 2012, is the same as actually moving to amend the complaint in a timely fashion. Plaintiff's argument suggests (continued...)

Plaintiffs' failure to offer a clear and consistent definition of the proposed "caregiver" class at this time further demonstrates that MSL would suffer prejudice.[34] The vague and inconsistent parameters of this purported class preclude a determination that MSL took sufficient class discovery such that it would not be prejudiced by plaintiffs' addition of caregiver class claims after the close of class discovery. (See MSL 8/13/13 Br. in Support of Motion to Strike at 4-5.)[35] In contrast, it does not appear from a practical perspective that plaintiffs would be prejudiced by not being permitted to amend, since it is not clear that the proposed FMLA caregiver claim would give plaintiffs any rights additional to their Title VII claim—in fact, plaintiffs repeatedly argue that the distinction between the two claims is one of form, not substance. (Pls. Reply Br. at 6-7 ("Plaintiffs' FMLA class claims are essentially the same as their Title VII maternity leave claims. . . . The sole

---

[33] (...continued)
defendant has been on notice of the proposed new claims throughout the mediation. However, the emails plaintiff attaches in support of this argument reflect only an 'intention' to move to amend and do not recite the claims plaintiff now proposes to add.").

[34] The problematic inconsistencies between plaintiffs' definitions are described in MSL's brief:

> The differences between these two purported definitions [in the proposed 3d Am. Compl. and in plaintiffs' class certification motion] include: must the putative class member have children (or at least one child)? May a person be a member of this purported class if she sought, but never did work, a reduced schedule? May a person be a member of this purported class if she sought, but never did work on, a flexible work schedule? What is a flexible work schedule or arrangement – does it include working full-time but working from home one day a week? Does it include working full-time but working from home occasionally? May a person be a member of this purported class if she worked less than full-time but nonetheless worked 35 hours per week?

(MSL Opp. Br. at 5 n.5; see also pages 8-9 above.)

[35] The Court rejects plaintiffs' hollow attempt to remedy this flaw by inserting a footnote in their reply brief that states: "Plaintiffs are willing and able to provide a clear, consistent definition between the TAC and class motion." (Dkt. No. 442: Pls. Reply Br. at 8 n.19.)

difference – which could only be fairly teased out following Defendants' recent revelations on maternity vs. FMLA leave – is that the FMLA claim is made under a different statute." (citation omitted)); id. at 8 ("The FMLA class claim is 'new' in form only; its substance is entrenched. . . . Whether the terms pregnancy, maternity, mother, or caregiver were used is little more than semantic. The SAC is replete with such allegations."); see id. at 6 ("As a practical matter, given the coextensive nature of the maternity leave and FMLA allegations, it is difficult to see how the bare term 'FMLA' in the SAC would have altered Defendants' witness designations or elicited a further expert analysis."); see also page 12 & n.15 above.)[36]

Finally, there is no merit to plaintiffs' argument that MSL will not be prejudiced simply because, during class discovery, MSL questioned some witnesses, "including Sheila McLean, during their depositions regarding the issues underpinning Plaintiffs' proposed amendments." (Pls. Br. at 17; see also page 12 above.) As MSL correctly points out: "Awareness that a few individuals had testified about their FMLA experience is not equivalent to knowledge that Plaintiffs would assert—and Defendants would be forced to defend—new proposed class-based theories." (MSL Opp. Br. at 18.) See, e.g., Knoll, Inc. v. Moderno, Inc., 11 Civ. 488, 2012 WL 3613896 at *4 (S.D.N.Y. Aug. 22, 2012) ("Defendants argue that 'Plaintiff has kept alive the claims for fraud by pursuing the issue in discovery.' Yet, Plaintiff's discovery efforts do not demonstrate Defendants' diligence."); Oscar v. BMW of N. Am., LLC, 09 Civ. 11, 2011 WL 6399505 at *5 (S.D.N.Y. Dec. 20, 2011) (Plaintiff "argues that the amendment would not prejudice [defendant and] . . . does not create unfair surprise, because, among other things, . . . there was some exploration in discovery as

---

[36]  Cf., e.g., In re "Agent Orange" Prod. Liab. Litig., 220 F.R.D. 22, 26 (E.D.N.Y. 2004) (Weinstein, D.J.) (motion to amend denied where the operative "complaint does not prejudice plaintiffs by denying them necessary . . . theories"), aff'd, 517 F.3d 76 (2d Cir. 2008), cert. denied, 555 U.S. 1218, 129 S. Ct. 1523 (2009).

to the factual basis for a claim involving [the proposed class amendment]. These arguments are unpersuasive." (fn. omitted)).[37/]

Accordingly, the Court agrees with MSL's assertion as to the extent of additional discovery that plaintiffs' proposed amendments would necessitate, and finds that it would unduly prejudice MSL to allow plaintiffs to file a third amended complaint at this stage. See, e.g., MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 157 F.3d 956, 962 (2d Cir. 1998); Oscar v. BMW of N. Am., LLC, 2011 WL 6399505 at *5; Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland, 09 Civ. 4622, 2010 WL 4968247 at *6 (S.D.N.Y. Nov. 24, 2010); Apollo Theater Found., Inc. v. W. Int'l Syndication, 02 Civ. 10037, 2005 WL 1041141 at *19 (S.D.N.Y. May 5, 2005).[38/]

---

[37/] See also, e.g., N. Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC, 887 F. Supp. 2d 78, 88 (D.D.C. 2012) ("The plaintiff then might argue that no new discovery is necessary—each side already has the evidence needed to litigate these claims. Even if this were the case, amending the complaint . . . would still prejudice the defendants. . . . It is not incumbent on the respondent—as it defends the claims in the complaint—to concurrently ferret out and prepare defenses to whatever claims the complainant might decide to add later.").

[38/] Accord, e.g., Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999) ("Plaintiff urges us to consider the fact that the complaint already alleged the underlying factual bases for an FLSA claim, and that therefore leave to amend should be granted . . . . The plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint. Plaintiff delayed pursuing this claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed. There appears to be no justification for the delay, and the plaintiff proposes none. Allowing amendment at this late stage in the litigation would create significant prejudice to the defendants in having to reopen discovery and prepare a defense for a claim quite different from the sex-based retaliation claim that was before the court. The district court did not abuse its discretion in denying leave to amend the complaint at such a late stage of the litigation."); cf., e.g., Lakah v. UBS AG, 07 Civ. 2799, 2013 WL 2246955 at *3 (S.D.N.Y. May 22, 2013) (Movants "inexplicably waited until after the close of discovery to raise this issue in a meaningful way. Given how long and hard the [plaintiffs] have fought against arbitration on the merits, even the prospect of being forced to arbitrate . . . , coupled with the protracted discovery that has taken place on the understanding that it would determine whether this dispute is arbitrable, is alone sufficient
(continued...)

## CONCLUSION

For the reasons set forth above, plaintiffs' motion (Dkt. No. 435) for leave to file a third amended complaint should be DENIED for plaintiffs' lack of diligence and the prejudice late amendment would cause MSL.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Andrew L. Carter, Jr., 40 Foley Square, Room 435, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Carter (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir.

---

38/ (...continued)

to constitute prejudice."); Leber v. Citigroup, Inc., 07 Civ. 9329, 2011 WL 5428784 at *6 (S.D.N.Y. Nov. 8, 2011) ("[T]he inclusion of this new claim would prejudice defendants. The Court has ordered that discovery proceed solely on the statute of limitations issues that defendants raised in their motion to dismiss this action. That discovery has now closed and defendants have moved for summary judgment on timeliness grounds. This proposed new claim in Count Six raises new statute of limitations concerns, the resolution of which would require additional discovery into when plaintiffs became aware of the alleged transfer agent scheme. The Court sees no reason to permit plaintiffs to add this new claim given their unexplained delay in asserting it and the resulting prejudice to defendants.").

1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy</u> v. <u>Manson</u>, 714 F.2d

234, 237-38 (2d Cir. 1983).

Dated:      New York, New York
            August 23, 2013

Respectfully submitted,

**Andrew J. Peck**
United States Magistrate Judge

Copies to:    All Counsel
             Judge Andrew L. Carter, Jr.